DMP:CRH/JMH/EHS
F. #2017R00906

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – –X

UNITED STATES OF AMERICA

   - against -                                                         No. 21-CR-265 (PKC)

HU JI,
LI MINJUN,
ZHU FENG,
   also known as "Johnny Zhu,"
MICHAEL MCMAHON,
ZHENG CONGYING and
ZHU YONG,
   also known as "Jason Zhu,"

                Defendants.

– – – – – – – – – – – –X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRETRIAL CONFERENCE PURSUANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT

                                                            MARK J. LESKO
                                                            Acting United States Attorney
                                                            Eastern District of New York

Craig R. Heeren
J. Matthew Haggans
Ellen H. Sise
Assistant United States Attorneys

Scott A. Claffee
Trial Attorney
Counterintelligence and Export Control Section
National Security Division, U.S. Department of Justice
(Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1
FACTUAL BACKGROUND AND PROCEDURAL POSTURE................................................. 2
BACKGROUND ON CIPA .......................................................................................................... 4
    I.    Pretrial Conferences, Protective Orders, and Discovery under CIPA ................................ 4
        A.    CIPA Generally ............................................................................................. 4
        B.    Pretrial Conferences ..................................................................................... 4
        C.    Protective Orders .......................................................................................... 5
        D.    Discovery of Classified Information by the Defendant................................. 5
    II.    Notice of Defendant's Intent to Disclose and Pretrial Evidentiary Rulings .................... 9
        A.    The Requirement to Provide Notice of Disclosure..................................... 10
        B.    The Pretrial Hearing on Disclosure ............................................................ 11
        C.    Substitution in Lieu of Disclosure .............................................................. 12
    III.    Other Relevant CIPA Procedures..................................................................................... 13
        A.    Interlocutory Appeal ................................................................................... 13
        B.    Rules Governing Introduction of Classified Information........................... 13
        C.    Security Procedures .................................................................................... 14
THE COURT SHOULD HOLD A CIPA PRETRIAL CONFERENCE...................................... 15
CONCLUSION............................................................................................................................. 17

PRELIMINARY STATEMENT

The defendants Hu Ji, Li Minjun, Zhu Feng, Michael McMahon, Zheng Congying, and Zhu Yong ("the defendants") are charged in an indictment with (i) one count of conspiracy to act as an agent of a foreign government—the People's Republic of China ("the PRC")—without prior notification to the Attorney General, in violation of 18 U.S.C. §§ 371 and 951(a); and (ii) one count of conspiracy to engage in interstate stalking, in violation of 18 U.S.C. §§ 371 and 2261A(1)(B). See generally Indictment, ECF No. 54 (May 12, 2021).

This case may implicate classified information. The government respectfully submits this memorandum of law to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA"), to matters relating to classified information that may arise in connection with this case, both before and during trial, and in support of the government's motion for a pretrial conference, pursuant to Section 2 of CIPA, to consider such matters. The date of the next status conference in this matter is June 29, 2021. As previewed at the status conference on May 25, 2021, the government respectfully requests that the Court hold the CIPA Section 2 pretrial conference during the June 29, 2021 status conference.

1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The factual background below is set forth in more detail in the government's earlier-filed complaint. See ECF No. 1 (complaint filed Oct. 28, 2020 ("the Complaint")).

Since at least September 2016, the defendants, together with other co-conspirators, participated in an international campaign to threaten, harass, surveil and intimidate John Doe #1, Jane Doe #1 and their adult daughter, Jane Doe #2. The goal of this campaign was to force John Doe #1 to return from the United States to the PRC against John Doe #1's will.

