1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
       UNITED STATES OF AMERICA,    :   21-CR-265(PKC)
4                                   :
                                    :   U.S. Courthouse
5                                   :   Brooklyn, New York
           -against-               :
6                                   :   TRANSCRIPT OF
                                    :   STATUS CONFERENCE
7                                   :
                                    :
8      MICHAEL MCMAHON, ET AL       :   July 14, 2021
                                    :   11:00 a.m.
9            Defendants.            :
                                    :
10   - - - - - - - - - - - - - X

11
     BEFORE:
12                 HONORABLE PAMELA K. CHEN, U.S.D.J.

13

14   APPEARANCES:

15   For the Government:      JACQUELYN M. KASULIS, ESQ.
                              Acting United States Attorney
16                            271 Cadman Plaza East
                              Brooklyn, New York 11201
17                            BY:  CRAIG HEEREN, ESQ.
                                   ELLEN SISE, ESQ.
18                                 MATTHEW HAGGANS, ESQ.
                                   Assistant U.S. Attorneys
19
                              SCOTT ANDREW CLAFFEE, ESQ.
20                            DOJ-Nsd
                              National Security Division
21                            Counterintelligence &
                              Export Control Section
22
     For the Defendant
23   McMahon:                 LAWRENCE S. LUSTBERG, ESQ.
                              GENNA A. CONTI, ESQ.
24                            BRIAN J. NEARY, ESQ.

25

2

```
1   Zhu:                    KEVIN K. TUNG, ESQ.

2
    Zheng:                  PAUL A. GOLDBERGER, ESQ.
3                           RENEE M. WONG, ESQ.

4

5   Court Reporter:     Holly Driscoll, CSR, FCRR
                        Chief Court Reporter
6                       225 Cadman Plaza East
                        Brooklyn, New York 11201
7                       (718) 613-2274

8

9   Proceedings recorded by mechanical stenography, transcript
    produced by Computer-Assisted Transcript.
10

11

12

13                      *     *     *

14

15

16          (THE FOLLOWING TAKES PLACE VIA VIDEOCONFERENCE:)

17          THE COURT:  Good morning, everyone.

18          THE COURTROOM DEPUTY:  Criminal cause for status

19   conference, docket 21-CR-265, United States versus McMahon,

20   et al.

21          Before asking the parties to state their appearances

22   I would like to note the following:

23          Persons granted remote access to proceedings are

24   reminded of the general prohibition against photographing,

25   recording and rebroadcasting of court proceedings.  Violation
```

3

1    of these prohibitions may result in sanctions, including

2    removal of court issued media credentials, restricted entry to

3    future hearings, denial of entry to future hearings, or any

4    other sanctions deemed necessary by the court.

5            Will the parties please state your appearances for

6    the record starting with the government.

7            MR. HEEREN:  Good morning, Your Honor, Craig Heeren

8    for the United States.  With me are my colleagues Matthew

9    Haggans, Ellen Sise, both from the U.S. Attorney's Office, and

10   Scott Claffee from the National Security Division.  We also

11   have some interns who I believe are dialed in on the public

12   line but will, of course, not be speaking.

13            (Interference in the video feed.)

14            THE COURTROOM DEPUTY:  Ms. Lau, you were saying

15   something?

16            THE INTERPRETER:  I have the defendants on the other

17   line but I think they're sitting in front of a screen or

18   something.  I'm able to hear sort of like an echo from the

19   other side so it is very hard for me to hear everything, so

20   if it is possible for them to maybe be a little bit more --

21   to move away from their screens so I don't hear it on both

22   ends.

23            THE COURTROOM DEPUTY:  So, Mr. Lustberg, we seem to

24   be getting some feedback.

25            (Pause in the proceedings.)

4

1      THE COURTROOM DEPUTY:  We need a few more minutes.

2  I'm just going to ask everyone at this point to please keep

3  all your feeds on mute.

4      (Pause in the proceedings.)

