## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00265 (PKC) (S-1) |
| Plaintiff, | *Filed electronically* |
| v. | |
| HI JI, LI MINJUN, TU LAN, ZHU FENG,     also known as "Johnny Zhu," KUANG ZEBIN,     also known as "Vincent Kuang," MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG,     also known as "Jason Zhu, | |
| Defendants. | |

### REPLY BRIEF IN SUPPORT OF DEFENDANT MICHAEL MCMAHON'S MOTION TO DISMISS COUNTS I, II, III, AND IV OF THE SUPERSEDING INDICTMENT, AND TO CHALLENGE VENUE AS TO COUNTS II AND IV OF THE SUPERSEDING INDICTMENT

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

Law Offices of Brian J. Neary
21 Main Street
Court Plaza South, Suite 305
Hackensack, New Jersey 07601
(973) 596-4500
*Attorneys for defendant Michael McMahon*

*On the brief:*
Lawrence S. Lustberg, Esq.
Genna A. Conti, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .............................................................................................................. 2

I.     THE SUPERSEDING INDICTMENT FAILS TO ADEQUATELY ALLEGE
EACH OF THE OFFENSES CHARGED AGAINST MR. MCMAHON ....................... 2

     A.     Interstate Stalking (Count IV) ................................................................ 2

          1.     The Superseding Indictment Does Not Adequately Allege That Mr.
McMahon Traveled In Interstate Commerce Or That Mr.
McMahon Caused or Attempted to Cause The Alleged Victim
Substantial Emotional Distress. .................................................. 2

          2.     Mr. McMahon Cannot Be Convicted Of A Substantive Offense
Based Upon Aiding and Abetting Liability Or The *Pinkerton*
Doctrine ......................................................................................... 7

               a.     Mr. McMahon Cannot Be Convicted Of A Substantive
Offense Based Upon Aiding and Abetting Liability ....................... 7

               b.     Mr. McMahon Cannot Be Convicted Of A Substantive
Offense Based Upon the *Pinkerton* Doctrine .................................. 9

     B.     The Superseding Indictment Does Not Allege That Mr. McMahon Acted
In Direction And Control Of A Foreign Government. ........................... 12

          1.     The Superseding Indictment Fails To Allege The Essential
Elements Of A Section 951 Offense. ......................................... 12

          2.     Mr. McMahon Cannot Be Convicted Of Count II Through Aiding
And Abetting Or *Pinkerton* Liability. ......................................... 17

     C.     The Superseding Indictment Does Not Allege That Mr. McMahon Entered
Into A Conspiracy ................................................................................ 18

II.    THE SUPERSEDING INDICTMENT DOES NOT ADEQUATELY ALLEGE
VENUE AS TO THE SUBSTANTIVE OFFENSES AGAINST MR.
MCMAHON. ..................................................................................................... 20

CONCLUSION ........................................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bolden v. State*,
    124 P.3d 191 (Nev. 2005) ...................................................................................................10

*Matter of Extradition of Marzook*,
    924 F. Supp. 565 (S.D.N.Y. 1996) ....................................................................................10

*Johnston v. United States*,
    351 U.S. 215 (1956).............................................................................................................24

*Linens of Europe, Inc. v. Polo Linen Service, Inc.*,
    No. 05-CV-5102 (GEL), 2005 WL 3500547 (S.D.N.Y. Dec. 19, 2005)................................9

*McKelvey v. United States*,
    260 U.S. 353 (1922)............................................................................................................15

*Melo v. United States*,
    825 F. Supp. 2d 457 (S.D.N.Y. 2011)..................................................................................8

*Nye & Nissen v. United States*,
    336 U.S. 613 (1949)............................................................................................................10

*People v. McGee*,
    399 N.E.2d 1177 (N.Y. 1979)...........................................................................................10

*Pinkerton v. United States*,
    328 U.S. 640 (1946).................................................................................................. *passim*

*United Sates v. Labat*,
    905 F.2d 18 (2d Cir. 1990)...................................................................................................8

*United States v. Aleynikov*,
    737 F. Supp. 2d 173 (S.D.N.Y. 2010)......................................................................13, 15, 20

*United States v. Alfonso*,
    143 F.3d 772 (2d Cir. 1998)...............................................................................................20

*United States v. Aliperti*,
    867 F. Supp. 142 (E.D.N.Y. 1994) ......................................................................................3

*United States v. Augustine*,
    No. 18-CR-393 (SJ), 2021 WL 1381060 (E.D.N.Y. Apr. 13, 2021) ......................................15

*United States v. Bala*,
   236 F.3d 87 (2d Cir. 2000)................................................................................10

*United States v. Beech-Nut Nutrition Corp.*,
   871 F.2d 1181 (2d Cir. 1999)...........................................................................22

*United States v. Bezmalinovic*,
   962 F. Supp. 435 (S.D.N.Y. 1997) ..................................................................25

*United States v. Cabrales*,
   524 U.S. 1 (1998)..............................................................................................22

*United States v. Chestnut*,
   399 F. Supp. 1292 (S.D.N.Y. 1975).................................................................24

*United States v. Chow*,
   993 F.3d 125 (2d Cir. 2021).............................................................................27

*United States v. Citron*,
   783 F.2d 307 (2d Cir. 1986)...............................................................................3

*United States v. Coplan*,
   703 F.3d 46 (2d Cir. 2012)...............................................................................20

*United States v. Cruz*,
   363 F.3d 187 (2d Cir. 2004).............................................................................26

*United States v. Dumeisi*,
   424 F.3d 566 (7th Cir. 2005) .....................................................................14, 15

*United States v. Giovannelli*,
   No. 01-CR-749 (JSR), 2004 WL 48869 (S.D.N.Y. Jan. 9, 2004) ...........................14

*United States v. Gonzalez*,
   No. CR 2009-0718 (SJ) (MDG), 2011 WL 1405111 (E.D.N.Y. Mar. 23, 2011)...................21

*United States v. Graziano*,
   616 F. Supp. 2d 350 (E.D.N.Y. 2008) ..........................................................10, 18

*United States v. Hoskins*,
   902 F.3d 69 (2d Cir. 2018)...............................................................................22

*United States v. Jones*,
   483 F.3d 60 (2d Cir. 2006)...............................................................................18

*United States v. Lange*,
   No. 10-CR-968 (DLI), 2012 WL 511448 (E.D.N.Y. Feb. 15, 2012) ......................21

*United States v. Lange*,
 834 F.3d 58 (2d Cir. 2016).................................................................25

*United States v. Laurent*,
 861 F. Supp. 2d 71 (E.D.N.Y. 2011) ...................................................4

*United States v. Lorenzo*,
 534 F.3d 153 (2d Cir. 2008).................................................................26

*United States v. Masotto*,
 73 F.3d 1233 (2d Cir. 1996).................................................................10

*United States v. McCoy*,
 995 F.3d 32 (2d Cir. 2021)...................................................................11

*United States v. Medina*,
 32 F.3d 40 (2d Cir. 1994).......................................................................8

*United States v. Mennuti*,
 639 F.2d 107 (2d Cir. 1981)............................................................4, 13

*United States v. Pacione*,
 738 F.2d 567 (2d Cir. 1984)............................................................4, 13

*United States v. Pirro*,
 212 F.3d 86 (2d Cir. 2000)..............................................................4, 13

*United States v. Praddy*,
 725 F.3d 147 (2d Cir. 2013)..........................................................18, 19

*United States v. Pugh*,
 No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015)................................15

*United States v. Purcell*,
 967 F.3d 159 (2d Cir. 2020).................................................................24

*United States v. Rafiekian*,
 991 F.3d 529 (4th Cir. 2021) .........................................................14, 15

*United States v. Ramirez*,
 420 F.3d 134 (2d Cir. 2005).................................................................24

