Case 1:21-cr-00265-PKC   Document 229   Filed 05/27/23   Page 1 of 6 PageID #: 2387



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CRH/MAA/IC                                *271 Cadman Plaza East*
F. #2017R00906                             *Brooklyn, New York 11201*

May 27, 2023

By ECF

The Honorable Pamela K. Chen
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. McMahon, et al.
           Criminal Docket No. 21-265 (S-1) (PKC)

Dear Judge Chen:

      Defendant Michael McMahon argues it is premature for the Court to rule on the government's motion to preclude the defendant from admitting his own hearsay statements, "unless and until the Government informs Mr. McMahon what portions of the defendants' statements it seeks to admit and what 'other' portions it seeks to preclude." Def. Michael McMahon's Mem. of Law in Resp. to Gov't Mot. in Limine ("McMahon Resp.") at 5. The government writes to advise the Court and McMahon that it currently intends to admit one portion of McMahon's recorded post-arrest statement. A copy of the video segment the government intends to offer, the complete recording, and draft transcripts of both are attached hereto.[1] Similarly, the government also intends to admit one portion of the recorded post-arrest statement of defendant Zhu Yong. A copy of the video segment the government intends to offer and the corresponding transcript is also attached hereto; the government has previously provided the Court and parties with the complete recording and transcript.[2]

      For the reasons stated in the government's motion in limine (the "Motion" or "Mot."), and those set forth below, the government respectfully requests that the Court preclude the Trial Defendants from admitting other portions of McMahon and Zhu's post-arrest interviews,

---

[1] See Exhibit 1 (proposed admission as to McMahon); Exhibit 2 (transcript of proposed admission as to McMahon); Exhibit 3 (complete recording); and Exhibit 4 (draft transcript of complete recording).

[2] See Exhibit 5 (proposed admission as to Zhu); Exhibit 6 (transcript of proposed admission as to Zhu); Exhibit A & B to Gov't Opp to Zhu Mot. to Suppress (ECF No. 183) (complete recording and draft transcript of complete recording) (under seal).

because such an admission would constitute hearsay without an exception and is not proper under the "rule of completeness" doctrine.[3]

I.   Background

On October 28, 2020, Michael McMahon and Zhu Yong were both arrested pursuant to arrest warrants and a complaint that charged them with conspiracy to act as illegal agents of the People's Republic of China (the "PRC" or "China") and conspiracy to engage in interstate stalking. See Compl. (ECF No. 1). That same day, after waiving their Miranda rights, McMahon and Zhu were separately interviewed by members of federal law enforcement. The interviews were both audio and video recorded; McMahon's interview lasted approximately an hour and forty minutes and Zhu's interview lasted approximately two-and-a-half hours.[4]

A.   McMahon's Post-Arrest Statements

McMahon made several statements relevant to the government's case in his interview, at approximately one hour and nine minutes into the interview:

- With regard to a text message that McMahon sent to a co-conspirator proposing that they "harass" the victims, McMahon stated "I don't know why I would even say something like that . . . unless it was a typo or something." After reviewing the text message, McMahon described a "a case I worked on . . . five years ago" where "[w]e had to sit outside a guy's house. Just basically let him know we were outside." McMahon explained further that "Listen, if he knows you're sitting outside he knows, you know that – you're out there and that maybe he should turn himself in."

- With regard to his understanding of the events at issue, McMahon stated that one of the individuals who directed his work "mentioned to me that they were trying to get him to come back to China . . . so they could prosecute him." McMahon further stated that "the father had flown in from I think he said China . . . [t]o convince the son because of, you know, out of honor for the name" and that the father had flown to the United States "to get his son to go back to China."

The portions of the interview immediately preceding and following this segment involved statements about different issues. Prior to the relevant segment, McMahon responded to questions about the use of surveillance equipment, such as night vision goggles and GPS trackers. After this

---

[3] As set forth in the Motion, the government has moved to admit other statements because they are either not hearsay or satisfy a hearsay exception. By identifying these statements for the Court's review, the government does not concede any claim as to the admissibility of any other statements, nor waive any argument that the defendant should be precluded from admitting certain other statements if they are offered for an impermissible purpose.

[4] Both recorded interviews were provided to defendants McMahon and Zhu, as part of Rule 16 discovery, on or about May 25, 2021.

2

segment, McMahon made statements about whether he believed the conduct at issue appeared unusual to him, and how he reacted to the unusual nature of the arrangement.

B.  Zhu's Post-Arrest Statements

At approximately one hour into his interview, Zhu, through a linguist, also made several statements relevant to the government's case. Specifically, Zhu stated that (i) he knew one of the victims was "wanted" in China and a "fugitive"; (ii) a "Mr. Hu" and another person came to the United States for "the Communist Party" and "took a picture"; (iii) a "parent" of one of the victims came to the United States to try and "persuade [the victim] to go back to China"; (iv) the "police" in China were looking for the victim; (v) the person named "Hu Ji" is part of the "Overseas Chinese Affairs Office" and (vi) that "department" was one of "several departments" looking for the victim and "whoever finds him first, you know, gets an award." Before and after these statements, Zhu discusses the separate topics of how well he knew certain people involved in the scheme, his role in the scheme, and his role in hiring defendant McMahon.[5]

Exhibits 1 and 5 reflect the uninterrupted portions of the interviews that contain the above-referenced statements by McMahon and Zhu. See Ex. 1 (McMahon); Ex. 5 (Zhu). The government proposes to admit both clips—each lasts approximately seven minutes.

