**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CRH/MAA/IC
F. #2017R00906

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 4, 2023

By ECF

The Honorable Pamela K. Chen
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. McMahon, et al.
Criminal Docket No. 21-265 (S-1) (PKC)

Dear Judge Chen:

The government writes in opposition to defendant Michael McMahon's request to include three additional statements pursuant to Federal Rule of Evidence 106, i.e. the "rule of completeness" doctrine. See Def.'s Letter Mot. dated June 1, 2023 (ECF No. 232) ("Def. Mot."). McMahon's argument is based on the claim that his statement "They had mentioned to me that they were trying to get him to come back to China . . . so they could prosecute him" is ambiguous and misleading. The opposite is true. The statement is clear standing on its own, and retains the same meaning when read in context. McMahon, who unlike his co-defendant did not require the assistance of a translator, used a textbook definition of the term "prosecute" in response to a straightforward question about the "goal" of the scheme, and followed up with statements that confirmed his meaning. McMahon's proposed additions are not necessary to correct any distortion or confusion, and instead would themselves be confusing or misleading. McMahon's additions are in reality a discrete denial intended to mitigate the harm of his earlier admission and self-serving statements on other topics. The law is clear that neither is admissible under Rule 106. See United States v. Williams, 930 F.3d 44, 58 (2d Cir. 2019) (affirming exclusion of earlier denial while admitting later admission on identical topic); United States v. Johnson, 507 F.3d 793, 796–97 (2d Cir. 2007) (affirming exclusion of statements about different aspects of same criminal conduct). The Court should deny the motion.

I. Background

As discussed previously, the government is offering a single seven-minute clip of a recorded post-arrest interview of defendant McMahon, discussing two topics: (1) what McMahon meant when he proposed "harass[ing]" the victims and (2) the goal of the overall operation. The defendant does not raise any issue with the first portion of the excerpt.

The excerpted portion of the interview about the goal of the operation is clear, self-contained, and not misleading. The discussion begins when one of the law enforcement agents states "So here's the point . . . there had to be some kind of discussion of like, what the goal was." Tr. at 57:35-58:5.[1] McMahon agrees. Id. at 58:7. The same agent then asks "Was the goal to have somebody return to China on their own?" Id. at 9-10. McMahon again responds directly: "Yeah. I think he had mentioned to me that they were trying to get him to come back to China . . .so they could prosecute him."[2] McMahon then immediately makes an additional statement consistent with this response, stating that "the father had flown in from I think he said China . . . to convince the son because of, you know, out of honor for the name" and "to face the consequences back in China." Id. at 27-40. The agents then offer several clarifying questions, asking what the consequences were (McMahon responds "just . . . to pay back the money basically") and whether they mentioned "jail time" (McMahon denies that they did). Tr. at 58:44-59:12. McMahon again confirms what he meant by "prosecute him," by stating that his actions were designed to compel the victim to "turn himself in." Tr. at 59:28-34. Finally, one of the agents asks whether the purpose of the elderly person coming to United States was part of the same goal and McMahon again confirms that it was "to get his son to go back to China." Tr. at 60:41-62:7. The proposed excerpt ends at this point.

II. The Meaning of McMahon's Statement is Clear

Rule 106 only requires inclusion when necessary to explain, contextualize or otherwise avoid admission of a misleading statement. See Johnson, 507 F.3d at 796 (emphasis added). Inclusion of additional statements is not necessary here because there is nothing misleading or ambiguous about the proposed admission.