This campaign against John Doe #1 was part of an international effort coordinated by the PRC government that was known as "Operation Fox Hunt" and "Operation Skynet." Operation Fox Hunt was a PRC Ministry of Public Security initiative to locate and repatriate alleged Chinese "fugitives" who had fled to foreign countries, including the United States. Because foreign countries like the PRC lack lawful authority to conduct domestic law enforcement operations in the United States without the approval of the U.S. government, foreign law enforcement activity on U.S. soil typically relied upon coordination with the U.S. government. Instead of relying on that coordination, however, PRC government officials carrying out Operation Fox Hunt traveled to the United States and directed non-official operatives in the United States to, among other things, surveil and harass their intended targets. Once Operation Fox Hunt targets were located, the PRC government officials and those acting on their behalf threatened the targets and their families with harm to coerce the targets to return to the PRC.

PRC officials, including defendant Hu Ji, directed several individuals, including, but not limited to, defendants Zhu Feng, Michael McMahon, Zheng Congying, Li Minjun and Zhu Yong, to engage in unsanctioned and illegal conduct in the United States on behalf of the

PRC for the purpose of coercing John Doe #1 to return to the PRC. This conduct included, among other things: (i) an April 2017 scheme to bring John Doe #1's elderly father from the PRC to the United States against the father's will and to use his unannounced presence to threaten and attempt to coerce John Doe #1's return to the PRC; (ii) May 2017 and July 2018 operations to surveil and conduct online harassment of Jane Doe #2; (iii) a September 2018 incident where conspirators visited John Doe #1's residence, banged on his front door, walked into his yard, and left a threatening message taped to the residence; and (iv) the delivery of unsolicited packages between February 2019 and April 2019 that contained letters and a video with messages intended to coerce John Doe #1's return to the PRC.

    Defendants Michael McMahon, Zheng Congying, and Zhu Yong were arrested on October 28, 2020. On May 12, 2021, a grand jury sitting in the Eastern District of New York returned an indictment ("the Indictment") charging the defendants as set forth above. The government has made an initial production of non-classified discovery, and intends to continue to produce non-classified discovery on a rolling basis. See ECF Nos. 62-64 (May 25, 2021).

BACKGROUND ON CIPA

When a case may implicate classified information, it is the government's practice to provide the Court with a detailed description of the procedures mandated by the CIPA statute for protecting such classified information.

I. Pretrial Conferences, Protective Orders, and Discovery under CIPA

    A. CIPA Generally

"CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (quoting United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008)); United States v. Al-Farekh, 956 F.3d 99, 109 (2d Cir. 2020) (same); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information."). CIPA defines "[c]lassified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3, § 1(a).

    B. Pretrial Conferences

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3, § 2. After such a motion is filed, the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." Id.

4

### C. Protective Orders

Section 3 of CIPA requires the Court, upon the request of the United States, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case. . . ." 18 U.S.C. App. 3, § 3. The key Senate Report on CIPA, issued by the Senate Committee on the Judiciary, provides that a protective order may include, but need not be limited to, provisions:

> (1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed; (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299 (1980).

### D. Discovery of Classified Information by the Defendant

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. 3, § 4.

Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an in camera, ex parte submission to the Court, and the Second Circuit has repeatedly

5

affirmed district court decisions entering protective orders based on such submissions. See Al-Farekh, 956 F.3d at 109 (denying defendant's claim that the District Court was required to provide him with access to the Government's CIPA filings, and finding that "the District Court properly exercised its authority under CIPA when it reviewed and adjudicated the Government's CIPA motions ex parte and in camera"); Abu-Jihaad, 630 F.3d at 142-143 (recognizing that "a district court's decision to conduct ex parte hearings manifests no abuse of discretion"); Aref, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)); see also United States v. Chudhary, No. 20-CR-135 (CBA), ECF No. 47 (E.D.N.Y. Apr. 2, 2021) (granting government's motion to file CIPA Section 4 motion ex parte and in camera); United States v. Kandic, No. 17-CR-449 (NGG), ECF No. 41, at 4 (E.D.N.Y. Jan. 22, 2019) (same); United States v. Ying Lin, No. 15-CR-601 (DLI), ECF No. 71 (E.D.N.Y. Apr. 6, 2017) (same); United States v. Isa, No. 11-CR-819 (RRM), ECF No. 65 (E.D.N.Y. Sept. 19, 2016) (same); United States v. Velentzas, No. 15-CR-213 (SJ), 2016 WL 4250304, at *3 (E.D.N.Y. Aug. 10, 2016) (same); see also United States v. Yunis, 867 F.2d 617, 622-23 (D.C. Cir. 1989); United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988); United States v. Pringle, 751 F.2d 419, 427 (1st Cir. 1984).