5

6      THE COURT:  Can you see me now?

7      Sorry, folks, I had to switch to a different device.

8  Hopefully this will work better.

9      Okay, let's try this now.  There we go.

10      THE COURTROOM DEPUTY:  All right, sorry about that.

11  Let's start all over again.

12      The government, if you'll introduce yourself.

13      MR. HEEREN:  Yes, Your Honor, Craig Heeren on behalf

14  of the United States.  With me from the United States

15  Attorney's Office are my colleagues Matthew Haggans and Ellen

16  Sise, as well as my colleague Scott Claffee from the National

17  Security Division at the main Department of Justice.  Good

18  morning, Your Honor.

19      THE COURT:  Good morning.

20      MR. LUSTBERG:  Good morning, Judge, Lawrence

21  Lustberg from Gibbons PC on behalf of Mr. McMahon who is

22  present.  With me are my colleagues Genna Conti from Gibbons

23  and Brian Neary from the Law Offices of Brian Neary.

24      THE COURT:  Good morning to all of you as well.

25      MR. TUNG:  Good morning, Your Honor, Kevin Tung on

5

1   behalf of the defendant Zhu Yong.  Zhu Yong is present sitting
2   right across the camera.
3            THE COURT:  Yes, good morning to both of you.
4            MR. GOLDBERGER:  Paul Goldberger for Congying Zheng,
5   and Renee Wong, his counsel as well, sitting next to me.
6            THE COURT:  Good morning.
7            THE COURTROOM DEPUTY:  Will our interpreter please
8   raise her right hand.
9            THE INTERPRETER:  Yes.
10           (Interpreter sworn by the clerk.)
11           THE INTERPRETER:  Yes.
12           THE COURTROOM DEPUTY:  Thank you.
13           Please state and spell your name and indicate the
14  language you're translating.
15           THE INTERPRETER:  Lily Lau, last name L A U.  I'm
16  interpreting in Chinese language, Mandarin dialect.
17           THE COURT:  Good morning to you, Ms. Lau.
18           I want to confirm because at least on my video
19  screen I see -- I don't know if I see all the defendants
20  themselves.  I see Mr. Tung's client and I see Mr. Zheng.  I
21  feel like though maybe -- let's see, Mr. McMahon.
22           (Defendant raises his hand.)
23           THE COURT:  Oh, there you are, sir, okay, I see you.
24  All right.  I think that's everyone then.
25           So, let me hear from the government on the status

6

1    and then, as everyone knows, we do need to have a pretrial

2    conference pursuant to Section 2 of CIPA.

3           MR. HEEREN:  Yes, Your Honor, thank you, and this is

4    Craig Heeren again for the record.

5           So, first, with regard to the case at large, the

6    government has produced some additional discovery, we produced

7    several hundred pages primarily consisting of search warrants

8    and related materials at this time to all three defendants.  I

9    understand at least this morning that one of the defense

10   counsel had an issue receiving it, he notified us today and

11   we're working with him to get that, so we'll make sure he does

12   get that.

13          We anticipate continuing to produce discovery on a

14   rolling basis.  We do anticipate that discovery will be

15   somewhat voluminous in this case due to a substantial number

16   of search warrants for various email accounts, social media

17   accounts, surveillance records and the like and we're doing

18   our best to move expeditiously to get that out.

19          In terms of plea negotiations, the parties remain

20   open to it and without getting into the details with the

21   Court, that's still a possibility at least to discuss with the

22   parties.  So, given that and the overall complexity of the

23   case, we had proposed a date in September to Your Honor's

24   deputy.  I know we have had not had an opportunity to talk to

25   defense counsel in advance, I know at least Mr. Lustberg has

7

1  advised us -- I don't want to speak for him, of course, but

2  he's indicated there are several dates in September that work

3  for him but obviously if other parties have an issue with it,

4  we'll give them the opportunity to have the floor.

5        I can speak to the CIPA 2 matter as well, unless

6  Your Honor would like to start with those first matters.

7        THE COURT:  Let's move to the CIPA briefing schedule

8  just so I have a sense of how that fits in with the proposed

9  status conference and I think it might be useful as well for

10 the parties or for defense counsel to have some idea of what

11 the government is proposing with respect to that aspect of the

12 case.