*United States v. Ramos-Fernandez*,
 48 Fed. App'x 340 (2d Cir. 2002)........................................................21

*United States v. Rodriguez*,
 No. 94-CR-313 (CSH), 2020 WL 1878112 (S.D.N.Y. Apr. 15, 2020) ................................10

*United States v. Rodriguez-Moreno*,
    526 U.S. 275 (1999) ...........................................................................................21

*United States v. Rowe*,
    313 F.3d 271 (2d Cir. 2005) ...............................................................................20

*United States v. Saavedra*,
    223 F.3d 85 (2d Cir. 2000) .................................................................................23

*United States v. Tabb*,
    949 F.3d 81 (2d Cir. 2020) ............................................................................18, 19

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) ...................................................................................3

*United States v. Waltham Watch Co.*,
    47 F. Supp. 524 (S.D.N.Y. 1942) .......................................................................19

**Statutes**

18 U.S.C. § 2 .................................................................................................................7

18 U.S.C. § 371 ...........................................................................................................19

18 U.S.C. § 951 .......................................................................................12, 13, 14, 15

18 U.S.C. § 951(a) ......................................................................................................13

18 U.S.C. § 951(d) .......................................................................................13, 14, 15, 16

18 U.S.C. § 951(d)(4) .................................................................................................14

18 U.S.C. § 1961(5) ....................................................................................................14

18 U.S.C. § 1962 .........................................................................................................14

18 U.S.C. § 2261A(1)(B) ......................................................................................5, 6, 11

18 U.S.C. § 2339B ......................................................................................................15

18 U.S.C. § 2339B(h) .................................................................................................15

26 U.S.C. § 7206(1) ......................................................................................................4

**Other Authorities**

Allison M. Danner & Jenny S. Martinez, *Guilty Associations: Joint Criminal
    Enterprise, Command Responsibility, and the Development of International
    Criminal Law*, 93 Cal. L. Rev. 75, 115-16 (2005) ...............................................9

https://www.reuters.com/article/us-china-corruption-france/china-says-its-police-brought-graft-suspect-back-from-france-idUSKBN16K0WQ ................................................11

https://www.usnews.com/news/world/articles/2021-11-14/former-executive-at-bank-of-chinas-branch-repatriated-to-china ................................................11

Model Penal Code § 2.06 cmt. 6(a), at 307 (1985)................................................10

Stanford H. Kadish & Stephen J. Schulhofer, Criminal Law and Its Processes: Cases and Materials 693 (7th ed. 2001)................................................9

**Rules**

Fed. R. Crim. P. 12(b)(1) ................................................21

Fed. R. Crim. P. 12(b)(3)(A)(j)................................................21

Fed. R. Crim. P. 18 ................................................21

**Treatises**

1A Fed. Jury Prac. & Instr. § 18:01 (6th ed.)................................................8

**Constitutional Provisions**

U.S. Const. amend. VI ................................................21

U.S. Const. art. III,§ 2, cl. 3 ................................................21

## PRELIMINARY STATEMENT

When a criminal defendant is actually innocent, it is often the case that this reality is reflected in deficiencies in the charging documents.  That is precisely the case here, where Defendant Michael McMahon has, as a result, moved to dismiss Count I (Conspiracy to Act as an Agent of a Foreign Government Without Prior Notification to the Attorney General), Count II (Acting as an Agent of a Foreign Government Without Prior Notification to the Attorney General), Count III (Conspiracy to Engage in Interstate Stalking), and Count IV (Interstate Stalking) of the Superseding Indictment, as the Superseding Indictment fails to adequately allege each of the offenses charged against Mr. McMahon.

Specifically, the Superseding Indictment alleges only that Mr. McMahon was hired to and agreed to conduct lawful private investigative services (for which he is licensed) within the State of New Jersey, but does not allege that Mr. McMahon traveled in interstate commerce or that he attempted to cause the subjects of his investigation substantial emotional distress – both of which, as the factual allegations of the Indictment make clear, he did not do.  Perhaps even more specifically, the Superseding Indictment completely fails to allege – because it could not do so – that Mr. McMahon was ever told, or that he was otherwise aware that he had been retained by an official of the PRC to conduct his investigation, and certainly fails to allege that Mr. McMahon agreed to operate within the United States subject to the direction or control of a foreign government or official.  Finally, the Superseding Indictment does not, because it cannot, allege that Mr. McMahon knowingly and willfully entered into an agreement with anyone else to commit an offense against the United States.  For the reasons set forth in his initial moving papers, and discussed further below, and as will be further elucidated at the oral argument on these motions, these pleading deficiencies require that the Superseding Indictment be dismissed against him.

1

But that is not all: Mr. McMahon also challenges venue, at least as to Counts II and IV of the Superseding Indictment, as every single fact alleged in the Superseding Indictment relating to Mr. McMahon, without any exception whatsoever, occurred in the District of New Jersey. More to the point, the Superseding Indictment nowhere alleges that Mr. McMahon ever entered, conducted communications with an individual in, or otherwise had any connection to the Eastern District of New York, and thus, venue is improper at least with respect to the substantive counts of the Superseding Indictment with which Mr. McMahon is charged. Accordingly, and in the absence of any showing by the Government that would justify venue in this District – a showing that the Government stubbornly refuses to make even in the face of an Indictment that cannot justify the choice of venue here – those Counts should be dismissed for this reason as well.

## ARGUMENT

I. **THE SUPERSEDING INDICTMENT FAILS TO ADEQUATELY ALLEGE EACH OF THE OFFENSES CHARGED AGAINST MR. MCMAHON.**

A. **Interstate Stalking (Count IV)**

1. **The Superseding Indictment Does Not Adequately Allege That Mr. McMahon Traveled In Interstate Commerce Or That Mr. McMahon Caused or Attempted to Cause The Alleged Victim Substantial Emotional Distress.**

As correctly summarized by the Government, Mr. McMahon "moves to dismiss Count Four of the indictment, interstate stalking, because the Superseding Indictment has 'key missing factual elements.'" ECF No. 120, The Government's Memorandum of Law in Opposition to Defendant Michael McMahon's Motion to Dismiss ("Gov't Opp."), at 11. Specifically, as Mr. McMahon has shown, the "Superseding Indictment does not allege that McMahon 'travel[ed] in interstate or foreign commerce' because 'the surveillance conducted by Mr. McMahon as described in the Superseding Indictment occurred exclusively in New Jersey'" and further does not allege that Mr. McMahon caused the subjects of his investigation substantial emotional

2

distress, "fail[ing] to allege at any point that the subjects of Mr. McMahon's investigation were even aware that Mr. McMahon was conducting surveillance." *Id.*

In response, the Government, seeking to rely on its inadequate allegations and conclusory arguments, repeatedly asserts that "an indictment need only state the elements of the offense and make the defendant aware of what the charges are against him," and that the Government has satisfied its burden by tracking the elements of interstate stalking in the Superseding Indictment.[1] *See id.*; *see also id.* at 12, 15, 17, 19. Likewise, the Government continually invokes the principle that "the government is not required to describe all of its evidence against the defendant in the indictment." *See id.* at 12.