II.  Legal Standard

While the government may admit a defendant's statements as party opponent-admissions, a defendant is generally prohibited from introducing their own out-of-court statements at trial. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Pursuant to Federal Rule of Evidence 106, "an omitted portion of [a] statement" may be admitted where "necessary to explain the omitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Fawwaz, 691 F. App'x 676, 678 (2d Cir. 2017) (summary order). But "[t]he rule of completeness is 'not a mechanism to bypass hearsay rules for any self-serving testimony.'" United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (quoting United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2016)). "The completeness doctrine, however, has never 'require[d] the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.'" United States v. Williams, 930 F.3d 44, 58 (2d Cir. 2019) (quoting United States v. Gupta, 747 F.3d 111, 139 (2d Cir. 2014) (citations omitted)); United States v. Harper, No. 05-CR-6068, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009) ("[A] defendant may not rely on the rule of completeness to put his out-of-court exculpatory statements before the jury through the testimony of another witness . . . , while at the same time maintaining his own Fifth Amendment privilege so as to avoid being cross-examined about his prior statements."). To that end, the Second Circuit has affirmed the exclusion of hearsay statements offered by the defendant that, by their omission, do not distort the admitted statements. See United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming district court's decision to

---

[5] The government's proposed excerpt of the Zhu post-arrest interview ends before the statements about McMahon, and therefore no Bruton issue arises.

3

exclude portion of a defendant's statement where admitted portion did not distort the meaning of the full statement).

As a result, courts are required to parse a defendant's statements to admit the inculpatory statements offered by the government and to exclude the self-serving, unconnected statements offered by the defendant. See United States v. Loera, No. 09-CR-0466 (BMC), 2018 WL 2744701, at *5 (E.D.N.Y. June 7, 2018) ("the rule of completeness does not require the introduction of 'self-serving' statements") (quoting United States v. Jackson, 180 F.3d 55, 73 (2d Cir.), on reh'g, 196 F.3d 383 (2d Cir. 1999)); United States v. Lange, 834 F.3d 58, 79 (2d Cir. 2016) (finding that "omitted statements were generally post-hoc explanations for prior conduct, which did not alter the meaning of the admitted redacted portion."). The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the government intends to offer. See United States v. Glover, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

III. Argument

As indicated above, the government intends to offer a single, uninterrupted seven-minute video of statements by Michael McMahon, and a single seven-minute clip of statements made by Zhu Yong, both made during their October 28, 2020 voluntary post-arrest interviews. Both clips consist of a self-contained series of statements on discrete topics, and is bounded on either side by statements about different topics and issues. The government does not currently intend to admit any other statements from the interview. In such a circumstance, the rule of completeness does not apply and no additional statements should be permitted to be added by the defendant.

To do otherwise would allow defendants to use the rule of completeness improperly to evade the adversarial process and put his self-serving statements before the jury while shielding himself from cross-examination. Several cases from this Circuit are instructive in demonstrating how courts have narrowly construed the rule of completeness. For example, in United States v. Johnson, the Second Circuit concluded that the Court properly admitted statements from a defendant's confession related to "*plans* to execute the robbery" and excluded statements that were about "the *execution* of the robbery." 507 F.3d 793, 796–97 (2d Cir. 2007) (emphasis in original). Likewise, in United States v. Jackson, the Circuit affirmed the trial court's decision to admit a portion of a recorded conversation between the defendant and another person where the defendant was warned that a scheme he was involved in "constituted the federal crime of extortion," and declined to admit later portions of the recording the defendant contented would permit the jury to hear "the tone and substance of [the other person's] statements" and understand that person "to be exaggerating, overly emotional, or 'out of control,' and would conclude that [the defendant] had reason to discount [the] warning." 180 F.3d at 73.

In a factually analogous case, United States v. Williams, the Circuit affirmed the district court's decision to admit the defendants' inculpatory statements during a law enforcement interview that he possessed a firearm while excluding statements from an earlier part of the same

4

interview that "he didn't know anything about the weapon." 930 F.3d at 58 (explaining that earlier self-serving exculpatory statement was not "necessary to explain" his later inculpatory admission). The facts here are closely analogous to these other decisions, and any purported completeness additions should likewise be rejected.

The defendants' statements in the government's proposed submissions are relevant, require no additional explanation or context, and can be fairly understood by a jury without further supplement. Additional statements from the interview would only place the defendants' false exculpatory statements before the jury while permitting the defendants' to avoid cross-examination. Admission of the government's proposed submission in no way hinders either defendants' ability to provide information about other topics, should either choose to testify or offer other admissible, non-hearsay evidence. But the rule of completeness cannot be used by either defendant to admit self-serving hearsay statements without cross-examination that would allow the jury to assess the credibility of those statements.

IV.   Sealing Request

The government respectfully requests permission to file the attached Exhibits under seal. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal. See, e.g., United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (noting "requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, sealing is necessary because the exhibits contain sensitive information, including victim identities. See United States v. Amodeo, 71 F.3d 1044, 1050-52 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing). The government respectfully submits that these reasons constitute a sufficient basis for the Court to make the "specific, on the record findings" necessary to support sealing, Lugosch, 435 F.3d at 120, and accordingly respectfully requests that the Court record those findings and file the exhibits under seal. A copy of this letter brief, without exhibits, has been filed on the public docket.

V. <u>Conclusion</u>

Accordingly, the government respectfully requests that the Court permit the introduction of the identified statements by McMahon and Zhu during each of their post-arrest interviews, while precluding the admission of any additional statements from those same interviews by the defendants.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/  
Craig R. Heeren
Meredith A. Arfa
Irisa Chen
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:   /s/  
Christine Bonomo
Trial Attorney

Enclosures

cc:   Clerk of the Court (by ECF and email)
      Counsel of Record (by email)