McMahon's proposed additions hinge on the claim that McMahon's use of the word "prosecute" is ambiguous and "can apply to civil as well as criminal cases." Def. Mot. at 1-2. But McMahon does not only say "prosecute" without further context; McMahon says "so they could prosecute him." This is exactly the usage and meaning identified in McMahon's own letter—"so they could prosecute him" means "to institute and pursue a criminal action against (a person)." Def. Mot. at 2 n.1 (quoting Black's Law Dictionary) (emphasis added). The idea that McMahon meant an alternative meaning related to a civil action is far more confusing, and would require a modification to the sentence. McMahon uses the term "him" on two occasions in the same sentence, both times referring to John Doe-1: "They were trying to get him [John Doe-1] to come back to China so they could prosecute him [John Doe-1]." Claiming that he really meant "commence and carry out a legal action" is inconsistent with this parallel construction, as it would mean that McMahon misspoke when he said "prosecute John Doe-1" and really meant "prosecute a civil lawsuit against John Doe-1."

[1] A draft transcript of the complete interview was previously attached to the government's prior motion regarding the defendant's post-arrest statements. See Ex. 4 to Gov't Mem. of Law in Supp. of Mot. in Limine (ECF No. 228) (under seal).

[2] As McMahon makes this statement, the two agents make brief affirmative or supportive statements—"right," "okay," and "that makes sense." Tr. 58:16-20.

The surrounding context further confirms the apparent meaning of the statement. McMahon made several additional statements to demonstrate that he meant what he said. As noted above, McMahon explained how he understood the father was supposed to persuade the victim to return to China to "face the consequences" and that McMahon's own proposal to harass the victim was intended to convince the victim to "turn himself in." Indeed, given this additional context, it is the defendant's preferred reading that would distort the statement. A person does not talk about having to "prosecute him," "facing the consequences" and having to "turn themselves in" if what they meant was "to commence and carry out a civil legal action."

The reason why McMahon's preferred reading of his statement cannot be squared with the larger context is self-evident: the proposed admissions have nothing to do with this portion of the interview, and he is straining to include them. His other statements about "construction companies" and a "civil case" are unrelated false exculpatory statements and a post-hoc attempt to mitigate the damage caused by a clear admission that he knew the goal of the conspiracy.

## III. McMahon's First Proposed Addition Is a Post-Hoc Denial and Is Unnecessary to Contextualize or Clarify the Proposed Admission

The defendant's first proposed submission comes after the government's proposed excerpt and a series of additional questions on an unrelated topic. McMahon is asked about whether he was told "at any point . . . that this was a criminal case." Tr. at 62:42-43. McMahon proposes to include the first part of his response, that "I thought it was a civil case, he stole money from the company and that was it, we were just trying to --" Tr. at 63:3-6. The remainder of McMahon's response to this question demonstrates, however, that McMahon is talking about something different than the earlier discussion about the goal of "prosecuting" John Doe-1 and forcing John Doe-1 to "turn himself in" and "face the consequences" after returning to China. After McMahon's statement about purportedly thinking this "was a civil case," one of the agents notes that McMahon knew there was a criminal case pending based on a document that was in his possession. See Tr. at 8:-19. McMahon responds "Yeah, but this is a criminal case in China." Id. at 21-22 (emphasis added).

Even read in the manner most favorable to the defendant, McMahon's statement in this context only amounts to a claim that he thought there was a parallel civil case in the United States in addition to the criminal case in China he knew about. McMahon's follow-up statement that he thought this was "embezzlement" and that "I thought the money he stole from the company was the embezzlement" arguably is consistent with that defense theory. Id. at 31-34. Under that theory, McMahon is explaining that he believed his conduct was for a parallel civil action arising out of the "criminal case in China" that involved "embezzlement." The defendant's proposed admission, particularly when understood in its proper context with the portions that McMahon omitted, do not add context to the government's proposed admission. While the value to McMahon's defense theory about knowledge and intent is plain, McMahon's statement that he thought this was working on "a civil case" even if there was a "criminal case in China" is consistent with his statement that he knew that a goal of the operation was to "prosecute" John Doe-1 and bring him back to China.