      "CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself authorizes district courts to restrict discovery of evidence in the interest of national security.'" Velentzas, 2016 WL 4250304, at *2 (quoting United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *1 (E.D.N.Y. Jun. 24, 2011)); see also Al-Farekh, 956 F.3d at 107 (finding that "there can be no question that a district court's ex parte, in camera adjudication of CIPA motions falls squarely within the authority granted by Congress" pursuant to CIPA and Rule 16(d)(1));

6

Aref, 533 F.3d at 78 (CIPA section 4 "clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause."). Indeed, CIPA's legislative history makes clear that the Court may consider national security interests in determining whether to deny, restrict, or defer discovery. See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery); see also Abu-Jihaad, 630 F.3d at 140 (making clear that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security" (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009))); Aref, 533 F.3d at 78 (same).

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one." Stewart, 590 F.3d at 130. "The privilege it presupposes has its origins in the common-law privilege against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'" Abu-Jihaad, 630 F.3d at 140-41 (internal citations omitted, quoting Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991)). "CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable. Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense." United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted).

7

The application of the government's privilege against disclosure of classified information is a multi-step process. "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies." Stewart, 590 F.3d at 131. If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" Abu-Jihaad, 630 F.3d at 141 (quoting Aref, 533 F.3d at 80). "If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense." Aref, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the defendant's right to present his defense. For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense." United States v. Al Farekh, No. 15-CR-268 (BMC), 2016 WL 4444778, at *2-3 (E.D.N.Y. Aug. 23, 2016); see also Yunis, 867 F.2d at 623 ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"). The fact that defense counsel possesses a security clearance does not itself entitle counsel to receive classified information in discovery. As the Second Circuit and courts in this Circuit have repeatedly recognized, clearances do not mandate access to classified information

8

that would otherwise be unavailable to the defendant.  See Al-Farekh, 956 F.3d at 108 (holding that "[n]othing in the text of § 4 limits the District Court's authority to review classified information ex parte only where defense counsel lacks a security clearance" and concluding that the defendant's claim that his counsel should have been been given access to CIPA materials because he held a security clearance "cannot be reconciled with CIPA"); see also United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) (citing Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009) ("A person may have access to classified information provided that . . . the person has a need-to-know the information.")); Zazi, 2011 WL 2532903, at *3 (same); United States v. Libby, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

II.     Notice of Defendant's Intent to Disclose and Pretrial Evidentiary Rulings

If the United States provides classified material to the defendant in discovery, CIPA imposes three critical pretrial steps in the handling of that classified information should the defendant wish to use any of that classified information in pretrial proceedings or at trial.  First, the defendant must, pursuant to CIPA Section 5(a), specify in detail the precise classified information he reasonably expects to disclose in pretrial proceedings or at trial.  Second, the Court, upon motion of the government, shall hold a hearing pursuant to CIPA Section 6(a) to determine the use, relevance, and admissibility of the proposed evidence.  Third, following the CIPA Section 6(a) hearing and formal findings of admissibility by the Court, the United States

9

may move to substitute an admission of relevant facts or summaries for classified information that the Court rules admissible.

  A.  <u>The Requirement to Provide Notice of Disclosure</u>

  The linchpin of CIPA is Section 5(a), which requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of his intention to the Court and the government. Section 5(a) expressly requires that such notice "include a brief description of the classified information," and the leading case under Section 5(a) holds that such notice "must be <u>particularized</u>, setting forth <u>specifically</u> the classified information which the defendant reasonably believes to be necessary to his defense." <u>United States v. Collins</u>, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added). This requirement applies to documentary exhibits, as well as to witness testimony, regardless of whether that testimony is elicited on direct or cross-examination. <u>See</u> <u>United States v. Hitselberger</u>, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) (CIPA's disclosure requirement applies "regardless of the witness or the document through which that information is to be revealed.") (quoting <u>United States v. Poindexter</u>, 725 F. Supp. 13, 33 (D.D.C. 1989)).