13       MR. HEEREN:  Yes, Your Honor, and so I think I'm

14 going to elaborate a little bit just for the benefit of all

15 parties in case anyone isn't as familiar with the classified

16 process, but the government does anticipate -- does believe

17 there are some S-5 materials that may be pertinent in the big

18 picture to this case which necessitates the filing of a CIPA

19 2.  We do anticipate filing possibly filing what's called a

20 CIPA section 4 motion or motion pursuant to CIPA Section four

21 but, in a nutshell, that is an ex parte briefing that advises

22 the Court of certain classified material that may be relevant

23 to the case and proposes a method in which to deal with those

24 materials.

25       In general, those methods can include disclosing

8

1    these materials in a classified fashion, providing what is

2    known as substitute discovery, in other words, providing the

3    same substance but in a different form that can be shared in

4    an unclassified or lower classification format, or withholding

5    the materials if the Court agrees that they don't rise to the

6    level of favorable and helpful to the defense, which in CIPA

7    parlance is referred to as deletion.

8            The process unfortunately particularly in the Second

9    Circuit takes a substantial amount of time because the circuit

10   has concluded that we have to properly invoke the state

11   secrets privilege.  That requires an affidavit from

12   essentially cabinet level officials like the Attorney General

13   himself, among others, depending on what the material is.  As

14   the Court I'm sure is aware, but for everyone's benefit, that

15   process tends to take a substantial amount of time based on

16   the current process and I would also note that the in light of

17   the ongoing pandemic, that's created some issues as well.

18   Obviously things have improved a great deal but there

19   continues to be some limitations at secure facilities in terms

20   of how many people can appear and look at materials, so that's

21   just an added issue there.

22           So, in light of all those issues, the government

23   would propose a tentative date to file the CIPA 4 motion in

24   six months from now in January or February.  The government

25   would be careful to note that that's not freezing the

9

1  litigation.  We are prepared and plan to proceed on a normal

2  track with the remainder of the litigation continuing to

3  disclose discovery and handling any motion practice that may

4  be needed while the CIPA process takes its course.

5          The final thing I would note for the Court is I

6  don't know that all -- I don't believe that all defense

7  counsel have clearances.  I have notified the court

8  information security officer about the potential for a

9  classified process in this case and he's asked us whether he

10  should start the process for granting defense attorneys to be

11  cleared.  The government's position --

12          THE COURT:  Is this Mr. Rucker?

13          MR. HEEREN:  Yes, Your Honor, it is Mr. Rucker.  I

14  don't know if he himself is appearing today, he had said he

15  would send another CISO because he has an appearance in Boston

16  today.

17          THE COURT:  No, that's fine.  Go ahead, I

18  interrupted you.

19          MR. HEEREN:  No, that's fine, Your Honor.  With

20  regard to clearing counsel, as a general matter, the

21  government's position is that counsel does not need to be

22  cleared yet because we don't know that anything will

23  ultimately need to be turned over, however, we are mindful of

24  the timing that it takes to get somebody cleared so if the

25  Court prefers to start the process now to clear counsel, we're

1    not going to object to that except we want to reserve our

2    right and we do reserve our right to point out that just

3    because an attorney has clearance does not provide any

4    particular additional basis for them see to see classified

5    material absent the necessary showings under CIPA.

6            THE COURT:  No, I understand that.

7            Do you have -- I know it may be impossible for you

8    to say or to even know right now but do you have any sense of,

9    as a proportional matter, percentage matter, the volume of

10   potential CIPA information relative to the other discovery

11   that's being provided?

12           Because you say that the government isn't going to

13   slow down the normal discovery process in terms of disclosure

14   of non-classified materials but I guess I don't have any sense

15   whatsoever in light of the six month sort of schedule you're

16   proposing whether or not though in reality that might slow

17   discovery down because the volume of information that could be

18   subject to the CIPA motion is significant or is substantial

19   when compared to the rest of discovery.