However, the Government's argument misunderstands Mr. McMahon's argument: Mr. McMahon does not allege that the Government must reveal any evidence at this stage beyond the factual allegations contained in the Superseding Indictment – although it is, perhaps, worth noting that the Government refuses to proffer any evidence whatsoever that Mr. McMahon traveled

---

[1] In so arguing, the Government misses the point of Mr. McMahon's argument, pointing to cases (*see* Gov't Opp. at 10) that address whether Mr. McMahon was provided with adequate notice of the offenses charged for purposes of double jeopardy or whether the Government was required to allege facts beyond the elements of the offenses charged. *See United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (upholding the district court's denial of the defendant's motion to dismiss where defendant claimed "that the Indictment was insufficiently particular to provide him with adequate notice of the charges, allow him to differentiate the counts, protect him against double jeopardy, and ensure that he was not convicted on evidence not presented to the grand jury"); *United States v. Citron*, 783 F.2d 307, 315 (2d Cir. 1986) (affirming conviction where challenged indictment did not allege precise amounts of unreported income because "the indictment need not allege that which is not part of the government's required proof"); *United States v. Aliperti*, 867 F. Supp. 142, 144 (E.D.N.Y. 1994) (holding that the indictment need not allege an element of a crime "not explicitly set forth in the statute"). To the contrary, Mr. McMahon argues that the factual allegations set forth in the Indictment do not, as a matter of law, support two of the essential elements of interstate stalking: that Mr. McMahon traveled interstate or that Mr. McMahon engaged in conduct that attempted to cause or would be reasonably expected to cause substantial emotional distress. *See* ECF No. 114.1, Brief in Support of Defendant Michael McMahon's Motion to Dismiss Counts I, II, III, and IV of the Superseding Indictment, and to Challenge Venue as to Counts II and IV of the Superseding Indictment ("McMahon Br."), at 5-7.

interstate beyond simply reciting the statute or that Mr. McMahon actually attempted to cause the subjects of his investigation substantial emotional distress.  Rather, Mr. McMahon argues that because the Government's twenty-five page Superseding Indictment contains factual allegations well beyond simply tracking the words of the interstate stalking statute, including detailed allegations about the locations of events and nature of Mr. McMahon's surveillance, *see* ECF No. 77, ¶¶ 19, 21, 26, 27, the Court must, as is well established in this Circuit, analyze whether the factual allegations contained in the Superseding Indictment allege the crimes charged as a matter of law, whether or not they conclusorily allege the elements of the offense.  *See, e.g., United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011) (trial court was required to dismiss the indictment "where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute"); *see also United States v. Pirro*, 212 F.3d 86, 88, 91, 93 (2d Cir. 2000) (upholding the District Court's determination that the indictment, although it alleged that the defendant "willfully and knowingly made and subscribed a false 1992 tax return for [p]roperties in violation of [26 U.S.C. §] 7206(1)," nonetheless "failed to sufficiently allege the second element of a section 7206(1) violation, namely" that "the tax return was false as to a material matter," reasoning that the allegation in the indictment that the defendant "omitted something from a tax return" could not "amount to a false statement"); *United States v. Pacione*, 738 F.2d 567, 572 (2d Cir. 1984) (affirming district court's dismissal of the indictment charging the defendant "with violations of the extortionate credit transactions statute" where "the totality of facts asserted by the government to be provable against [the defendant did] not establish a violation of the statute" as the defendant made no "threats of any sort to anyone"); *United States v. Mennuti*, 639 F.2d 107, 113 (2d Cir. 1981) (upholding district court's pre-trial dismissal of an indictment

on the ground that the government's proposed proof would not establish a crime within the terms of the statute).

Title 18 U.S.C. § 2261A(1)(B) provides that an individual commits the offense of interstate stalking if he or she "travels in interstate or foreign commerce . . . with the intent to . . . harass, intimidate, or place under surveillance with intent to . . . harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to" another. Here, as is discussed in Mr. McMahon's moving brief, the Superseding Indictment fails to set forth any factual allegations that Mr. McMahon either "travel[ed] in interstate or foreign commerce" or "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress." *See* McMahon Br. at 6-7.

In purporting to allege the offenses at issue, the Superseding Indictment contains specific allegations detailing Mr. McMahon's surveillance activities, all of which occurred exclusively in the State of New Jersey; absolutely no activity is alleged to have been performed by Mr. McMahon outside of New Jersey. *See* ECF No. 77, ¶ 19 (alleging that shortly after September 2016, "the defendant MICHAEL MCMAHON began to investigate John Doe #1 and his family, including by conducting surveillance of John Doe #1"); *id.* at ¶ 26 ("During the evening of April 5, 2017, certain co-conspirators brought John Doe #1's father to a house in New Jersey that belonged to Jane Doe #1's relatives" and that "[a]t or about the same time, the defendant MICHAEL MCMAHON performed surveillance in the vicinity of the house belonging to Jane Doe #1's relatives to determine the present locations of members of John Doe #1's family, including John Doe #1[.]"); *id.* ¶ 27 ("The next day, on or about April 6, 2017, John Doe #1 met his father at a public location, before they returned together to John Doe #1's residence. The defendant MICHAEL MCMAHON

5

and other co-conspirators monitored the meeting of John Doe #1 and his father."). Accordingly, the Superseding Indictment fails to set forth the first and most fundamental element of 18 U.S.C. § 2261A(1)(B) – that Mr. McMahon "travel[ed] in interstate or foreign commerce" – and Count IV must accordingly be dismissed against Mr. McMahon.

The Superseding Indictment likewise sets forth detailed allegations that Mr. McMahon conducted surveillance and searches to obtain information, including bank information, international travel information, and personal identifying information of several individuals, *see* ECF No. 77, ¶¶ 19, 21, 26, 27 – all of which is, it should be noted, not unlawful on its face and, indeed, is within the proper and lawful scope of a licensed private investigator – but fails to make any allegation whatsoever that Mr. McMahon engaged in conduct "that caused, attempted to cause and would reasonably expected to cause John Doe #1 and Jane Doe #1 substantial emotional distress," *id.*, ¶ 65. Indeed, the only allegation contained in the Superseding Indictment relating to Mr. McMahon is that Mr. McMahon considered "harass[ing]" the subject of the investigation, *see id.*, ¶ 33,[2] which refers to an investigative technique that, it is undisputed, never actually occurred, and thus, could not "cause[], attempt[] to cause, or . . . be reasonably expected to cause substantial emotional distress to a person" as is required by 18 U.S.C. § 2261A(1)(B).

Effectively conceding that Mr. McMahon's actions did not attempt to cause or would be reasonably expected to cause the subjects of his investigation substantial emotional distress, the Government argues that the co-conspirators' alleged scheme as a whole was "consistent with attempting to cause substantial emotion distress." Gov't Opp. at 13. Thus, the Government argues

---

[2] Whatever its relevance to this motion, it is noteworthy that Mr. McMahon's investigative work providing surveillance in this matter concluded immediately after the text message referenced in paragraph 33 of the Superseding Indictment (*i.e.*, based upon the discovery provided, approximately seventeen minutes later).

that, "the Superseding Indictment alleges, among other things, that the coconspirators dragged an elderly relative across the globe to deliver threats to the Victims, surveilled the Victims to locate their unlisted residence, tacked threatening notes to their residence, and sent threatening notes to the Victims." *Id.* Although the conduct described by the Government would be sufficient to allege a conspiracy to commit interstate stalking if the Superseding Indictment sufficiently alleged that Mr. McMahon knowingly and willfully agreed to enter into a conspiracy – which, as will be discussed *infra* I.C., it does not – it is not enough to support a conviction against Mr. McMahon based upon the *substantive* count of interstate stalking. Accordingly, Count IV of the Superseding Indictment must be dismissed against Mr. McMahon.

## 2. Mr. McMahon Cannot Be Convicted Of A Substantive Offense Based Upon Aiding and Abetting Liability Or The *Pinkerton* Doctrine.

In apparent recognition of the deficiencies described above, the Government argues that "[e]ven if McMahon's contention that he personally did not travel in interstate commerce were accurate and an appropriate basis to move to dismiss, his motion to dismiss Count Four should also be denied because he can be convicted of that offense based on aiding and abetting liability and the *Pinkerton* doctrine." Gov't Opp. at 13. That argument fails, however, as Mr. McMahon cannot be convicted of the substantive offense of interstate stalking based upon either aiding and abetting liability or the *Pinkerton* doctrine.