The defendant's proposed admission is precisely the sort of statement that the Second Circuit has held can be properly excluded because it is unnecessary to complete or contextualize some other statement. In Williams, the Court affirmed the trial court's decision to admit a statement that the defendant admitted to possessing a firearm while excluding a separate statement, from the same interview, where he denied ownership of the same firearm. 930 F3d. at 60. The Court explained that one was not "necessary to explain" the other or to avoid misleading the jury. Id. The fact that the same interview included both a denial and admission on the same topic did not alter the analysis, as the Court explained:

> It is not uncommon for a suspect, upon interrogation by police, to first claim in a self-serving manner that he did not commit a crime, only thereafter to confess that he did. But the rule of completeness does not require the admission of self-serving exculpatory statements in all circumstances . . . and the mere fact that a suspect denies guilt before admitting it, does not—without more—mandate the admission of his self-serving denial. As the district court here aptly pointed out, [the defendant's] confession was "simply a reversal of his original position."

Id. at 61. McMahon's statements are even further removed from Williams, in that both sets of statements can be read as consistent with each other. But even if there were some tension or contradiction, McMahon's statement reflects the corollary to the Court's reasoning in Williams. Just as it is common for a suspect to deny something when asked until he later admits it, it is likewise just as common for a suspect to make an admission, recognize that admission is harmful to his claim of innocence, and attempt to mitigate the damage by making later false exculpatory statements. At best, this is what happened here: McMahon realized that he had admitted too much, and so sought to walk back his admission by concocting a claim about parallel civil and criminal actions. Even if this could be construed as a "reversal," that later reversal is not necessary to clarify or contextualize his other admissions.

## IV. McMahon's Second and Third Additions Are Unrelated and About Different Topics

McMahon's two other proposed additions are also without merit and should be rejected. In the first, McMahon states that one of the men he met with "said . . .they were part of the construction company." Tr. at 23:25-31. McMahon's statement that the goal of the scheme was to "prosecute" the victim and get him to return to China is not misleading because he says—approximately 45 minutes earlier and in response to an entirely different set of questions—that one of the people he met worked for a construction company. Indeed, the government's theory of this case, as relevant here, is that the foreign government relied upon non-officials who worked elsewhere (including McMahon himself) to pursue their goal of repatriating and prosecuting John Doe-1. In any event, the statement is about an entirely separate topic. While the proposed admission is a statement about the goals of the scheme, the defendant's second statement is related to the employment or position of the people that McMahon met. This statement may be relevant to his defense, if true, but it is not needed for completeness purposes. This inclusion is similar to the one offered and rejected in Johnson. There, the Second Circuit affirmed the trial court's decision to permit the government to admit a portion of an interview about the planning of a

robbery, while excluding the portion of the interview about the execution of the same robbery. See 507 F.3d at 796-97. The statements here are even further removed from each other, and the defendant's proposed addition should be denied because it is "neither explanatory of nor relevant to the admitted passages." Id.

The final proposed addition should be excluded for largely the same reasons. McMahon stated, in response to the question "what you were being hired to do," that he was "to locate an individual who stole money or a couple million dollars from a construction company in China." Tr. at 10:32-25. The statement is made nearly an hour earlier in the interview. Id. The defendant himself concedes that it is "somewhat less explanatory" of the statement about "prosecuting" the victim. Def. Mot. at 3. Again, this statement does not help prevent the government's proposed admission from misleading the jury—it can be both true that McMahon was hired to locate an individual who stole money from a construction company, and that he understood the ultimate goal was to force the victim to return to China and be prosecuted. And what McMahon was hired to do is distinct from what he understood was the goal of the scheme.

While the defendant is entitled to testify and claim he meant something different than the plain and obvious meaning of his statements, he is not permitted to use the doctrine of completeness to introduce self-serving statements that do nothing to complete or contextualize the story.

V. Conclusion

For the forgoing reasons, the government respectfully requests that the Court deny the defendant McMahon's motion to include the three additional statements from his post-arrest interview.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Craig R. Heeren
Meredith A. Arfa
Irisa Chen
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By: /s/
Christine Bonomo
Trial Attorney

Enclosures

cc: Clerk of the Court (by ECF and email)
Counsel of Record (by email)