  If a defendant fails to provide a sufficiently detailed notice far enough in advance of pretrial proceedings or trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to "preclude disclosure of any classified information." 18 U.S.C. App. 3, § 5(b); <u>see</u> <u>also</u> <u>United States v. Badia</u>, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (affirming order precluding defendant from disclosing classified information at trial because defendant failed to comply with notice requirements of CIPA Section 5). Similarly, if the defendant attempts to disclose at trial classified information that is not described in his Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA. <u>See</u> <u>United States v. Pappas</u>, 94 F.3d

795, 799 (2d Cir. 1996) ("[A] defendant shall not disclose classified information 'in connection with a trial or pretrial proceeding' until the required notice has been given."); Smith, 780 F.2d at 1105 ("defendant is forbidden from disclosing any such information absent the giving of notice"); see generally United States v. North, 708 F. Supp. 399 (D.D.C. 1988).

### B. The Pretrial Hearing on Disclosure

Prior to trial or any relevant pretrial proceeding, pursuant to Section 6(a) of CIPA, upon motion of the government, the Court must hold a hearing "to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. App. 3, § 6(a). The statute expressly provides that if the Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use, relevance, or admissibility of the classified information at issue] prior to the commencement of the relevant proceeding." Id. (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under Section 6(a), the United States must notify the defendant of the hearing and identify the classified information at issue. If the classified information was not previously made available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant. Thus, as Congress recognized in enacting CIPA, "the Government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval." S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the Court hears the defense proffer and the arguments of counsel, then rules whether the classified information identified by the defense is relevant

11

under Rule 401 of the Federal Rules of Evidence.[1]  Smith, 780 F.2d at 1106; see generally Yunis, 867 F.2d at 622.  The Court's inquiry does not end there, however, for under Rule 402 of the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial."  Id.  The Court must also determine whether the evidence is cumulative, "prejudicial, confusing, or misleading," such that it should be excluded under Rule 403 of the Federal Rules of Evidence.  United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984).  At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

        C.        Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information are admissible, the United States has the option of proposing a "substitution" for the classified information at issue, pursuant to Section 6(c) of CIPA.  18 U.S.C. App. 3, § 6(c).  The United States may move for permission to provide the defense either a substitute statement admitting relevant facts that the classified information would tend to prove, or substitute a summary of the classified information that would otherwise be disclosable.  See In re Terrorist Bombings, 552 F.3d at 116.  The Court must grant the motion for substitution "if it finds that the [substituted] statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  Id.

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA

---

[1] CIPA does not change the "generally applicable evidentiary rules of admissibility."  United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984); accord Babafemi, 2014 WL 1515277, at *1.  Rather, CIPA alters the timing of rulings on admissibility, requiring them to be made before trial.  United States v. Poindexter, 698 F. Supp. 316, 318 (D.D.C. 1988); accord Zazi, 2011 WL 2532903, at *1; Smith, 780 F.2d at 1106.

permits the government to object to the classified information's disclosure. 18 U.S.C. App. 3, § 6(e)(1). In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information." Id. Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case. Id. at § 6(e).

III.   Other Relevant CIPA Procedures

    A.   Interlocutory Appeal

Section 7(a) of CIPA provides for an interlocutory appeal by the United States from any decision or order of the trial judge "authorizing the disclosure of classified information," imposing sanctions on the United States "for nondisclosure of classified information," or for "refusing a protective order sought by the United States to prevent the disclosure of classified information." 18 U.S.C. App. 3, § 7(a). The term "disclosure" relates both to information that the court orders the United States to divulge to the defendant as well as to information already possessed by the defendant which he or she intends to make public. Section 7(b) requires the Court of Appeals to give expedited consideration to any interlocutory appeal filed under subsection (a). Id. § 7(b).