20           MR. HEEREN:  Your Honor, it's a bit difficult to say

21   in this setting but I think I can say in the broad strokes it

22   is not -- at this time we don't believe it would substantially

23   hold up the case and it's not -- the bulk of discovery in this

24   case that we're proceeding on is already -- will be able to be

25   disclosed in ordinary discovery.

1          THE COURT:  Okay.  All right.  Fair enough.

2          With respect to the clearance process, just, as you

3   note, it can take some time, again I don't know if this is

4   possible but whether I direct that defense counsels start that

5   process because it's burdensome for everyone really and very

6   time and resource consuming, it would be helpful if the

7   government could give me some assessment, and it could be ex

8   parte even, of whether or not the government anticipates of

9   the various ways of handling classified material, whether it

10  anticipates recommending or agreeing to disclosure to cleared

11  counsel of any of the information versus substitution or

12  non-disclosure or withholding; do you think you'll able to

13  give me any sense of that because that might drive my decision

14  about whether to go through the burdens of having counsel

15  cleared.

16          MR. HEEREN:  Yes, Your Honor, I think the best thing

17  to do would be for the government to send Your Honor an ex

18  parte letter, we'll probably send you something fairly quickly

19  on that in the next week or so to get that going.  Obviously I

20  think -- I anticipate that it will still be sort of a

21  tentative answer since our review is ongoing but we'll give

22  you our sense as we understand it right now.

23          THE COURT:  Counsel, if you can do that say in two

24  weeks, then I might be able to -- or I'm thinking about my own

25  timing, you can make it three weeks, I don't want you to send

12

1    something if I'm not going to be able to address it

2    immediately; say I'll give you three weeks to give you some

3    assessment as best you can, I realize it's only an estimate or

4    projection, how much of the classified information you

5    anticipate the government might be able to or is going to

6    recommend to Main Justice that you reveal to or disclose to

7    cleared counsel versus the two other options.  That would be

8    helpful in terms of my deciding whether to have defense

9    counsel get clearance.

10            So, let me ask this, does the government know or do

11   defense counsel, I mean obviously they know, how many lawyers

12   are we talking about that would have to get cleared

13   potentially if you know, Mr. Heeren?

14            MR. HEEREN:  Your Honor, I don't know.  I have a

15   vague recollection that Mr. Lustberg indicated that he was

16   cleared but I don't want to speak for him.

17            THE COURT:  Okay.  Mr. Lustberg, are you in fact --

18   do you have security clearance?

19            MR. LUSTBERG:  I have had security clearance, Your

20   Honor, I believe I have to update it as you have to do

21   periodically, but my experience having done that a number of

22   times, I've been involved in quite a few CIPA cases,

23   Guantanamo related and otherwise, over the years is that that

24   process of updating is a lot less onerous and a lot more

25   expeditious them the usual process of getting cleared.  I do

1  believe though that I do have to get mine updated but I have

2  had security clearances so I don't think that that will be

3  problematic and I know Mr. Rucker from prior matters as well

4  and I'm happy to communicate with him and find out how long he

5  thinks that would take.  I think for me at least it would be

6  fairly quick.

7          THE COURT:  All right.  If anyone else has clearance

8  that's still valid, can you raise your hand.

9          (No hands.)

10          THE COURT:  I don't see any defense attorneys

11  showing that they have been cleared.  Even if it's not valid

12  now or if you don't know, if you had clearance in the past

13  like Mr. Lustberg, can you raise your hand.

14          Okay, so that's Mr. Goldberger.

15          Say your name again, I apologize.

16          MR. GOLDBERGER:  Mr. Goldberger.

17          THE COURT:  How long ago?

18          MR. GOLDBERGER:  It's a long time ago, it was in the

19  Eastern District the case but it's many years ago.

20          THE COURT:  So, you probably have to start the

21  process all over again.  All right.  That gives me an idea, I

22  think it might be quite an undertaking given the number of

23  defendants and the number of attorneys, so after I see the

24  government's letter I'll make a decision about whether it's

25  worthwhile to undertake this exercise because it's invasive

14

1    and it is obviously very burdensome for everybody.  So, let's

2    see if we actually have a need.