### a. Mr. McMahon Cannot Be Convicted Of A Substantive Offense Based Upon Aiding and Abetting Liability.

The Government, essentially conceding that it cannot prove a direct violation of interstate stalking, attempts to salvage Count IV of the Superseding Indictment by asserting that Mr. McMahon is "punishable as a principle" under an aiding and abetting theory of liability pursuant to 18 U.S.C. § 2. *See* Gov't Opp. at 14-15. Title 18 U.S.C. § 2 provides that, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its

commission, is punishable as a principal." And, as a matter of law, in order "[t]o establish a defendant's role as an aider and a better to a crime, the jury must find that 'the defendant joined the specific venture and shared in it, and that his efforts contributed to its success.'" *Melo v. United States*, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (quoting *United Sates v. Labat*, 905 F.2d 18, 23 (2d Cir. 1990)). Moreover, "[a] defendant must have 'consciously assisted the commission of the [crime] in some active way.'" *Id.* (quoting *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994)).[3]

Accordingly, to obtain a conviction based upon the theory of aiding and abetting, the Government must allege and prove that Mr. McMahon and the principal of the crime shared an intent to commit the offense of interstate stalking. However, the Superseding Indictment, beyond its conclusory boilerplate language, fails to include any allegation whatsoever that Mr. McMahon intended to commit the crime of interstate stalking. Instead, the actual allegations of the Indictment are that Mr. McMahon agreed to surveil and locate the subjects of his investigation – as he is indisputably permitted to do as a licensed private investigator – and that Mr. McMahon should have known that his investigation was being conducted in connection with a scheme to repatriate

---

[3] The applicable jury instructions summarize this legal principle: Indeed, "[b]efore a defendant may be held responsible for aiding and abetting others in the commission of a crime, it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and deliberately associated *[himself] [herself]* in some way with the crime charged and participated in it with the intent to commit the crime." 1A Fed. Jury Prac. & Instr. § 18:01 (6th ed.). And, "[i]n order to be found guilty of aiding and abetting the commission of the crime charged . . . , the government must prove beyond a reasonable doubt that Defendant:" (1) "knew that the crime charged was to be committed or was being committed"; (2) "knowingly did some act for the purpose of *[aiding] [commanding] [encouraging]* the commission of that crime"; and (3) "acted with the intention of causing the crime charged to be committed." *Id.* Notably, "[m]erely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime." *Id.* Rather, "[t]he government must prove that [the defendant] knowingly *[and deliberately]* associated *[himself] [herself]* with the crime in some way as a participant – someone who wanted the crime to be committed – not as a mere spectator." *Id.*

the subjects of his surveillance to the PRC because he was aware that the subjects of his investigation were wanted in China. *See* Gov't Opp. at 15. The Government attempts to rely upon this strained and impermissible inference because the Superseding Indictment does not – because it cannot – allege that Mr. McMahon was in fact aware that his alleged co-conspirators were agents of the PRC, let alone that his alleged co-conspirators informed him that they were agents of the PRC (a fact that is neither alleged in the Superseding Indictment nor supported by any of the voluminous discovery provided to date). Accordingly, Count IV of the Superseding Indictment is also not sufficient as against Mr. McMahon based upon the theory of aiding and abetting, as the Superseding Indictment fails to allege that Mr. McMahon, in conducting the legitimate investigative services that he did, shared his alleged co-conspirators' intent to repatriate the subject to the PRC; for this reason, as well, that Count must be dismissed as against Mr. McMahon.

### b. Mr. McMahon Cannot Be Convicted Of A Substantive Offense Based Upon the *Pinkerton* Doctrine.

The Government also argues that "[t]he substantive interstate stalking charge in Court Four is . . . adequate because McMahon participated in a criminal conspiracy, and the stalking offense was a reasonably foreseeable result of that conspiracy." Gov't Opp. at 14. Thus, the Government essentially argues that, because the Superseding Indictment alleges that Mr. McMahon participated in a conspiracy, the corresponding substantive offense is automatically sufficiently alleged as well. The Government's *per se* argument, however, clearly transcends the bounds of *Pinkerton v. United States*, 328 U.S. 640 (1946) as a matter of law.[4]

---

[4] Though certainly not binding upon the Court, it bears noting that the *Pinkerton* doctrine is a disfavored and much criticized one; many states, including New York, "as well as the influential Model Penal Code, have rejected *Pinkerton* liability." Allison M. Danner & Jenny S. Martinez, *Guilty Associations: Joint Criminal Enterprise, Command Responsibility, and the Development of International Criminal Law*, 93 Cal. L. Rev. 75, 115-16 (2005) (citing Stanford H. Kadish & Stephen J. Schulhofer, Criminal Law and Its Processes: Cases and Materials 693 (7th ed. 2001)); *see Linens of Europe, Inc. v. Polo Linen Service, Inc.*, No. 05-CV-5102 (GEL), 2005 WL 3500547,

Specifically, *Pinkerton* simply does *not* stand for the proposition that if a conspiracy is adequately alleged, the substantive offense is necessarily alleged as well. Rather, "*Pinkerton v. United States* is narrow in its scope." *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1949). Indeed, under the *Pinkerton* theory of liability, a co-conspirator can be criminally liable "for the substantive crimes committed by his co-conspirators" only "to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Graziano*, 616 F. Supp. 2d 350, 366 (E.D.N.Y. 2008) (quoting *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000)); *see also United States v. Rodriguez*, No. 94-CR-313 (CSH), 2020 WL 1878112, at *8 (S.D.N.Y. Apr. 15, 2020) (same); *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996) (same). Accordingly, "in order to find a defendant guilty of a substantive offense committed by another person" based upon a *Pinkerton* theory of liability, the Government must prove "beyond a reasonable doubt that:" (1) "both the defendant and the person who actually committed the substantive offense were members of the charged conspiracy at the time the substantive offense was committed"; (2) "that the

---

at *2 (S.D.N.Y. Dec. 19, 2005) (recognizing that *Pinkerton* is "much-criticized"); *Bolden v. State*, 124 P.3d 191, 198-99 (Nev. 2005) (stating that "the Pinkerton rule has garnered significant disfavor"); *Matter of Extradition of Marzook*, 924 F. Supp. 565, 572-73 (S.D.N.Y. 1996) ("New York courts have rejected the federal conspiracy law, as enunciated in *Pinkerton v. United States*, 328 U.S. 640 (1946), whereby all members of a conspiracy can be held liable for the substantive crimes committed in furtherance of the conspiracy," as "[a]ccessorial conduct may not be equated with mere membership in a conspiracy and the State may not rely solely on the latter to prove guilt of the substantive offense" (citation omitted)); *People v. McGee*, 399 N.E.2d 1177, 1181 (N.Y. 1979) (recognizing that liability for a substantive offense may not be independently predicated upon a defendant's participation in an underlying conspiracy, reasoning that, "[t]o permit mere guilt of conspiracy to establish the defendant's guilt of the substantive crime without any evidence of further action on the part of the defendant, would be to expand the basis of accomplice liability . . . ."). Indeed, the drafters of the Model Penal Code recognized that the "law would lose all sense of just proportion" if by virtue of his crime of conspiracy a defendant was "held accountable for thousands of additional offenses of which he was completely unaware and which he did not influence at all." Model Penal Code § 2.06 cmt. 6(a), at 307 (1985). That, of course, rings particularly true here.

substantive offense was committed pursuant to the common plan of the coconspirators"; and (3) "that the commission of the substantive offense was reasonably foreseeable to the defendant." *United States v. McCoy*, 995 F.3d 32, 63-64 (2d Cir. 2021). That is, the linchpin of *Pinkerton* is foreseeability.