    B.   Rules Governing Introduction of Classified Information

In order to prevent "unnecessary disclosure" of classified information, section 8(b) permits the Court to order admission into evidence of only a part of a writing, recording or photograph. Alternatively, the Court may order into evidence the entire writing, recording or photograph with all or part of the classified information contained therein excised. Excision of such classified information may not be authorized, however, if fairness requires that the whole document, recording or photograph be considered.

Section 8(c) establishes a procedure for addressing the problems that may emerge during the taking of testimony from a witness who possesses classified information not

13

previously found to be admissible. If the defendant knows that a question or a line of inquiry would result in disclosure of classified information, CIPA mandates that he give the United States immediate notice under Section 5 of CIPA; Section 8(c), in effect, serves as a supplement to the Section 6(a) procedures, addressing circumstances that might not have been anticipated in advance of the taking of testimony. Thus, upon objection of the United States to a defense question or line of inquiry not covered in a Section 6(a) proceeding, the Court must take suitable action to avoid the improper disclosure of classified information by a witness.

### C. Security Procedures

Section 9 of CIPA required the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of federal courts; such procedures were originally promulgated in 1981 and have been in place, with revisions, ever since. See "Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information" (reprinted following 18 U.S.C. App. 3, § 9).

## THE COURT SHOULD HOLD A CIPA PRETRIAL CONFERENCE

Due to the nature of the charges, the United States anticipates that issues relating to classified information may arise in connection with this prosecution. Specifically, classified material may exist that could be subject to disclosure in advance of trial under applicable rules, statutes, and case law. The disclosure of such material would raise issues of national security that the Court should address before the material is provided to the defense.

Accordingly, the United States respectfully requests that the Court schedule a pretrial conference pursuant to Section 2 of CIPA to establish a motion schedule relating to any classified information. The government further requests that this Section 2 conference be held during the next scheduled status conference for this matter, set for June 29, 2021, at 11:30 a.m.

The government has endeavored to identify the universe of potentially discoverable classified material and determine its potential applicability, nature, and volume, and will continue in these efforts ahead of the June 29 Section 2 conference. At that conference, the government will provide an estimate of the time necessary to conduct a complete review of any potentially discoverable classified information. Based on that estimate, the government will request a schedule for the filing of motions, pursuant to Sections 3 and 4 of CIPA, if necessary, relating to the deletion, substitution, or disclosure pursuant to a protective order of classified information otherwise subject to discovery under the Federal Rules of Criminal Procedure and applicable law. 18 U.S.C. App. 3, §§ 3, 4.

Because of the classified nature of any such information identified by the government, the government will not be able to describe or discuss the information in open court at the Section 2 conference. Accordingly, should the government identify potentially discoverable classified information, the government seeks authorization pursuant to Section 4 of

15

CIPA to make an in camera, ex parte submission regarding classified materials that the government believes should be subject to deletion, substitution, or disclosure pursuant to a protective order.  Id.   As detailed above, courts in this Circuit have consistently held that in camera, ex parte submissions to a district court in matters involving national security are proper. See, e.g., Al-Farekh, 956 F.3d at 109; Abu-Jihaad, 630 F.3d at 140; Aref, 533 F.3d at 78.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court schedule a pretrial conference pursuant to Section 2 of CIPA, to be held during the next scheduled status conference on June 29, 2021, at which the Court will establish a discovery and motion schedule relating to any classified information. The government further respectfully requests that the Court designate this case as complex for purposes of the Speedy Trial Act, for the reasons set forth above.

Dated:     Brooklyn, New York
           June 7, 2021

                                              MARK J. LESKO
                                              Acting United States Attorney
                                              Eastern District of New York

By:     /s/Craig R. Heeren
       Craig R Heeren
       J. Matthew Haggans
       Ellen H. Sise
       Assistant U.S. Attorneys
       (718) 254-7000

       Scott A. Claffee
       Trial Attorney
       Counterintelligence and
       Export Control Section
       National Security Division
       U.S. Department of Justice