3           On the other hand, I don't want to slow things down

4    if in six months it appears that there is going to be some

5    need for it and then we start the process then which will then

6    put us another six months I think out from moving the case

7    along.

8           So, tell me more in detail, Mr. Heeren, what the

9    proposed schedule is.  I think it starts with the filing of

10   the Section 4 motion in six months, is that right?

11          MR. HEEREN:  That's right, Your Honor, and then at

12   that point Your Honor would take whatever time the Court needs

13   obviously to review it, either the Court can rule on the

14   papers if she thinks it's straightforward enough or the Court

15   can conduct an ex parte CIPA 4 hearing with the government.

16          After that in some cases courts in this district

17   have consulted in an ex parte setting with defense counsel --

18          THE COURT:  Right.

19          MR. HEEREN:  -- without obviously revealing what the

20   government told the Court but to get defense counsel's views

21   of their theory of the case and then ultimately after that in

22   my experience the Court has made a ruling that's typically --

23   the substance of it is it remains ex parte but there's an

24   order on the docket that sort of sets out the case law

25   generally.  It's kind of hard to set a deadline for that,

15

1    obviously we'll be ready when the Court wants us to be after

2    that motion is filed and we can move fairly expeditiously.

3            THE COURT:  That sounds fine.  I think given that

4    the bulk of the discovery is going to be produced or has or is

5    going to be produced during regular discovery, I am fine with

6    having the government file its motion in six months, so that

7    would be in January 2022.

8            Did the government have a date in mind?

9            MR. HEEREN:  No, Your Honor, I suppose, you know,

10   midway through the month, January 15th or 14th, whatever

11   weekday that there is so we're clear of the holidays would

12   probably be for the best.

13           THE COURT:  Okay.  So, why don't we go with January

14   14, 2022 for the government to file its CIPA motion, it will

15   be a Section 4 motion, file that, and you're authorized to

16   file that ex parte and obviously I'll review it and see if

17   it's appropriate to keep it so which I assume I will.

18           And let me further say that I'm less concerned about

19   the length of time that's being proposed because the

20   defendants are also not in custody and, as I said before, I

21   think discovery and plea negotiations can still proceed even

22   as the government prepares its CIPA application and based on

23   the government's representation, it doesn't appear that that's

24   going to -- that application or the resolution of it is going

25   to significantly affect the progress of this matter.  All

16

1   right.

2           Did any defense counsel want to be heard on the CIPA

3   issue briefing schedule or otherwise?

4           MR. LUSTBERG:  Your Honor, just quickly, this is

5   Mr. Lustberg on behalf of Mr. McMahon, obviously we, as I

6   said, I've been through this before and that matter of

7   proceeding is quite normal and I appreciate that the Court has

8   asked the question of how much of the discovery is classified

9   because I do think that the key is to just get on with the

10  other discovery in the meantime.  We just received discovery

11  yesterday in advance of today's conference and if our next

12  conference is to be useful, maybe I'm jumping the gun here a

13  little bit, it would be good for us to have as much discovery

14  as quickly as possible so we could then potentially set dates

15  for other proceedings and perhaps move this along, but with

16  respect to CIPA itself, no, I'm quite used to this and this

17  seems like a totally reasonable schedule.

18          THE COURT:  All right.  So, let me set a couple of

19  dates.  August 4, 2021 for the government to provide a letter

20  that will hopefully inform me about whether or not we need to

21  clear counsel or start the clearance process now for the

22  numerous counsel we have, so just give me some idea of how you

23  think I might recommend handling this perhaps by a proportion

24  or whatever you think is going to be most helpful for me to

25  make that determination.