Here, by alleging that a reference to "a related conspiracy" is "independently sufficient to support the substantive interstate stalking charge," the Government argues that interstate stalking is *per se* a foreseeable result of an alleged conspiracy to repatriate an individual to a foreign country. *See* Gov't Opp. at 15. But there is no basis to believe – and the Government does not provide one – that interstate stalking automatically occurs whenever there is a conspiracy to repatriate an individual to a foreign country, or that it is otherwise foreseeable to the coconspirators in such a scheme. Indeed, one can imagine any number of repatriation schemes that would not in any way depend upon the stalking of the alleged victim.[5] And again, it should be noted that, as is set forth in Mr. McMahon's moving brief, *see* McMahon Br. at 6-7, and discussed *supra* I.A.1., the Superseding Indictment does not even allege "stalking," as the term is defined by federal law, here, the conduct engaged in by Mr. McMahon neither occurred outside the State of New Jersey or could be interpreted as having "cause[d], attempt[ed] to cause, or would be reasonable expected to cause substantial emotional distress to a person" as is required by 18 U.S.C. § 2261A(1)(B). In

---

[5]  As just one example, in 2017, Chinese police pursued a Chinese fugitive in France, and ultimately persuaded the fugitive to return to China to face the charges against him; however, no stalking was alleged to have taken place in connection with the scheme. *See* https://www.reuters.com/article/us-china-corruption-france/china-says-its-police-brought-graft-suspect-back-from-france-idUSKBN16K0WQ. And, in 2021, a former president of a domestic branch of the Bank of China suspected of embezzling funds was repatriated to China; once again, no stalking was alleged to have taken place in connection with the scheme. https://www.usnews.com/news/world/articles/2021-11-14/former-executive-at-bank-of-chinas-branch-repatriated-to-china. Indeed, a review of public reports of Chinese repatriation cases reveals no pattern of stalking being alleged.

any event, though, the Government's argument is a complete conflation of the conspiracy and substantive counts that improperly transports *Pinkerton* – a doctrine that turns on the evidence – to the pleading stage, such that any substantive offense is automatically pled so long as a conspiracy is, even if the foreseeability requirement that is the cornerstone of the *Pinkerton* doctrine is not alleged and does not pass a common sense test.

In any event, and in sum, because foreseeability is a requirement for a conviction based upon the *Pinkerton* doctrine, and since interstate stalking is not a foreseeable result of an alleged conspiracy to repatriate an individual to a foreign country, and is not alleged to be here, the *Pinkerton* doctrine does not constitute an appropriate basis to find the otherwise insufficient substantive charge of interstate stalking to survive a motion to dismiss, and Count IV of the Superseding Indictment must accordingly be dismissed as against Mr. McMahon.

### B. The Superseding Indictment Does Not Allege That Mr. McMahon Acted In Direction And Control Of A Foreign Government.

As correctly summarized by the Government, Mr. "McMahon argues that Count Two [of the Superseding Indictment] should be dismissed because 'it does not include any factual allegation that Mr. McMahon agree[d] to operate within the United States subject to the direction or control of a foreign government or official.'" Gov't Opp. at 16 (quoting McMahon Br. at 9). In response, the Government argues that "all the elements of the offense are included in the indictment, and the defendant is subject to both aiding and abetting and *Pinkerton* liability." *Id.* The Government is wrong and its desperate attempt to continue this prosecution against an innocent man should be rejected.

### 1. The Superseding Indictment Fails To Allege The Essential Elements Of A Section 951 Offense.

The Government once again argues that Mr. McMahon's motion to dismiss Count II of the Superseding Indictment fails because the Superseding Indictment "tracks the language of the

statute and notifies Mr. McMahon that he is charged with acting as an agent of the PRC government during a set period of time[.]" Gov't Opp. at 17. The Government also argues that "[t]o the extent McMahon's argument could be construed to be a claim that the government failed to plead 'direction or control' as an element of the offense, this too must fail" because "[t]he 'direction or control' language is merely the definition of the term 'agent of a foreign government.'" *Id.* (quoting 18 U.S.C. § 951(d)).

The Government's argument, then, essentially concedes that it did not allege an essential element of 18 U.S.C. § 951. As is discussed in Mr. McMahon's moving brief, *see* McMahon Br. at 3, and again *supra* I.A.1. at 7, it is well established that a trial court must dismiss an indictment that "fails to allege the essential facts constituting the offense charged." *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) (citation omitted); *see also Pirro*, 212 F.3d at 91, 93 (affirming dismissal where Government's proposed proof would not establish a crime within the terms of the statute); *Pacione*, 738 F.2d at 572 (affirming district court's dismissal of the indictment charging the defendant "with violations of the extortionate credit transactions statute" where "the totality of facts asserted by the government to be provable against [the defendant did] not establish a violation of the statute" as the defendant made no "threats of any sort to anyone"); *Mennuti*, 639 F.2d at 113 (upholding district court's pre-trial dismissal of an indictment on the ground that the government's proposed proof would not establish a crime within the terms of the statute).

To establish that Mr. McMahon violated 18 U.S.C. § 951(a), the Government must prove that Mr. McMahon "act[ed] in the United States as an agent of a foreign government without prior notification to the Attorney General . . . ." The statute also provides that an "agent of a foreign government" is "an individual who agrees to operate within the United States subject to the

13

direction or control of a foreign government or official[.]"  18 U.S.C. § 951(d).  Accordingly, an "agree[ment] to operate within the United States subject to the direction or control of a foreign government or official" is, without question, but contrary to the Government's troubling argument, an essential element of 18 U.S.C. § 951.  *See United States v. Dumeisi*, 424 F.3d 566, 579 (7th Cir. 2005) (recognizing that "an element of § 951 is acting 'subject to the direction or control of a foreign government or official'" (quoting 18 U.S.C. § 951(d))); *see, e.g., United States v. Giovannelli*, No. 01-CR-749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004) (holding that where a defendant is charged with having violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962, which provides, in pertinent part, that "[i]t shall be unlawful for any person who has received income derived, directly or indirectly, from a pattern of racketeering activity," the indictment must allege the pattern of racketeering activity within the definition set forth in the statute – *i.e.*, "[t]o allege a pattern of racketeering activity, the indictment must specify at least two racketeering acts within a 10-year period, that evidence continuity and relatedness," as defined in 18 U.S.C. § 1961(5)).

Of course, the cases cited by the Government in support of its argument are distinguishable, as no Court has ever held that 18 U.S.C. § 951(d) is not an element of 18 U.S.C. § 951.  Thus, for example, the Fourth Circuit in *United States v. Rafiekian*, 991 F.3d 529 (4th Cir. 2021) analyzed whether 18 U.S.C. § 951(d)(4), which provides for an exception to 18 U.S.C. § 951(d) for "legal commercial transaction[s]," requires that the indictment specifically allege that the actions at issue did not fall within that exception.  The Court, sensibly, held that it did not, as an indictment does not have to include allegations that disprove every affirmative defense.  *See Rafiekian*, 991 F.3d at 541 (recognizing that "the initial burden of claiming . . . an exception generally falls to the defendant" and ultimately holding that § 951(d)(4) "provides for an affirmative defense—which