1          And then let's set a next status conference date in

2    September.  I think by September -- frankly, we could have

3    done it today, I think that can be in-person.  I think that

4    eliminates any potential technical issues and I think it's

5    generally better just for everyone to be in the same room for

6    all sorts of reasons.  So, barring any sort of worsening of

7    the pandemic situation, the next conference will be in-person

8    in September.

9          How is September 14th at two p.m. for everybody in?

10         MR. LUSTBERG:  Your Honor, as I mentioned to

11   Mr. Heeren this morning, I am going to be out of town

12   essentially on a family wedding from the 13th till the 23rd,

13   so we're right in this time frame, if it could be before or

14   after that I would be most appreciative.  Obviously there are

15   other members of my team that can cover it in my absence but

16   if we can do that, I'd really appreciate it.

17         THE COURT:  Well, my inclination -- why don't we

18   make it before that.  Your commitment is from the 13th you

19   say?

20         MR. LUSTBERG:  Yes, Your Honor.

21         THE COURT:  So, Fida, can we do it the week before

22   then?

23         THE COURTROOM DEPUTY:  September 10th at ten a.m.

24         MR. GOLDBERGER:  Judge, I think the week before that

25   would be a problem for both Ms. Wong and myself.  I would

1   appreciate -- we have some issues, both business and personal

2   issues, if you could put it for after the 23rd sometime, I

3   think that would be better for us.

4            THE COURT:  Okay.  I'm wondering maybe if we should

5   move it to October.  September is a very full month for us in

6   general and actually as happened, I may be sitting by

7   designation in the Circuit on the 24th of September which

8   always involves more work than I care to think about, so I

9   think that will be a difficult period for us in general and

10  September has other issues when it comes to District Court

11  work, as some of you may know.

12           So, why don't we move it to October and I think by

13  then the parties should be able to give me some idea if you

14  anticipate any motions based on the discovery that you've

15  received and obviously not factoring in any CIPA issues.

16           Wait, my deputy is telling me we have trial.  Let's

17  see.  All right.  So, Fida, why don't we try for the last week

18  in September.

19           THE COURTROOM DEPUTY:  September 27th at 11 a.m.

20           THE COURT:  Okay.  Is that sold to everybody here?

21  Okay, that would be our next date.  I am excluding time from

22  now until then in the interests of justice to allow the

23  additional production of discovery as well as plea

24  negotiations to commence or continue.

25           Anything else from the government?

19

1        MR. HEEREN:  Yes, Your Honor, and forgive me if it

2   was said at the beginning when we were having some technical

3   difficulties, just for the record could we just confirm with

4   the defendants or defense counsel that they consent to

5   appearing by video today?

6        THE COURT:  Thank you.  Actually, no, I forgot to do

7   that because I was having so much trouble getting on the call

8   myself.

9        So, let's go in order here; for Mr. McMahon, does

10  counsel consent to his appearance remotely today?

11       MR. LUSTBERG:  Yes, Your Honor.

12       THE COURT:  And for Mr. Zheng?

13       MR. GOLDBERGER:  Yes, Your Honor.

14       THE COURT:  And for Mr. Sue?

15       MR. TUNG:  Yes, Your Honor.

16       THE COURT:  Did I miss anybody?

17       (No response.)

18       THE COURT:  I do find it is in the interests of

19  justice or would harm the serious interests of justice if we

20  did not proceed today remotely which I have authority to do

21  under the current Administrative Order in this court due to

22  the ongoing risks and difficulties presented by the COVID

23  pandemic, but, as I said before, as things continue to ease up

24  in terms of those restrictions and issues, I think we'll be

25  able to have everyone appear in-person for the next conference

20

1    and that we should endeavor to do so.  All right.

2            Anything else from any defense attorney?  If so,

3    raise your hand.

4            (No response.)

5            THE COURT:  Okay.  All right.  So, I will see

6    everyone then in late September.  Stay well, everyone.  Thank

7    you.

8            MR. LUSTBERG:  Thank you, Your Honor.

9            MR. HEEREN:  Thank you, Your Honor.

10           (Time noted:  11:36 a.m.)

11           (End of proceedings.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25