14

must be raised first, if at all, by a defendant—rather than an essential element of the offense" (citing *McKelvey v. United States*, 260 U.S. 353, 357 (1922))). But "direction or control," by contrast, is an affirmative element that must be pled and proved; Mr. McMahon's argument has nothing to do with the affirmative defense in *Rafiekian*, or indeed, any other affirmative defense. Moreover, in both *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015), and *United States v. Augustine*, No. 18-CR-393 (SJ), 2021 WL 1381060 (E.D.N.Y. Apr. 13, 2021), the defendants were charged with 18 U.S.C. § 2339B, which prohibits providing material support or resources to designated foreign terrorist organizations; the question faced by the Courts was whether 18 U.S.C. § 2339B(h) provided an essential element of 18 U.S.C. § 2339B that must be pled in the indictment. However, this is a different requirement of a different statute; 18 U.S.C. § 2339B is not alleged to have been violated here. And because it has been specifically recognized that "an *element* of § 951 is acting 'subject to the direction or control of a foreign government or official,'" *Dumeisi*, 424 F.3d at 579 (quoting 18 U.S.C. § 951(d) (emphasis added)), these cases are not applicable here. That is, because an essential element of 18 U.S.C. § 951 is, contrary to the Government's position, an agreement to act subject to the direction or control of a foreign government, the failure to include such an allegation in the Superseding Indictment necessitates dismissal, even under the caselaw cited by the Government. *See* Gov't Opp. at 17. And, by asserting that the Superseding Indictment need not allege that Mr. McMahon "agree[d] to operate within the United States subject to the direction or control of a foreign government or official," the Government effectively concedes that the Superseding Indictment does not allege this key element of the statute. *See id.* Therefore, Count II of the Superseding Indictment does not allege all of "the essential facts constituting the offense charged," *Aleynikov*, 737 F. Supp. 2d at 176 (citation omitted), and must be dismissed against Mr. McMahon.

The Government goes on to argue that "[e]ven if McMahon were permitted to challenge the sufficiency of the evidence at this stage, his claim must fail" because the Superseding Indictment alleges "that McMahon was directed to engage in conduct by several PRC officials", and that Mr. McMahon should have known that he was working as an agent of a foreign Government since Mr. McMahon was aware that the subjects of his investigation "were wanted by the PRC government and had red notices issued against them—which would allow a rational jury to conclude that McMahon knew he was operating on behalf of PRC officials." Gov't Opp. at 17-18. However, the Government's allegations fail as a matter of law. It is not enough that Mr. McMahon "was directed to engage in conduct by several PRC officials," *id.* at 17, if Mr. McMahon did not know that those who had hired him as an investigator were, in fact, Chinese officials – an element of knowledge that is completely missing from the Superseding Indictment. Indeed, 18 U.S.C. § 951(d) specifically requires that Mr. McMahon "*agree[d]* to operate . . subject to the direction or control of a foreign government or official" (emphasis added), but no such agreement is alleged anywhere in the Superseding Indictment. Instead, the Government relies entirely upon the inference that Mr. McMahon *should have known* that he was conducting surveillance on behalf of the PRC because he was aware that the subjects of his investigation were wanted by the Chinese government, *see* Gov't Opp. at 18, an inference that is both inappropriate and, in any event, does not appear as an allegation in the Superseding Indictment. In particular, there is no allegation that Mr. McMahon agreed to perform investigative services on behalf of the PRC, and indeed, there is a truly glaring absence of an allegation that Mr. McMahon was told that this is what he was doing – an allegation which is missing because, as the Government knows, it never happened. In sum, Count II of the Superseding Indictment fails to allege that Mr. McMahon agreed to act at the

16

direction or control of a foreign government, and this unjust prosecution must be dismissed against Mr. McMahon.

### 2. Mr. McMahon Cannot Be Convicted Of Count II Through Aiding And Abetting Or *Pinkerton* Liability.

The Government once again alleges that Mr. McMahon's motion to dismiss Count II of the Superseding Indictment must fail because Mr. "McMahon can also be convicted of the substantive 951 offense in Count Two if a jury concludes he aided and abetted his co-defendants, or conspired with others and the offense was a reasonably foreseeable result of that conspiracy." Gov't Opp. at 18. Specifically, the Government argues that "[a] reasonable jury could conclude that McMahon either aided and abetted others acting as PRC agents in the United States, or conspired with those individuals in a manner that made it reasonably foreseeable that one or more of them would be operating as an illegal PRC agent" because the Superseding Indictment alleges that Mr. "McMahon is alleged to have met and communicated with his co-conspirators on several occasions about surveilling the Victims, knew that his surveillance was part of a larger scheme to bring the Victims' elderly relative from the PRC to the United States to coerce their return to the PRC, knew that the Victims were wanted by the PRC government, and took a number of steps such as conducting surveillance and obtaining sensitive personal records to help bring the scheme to fruition." *Id.* at 18-19.

However, the allegations in the Superseding Indictment, as the Government summarizes them, are insufficient as a matter of law to independently support a conviction through either aiding and abetting or *Pinkerton* liability. That is, obtaining a conviction based on aiding and abetting liability requires that Mr. McMahon and the principal of the crime shared an intent to commit the alleged offense, *see supra* I.A.2.a., and obtaining a conviction based on *Pinkerton* liability requires that the substantive crime committed by a co-conspirator was a "reasonably foreseeable

17

consequence[] of acts furthering the unlawful agreement," *see supra* I.A.2.b. (quoting *Graziano*, 616 F. Supp. 2d at 366).  Accordingly, for Count II to be independently supported by either aiding and abetting liability or the *Pinkerton* doctrine, the Superseding Indictment must allege that Mr. McMahon entered into a conspiracy with his alleged co-conspirators.  As discussed in Mr. McMahon's moving brief, *see* McMahon Br. at 9-11, and as is discussed *infra* I.C., the Superseding Indictment does not allege that Mr. McMahon in fact agreed with others to either commit interstate stalking or to act as an unregistered foreign agent.  Nor is his knowledge that the subjects of the surveillance that he was hired to conduct were wanted by the Chinese authorities – which both the Superseding Indictment and the Government's opposition make clear is the basis for the charges against him – a substitute for this fundamental element of an agreement, discussed further below.  *See United States v. Tabb*, 949 F.3d 81, 88 (2d Cir. 2020) ("The essence of a conspiracy is an agreement by two or more persons to commit an unlawful act."); *United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013) ("The essence of the crime of conspiracy, of course, 'is the *agreement* . . . to commit one or more unlawful acts.'" (quoting *United States v. Jones*, 483 F.3d 60, 72 (2d Cir. 2006))).  Count II should be dismissed against Mr. McMahon.

### C.    The Superseding Indictment Does Not Allege That Mr. McMahon Entered Into A Conspiracy

The Government correctly summarizes that Mr. McMahon argues "that the conspiracy counts (Counts One and Three) should be dismissed because the Superseding Indictment only alleges that Mr. McMahon performed legal surveillance activities and otherwise 'fails to set forth any factual assertion that Mr. McMahon knowingly and willfully entered into an agreement with another to commit an offense against the United States.'"  Gov't Opp. at 19 (quoting McMahon Br. at 10-11).  Because the Government cannot refute Mr. McMahon's allegations, the Government once again responds with a conclusory assertion, arguing that the Superseding

Indictment "alleges that McMahon agreed to act as an unregistered foreign agent and to engage in interstate stalking"; charges that Mr. McMahon "did knowingly and willfully conspire to act as [an] agent[] of a foreign government"; and contends that Mr. McMahon "did knowingly and willfully conspire to travel in interstate commerce with the intent to harass and intimidate, and place under surveillance with intent to harass and intimidate." *Id.* (quoting ECF No. 77, ¶¶ 57, 65).

However, a review of the Superseding Indictment reveals that it contains absolutely no assertion that Mr. McMahon knowingly and willfully entered into an agreement with another to commit an offense against the United States as is required by 18 U.S.C. § 371. Instead, the Superseding Indictment alleges that Mr. McMahon was hired by Zhu Yong (also known as "Jason Zhu") and a co-conspirator "to investigate and surveil John Doe #1," ECF No. 77, ¶ 18; that Mr. McMahon was "retained . . . to investigate and locate John Doe #1 and Jane Doe #1," *id.*, ¶¶ 58(a), 63(a); and that Mr. McMahon "accepted [an] offer" from defendant Hu Ji (also known as "Eric Yan") "to 'trace' [John Doe #1's] father and John Doe #1's address" who "offered to pay [Mr. McMahon] in cash for his assistance," *id.*, ¶ 21, and thus, alleges only that Mr. McMahon was retained to perform lawful investigative services for which he is licensed as a private investigator. Because, as discussed in Mr. McMahon's moving brief, the essential element of any conspiracy charged is an agreement, *see* McMahon Br. at 9-11 (citing *Tabb*, 949 F.3d at 88; *Praddy*, 725 F.3d at 153), and since the Superseding Indictment does not charge such an agreement, but instead relies upon the facts set forth above regarding what Mr. McMahon did, rather than what he agreed to do, *see United States v. Waltham Watch Co.*, 47 F. Supp. 524 (S.D.N.Y. 1942) ("In an indictment for conspiracy the facts showing the conspiracy must be sufficiently alleged and they cannot be aided by averments of overt acts performed in furtherance of the object of the conspiracy."), it "fails to

19

allege the essential facts constituting the offense charged," *Aleynikov*, 737 F. Supp. 2d at 176 (citation omitted), here, that Mr. McMahon entered into a conspiracy with his alleged co-conspirators, Counts I and III of the Superseding Indictment must be dismissed as against Mr. McMahon.

## II.    THE SUPERSEDING INDICTMENT DOES NOT ADEQUATELY ALLEGE VENUE AS TO THE SUBSTANTIVE OFFENSES AGAINST MR. MCMAHON.

The Government concedes that Mr. McMahon never left the State of New Jersey, but nonetheless argues that Mr. McMahon's Motion to Challenge Venue as to Counts II and IV of the Superseding Indictment should be denied because the Government is not required to establish venue at this stage of the case.  Again relying on the conclusory allegations of the Superseding Indictment that "each of the crimes with which McMahon was charged occurred 'within the Eastern District of New York and elsewhere,'" Gov't Opp. at 21-22, the Government argues that, whatever the facts with respect to Mr. McMahon's activities, and regardless of whether the charge is a conspiracy or substantive count, the allegations of venue suffice at this pretrial motion stage because it has chosen not to make "what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional evidence of the offense."  *Id.* at 22 (citing *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998)).  But even as it takes this position, the Government declines to provide such a proffer, admitting in the final sentence of its argument that it is withholding facts from both Mr. McMahon and the Court that allegedly support "the government's proof of venue."  *See* Gov't Opp. at 21-23.

As detailed in Mr. McMahon's moving brief, *see* McMahon Br. at 12-14, venue in a criminal case is a matter of constitutional dimension. *See United States v. Rowe*, 313 F.3d 271, 277 (2d Cir. 2005).  Indeed, the protection of venue is of such great significance that "the United States Constitution 'twice safeguards the defendant's venue right,'" *see United States v. Coplan*,

703 F.3d 46, 76 (2d Cir. 2012) (citing U.S. Const. art. III,§ 2, cl. 3; U.S. Const. amend. VI), and has been further codified in Federal Rule of Criminal Procedure 18, *see United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999). Accordingly, the constitutional protection of venue certainly can – and, given the undisputed facts of this case, should – be decided by way of a pre-trial motion to dismiss. *See* Fed. R. Crim. P. 12(b)(3)(A)(j) (providing that a motion for improper venue "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits"); Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any . . . request that the court can determine without a trial on the merits."); *see also United States v. Lange*, No. 10-CR-968 (DLI), 2012 WL 511448, at *1 (E.D.N.Y. Feb. 15, 2012) (recognizing that a defendant may "challenge venue by way of a pre-trial motion to dismiss the indictment" and that the government must "show that the indictment alleges facts sufficient to support venue" (quoting *United States v. Gonzalez*, No. CR 2009-0718 (SJ) (MDG), 2011 WL 1405111, at *1 (E.D.N.Y. Mar. 23, 2011))); *United States v. Ramos-Fernandez*, 48 Fed. App'x 340, 341 (2d Cir. 2002) (affirming the judgment of the district court, which granted the defendant's motion to dismiss for lack of venue, where the relevant occurrence took place in the Eastern District of New York, rather than the Northern District of New York where the indictment was filed).

This motion should be decided based upon facts beyond the Government's conclusory argument that "[t]he Superseding Indictment alleges that each of the crimes for which McMahon was charged occurred 'within the Eastern District of New York and elsewhere,' thus providing notice of proper venue." Gov't Opp. at 21-22. Once again, defendant McMahon asks the Court to do no more than look at the remaining, detailed allegations that the Government chose to include in its twenty-five page Superseding Indictment, as well as its unambiguous concession that Mr.

21

McMahon never entered the Eastern District of New York in performing the investigative services that are the basis for the criminal charges against him. *See* Gov't Opp. at 22 (conceding that Mr. McMahon never left the State of New Jersey, in that "[a] defendant does not need to physically enter a district for venue to attach"). Specifically, as detailed in Mr. McMahon's moving brief, *see* McMahon Br. at 15, every single fact alleged in the Superseding Indictment relating to Mr. McMahon – without *any* exceptions – occurred in the District of New Jersey: the Superseding Indictment does not allege that Mr. McMahon ever entered, conducted communications with an individual in, or otherwise had any connection to the Eastern District of New York. *See* ECF No. 77, ¶¶ 18, 19, 26, 27, 58(c), 63(c). This alone necessitates that the Court dismiss Counts II and IV of the Superseding Indictment as to Mr. McMahon for lack of venue. *See United States v. Cabrales*, 524 U.S. 1, 7-8 (1998) (holding that a money laundering prosecution was improperly venued in Missouri because the defendant was actually charged in the indictment only with money laundering activity that occurred in Florida, but was not charged with having participated in the unlawful conduct in Missouri which generated the laundered funds in question); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1189-90 (2d Cir. 1999) (holding, in prosecution for introducing adulterated and misbranded apple juice into interstate commerce, that venue was not proper in the Eastern District of New York because the conduct that occurred in that district was "not part of the offense of introducing the offending juice into commerce but . . . merely prior and preparatory to that offense").

And, by arguing that Mr. McMahon need not "physically enter a district for venue to attach," the Government expressly concedes, as it must, that Mr. McMahon never left the State of New Jersey, a concession which is of legal significance under the pertinent caselaw. *See United States v. Hoskins*, 902 F.3d 69, 76 (2d Cir. 2018) (recognizing that the district "court dismissed

part of the indictment . . . because the government conceded that the defendant did not enter the United States during the relevant time period"); *see also United States v. Saavedra*, 223 F.3d 85, 99 (2d Cir. 2000) (Cabranes, J., dissenting) (finding that the Court "need look no further . . . than the Government's concession . . . 'that all acts or acts in furtherance of the conspiracy occurred in the Eastern District of New York'" to determine that venue is improper).  Accordingly, venue is improper for Counts II and IV of the Superseding Indictment as to Mr. McMahon.

The Government, however, relies upon facts regarding other persons to establish venue with regard to Mr. McMahon.  Specifically, the Government asserts that "the Superseding Indictment alleges several facts sufficient to support venue over the offenses," pointing to its allegations that "co-defendant Tu Lan traveled from New Jersey to New York, 'departed from John F. Kennedy International Airport, in Queens, New York' and then flew back to the PRC, where she continued to direct actions against the Victims, including directions that were given to McMahon"; that "[t]wo co-conspirators traveled from New York and stayed at a hotel in New Jersey while they met with PRC official Tu Lan"; that "[a]nother two conspirators resided in the Eastern District of New York and traveled to New Jersey to post the threatening messages at the Victims' residence"; and that "four of the defendants resided in the Eastern District of New York during parts or all of the relevant time period, including co-defendant Zhu Feng, with whom McMahon regularly communicated as part of the conspiracy."  Gov't Opp. at 23 (citing ECF No. 77, ¶¶ 4-5, 8-9, 25, 29-31).  But the allegations that "two conspirators resided in the Eastern District of New York and traveled to New Jersey to post the threatening messages at the Victims' residence" and that "four of the defendants resided in the Eastern District of New York during parts or all of the relevant time period, including co-defendant Zhu Feng, with whom McMahon regularly communicated as part of the conspiracy" are insufficient to establish venue as to Mr.

McMahon on the substantive counts (Counts II and IV) of the Superseding Indictment. That is, "[v]enue is proper only where the acts constituting the offense – the crime's 'essential conduct elements' – took place." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020) (quoting *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005)); *see also Tzolov*, 642 F.3d at 318 (same). Thus, it is, for example, legally irrelevant where Mr. McMahon's co-conspirators resided (and thus whence they traveled) during the relevant time period for purposes of determining venue. *See United States v. Chestnut*, 399 F. Supp. 1292, 1297 n.20 (S.D.N.Y. 1975) ("Where a defendant was charged with failing to report for civilian work to a hospital in another district as ordered to by his draft board, which was in the district in which he resided, venue was proper only in the district where the hospital was located, not in the district of his residence where he remained throughout the relevant period." (citing *Johnston v. United States*, 351 U.S. 215, 220-21 (1956))). But the Government chooses to proffer no more than just such facts – that Mr. McMahon's alleged co-conspirators lived in and, as a result obviously traveled from, the Eastern District of New York. The Court can, and should demand more, before it holds Mr. McMahon to account in this District which, for purposes of this case, he never entered.

Moreover, although the Government's statement that "[v]enue will . . . attach if a defendant aids and abets another's crime that occurred in some part of the relevant district," Gov't Opp. at 23, is accurate, it is insufficient to establish venue as to Mr. McMahon for Counts II and IV of the Superseding Indictment. First, as set forth above, there are no specific allegations as to which actions were committed by others in the Eastern District of New York, other than living in and traveling from this District; hence, there are no allegations as to what actions took place in the Eastern District of New York that Mr. McMahon purportedly aided and abetted. Thus, the Government's assertion that "so long as any acts in furtherance of the charged offense occurs in

24

the district, and the acts are reasonably foreseeable to the defendant, venue will lie," Gov't Opp. at 22 (citing *United States v. Lange*, 834 F.3d 58, 69 (2d Cir. 2016)), rings hollow. Having failed to allege any cognizable acts – *i.e.*, acts beyond living in or traveling from the Eastern District of New York – and refusing to proffer any additional acts that allegedly occurred here, the Government does not, even as it advances this argument, say what was done by others that was "reasonably foreseeable" to Mr. McMahon.

Indeed, the Superseding Indictment alleges only that Mr. McMahon agreed to surveil and locate the subjects of his investigation – as he is legally permitted to do as a licensed private investigator – within the State of New Jersey. *See* ECF No. 77, ¶¶ 19, 21, 26, 27. In doing so, it would not have been reasonably foreseeable to Mr. McMahon that unnamed coconspirators (whom Mr. McMahon was unaware were agents of the Chinese Government) traveled from New York to New Jersey to meet with an official of the Chinese Government (as the Indictment alleges, *see id.*, ¶ 25), whom Mr. McMahon never met; nor would it be reasonably foreseeable that this unknown official of the Chinese Government would travel from New Jersey to the Eastern District of New York in order to fly to the PRC. Thus, none of the acts alleged by the Government that purportedly occurred in the Eastern District of New York were either intended or foreseeable to Mr. McMahon, and venue is thus improper, at least as to Counts II and IV of the Superseding Indictment with regard to Mr. McMahon. *See United States v. Bezmalinovic*, 962 F. Supp. 435 (S.D.N.Y. 1997) (finding venue improper because the defendant neither intended nor could have foreseen the acts that occurred in the district of venue).

Finally, because, for the reasons set forth above, *supra* I.A.2.i., the Superseding Indictment fails to allege that Mr. McMahon shared an intent with his alleged co-conspirators to conduct investigative services in connection with a scheme to repatriate the subject to the PRC, venue

cannot lie based upon allegations of aiding and abetting. Nor, it should be noted, can aiding and abetting, and thus venue, be based upon Mr. McMahon's mere association with any of other persons, *see United States v. Cruz*, 363 F.3d 187, 198 (2d Cir. 2004) ("Guilt may not be inferred from mere association with a guilty party." (citation omitted)), or his mere presence at various meetings with them, *see id.* ("[A] defendant's 'mere presence at the scene of a crime, even when coupled with knowledge that at the moment a crime is being committed, is insufficient to prove aiding and abetting. (citation omitted)), as the Government contends. *See* Gov't Opp. at 4 (citing Superseding Indictment, ¶¶ 58(b)-(c) (discussing meeting between McMahon and purported principals at a restaurant in Paramus, New Jersey). Of course, these principles apply equally to the broad-ranging conspiracy allegations of the Indictment, *see United States v. Lorenzo*, 534 F.3d 153, 159-60 (2d Cir. 2008) ("[S]uspicious circumstances . . . are not enough to sustain a conviction for conspiracy and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement; likewise, a defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy." (citations omitted)), including many in which Mr. McMahon is not even alleged to have played a role.[6] But at the very least,

---

[6] *See* ECF No. 77, ¶¶ 22-23 (detailing efforts by several co-conspirators, with no mention of Mr. McMahon, to keep the alleged scheme covert); *id.*, ¶ 25 (alleged meeting between Tu Lan, Zhu Feng, and Co-Conspirator #2 at a hotel in New Jersey, with no mention of Mr. McMahon); *id.*, ¶¶ 29-30 (detailing Tu Lan's and Li Minjun's flights from JFK International Airport to Beijing, PRC, and Tu Lan and Zhu Feng's subsequent communications, which did not involve Mr. McMahon); *id.*, ¶¶ 34-39 (describing Zhu Feng's interview with U.S. law enforcement, during which Zhu Feng detailed the alleged repatriation scheme and several co-conspirator's attempts to destroy evidence, but did not mention Mr. McMahon); *id.*, ¶¶ 40-46 (alleged harassment of Jane Doe #2, which occurred in California and did not involve Mr. McMahon); *id.*, ¶¶ 47-49 (alleged threats against John Doe #1 and Jane Doe #1 by Zheng Congying, which occurred one year and five months after the completion of Mr. McMahon's investigative services in April 2017); *id.*, ¶¶ 50-54 (alleged harassing mailings from the PRC to John Doe #1 in 2019, which occurred nearly two years after the completion of Mr. McMahon's investigative services in April 2017).

venue does not lie as to Mr. McMahon with respect to Counts II and IV of the Superseding Indictment. *See Tzolov*, 642 F.3d at 318; *see also United States v. Chow*, 993 F.3d 125, 143 (2d Cir. 2021) ("[V]enue must be proper with respect to each count."), and his motion to dismiss for lack of venue should therefore be granted.

## <u>CONCLUSION</u>

For the reasons set forth above and in Mr. McMahon's moving brief, Mr. McMahon respectfully requests that the Court grant Mr. McMahon's Motion to Dismiss Counts I, II, III, and IV of the Superseding Indictment and to Challenge Venue as to Counts II and IV of the Superseding Indictment.

<div style="margin-left:50%">

Respectfully submitted,
**GIBBONS P.C.**
*Attorneys for Defendant*
*Michael McMahon*

By:    <u>/s/ Lawrence S. Lustberg</u>
       Lawrence S. Lustberg, Esq.

</div>

Date: February 4, 2022