1738

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA,      : 21-CR-265(PKC)
4                                  :
                                   :
5                                  :
        -against-                  : United States Courthouse
6                                  : Brooklyn, New York
                                   :
7                                  :
                                   : June 13, 2023
8   MICHAEL McMAHON, ZHENG         : 9:00 a.m.
    CONGYING, and YONG ZHU, also   :
9   known as "Jason Zhu,"          :
                                   :
10          Defendants.
    - - - - - - - - - - - - - X
11
            TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
12          BEFORE THE HONORABLE PAMELA K. CHEN
               UNITED STATES DISTRICT JUDGE
13

14  A P P E A R A N C E S :

15
    For the Government:  BREON S. PEACE, UNITED STATES ATTORNEY
16                       EASTERN DISTRICT OF NEW YORK
                            271 Cadman Plaza East
17                          Brooklyn, New York 11201
                         BY:  MEREDITH ARFA
18                            CHRISTINE BONOMO
                              IRISA CHEN
19                            CRAIG HEEREN
                              Assistants United States Attorney
20

21                       U.S. DEPARTMENT OF JUSTICE
                         NATIONAL SECURITY DIVISION
22                          950 Pennsylvania Avenue, NW
                            Washington, D.C. 20530
23                       BY:  CHRISTINE BONOMO, Trial Attorney

24

25

1739

1  A P P E A R A N C E S (continued):

2

3  For the Defendant        GIBBONS P.C.
   Michael McMahon:              One Gateway Center
4                                Newark, New Jersey 07102
                            BY: GENNA AUTUMN CONTI,  ESQ.
5                                LAWRENCE S. LUSTBERG, ESQ.

6
    For the Defendant        GOLDBERGER & DUBIN, P.C.
7   Zheng Congying:              401 Broadway - Suite 306
                                 New York, NY 10013
8                            BY: PAUL GOLDBERGER, ESQ.
                                 RENEE M. WONG, ESQ.

9

10  For the Defendant        LAW OFFICE KEVIN KERVENG TUNG
    Yong Zhu:                    136-20 38th Avenue
11                               Flushing, New York 11354
                             BY: KEVIN K. TUNG, ESQ.

12

13

14
    Court Reporter:  Linda A. Marino, Official Court Reporter
15                   225 Cadman Plaza - N366
                     Brooklyn, New York 11201
16                   718-613-2484
                     E-mail:  lindacsr@aol.com
17

18
    Proceedings recorded by computerized stenography.  Transcript
19  produced by Computer-aided Transcription.

20

21

22

23

24

25

*Proceedings*                                                           1740

1          (In open court; jury enters.)

2          THE COURT:  So, Government, do you have anything to

3    tell us this morning?

4          MR. HEEREN:  Only one minor housekeeping thing, your

5    Honor.

6          THE COURT:  Yes.

7          MR. HEEREN:  506G, I don't think the Court formally

8    said it had been admitted, though the Court did permit us to

9    play it.  So, for the sake of the record, I just want to

10   clarify that it's the Government's understanding that 506G was

11   admitted following a sidebar yesterday.

12         THE COURT:  That appears to be correct, so

13   Government Exhibit 506G is formally admitted.

14         (Government Exhibit 506G so marked.)

15         THE COURT:  Also, the Government should move to have

16   mark the Rule 15 deposition transcript because, otherwise,

17   it's not going to be anywhere in the record.  So, obviously,

18   given that the deposition was taken with both sides having the

19   opportunity to participate in that, I am going to admit a

20   transcript of that.

21         So, have you marked that?

22         MR. HEEREN:  We have not marked it yet.  We have a

23   redacted or will have a redacted transcript that matches what

24   was played in the court and we will put that into evidence.

25         THE COURT:  So, why don't we give it a number?

*Proceedings*                                                    1741

1          Can you just do that now and we'll admit it on the
2    record before you close?

3          MR. HEEREN:  Sure.  One second, your Honor.

4          (Pause in proceedings.)

5          MR. HEEREN:  Your Honor, we're going to identify
6    that transcript as Government Exhibit 713 and we move to admit
7    it now to the extent necessary.

8          THE COURT:  So, the transcript of the Rule 15
9    deposition of -- what was her name again?

10         MR. HEEREN:  Xinzi Xu.  That's X-I-N-Z-I X-U.

11         THE COURT:  Also known as Sabrina, correct?

12         MR. HEEREN:  Yes, your Honor.

13         THE COURT:  So, that is admitted.

14         (Government Exhibit 713 so marked.)

15         THE COURT:  With that?

16         MR. HEEREN:  With that, your Honor, the Government
17   rests.

18         THE COURT:  Thank you very much, Mr. Heeren.

19         Mr. Lustberg?

20         MR. LUSTBERG:  Thank you, your Honor.  I'm going to
21   go get our witness.

22         THE COURT:  Please.

23         Just to remind the jury again, the defense is not
24   required to put on any evidence whatsoever but they can choose
25   to do so.  And Mr. Lustberg apparently is going to call some

*Proceedings*                                                      1742

1   witnesses on behalf of Mr. McMahon and perhaps the other

2   Defendants as well.

3           But the bottom line is -- I'll instruct you during

4   the charges -- any party can make use of any other party's

5   evidence.  In other words, no one owns the evidence.  All

6   parties can make use of whatever evidence they think supports

7   their contentions.

8           And you're calling, Mr. Lustberg?

9           MR. LUSTBERG:  Thank you.  Mr. McMahon calls Liping

10  Shi.

11          THE COURT:  If you'll approach the witness box and

12  remain standing for a moment so we can swear you in.

13          (Witness sworn.)

14          THE COURTROOM DEPUTY:  Please state and spell your

15  name for the record.

16          THE WITNESS:  Liping Shi, L-I-P-I-N-G S-H-I.

17          THE COURT:  Thank you.

18          You may inquire, Mr. Lustberg.

19          MR. LUSTBERG:  Thank very much, your Honor.

20

21

22

23

24

25

*Shi - Direct - Lustberg*                    1743

1  **LIPING SHI**,

2          called by the Defense, having been

3          first duly sworn, was examined and testified

4          as follows:

5  DIRECT EXAMINATION

6  BY MR. LUSTBERG:

7  Q    Ms. Shi, how are you employed?

8  A    I'm self-employed.

9  Q    And what do you do?

10  A    As a lawyer.

11          THE COURTROOM DEPUTY:  Pull the microphone towards

12  you.

13          THE COURT:  You can move the microphone, just make

14  sure you speak directly into it.  The seat does not move

15  though, so be careful.

16  Q    Yes, speak nice and loudly so everybody can hear.  Thank

17  you.

18          What type of law do you practice?

19  A    Mostly immigration and I also do matrimonial and business

20  or real estate transactions.  Mostly immigration.

21  Q    Do you do any criminal defense law or any kind of

22  criminal law?

23  A    Occasionally.

24  Q    Do you sometimes go to court?

25  A    Yes, I do.

*Shi - Direct - Lustberg*                          1744

1  Q    So, directing your attention to the summer of 2016 -- I

2  know that was a while ago -- do you recall someone named Zhu

3  Yong or Jason Zhu coming to see you?

4  A    Based on my record, yes.

5  Q    Mr. Zhu did not retain you; is that correct?

6  A    Did not.

7  Q    But before we get to that, what was it that he asked you

8  to do?

9  A    He asked me to locate a private investigator.

10 Q    And did that private investigator have to be in any

11 particular place?

12 A    Licensed in New Jersey.

13 Q    And did he tell you why he needed a private investigator

14 licensed in New Jersey?

15 A    He needs to locate someone in order to collect debt.

16 Q    Okay.

17 A    Not for him, for his friend or someone else.

18 Q    So, what did you do when he made that request?

19 A    Actually, I did not know any private investigator at that

20 time, so I reached out to a criminal attorney that I met in

21 Kings County Criminal Court previously.  I had his business

22 card.  So, I reached out to him to ask him whether he happened

23 to know anybody that is New Jersey licensed private

24 investigator.

25 Q    And did he provide a name to you?

*Linda A. Marino, Official Court Reporter*

*Shi - Direct - Lustberg*                    1745

1  A    Yes.

2  Q    Do you recall what that name was?

3  A    Michael McMahon.

4  Q    And did you then -- did you know Mr. McMahon?

5  A    I did not know him personally.  I never met him.  I just

6  reached out to him.

7  Q    And the only -- am I right that your testimony is that

8  you reached out to him just because he was a name of a private

9  investigator that you were given in New Jersey?

10 A    Yes.

11 Q    Were you trying to find someone who -- withdrawn.

12      Do you have any idea about what the case was that

13 Mr. Zhu was coming to talk to you about other than that it was

14 a collection of a debt?

15 A    My impression is that.  I do not remember exactly how he

16 said it, but my impression is that.

17      Because in my matrimonial cases, sometimes the

18 defendant, the whereabouts is unknown so we need to locate

19 them.  That's how I, you know, believed that he needs to

20 locate someone in order to serve papers down the road.

21 Q    Did you have any knowledge one way or the other as to

22 whether this case involved the Chinese Government?

23 A    No.

24 Q    I asked you this earlier, but I think you testified that

25 Mr. Zhu did not end up retaining you; is that right?

*Shi - Direct - Tung*                                              1746

1    A    Correct.

2    Q    What ended up happening?

3    A    Actually, I sent a retainer agreement, but he didn't sign

4    or somebody else didn't sign.

5    Q    And did you ever hear from him again?

6    A    No.

7              MR. LUSTBERG:  Thank you very much.

8              I have nothing further for the witness.

9              THE COURT:  You may want to clarify, just because

10   I'm looking at the transcript, Zhu, do you know how to spell

11   that?

12             THE WITNESS:  Z-H-U.

13             THE COURT:  Thank you very much.

14             MR. LUSTBERG:  Thank you, your Honor.

15             THE WITNESS:  Thank you.

16             THE COURT:  Mr. Tung?

17             MR. TUNG:  Yes.

18   DIRECT EXAMINATION

19   BY MR. TUNG:

20   Q    Ms. Shi, my name is Kevin Tung.  I'm the attorney for

21   Yong Zhu in this case.

22   A    Good morning, Mr. Tung.

23   Q    Good morning.

24             Continuing the questioning earlier with attorney

25   Lustberg, Ms. Shi, when Mr. Yong Zhu came to your office, did

*Shi - Direct - Tung*                                          1747

1  he ask for a consultation, legal consultation, for what he was

2  doing?

3  A    Not specifically.  He asked for information.

4  Q    But he came to your office because you were an attorney,

5  right, back in 2016, right?

6  A    Correct.

7  Q    So, you had a conversation with him, right, regarding

8  what he would like you to do, correct?

9  A    Correct.

10        THE COURT:  Mr. Tung, I think this is your witness,

11  so this is direct examination, right?

12        MR. TUNG:  That's correct, yes.

13        THE COURT:  So, just don't lead her.

14        MR. TUNG:  Yes, your Honor.

15  Q    You just stated that you did prepare a retainer

16  agreement; is that right?

17  A    Correct.

18  Q    And I'm going to show you an e-mail that was -- I'm going

19  to just show you an e-mail now.

20        THE COURT:  He wants to use the Elmo, Fida.

21        Just for the witness.  You can only show it to the

22  witness.

23        MR. TUNG:  Okay.  Can we show the witness the

24  e-mail?

25        THE WITNESS:  Yes, I can see it.

1   Q     Do you recognize, is this e-mail that was prepared by

2   you?

3   A     Yes, correct.

4   Q     And also I'll show you the attachment, those other

5   retainer agreements, okay?

6   A     Okay.

7            MS. CHEN:  Just for the record, has this been

8   premarked with an exhibit letter?

9            THE COURT:  Good question.

10           MR. TUNG:  They have been premarked with Bates

11  number Yong Zhu --

12           THE COURT:  No, let's have a sidebar.

13

14           (Continued on the following page.)

15

16

17

18

19

20

21

22

23

24

25

*Sidebar*                                                                    1749

1          (The following occurred at sidebar.)

2          THE COURT:  You should mark it with a defense

3   exhibit letter because the defendants use letters.  So, you

4   can make it Defendant Zhu A.

5          MR. TUNG:  Okay.

6          THE COURT:  We'll mark it as such.

7          Secondly, I notice that the first e-mail is all in

8   Chinese.  So, I don't want you submitting a foreign language

9   document in for the content of it if you're not going to

10  provide a translation.

11         MR. TUNG:  Well, your Honor, this e-mail, that's

12  actually the cover letter, as I stated before.  I'm not going

13  to be asking any questions on the cover letter.

14         But the attachment was attached to e-mail, so that's

15  why it's complete document.  If you want me --

16         THE COURT:  But you're offering it for what it says,

17  which is that it purports to be an e-mail from her to Mr. Zhu

18  that says something, but it's all in Chinese and I don't want

19  that admitted without some translation.

20         MR. TUNG:  That's fine.  Then I'm just going to

21  admit the retainer agreement.

22         THE COURT:  That's fine.  You can show her that and

23  ask if that's the retainer agreement she sent.

24         Does the Government have objection to just the

25  unexecuted retainer agreement being admitted?

*Sidebar*                                                              1750

1        It's simply proof that corroborates her testimony

2   that she sent him retainer agreement.

3        MS. CHEN:  Your Honor, we actually don't have an

4   objection to the full record coming in with the e-mail.  I

5   understand that -- our position is that is the complete

6   document and that without such there's not really context as

7   to what the retainer agreement is and that is important.

8        THE COURT:  But the e-mail, though, doesn't give it

9   in context because it's in Chinese.

10       MS. CHEN:  Understood.

11       But, for example, the "from" and "to" is important

12  as to whether or not it's Ms. Shi's and whether Mr. -- or what

13  she understood to be Mr. Zhu's e-mail address.

14       THE COURT:  Does it have a date in alpha or Roman

15  whatever -- Arabic numbers?

16       MS. CHEN:  Yes, there are Arabic numbers there as

17  well, your Honor.

18       So, we would not object to the full record coming

19  in.  Obviously, we cannot use the only-Chinese portion of it

20  for its content.

21       THE COURT:  No one can argue about what the contents

22  are in Chinese.

23       MR. TUNG:  Right.

24       THE COURT:  Go ahead since the Government doesn't

25  object.

*Linda A. Marino, Official Court Reporter*

*Sidebar*                                                                1751

1         MR. TUNG:  So, it's on stip, right, so I can publish

2    now?

3         THE COURT:  No.  Just establish through her the

4    normal way one would with a witness what it is and why it's

5    admissible.

6         MR. TUNG:  Okay.

7         MR. LUSTBERG:  I was just going to volunteer to

8    provide Mr. Tung with some exhibit stickers because the

9    Government often doesn't have defense exhibit stickers.

10        THE COURT:  We do sometimes, but I think you

11   preserve good will with Ms. Gonzalez if you give the exhibit

12   sticker.

13        MR. LUSTBERG:  That's all I want to do.

14        THE COURT:  Me too.

15        MR. TUNG:  Defendant's A.

16        THE COURT:  Defendant Zhu A.

17

18        (Continued on the following page.)

19

20

21

22

23

24

25

*Shi - Direct - Tung*                                        1752

1           (Sidebar ends; in open court.)

2           THE COURT:  The exhibit will be marked.  It's

3    Defendant Zhu Exhibit A and it consists of an e-mail and then

4    an attachment.

5           So you can proceed now, Mr. Tung.

6           MR. TUNG:  Thank you your Honor.

7    Q    Ms. Shi, I'm showing you a document that has been

8    premarked as Defendant Zhu Exhibit A.

9    A    Yes.

10   Q    Can you see that that's the e-mail that you prepared --

11          THE COURT:  Well, what is it?

12          That's the question, what is it?

13   Q    What is it?

14          Do you recognize this document?

15   A    Yes.  That was sent by me to Mr. Zhu August 24, 2016.

16          THE WITNESS:  Should I --

17          THE COURT:  No, that's okay.

18          It's an e-mail you sent; is that right?

19          THE WITNESS:  Yes.

20          THE COURT:  Next question?

21   Q    And I also show you the attachment to this e-mail.

22          Do you recognize this document?

23   A    Yes.

24   Q    Is this a document prepared by you?

25   A    Correct.

*Shi - Direct - Tung*                                              1753

1    THE COURT:  Did you send it with the e-mail?

2    THE WITNESS:  Yes, as attachment.

3    THE COURT:  Go ahead.

4  Q    And this is second page to that attachment.

5        Do you recognize this document?

6  A    Yes.

7  Q    And those signature lines are blank; right, it was

8  unsigned?

9  A    Correct.

10 Q    But the document was prepared by yourself, right?

11 A    Correct.

12 Q    And I'm also showing you another attachment to the

13 e-mail.

14       Do you recognize this document?

15 A    Yes.

16 Q    And this is the -- what is it?

17 A    It is the retainer agreement also.  I believe that was

18 prepared by the private investigator.

19 Q    Private investigator --

20       THE COURT:  Let's go back, Mr. Tung.

21       Did you also send that with the e-mail?

22       THE WITNESS:  Correct, with the e-mail.

23       THE COURT:  Do you want to move to admit them?

24       MR. TUNG:  Yes, and there's a second page.

25       THE COURT:  That's okay.  That way, you can show it

1   to the jury while you ask questions.

2          MR. TUNG:  Your Honor, I'd like to move Defendant

3   Zhu Exhibit A into evidence.

4          MS. CHEN:  No objection.

5          MS. WONG:  No objection.

6          MR. GOLDBERGER:  No objection.

7          THE COURT:  It's admitted as Zhu Exhibit A.

8          (Defendant Zhu Exhibit A so marked.)

9   Q    Ms. Shi, showing you the first page which is attachment

10  to the e-mail, and it's the attorney-client fee agreement.

11         As you testified earlier, that was prepared by you,

12  right?

13  A    Correct.

14  Q    And can you look at the section -- it's kind of a little

15  bolded here, scope of service?

16  A    Yes.

17  Q    Do you want me to read this or you can read?

18         Because it's hard for you to read, I can read this.

19  A    Okay.

20  Q    The scope of service to be provided by you to Yong Zhu

21  is --

22         THE COURT:  Mr. Tung, move the microphone towards

23  you.

24  Q    The scope of services to be provided by you to Mr. Yong

25  Zhu was to act -- acting as client's family counsel in

*Shi - Direct - Tung*                                     1755

1    assisting client to handle the matter involving a licensed

2    private investigator in locating a male subject, whose name is

3    blank, including the subject's whereabouts, photo or video.

4              Is this what you wrote for the service you are going

5    to provide to Mr. Yong Zhu?

6    A    Correct.

7    Q    And at any time when you had the conversation with

8    Mr. Yong Zhu, did you ask Mr. Yong Zhu if the service

9    requested by him was from any government?

10   A    No.

11   Q    Did you suspect at the time when you met with Mr. Yong

12   Zhu what he was requesting the service that was pertaining to

13   some request for other government?

14   A    No.

15   Q    And did Mr. Yong Zhu tell you the work that he's asking

16   you to assist that was from the order of Chinese government?

17   A    No.

18              MR. TUNG:  I have no further questions.

19              THE COURT:  Thank you very much, Mr. Tung.

20              Any questions from you, Mr. Goldberger or Ms. Wong?

21              MR. GOLDBERGER:  No, your Honor.

22              THE COURT:  Government, cross-examination?

23              MS. CHEN:  Yes, your Honor.

24

25

1    CROSS-EXAMINATION

2    BY MS. CHEN:

3    Q    Good morning, Ms. Shi.

4    A    Good morning.

5    Q    Other than -- I think we ran into each other in the

6    bathroom.

7         Other than that, have we met before?

8    A    No.

9    Q    I want to talk a little bit about your background.  I

10   believe you testified that you're a lawyer.

11   A    Yes.

12   Q    How long have you been a lawyer for?

13   A    Since 2003.

14   Q    And --

15   A    In New York, in U.S.  I was attorney in China as well.

16   Q    And I think you said your practice is mostly immigration;

17   is that right?

18   A    Correct.

19   Q    Also some criminal defense work?

20   A    Sometimes.  Immigrants, you know, relating to law

21   enforcement.

22   Q    I understand.

23        And do you speak any other languages, other than

24   English?

25   A    Mandarin.

*Shi - Cross - Chen*                                    1757

1   Q    Any other dialects of Chinese?

2   A    Mandarin, just Mandarin.  But I can understand Hunanese,

3   Cantonese, but I don't speak those dialects.

4   Q    I understand.

5        Do you also read Chinese?

6   A    Yes.

7   Q    Are you familiar with traditional or simplified Chinese?

8   A    I could read both, but mostly I write simplified Chinese.

9   Q    Understood.

10        And when you communicated with Zhu Yong, in what

11  language did you communicate?

12  A    Mandarin.

13  Q    Just to go back, when you were an attorney in China, what

14  kind of work did you do there?

15  A    I'm working for a law firm.  That law firm basically does

16  some corporate work.

17  Q    That's different than what you do in the United States;

18  is that right?

19  A    Totally different.

20  Q    Totally different.  Okay.  And I just want to make sure I

21  understand how you communicated with Zhu Yong.

22        Did you communicate via phone, phone calls?

23  A    I believe we communicated with phone calls, yes.

24  Q    And obviously I know we just looked at one, but did you

25  also communicate via e-mail?

*Shi - Cross - Chen*                                                      1758

1   A    That's just, yeah, that e-mail.  I didn't get response

2   from him.

3   Q    Did you communicate via WeChat at all?

4   A    No at that point, no.

5   Q    At some other point did you communicate via WeChat?

6   A    I don't have his WeChat account.

7   Q    Do you use WeChat as part of your attorney services?

8   A    For now, yes.

9   Q    You do?

10  A    Uh-huh.

11  Q    Do you have an understanding as to what a "QQ" e-mail

12  account would be?

13  A    QQ e-mail is like regular e-mail, I believe.  I never had

14  that kind, but some of my clients do have qq.com as their

15  e-mail accounts.

16  Q    Are those clients based in the U.S. or somewhere else?

17  A    They could be both.

18  Q    Could be both.  Got it.

19       Just to confirm, is your e-mail address

20  liping@shilawoffices.com?

21  A    Yes.

22  Q    And you have that e-mail now and did you have it back

23  then, in 2016?

24  A    Both, yes.

25  Q    I believe you testified on direct examination that you

1   had gotten Michael McMahon's name; is that right?

2   A    Correct.

3   Q    And did you get that from a lawyer you met in a criminal

4   court?

5   A    Correct.

6   Q    I think you also mentioned you had an impression as to

7   what the case was about; is that right?

8   A    Correct.

9   Q    Did you ever meet anybody else for whom Zhu Yong was

10  asking on their behalf?

11  A    No.

12  Q    Did you ever learn any information about anyone who Zhu

13  Yong was acting on behalf for?

14  A    No, what do you mean learn information?

15  Q    Did you learn anything about someone who was working with

16  Zhu Yong, for example.

17  A    No.

18  Q    I think you also mentioned there was something about

19  serving papers.

20        Did you see any papers in connection?

21  A    No.

22  Q    No.   Okay.

23        Can I show you what has been marked and admitted as

24  Defendant Zhu Exhibit A, I believe?

25        THE COURTROOM DEPUTY:   You're showing this?

*Shi - Cross - Chen*                                                    1760

1              MS. CHEN:  On our computer, please.  Thank you.

2              (Exhibit published to the jury.)

3     Q    Ms. Shi, can you see that on the screen?

4     A    Yes.

5     Q    So, do you see where there's kind of a line -- I'm going

6     to mark it right here -- kind of a quarter of the page down;

7     do you see that?  Right here?

8     A    That's original e-mail.

9     Q    Right.  Just under that, do you see where it says Shi Law

10    Office?

11    A    Yes.

12    Q    And just to confirm, that's your e-mail?

13    A    Yes, that's my e-mail.

14    Q    zyzy996@sina.com, is that an e-mail you understood

15    Mr. Zhu had access to?

16    A    Yeah.

17    Q    Do you remember if you and Zhu Yong spoke about obtaining

18    travel records for an individual he was looking for?

19    A    That's actually -- I believe that's the suggestion from

20    the private investigator as to how to locate someone based on

21    his experience, to start with --

22    Q    Okay.

23    A    -- the records.

24    Q    Okay.

25             MS. CHEN:  If we could go to page two of this

*Shi - Cross - Chen*                                                1761

1    exhibit.

2    Q    And I think you testified, Ms. Shi, that you sent this

3    retainer agreement.

4         Did you ever receive a signed copy of this retainer

5    agreement?

6    A    Never.

7    Q    Did Zhu Yong contact you about this matter after you sent

8    this retainer agreement?

9    A    I believe we discussed about how the fee is going to be,

10   yeah.

11   Q    But did he ultimately engage you as a lawyer for this?

12   A    No.

13   Q    So, is it fair to say that after -- if we look at the top

14   here, I think it's dated August 23, 2016 -- after August of

15   2016, you weren't really involved in this matter at all?

16   A    No.

17   Q    Okay.

18        MS. CHEN:  If we could go back to the first page.

19        If we could zoom in to the top, please.

20   Q    Do you see the @qq.com that's written here?

21   A    Yes.

22   Q    Is that one of the QQ accounts that we were just talking

23   about?

24   A    Yes.

25   Q    Just a QQ account, not that you necessarily know anything

Shi - Cross - Chen                                    1762

1    about this, right?

2    A    Right.

3    Q    Can you read the numbers leading up to the @qq.com?

4    A    19960165.

5    Q    And is there a date associated with this?

6    A    Underneath the line, that's September 14, 2016.

7           MS. CHEN:  May I publish side-by-side what's been

8    admitted as Government Exhibit 431K, please?

9           THE COURT:  You may.

10          (Exhibit published to the jury.)

11          MS. CHEN:  If you could go to page three.

12          If we could blow up where it says "application

13   data."

14   Q    Do you see an e-mail listed in the bottom right-hand

15   corner of this culled out box?

16   A    Yes.

17   Q    Can you read that for me, please?

18   A    19960165@qq.com.

19   Q    And is this the same e-mail address that you had just

20   read from Defendant Zhu's Exhibit A?

21   A    Correct.

22          MS. CHEN:  If we could go to the first page now of

23   Exhibit 431K.  Blow up just the upper left portion.

24   Q    Do you see where it says "surname" and "given name"?

25   A    Surname is "Sun" given name is "Hui."

*Shi - Redirect - Lustberg*                                1763

1          MS. CHEN:  Your Honor, may I have one moment?

2          THE COURT:  Yes.

3          (Pause in proceedings.)

4    Q    Just one more thing, Ms. Shi?

5          MS. CHEN:  If we could go to page three of 431K

6    again.

7          (Exhibit published to the jury.)

8          MS. CHEN:  And again, if we could go to application

9    data.

10   Q    Do you see where it says "occupation and employer"?

11        I just marked it.

12   A    Occupation, Government.  Employer, Wuhan Public Security

13   Bureau, Caidian branch.

14   Q    Is Caidain spelled C-A-I-D-I-A-N?

15   A    Yes.

16        MS. CHEN:  No further questions your Honor.

17        THE COURT:  Thank you.

18        Any redirect?

19        MR. LUSTBERG:  Briefly.

20   REDIRECT EXAMINATION

21   BY MR. LUSTBERG:

22   Q    Ms. Shi, you mentioned on cross-examination that you

23   thought that there had been a suggestion from the private

24   investigator to get travel records?

25   A    Yes.

*Shi - Redirect - Lustberg*                                          1764

1  Q    But you never had any conversation with the private

2  investigator, right?

3  A    Either I texted him or called him.  I don't think I ever

4  e-mailed him.

5  Q    So, you think you may have texted or called the private

6  investigator, Mr. McMahon?

7  A    Because I need to tell him what's the potential client

8  need.

9  Q    And, so, your recollection is that you may have had some

10 communication with him and you told --

11          What were the client needs that you mentioned to

12 him?

13 A    Just to locate a particular person but the whereabouts is

14 unknown and need to, you know, locate that person, probably

15 with proof of photos or video.  Yeah, that's it.

16 Q    Again, you never had any e-mail communications with him?

17 A    I don't think so.  I actually searched, but I couldn't

18 find any.

19          MR. LUSTBERG:  Thank you.  Thank you for coming

20 today.  I appreciate it.

21          THE WITNESS:  Can I add something?

22          THE COURT:  Does it relate to a question that he

23 just asked?

24          The only thing is you should only need to add

25 something if you need to correct testimony.  But you don't

1    need to over up additional information.

2            Is there anything that you need to correct about

3    what you said?

4            THE WITNESS:  No.

5            THE COURT:  So, then, hold that thought.

6            Someone can ask a question if they feel like it.

7            MR. LUSTBERG:  I have no further questions.

8            Thank you, Ms. Shi.

9            THE WITNESS:  Thank you so much.

10           THE COURT:  Mr. Tung?

11           MR. TUNG:  Yes.

12           THE COURT:  Redirect.

13   REDIRECT EXAMINATION

14   BY MR. TUNG:

15   Q    Ms. Shi, you just shown with a picture of a person by the

16   name Hui Sun?

17   A    Correct.

18   Q    Do you know that person at any time?

19   A    No, never heard of him.

20   Q    And I'm going to just show you the e-mail.

21           (Exhibit published to the jury.)

22   Q    You see this was e-mail that this was an e-mail that was

23   forwarded to an e-mail address, which the Government just

24   asked you to read.  And the Government pointed out to that

25   person's e-mail is actually Hui Sun's e-mail.

*Shi - Redirect - Tung*                                           1766

1        Now my question to you is back in August of 2016,

2   did anyone tell you who Hui Sun is?

3   A    No.

4   Q    You also testified earlier that you know that it was not

5   actually Mr. Yong Zhu asking you to locate person, it was

6   somebody, maybe a friend or somebody else, is asking Yong Zhu

7   to ask you to help him locate a person; is that correct?

8              MS. CHEN:  Objection.

9              THE COURT:  Overruled.

10             Was it your understanding that someone was asking

11  Mr. Zhu to locate someone?

12             THE WITNESS:  Correct.  The ultimate decision not

13  his.

14             THE COURT:  Go ahead.

15  Q    According to this e-mail, it should be natural for

16  Mr. Yong Zhu to forward what you provided, retainer agreement,

17  proposed retainer agreement, to his contact, correct?

18             THE COURT:  Sustained, sustained.

19             MR. TUNG:  Thank you.  I have no further questions.

20             Thank you very much, Ms. Shi.

21             THE WITNESS:  Thank you.

22             THE COURT:  Recross?

23             MS. CHEN:  No, your Honor.

24             THE COURT:  Thank you very much, Ms. Shi.  You're

25  free to go.

*Brickfield - Direct - Lustberg*                    1767

1          THE WITNESS:  Thank you so much.

2          (Witness excused.)

3          MR. LUSTBERG:  I'll get our next witness.

4          THE COURT:  Do you want to say who that is?

5          MR. LUSTBERG:  Yes.  His name is Paul Brickfield.

6          THE COURT:  If you'll come up to the witness box and

7    remain standing for one moment so we can swear you in.

8          (Witness sworn.)

9          THE COURTROOM DEPUTY:  Please state and spell your

10   name for the record.

11         THE WITNESS:  It's Paul Brickfield P-A-U-L

12   B-R-I-C-K-F-I-E-L-D.

13   **PAUL BRICKFIELD**,

14              called by the Defense, having been

15              first duly sworn, was examined and testified

16              as follows:

17   DIRECT EXAMINATION

18   BY MR. LUSTBERG:

19   Q    Good morning, Mr. Brickfield.

20   A    Good morning.

21   Q    How are you employed, sir?

22   A    I'm an attorney.

23   Q    And are you in private practice or government practice or

24   what?

25   A    I was in government for nine years.  I was an Assistant

*Brickfield - Direct - Lustberg*                    1768

1    U.S. Attorney from '84 to '90.  I was a first assistant county

2    prosecutor in Bergen County, New Jersey, from '90 to '93.

3    From 1993 to the present, I'm a private criminal defense

4    attorney.

5              THE COURT:  So you know that you have to speak

6    slowly and clearly.

7              THE WITNESS:  No problem.  In New Jersey, we speak

8    quicker.

9              THE COURT:  Not here, though.  We're in a no

10   speeding zone.

11             THE WITNESS:  No problem.

12             THE COURT:  Go head.

13   Q    How do you know Michael McMahon?

14   A    I met Michael maybe around 2005, 2007, through another

15   criminal defense attorney named Brian Neary, who introduced me

16   as a very good private investigator.

17   Q    Have you used Mr. McMahon as a private investigator

18   yourself?

19   A    Yes.

20   Q    On about how many occasions?

21   A    Well, from 2005 until 2019 or so, I used him a lot.

22   Q    So, I want to direct your attention to a time period in

23   about August of 2016.

24             Do you remember receiving a call or a communication

25   from someone asking you for a recommendation for a private

1   investigator licensed in New Jersey?

2   A    I received a text.

3   Q    What was the text and what did you do?

4   A    The text was from David Levine, who is a criminal defense

5   attorney right on Court Street across from the courthouse.  I

6   had gotten to know him over 10, 15 years, and he would send

7   work to me in New Jersey and I would send work to him in New

8   York.

9        In this text, he asked me for a private investigator

10  in the Short Hills area of New Jersey.

11  Q    Did he tell you anything about what the case was about?

12  A    He said:  Private investigator.  Short Hills, New Jersey.

13  Q    What happened?

14  A    I gave him Mike McMahon's name and contact information.

15  Q    And why did you do that?

16  A    Mike is good and I thought maybe it could be a piece of

17  work for him.

18  Q    Did you have any idea that the case that he was being

19  referred into had anything to do with China?

20  A    No.

21  Q    Do you have any other insight at all into what the

22  recommendation he was asking you for, what it was about?

23  A    All it said was private investigator and what was -- did

24  I know what the approximate hourly rate was.

25  Q    And did you?

*Brickfield - Cross - Bonomo*                    1770

1   A    I said $100.  That's what I was paying him.

2         MR. LUSTBERG:  Thank you, Mr. Brickfield.

3         I have nothing further of the witness, your Honor.

4         THE COURT:  All right.

5         Mr. Tung or Mr. Goldberger?

6         MR. GOLDBERGER:  No, your Honor.

7         MR. TUNG:  No, your Honor.

8         THE COURT:  Government, cross-examination?

9   CROSS-EXAMINATION

10  BY MS. BONOMO:

11  Q    Good morning, Mr. Brickfield.

12  A    Good morning.

13  Q    I believe you testified on direct that you had previously

14  hired Michael McMahon to work for you.

15  A    Yes.

16  Q    In all the times that you worked with Michael McMahon,

17  did you ever pay him $5,000 in cash at a Panera Bread?

18  A    No.

19  Q    If I also understood your testimony correctly, in

20  August 2016 you were asked by someone named David Levine to

21  provide Michael McMahon's contact information.

22  A    I was asked to provide for a private investigator.

23  Q    And then you understood that David Levine intended to

24  pass that information along to another third party; is that

25  correct?

*Brickfield - Cross - Bonomo*                                    1771

1   A    I don't know.  I don't think it was for himself.

2   Somebody had asked him, I think, yes, I think that's correct.

3   Q    So, you had no involvement in that particular matter

4   beyond that; is that correct?

5   A    That was it.

6           MS. BONOMO:  No further questions.

7           THE COURT:  Thank you, Ms. Bonomo.

8           Any redirect?

9           MR. LUSTBERG:  No, your Honor.

10          THE COURT:  Thank you very much.  You may step down.

11          Probably took you longer to get here than that.

12          THE WITNESS:  It did.  Left at 6:30.

13          Bye, everybody.

14          (Witness excused.)

15          THE COURT:  Mr. Lustberg, do you have another

16  witness?

17          MR. LUSTBERG:  Yes.  His name is Eric Gallowitz.

18  I'll go get him.

19          THE COURT:  Please come up to the witness box and

20  remain standing for a moment so we can swear you in.

21          (Witness sworn.)

22          THE COURTROOM DEPUTY:  Please state and spell your

23  name for the record.

24          THE COURT:  Get close to the microphone and project.

25          THE WITNESS:  Eric Gallowitz.

*Gallowitz - Direct - Lustberg*                    1772

1          THE COURT:  You may inquire, Mr. Lustberg.

2          MR. LUSTBERG:  Thank you, your Honor.

3    **ERIC GALLOWITZ**,

4               called by the Defense, having been

5               first duly sworn, was examined and testified

6               as follows:

7    DIRECT EXAMINATION

8    BY MR. LUSTBERG:

9    Q    Mr. Gallowitz, my name is Larry Lustberg, and I represent

10   Mike McMahon in this matter.

11          We've never met, correct?

12   A    Correct.

13   Q    The first time we've ever seen each other was just a

14   couple seconds ago when I saw you and asked you to come into

15   the courtroom, right?

16   A    That's correct.

17   Q    Sir, how are you currently employed?

18   A    I work for a compliance company and I still own my own

19   private investigative firm.

20   Q    How do you know Michael McMahon?

21   A    I met him in the mid 1990s while we were both working in

22   the NYPD in the narcotics division.

23   Q    So, that leads me to go back a little bit.  If you could,

24   just tell the court and the jury your experience at the New

25   York Police Department.

Gallowitz - Direct - Lustberg                          1773

1   A     Twenty-year veteran of the NYPD.  I was a detective, I

2   was a 9/11 first responder, and retired in 2007.

3   Q     Have you been a private investigator since 2007?

4   A     Yes.

5   Q     What's the name of your private investigative firm?

6   A     Stuyvesant Investigative Group.

7   Q     If you would, could you describe your relationship with

8   Michael McMahon?

9   A     First, it started out as co-workers.  And then he moved

10  on from the narcotics division; I stayed.  I didn't see him

11  for many years.  I heard that he got injured in an accident

12  and had to retire, and I still didn't see him for many years.

13  And then I retired and then eventually found out that he was a

14  private investigator, and that's kind of when we hooked up

15  again.

16  Q     And when you say "hooked up again," in what context did

17  you hook up again.

18  A     At first just talking, friendly.  And then a substantial

19  amount of time went by after that and then we wound up doing

20  some cases together.  He worked for me, I worked for him, that

21  type of thing.

22  Q     Is that common for private investigators, to work with

23  one another on cases?

24  A     Yes.

25  Q     And why is that?

Gallowitz - Direct - Lustberg                    1774

1   A    Because certain cases you need more than one

2   investigator.  And, you know, if you're not a big company, you

3   need to find other investigators.

4   Q    Before today -- you see Mr. McMahon here today, don't

5   you?

6   A    I do.

7   Q    Before today, have you seen him since his arrest?

8   A    No.

9   Q    Have you spoken to him since his arrest?

10  A    No.

11  Q    You said that you worked on some cases with him as a

12  private investigator.

13          What types of activities did you engage in with him

14  on the cases that you worked with before the case that we're

15  going to talk about beginning in 2016?

16  A    Some surveillance.  Maybe once we did interviews.  Not

17  many times, a few times.

18  Q    In addition to the surveillance that you did, was that

19  surveillance covert or overt?

20  A    Covert.

21  Q    And just if you could explain to the jury, what do you

22  mean when you say -- and I used the word, but what does

23  "covert" mean?

24  A    You can perform a surveillance without the person, the

25  subject, knowing that you're looking at them.

1  Q    Were there times when there's overt surveillance?

2  A    There could be, yes.

3  Q    Have you ever done that?

4  A    I don't recall.

5  Q    Is there anything else as a private investigator that you

6  do other than surveillance or that you have done with

7  Mr. McMahon other than surveillance?

8  A    Database checks, background-type stuff.

9  Q    And when you say "database checks," how do you do

10  database checks, Mr. Gallowitz?

11  A    Well, there are proprietary databases that exist that you

12  have to either be law enforcement or a private investigator or

13  some other type of professional to gain access to these

14  databases.

15

16         (Continued on the following page.)

17

18

19

20

21

22

23

24

25

*Gallowitz - Direct/Mr. Lustberg*                    1776

1    EXAMINATION BY

2    MR. LUSTBERG:

3    (Continuing.)

4    Q    So do you recall being contacted --

5         Directing your attention to the time period around

6    October 2016 and I understand it's a while ago.

7         Do you recall being contacted by Mr. McMahon with

8    regard to working with him on an investigation at that time?

9    A    I don't recall exactly when he contacted me, no.

10   Q    Okay.  But do you recall -- whenever it was -- being

11   contacted to work on a matter with him that involved

12   surveillance in New Jersey?

13   A    Yes.

14   Q    Okay.  Do you know what the purpose of that

15   investigation was?

16   A    You know, surveillance in general is to locate somebody

17   so that's what the purpose was.

18   Q    Okay.  Did Mr. McMahon share with you anything further

19   about the purpose of this investigation other than that it

20   was -- the purpose was to locate somebody?

21   A    I recall that at some point he informed me that there

22   was an Interpol warrant for an individual that he was hired

23   to look for.

24   Q    Okay.  And let me --

25        And do you recall when he told you that, and if you can

*Gallowitz - Direct/Mr. Lustberg*                    1777

1    you don't I can refresh your recollection, your responses

2    would "wow."

3        Do you remember that?

4    A    No.

5    Q    So this is, my awesome colleague here is going to show

6    you what's in evidence as Government Exhibit 4019-B, Page 1.

7            THE COURT:  So just for the witness.  Let me tell

8    you, sir, that you should just read it to yourself and the

9    question will be:  Does it refresh your memory?

10           MR. LUSTBERG:  This document is in evidence, your

11   Honor.

12           THE COURT:  I'm sorry.  Go ahead.  My apologies.

13   Sorry about that.

14           Couldn't Ms. Conti do it from the table?  It just

15   seemed a little crowded up there.

16           MR. LUSTBERG:  The reason is because...

17           THE COURT:  That's okay, you don't have to tell

18   me.  Just go ahead.

19           MR. LUSTBERG:  I think you probably know.

20   EXAMINATION BY

21   MR. LUSTBERG:

22   (Continuing.)

23   Q    So -- see if you can blow that up --

24        So an e-mail from Mr. McMahon to you that says, "TLO

25   says he wanted by Interpol.  Wow."

*Gallowitz - Direct/Mr. Lustberg*                    1778

1    First of all what's TLO, Mr. Gallowitz?

2    A    That's one of the proprietary databases that I spoke

3    of.

4    Q    Okay.  Why was your response wow?

5    A    Atypical of private investigators doing that type of

6    work.

7    Q    And, did it give you concern that there was something

8    wrong with doing the surveillance that you were doing?

9    A    No.

10   Q    Why not?

11   A    Just to my recollection, we're just trying to locate

12   the person.

13   Q    Okay.  Do you know --

14        Do you recall that Mr. McMahon also showed you a wanted

15   poster with that person's -- with the person on it?

16   A    I don't recall exactly, no.

17   Q    Let me show that to you.  That's the same exhibit which

18   is in evidence.  Exhibit 4019-B at Pages 3 and 4.  And

19   Ms. Conte will pull that up because I'm not able to do that

20   myself.

21        So you can just blow that up a little bit more.

22        This is an e-mail from Mr. McMahon to you, can you see

23   it?  I'm going to blow up that little picture.

24   A    I see it.

25   Q    If you could now go to the next page.  Sorry, the

Gallowitz - Direct/Mr. Lustberg                1779

1    computer is a little slow.  Sorry, we're working on it.

2    Apologize for the delay.  There we go.  Okay.

3         Do you recall seeing this wanted poster, Mr. Gallowitz,

4    at that time?

5    A    Now that I look at this, yes, it refreshes my memory.

6    Q    When you saw that there was an Interpol warrant and

7    that, in this wanted poster, did you have any

8    concern -- well, did it cross your mind that you might be

9    working for the People's Republic of China?

10   A    Absolutely not.

11   Q    By the way, had you ever done any investigations before

12   where the subject of the investigation was wanted by some

13   law enforcement somewhere?

14   A    I don't recall.

15   Q    Have you ever heard of Operation Sky Net?

16   A    No.

17   Q    Have you ever heard of Operation Fox Hunt?

18   A    No.

19   Q    Okay.  I want to show you, this is Page 2, the next.  I

20   want to show you another...

21        Okay.  This is an e-mail from Mr. McMahon to you that's

22   in evidence that's Government Exhibit 4019-B, Page 2.  And

23   following the e-mail regarding the Interpol warrant,

24   Mr. McMahon says to you, "Bring your gun."

25        Do you remember receiving that?

1    A    I do now.

2    Q    So does this refresh your recollection, then, that

3    Mr. McMahon said, "Bring your gun"?

4    A    Yes.

5    Q    Okay.  If we could go to the next page.  I want to ask

6    you what you meant by your response and I apologize again

7    for the delays here, it's just a little slow.

8         Your response, Mr. Gallowitz, was, "You bring your gun.

9    That's a given with me SCU hero."

10        So I want to understand what you meant by that.  First

11   of all, what does "SCU" refer to?

12   A    N.Y.P.D. Street Crime Unit.

13   Q    Okay.  And when you say, "You bring your gun.  That's a

14   given with me SCU hero," what did you mean?

15   A    I was making a joke.  The reality is, I always carry my

16   gun when I'm working and I was making a joke.

17   Q    What was the joke?

18   A    The joke was you carry your gun, don't worry about me.

19   Q    What's the reference to "SCU hero"?

20   A    I know Mike McMahon to be a highly decorated police

21   officer, detective sergeant from the N.Y.P.D., and I know he

22   had some heroic moments in the Street Crime Unit.

23   Q    If we could go to the next one.  There's one more

24   question about this series of e-mails.

25        So Mr. McMahon says, "LOL."

*Gallowitz - Direct/Mr. Lustberg*                    1781

1    Next one.  And you say, "Combat pay," with four

2  exclamation points.

3    What did you mean by that?

4  A    I was making another joke.  I knew Mike would never --

5  Mike McMahon would never pay me anything extra, so I was

6  making a joke about combat pay when he said I should bring

7  my gun.

8  Q    Okay.  I want to show you -- this is what we're

9  marking?  Okay.

10    So what has been premarked as Defense Exhibit BBB

11  which, for the Government, is Exhibit 4019 Pages 34 to 42.

12        THE COURT:  So why don't we make it McMahon

13  Exhibit BBB.

14        MR. LUSTBERG:  Thank you, your Honor.

15        (McMahon Exhibit BBB was marked for

16  identification.)

17        Show this just to the witness and counsel, please.

18  Q    This is an e-mail from E. Gallowitz at

19  Stuyvesantinvestigative.com.

20    That's you?

21  A    Yes.

22  Q    To Mr. McMahon dated October 15, 2016.  If we could go

23  to the attachment.

24        THE COURT:  Mr. Lustberg, you should ask the

25  witness if he knows.

*Gallowitz - Direct/Mr. Lustberg*                    1782

1          Do you remember this document?

2          MR. LUSTBERG:  I want to show him the real

3   document that's the attachment.

4          THE COURT:  I want to avoid having you testify

5   about the document.

6          MR. LUSTBERG:  Right.

7   Q    So now, I'm showing you the attachment.  Do you

8   recognize this document?

9   A    I recognize it as a document from Skip Smasher which is

10  another proprietary database.

11         THE COURT:  Did you say that Skip Smasher?

12         THE WITNESS:  Skip Smasher, which is a proprietary

13  database.

14  Q    Okay.  And what kind of data is available on

15  Skip Smasher?

16  A    Used primarily to locate people.

17  Q    Okay.  And do you remember -- do you remember doing

18  a -- let me ask you this way.

19     Do you remember doing a -- performing a Skip Smasher

20  query or any work on Skip Smasher with regard to the matter

21  that you and Mr. McMahon were working on at that time?

22  A    It's possible but I don't have an independent

23  recollection of it, no.

24  Q    So leaving aside independent recollection.  When you

25  look at this document, and you can flip through it if you

1   want, we share different pages.

2       My question is:  Does that refresh your recollection

3   that you did a skipsmasher.com Super Trace Report at that

4   time?

5   A    If there are more pages, I would like to see them.

6   Q    Sure.

7   A    Continue.  Wait.  Hold on.  Back up.

8           THE COURT:  You have very good eyesight.

9           THE WITNESS:  It's blurry even with my glasses on.

10          Can you push that up a little?  I can see the

11  bottom of it.

12  Q    Is it a little better now?  Okay.  Sure.

13  A    Next page.  You can keen going.  I'll ask you to stop

14  if there is any reason but is there more?

15  Q    That was the Skip Smasher report.

16  A    So repeat the question.

17  Q    The question was:  Do you recall looking at this and,

18  in particular, looking at the e-mail, the cover e-mail to

19  Mr. McMahon that it was attached to.

20      Does that refresh your recollection as to your doing a

21  Skip Smasher report back in 2016?

22          THE COURT:  I'm going to sustain it to form.  The

23  simply question is?  Does looking at what's displayed in

24  front of you without new characterization of what is it is

25  by the defense, okay, I'm saying that to the jury mostly

1    disregard the question.

2             Looking at what's been shown to you, does that

3    refresh your memory about whether you ran a Skip Smasher

4    inquiry in connection with your work with Mr. McMahon?

5             THE WITNESS:  It's very possible that I did, but

6    from seven years ago I can't tell you I remember running it,

7    no.

8    Q    Let me ask you about another one.

9         Do you remember doing a search on something called

10   NJ Parcels, I'm sorry, njparcels.com?

11   A    No, I do not recall that.

12   Q    Okay.  Let me show you a document and see if it

13   refreshes your recollection.

14            COURTROOM DEPUTY:  What's that marked as?

15            MR. LUSTBERG:  It would be marked as defendant

16   McMahon Exhibit CCC.

17            We can, if you need us to, zoom if we can.

18            This is partially redacted as you can see.

19   Q    Do you need us to zoom in on this?

20   A    No.  Your question is?

21   Q    Does this refresh your recollection that you depend a

22   search of njparcel.com?

23   A    No, it does not.

24   Q    Do you recall that database?

25   A    I do not.

*Gallowitz - Direct/Mr. Lustberg*          1785

1    Q    Okay.

2    A    My guess would be that's an open source database.

3    Q    What does that mean, open source?

4    A    That anybody can run it.

5    Q    So going back to October 2016, do you recall doing

6    surveillance of a location in Short Hills, New Jersey with

7    Mr. McMahon?

8    A    I recall doing surveillance with Mr. McMahon.

9    Q    In October 2016?

10   A    Yes.

11   Q    Do you remember anything about it?

12   A    Not specifically, no.

13   Q    Okay.  Let me ask you this.

14       Do you have any recollection of either you or

15   Mr. McMahon calling the local police to inform them that you

16   were doing surveillance at that time?

17   A    I recall Mr. McMahon calling me on my cell phone while

18   we were doing surveillance to ask me for my vehicle type and

19   plate number so he could let the local police know that we

20   were present in the area conducting a surveillance.

21   Q    Okay.  And that's something that you specifically

22   recall?

23   A    I do, yes.

24   Q    Okay.  Do you remember doing during the surveillance in

25   2016 whether you actually saw the subject that you were

1  seeking to surveil?

2  A    To my recollection, we didn't see anybody.

3  Q    Okay.

4  A    To my recollection.

5  Q    Thank you.

6       Now, we're going to skip ahead.  And directing your

7  attention to the following year, in April 2017, do you

8  recall doing additional surveillance with Mr. McMahon at

9  that time?

10 A    Yes.

11 Q    And do you remember how many days you worked with him

12 at that time?

13 A    I believe it was two.

14 Q    Okay.  So I assume you don't remember the specific

15 dates?

16 A    No.

17 Q    Okay.  I'm going to just see if I can refresh your

18 recollection with a document that's in evidence which is

19 Government Exhibit 3095.

20          MR. LUSTBERG:  And, your Honor, since this is in

21 evidence I think we can -- I would like to ask him a few

22 questions about it.

23          THE COURT:  Go ahead.

24          MR. LUSTBERG:  Okay.  Thank you.

25 Q    Can you see that, Mr. Gallowitz, on your screen there?

Gallowitz - Direct/Mr. Lustberg                1787

1    A    I can.

2    Q    Do you recognize that document?

3    A    I do.

4    Q    What is it?

5    A    That's an invoice from my company to Mr. McMahon's

6    company.

7    Q    And let me just ask about that.

8        So when you did this surveillance with Mr. McMahon, he

9    would pay you -- he would pay you, correct?

10   A    His company would pay me, yes.

11   Q    Right.  As opposed to his client, whoever that was,

12   paying you, right?

13   A    Correct.

14   Q    Okay.  So looking at this, does it refresh your

15   recollection that the dates, the two dates, that you worked

16   with Mr. McMahon were April 5, 2017, and April 10, 2017?

17   A    Yes.

18   Q    Okay.  Do you recall during that surveillance whether

19   you, you or Mr. McMahon, called the local police?

20   A    I do not recall.

21   Q    Okay.  Let me show you a document to try to refresh

22   your recollection?

23            THE COURT:  Just for the witness?

24            MR. LUSTBERG:  Yes, just for the witness.  We'll

25   mark this McMahon Exhibit DDD for identification.

*Gallowitz - Direct/Mr. Lustberg*                    1788

1        THE COURT:  Does the Government have a copy?

2        MR. LUSTBERG:  These are all part of -- this is

3   all part of government --

4        THE COURT:  I want to make sure they know what

5   you're showing to the witness.

6        MR. LUSTBERG:  For the record, it was Government

7   Exhibit 4019-B, Pages 25 to 28.  I'm sorry.

8        This is our mistake.  This actually is in evidence

9   so we can show it.

10        THE COURT:  All right.

11        MR. HEEREN:  Can you just give the exhibit and

12   page number again?

13        MR. LUSTBERG:  Of course.  Government

14   Exhibit 4019-B, Pages 25 to 28.

15        THE COURT:  He was just shown that a few minutes

16   ago.

17        So everyone agrees that that page of that exhibit

18   is in evidence, correct?  Because I know part of that was

19   shown a minute ago.  It's a series of messages, I gather.

20        MR. HEEREN:  Just for the sake of clarity, yes,

21   that is in evidence.

22        THE COURT:  Go ahead.  You can publish that.

23   Q    So this is an e-mail I believe it's from you to

24   Mr. McMahon saying, "Call local P.D., let them know we're

25   out there."

*Gallowitz - Direct/Mr. Lustberg*          1789

1    Do you see that?

2    A    Yes.

3    Q    Let me read it better.

4    "Call local P.D., let them know we are out there."

5    And go to the next page.

6    Mr. McMahon says, "Yes, for sure."  He asks again for

7    plate number and vehicle type.

8    And that plate number and vehicle type does that

9    describe your vehicle, sir, at that time?

10   A    At that time and currently, yes.

11   Q    Does that refresh your recollection that the second

12   time around, and just for the record, the dates on that is

13   4/4/2017, you said that you did surveillance with

14   Mr. McMahon on 4/5/2017 is that your recollection that there

15   was discussion about making sure local law enforcement would

16   be called?

17   A    Yes.

18   Q    Was the surveillance that you did on those days in

19   April of 2017 overt or covert?

20   A    To my recollection, covert.

21   Q    Okay.  Let me show you what's in evidence as Government

22   Exhibit 4019-B, Pages 36 to 39.

23   This is an e-mail on April 5, 2017, when you testified

24   you were doing surveillance with Mr. McMahon in which

25   Mr. McMahon tells you that car his friend is driving keeps

*Gallowitz - Direct/Mr. Lustberg*                    1790

1    driving by.

2         Do you have a recollection of that exchange?

3    A    Not really, no.

4    Q    Okay.  So you don't know what you understood that to

5    mean at that time?

6    A    No.

7    Q    Okay.  Go to the next one.  This is an e-mail from you

8    to Mr. McMahon saying, "Dump."

9         Go to the next one.

10        Mr. McMahon says, "Ass."

11        And you say, "Dumb."

12        Do you have any recollection -- does that refresh your

13   recollection at all as to that exchange?

14   A    I vaguely recall it now looking at this but I don't

15   recall the actual incident.

16   Q    Okay.  So do you know what you meant by dump and then

17   dumbass?

18   A    Bad spelling, first of all.  And then I corrected

19   myself.  I mean, just in general, from doing surveillance in

20   general, you know, you don't want anybody else out there

21   that doesn't need to be out there.

22   Q    What do you mean by that?

23   A    You know, if I'm hired to do a surveillance, I don't

24   want to deal with anybody else either interfering with that

25   surveillance or anything like that.

Gallowitz - Direct/Mr. Lustberg                    1791

1    Q    Or doing their own surveillance?

2    A    Essentially.

3              MR. HEEREN:  Objection, your Honor.

4              THE COURT:  Overruled.

5              THE WITNESS:  Potentially.

6    Q    Okay.  I want to go to -- actually, let's go to the

7    next page.

8         This is an e-mail from you to Mr. McMahon saying you

9    trust them?

10        Do you remember asking him that?

11   A    This refreshes my memory.

12   Q    What did you -- what were you asking there?

13   A    If he trusted his client.

14   Q    Okay.  And his response is?

15   A    He says no.

16   Q    Okay.  And your response to that is?

17   A    I responded:  "Me either."

18   Q    Why was that?

19   A    There was a lot of, you know, something was atypical

20   here with the whole Interpol warrant.  That was in October

21   of '16 and now we're in April of '17 which just the whole

22   thing is atypical.

23   Q    Okay.  Did you think we're talking about not trusting

24   them?  Did it cross your mind that you were doing work for

25   the People's Republic --

*Gallowitz - Direct/Mr. Lustberg*                    1792

1            THE COURT:  Sustained.

2            MR. LUSTBERG:  Your Honor, I'm asking him for

3    state of mind.

4            THE COURT:  Let's have a quick sidebar.

5            (Continued on the next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Sidebar*                                                          1793

1          (Sidebar held outside the presence of the jury.)

2          THE COURT:  My issue is more so leading.  You're

3    treating him not as a direct witness.  He said he thought it

4    was atypical you can ask him how but you want him to

5    specifically address whether he ever suspected they were

6    working for the Chinese government.

7          MR. LUSTBERG:  Your Honor, respectfully, I don't

8    think that's leading at all.  He can answer that no.  I'm

9    not trying to get him to -- I'm certainly not trying to lead

10   him to say yes.  I'm not saying:  Is it correct?  I'm asking

11   him what it is, you know, I mean, that's atypical.  It's not

12   just that helpful to anybody.

13         I want to understand what it is, as far as the

14   relevance to this case, I would note the Government has -- I

15   get that the Court can do its own objections -- but, to me,

16   the question of whether when he said "atypical," that meant

17   that he thought they're -- I can ask it that way.  Atypical

18   that you thought you were working for the Chinese

19   government.

20         THE COURT:  How about:  How did you think it was

21   atypical?  Remember he's your witness.

22         MR. LUSTBERG:  I understand.  I'm not.

23         THE COURT:  Let me do this.  Ask the how question

24   and then you can ask your other question if he says

25   something different.

*Sidebar*                                                    1794

1          MR. LUSTBERG:  Okay.

2          THE COURT:  But, again, it's really a form issue

3    and I understand, I really do.

4          So go ahead and ask.  I'll let you ask those

5    questions.

6          Go ahead.

7          (Sidebar discussion concludes.)

8          (Continued on the next page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Gallowitz - Direct/Mr. Lustberg*                    1795

1          (In open court.)

2     EXAMINATION BY

3     MR. LUSTBERG:

4     (Continuing.)

5     Q    Mr. Gallowitz, you answered my prior question by saying

6     that this when you said you didn't trust them you said it

7     was because informs atypical.

8          Do you remember you said that?

9     A    Yes.

10    Q    And you said it was atypical because there was an

11    Interpol warrant, right?

12    A    As well as October and then again April.

13    Q    What do you mean October and then in April?

14    A    Did one surveillance in October and then I had no

15    connection to anything going on between October and April

16    and then again in April.

17    Q    So I just want to understand what's atypical about

18    that?

19    A    Surveillances that I've worked on in the past don't

20    last that long.

21    Q    Okay.  Well, did you know whether there have been any

22    surveillance between October and April?

23    A    Not to my recollection, I did not know.

24    Q    And so, my question is:  When you said it was atypical,

25    did you understand it to be unlawful in any way?

*Gallowitz - Direct/Mr. Lustberg*                1796

1  A    No.

2  Q    Okay.  And, in particular, did you understand that to

3  have anything to do with working for the Government of

4  China?

5              MR. HEEREN:  Objection, your Honor.

6              THE COURT:  Overruled.

7  A    No.

8  Q    Okay.  I want to ask you about another exchange, this

9  is in evidence as Government Exhibit 4019-B beginning on

10 Page 43.

11      This is a text exchange between you and Mr. McMahon on

12 April 6th which was the day after you did surveillance with

13 him; do you see that?

14 A    Yes.

15 Q    Okay.  And you asked him how did it go?

16 A    Yes.

17 Q    And Mr. McMahon says:  "Great."  Let me take you

18 through this.  There actually will be a question at the end.

19      And Mr. McMahon says:  "Got'em."

20      And you say:  "Cool."

21      Can I ask -- let me stop there before we go, what did

22 you understand him to mean by "got'em"?

23 A    He located the subject.

24 Q    Mm-hmm, okay.

25      And you said -- and why did you say "cool"?

1   A    Congratulating him.

2   Q    Okay.  Mr. McMahon says:  "And."  Rather, you said,

3   "And."  Sorry, you're agreeing.

4        Mr. McMahon says:  "Very evasive maneuvers.  Followed

5   him an hour away and got where he's living."

6        What did you understand that to mean?

7   A    Pretty self-explanatory.  He followed him and found out

8   where he's living.

9   Q    Keep going.

10       You say:  "Nice."  You say:  "And."

11       Mr. McMahon says:  "Client very happy."

12       By the way, did you know who his client was?

13  A    No.

14  Q    Mr. McMahon says:  "Home now."

15       Now, if we could just go to Page 55.  Actually, let's

16  go back.

17       You ask:  "Further surveillance."  What were you asking

18  about, your own involvement or what were you asking about

19  there?

20  A    Yeah, I was asking about if there would be further

21  surveillance where I would be...

22  Q    Okay.  Next.

23       Mr. McMahon says, "Not sure, waiting far a call."

24       And this is the e-mail I want to ask you about.

25       "Yeah from New Jersey State Police about an abduction."

*Gallowitz - Direct/Mr. Lustberg*                      1798

1      What did you mean by that?

2  A    So I'm that guy, the guy who tells the crude joke, says

3  inappropriate things, and that's what that is.  That's a

4  joke.

5  Q    What did you mean by it?

6  A    I don't recall what I meant by it, I was making a joke.

7  Q    I'm trying to understand why you know talking about an

8  abduction would be a joke?

9  A    Dark police humor, the only thing I can explain.

10 Q    And Mr. McMahon says:  "LOL, right?"

11 A    Because he knows me and he laughed, yes.

12 Q    Okay.  I just want to go through one more set of these

13 texts with you.  These are in evidence beginning on page --

14 Exhibit 4019 and, I'm sorry, Government Exhibit 4019-B,

15 Page 63.

16     By the way, you took some pictures while you were doing

17 surveillance with Mr. McMahon?

18          THE COURT:  Did you take any pictures?

19          THE WITNESS:  At some point, yes.

20 Q    Okay.  Mr. McMahon says:  "They're thinking of what to

21 do.  They're hoping his father convinces him to return the

22 money."

23     Did you understand what that meant?

24 A    That his client is thinking of what to do.

25          THE COURT:  The question, though, more properly,

*Gallowitz - Direct/Mr. Lustberg*                    1799

1   is do you recall what that was about, not are you

2   interpreting the text message as you're sitting here.

3          THE WITNESS:  I don't recall this, no,

4   independently from pack then.

5   Q    Let me show you a little bit more to see if it

6   refreshes your recollection.  Let's go to the next one.

7          You say:  "LOL, ROFL."

8          Next.  Another LOL.  Okay.

9          This is an e-mail from you to Mr. McMahon that says

10  maybe overt surveillance in their face, sit in front of

11  house, pictures, video, scared them.

12         By the way this, is written by you to Mr. McMahon,

13  correct?

14  A    Yes.

15  Q    Okay.  And do you recall it?

16  A    I don't recall doing it at the time, no.  I see it now

17  and it's definitely me.

18  Q    Okay.  Does that -- it doesn't refresh your

19  recollection as to having a communication with Mr. McMahon

20  about this possibility?

21  A    I wrote the e-mails, so I'm not going to say I didn't

22  write the e-mail, yes.

23  Q    Okay.  Do you remember what Mr. McMahon's response was?

24  A    No.

25  Q    Okay.  Well, let me show you.

*Gallowitz - Direct/Mr. Lustberg*          1800

1        MR. HEEREN:  Your Honor, just for the sake of the

2   record, I believe we've been referring to these as e-mails.

3        MR. LUSTBERG:  I'm sorry.  That's completely

4   correct.  These are text messages.  Thank you.

5   Q    Mr. McMahon says:  Yeah, possibly.  We did that in

6   Little Ferry."

7        Do you know what he's referring to there?

8   A    No.

9   Q    Keep going.  Not sure it worked.  Do you remember this

10  exchange with Mr. McMahon?

11  A    No.

12       THE COURT:  Hang on.  That's from Mr. McMahon to

13  the witness?

14       MR. LUSTBERG:  Yes.

15       THE COURT:  Okay.  Go ahead.

16  Q    Do you remember him saying that?

17  A    Only by looking at the e-mail.  I mean, the text, I'm

18  sorry.

19  Q    So you have no independent recollection of having a

20  communication with Mr. McMahon about whether surveillance

21  should become overt?

22  A    I obviously wrote the e-mail.  So, I mean, do I

23  remember doing it from six years ago, no.

24  Q    Okay.  Did you ever switch over from covert to overt

25  surveillance?

*Gallowitz - Direct/Mr. Lustberg*                    1801

1    A    I did not.

2    Q    Okay.

3              THE COURT:  At that time?

4              THE WITNESS:  At any time.  I did not.

5              THE COURT:  Okay.

6    Q    At any time in this matter, with regard to this

7    surveillance, did you ever switch over from going from

8    covert surveillance to overt surveillance with regard to

9    this particular matter that you were working with

10   Mr. McMahon on?

11   A    Not to my recollection, no.

12   Q    Well, if you -- you're saying, "Not to your

13   recollection."  If you had gun to overt, you would have

14   recalled that, wouldn't you?

15             MR. HEEREN:  Objection.

16             THE COURT:  Overruled.

17             Would you have recalled that?

18             THE WITNESS:  Possibly.

19   Q    At any point, did Mike McMahon give you any indication

20   that he understood that he was working for the Chinese

21   government?

22   A    Never.

23   Q    Did he give you any indication that he thought he was

24   working on a criminal matter?

25   A    Showing me an internet [sic] warrant, I mean, if there

*Gallowitz - Direct/Mr. Lustberg*                    1802

1   is some criminality involved, yes.

2   Q    Did he share with you that he was -- that he thought he

3   was working to on that criminal matter?

4   A    I was shown an Interpol warrant, I believe, or

5   something from TLO that he was wanted.  And apparently, that

6   was the person we were looking for.

7   Q    Did you have any understanding one way or the other as

8   to whether you were looking for him for purposes of that

9   criminal matter or to recover money from him or any other

10  purpose?

11            MR. HEEREN:  Objection, your Honor.

12            THE COURT:  Sustained as to form.

13  Q    Did you understand what the purpose of the surveillance

14  was?

15  A    To locate this individual.

16  Q    And did you know what the purpose of locating the

17  individual was?

18  A    No.

19  Q    Okay.

20

21            (Continued on the next page.)

22

23

24

25

Gallowitz - direct - Lustberg                1803

1    BY MR. LUSTBERG:  (Continuing)

2    Q    At any point, did you believe that what you were doing

3    was harassing anyone?

4    A    Not at all, no.

5    Q    Why not?

6    A    Done dozens and dozens of surveillances the same way.

7    Q    Just two other questions.

8              How much, Mr. Gallowitz, if you recall, did you earn

9    doing surveillance for Mr. McMahon in this matter?

10   A    I don't recall.

11   Q    Let's show you, it's Exhibit, it's in evidence,

12   Exhibit 3095.

13             Do you see that?  I don't know if you can read it.

14   A    I can read it.

15   Q    Okay.  Was this how much you got paid?

16   A    Well, that was the total invoice.  I actually got paid

17   1,120.  The rest of it was expenses.

18   Q    Okay.  Were you paid by check or by cash?

19   A    Check.

20   Q    Have you ever received cash from clients in the course of

21   your business?

22   A    Yes.

23   Q    Is there anything wrong with that?

24   A    No.

25             MR. LUSTBERG:  That's all I have right now.  Thank

Proceedings                                      1804

1   you.

2          THE COURT:  Thank you very much.

3          Why don't we take our morning break right now.  It's

4   11:15 so let's be ready to begin again at 11:30.

5          Don't talk about the case.  Don't do any research.

6   Keep an open mind.

7          (Jury exits.)

8          THE COURT:  Okay.  The witness can step down and

9   you're excused from the courtroom.

10         (Witness steps down.)

11         THE COURT:  We'll reconvene at 11:30, everyone --

12  actually, you know what?  Have a seat, folks, just for one

13  second.  I want to clarify something for the record.

14         I assume I perhaps misunderstood the exhibit but I

15  just want to make sure that the record isn't incorrect.

16         Mr. Lustberg, you asked some questions regarding the

17  "Wow" conversation and that's part of Exhibit 4019B.  When I

18  looked at the document, it appeared that it was Mr. McMahon

19  who said "Wow," but the government didn't object, and then the

20  answer came in that, essentially, the positive answer but it

21  was really phrased in the question that the witness was the

22  one who said "Wow," but he affirmed that.

23         So I don't know why the government didn't object but

24  that seems incorrect just looking at the document.

25         MR. HEEREN:  It was.  I missed it at the moment,

Proceedings                                    1805

1    Your Honor.

2              THE COURT:  Well, so I would suggest that somebody

3    correct it for the record.

4              MR. LUSTBERG:  I'm happy to get up and correct that

5    before cross.

6              THE COURT:  You may want to just so it doesn't

7    appear you were trying to misrepresent what the record was,

8    but I was scratching my head the whole time thinking I was

9    misreading the exhibit.

10             MR. LUSTBERG:  Okay.

11             MR. HEEREN:  Your Honor, one other very brief thing.

12   Sorry.

13             THE COURT:  Yes.

14             MR. HEEREN:  I just want to note Mr. Gallowitz

15   testified about his opinion that the defendant is heroic and

16   highly decorated and I believe he opened the door to some

17   inquiry related to character based on that.  That would be

18   relevant to that.  I think that that goes directly to

19   questions, particularly since it's been the highlight of the

20   defendant's case, about his understanding of the defendant's

21   character as it relates to issues like his professionalism and

22   experience at the NYPD.  And so, so as not to surprise the

23   Court, the questions I would intend to ask would be about, in

24   particular, two substantiated CCRB violations that involve

25   substantiated findings of abuse of process and a finding of

Proceedings                                              1806

1   lack of credibility in testimony.

2          MR. LUSTBERG:  So, Your Honor, we have -- obviously,

3   I object.  We have received no notice of this, not that -- of

4   course, the government can --

5          THE COURT:  Right.

6          MR. LUSTBERG:  But after openings, at least, you

7   know, they were on notice that that was at least part of the

8   defense.  I really don't -- I don't think it's appropriate.  I

9   think it's, like, such a sandbagging to tell us now about it,

10  and we have, we've never received any discovery on this at any

11  time.  It's -- and I mean I think this is -- it's obviously a

12  critical issue.

13         The Court has allowed in a good deal of evidence

14  about other unlawful acts including taxes, and all of that, I

15  think, is fair game, but I don't know the facts of this, of

16  these incidents.  I don't have records of them.  I have no way

17  of making an argument to the Court as to whether they've, in

18  fact, satisfied Rule 403 and whether that's appropriate

19  Rule 608(b) cross-examination.  I feel like at this late date

20  to raise those kinds of issues as to which we've had no notice

21  is completely unfair.

22         THE COURT:  Well, I think the, as a starting point,

23  part of the problem, I suspect, is that the witness didn't

24  give standard kind of character evidence which should be in

25  the form of reputational or reputation for some positive trait

Proceedings                                          1807

1   and typically it relates to truthfulness or untruthfulness.

2         Really what he said was he's a good, he was a good

3   cop, right?

4         MR. HEEREN:  Heroic, a heroic cop and a highly

5   decorated cop.  And respectfully, Your Honor, the rule does

6   permit opinion testimony on any pertinent character trait.

7         THE COURT:  Right.

8         MR. HEEREN:  So it's not just credibility.  There's

9   a whole separate rule, of course, for credibility and

10  truthfulness.

11        THE COURT:  Right.

12        MR. LUSTBERG:  Judge, just to put this in context,

13  the questioning had to do with an e-mail that the government

14  put into evidence which referred to an SCU hero, where

15  Mr. Gallowitz is addressing Mr. McMahon as SCU hero.  It's

16  about whether they should take their guns.  I asked him to

17  interpret what was meant by SCU hero.

18        I should tell you -- I mean, I did not prepare -- I

19  think it's obvious.  I did not have an opportunity to prepare

20  this witness.

21        THE COURT:  Right.

22        MR. LUSTBERG:  He would not meet with me, so it

23  wasn't like, you know, he was laying in wait to give that

24  answer at my instruction, but it was explaining a particular

25  phrase in a particular text -- if I'm stating it wrong, I

Proceedings                                          1808

1    apologize -- that the government introduced.

2          THE COURT:  I don't think that's what the government

3    is referring to.  So the witness said, I made a joke, and I

4    think he might have been referring to himself as a Street

5    Crime Unit hero but it was unclear, but in the beginning of

6    his testimony when you asked him how he knew the --

7          MR. LUSTBERG:  No, that -- I'm sorry, Your Honor.

8    That isn't correct.

9          He answered the question in response to my specific

10   question, What was meant by SCU hero.  We can check the

11   transcript but it was not at the beginning when I asked him

12   how he knew him.  It was in connection with that specific text

13   message.

14         THE COURT:  We can go back.  I don't know if he used

15   the word "hero" at the beginning of his testimony, but I do

16   think he said, in a sense, he vouched for him being a very

17   good officer.

18         MR. LUSTBERG:  He didn't.

19         THE COURT:  Well, no, that I distinctly heard.

20         MR. LUSTBERG:  Judge, he said that he knew him from

21   the drug unit.  There was no opinion expressed as to whether

22   he was or wasn't a good officer, I don't think.  We can look

23   at the transcript but I don't, I don't have -- I don't recall

24   that.  I think this was all in response to questions regarding

25   the text message that the government put in evidence regarding

Proceedings                                                      1809

1    an SCU hero.

2            MR. HEEREN:  Your Honor, I believe that -- again, we

3    can check the transcript, obviously, but I believe the

4    question was, and how did -- it surrounded his understanding

5    of why Michael McMahon would know that he was joking in that

6    circumstance, and I believe his answer and why he was

7    referring to that is because he was a highly decorated police

8    officer --

9            THE COURT:  Right.

10           MR. HEEREN:  -- who engaged in, I believe he said

11   heroic acts while he was a street crime officer.

12           THE COURT:  Weren't there also references at the

13   beginning part of his examination about -- here it is.  I see

14   it now.  Sorry.  I'm looking at the transcript.

15           "I know Mike McMahon to be a highly decorated police

16   officer, detective sergeant from the NYPD, and I know he had

17   some heroic moments in the Street Crime Unit."  And that is in

18   the context of when you asked him about why you reference SCU

19   hero.  So he was saying he made a joke and that he was

20   basically saying that he knows Mike to be a decorated officer

21   with heroic moments.

22           I mean maybe you didn't intend to elicit the answer

23   but it came out as essentially a character reference for him.

24           MR. LUSTBERG:  Your Honor, either way, the point is

25   that if there are, if there were CCRB proceedings against

Proceedings                                                    1810

1  Mr. McMahon, I've had no opportunity to -- I don't know.  As I

2  sit here right now, I know nothing about them.  I have no

3  ability to make an argument to the Court which the Court needs

4  to hear as to whether, as to whether probative value outweighs

5  the prejudice.  And, you know, I don't, the fact -- I mean,

6  you know, we haven't put in specific evidence of what he's

7  highly decorated for or anything like that and now the

8  government is going to want to put in evidence of misconduct

9  that he's alleged to have -- I mean I don't even know if it

10 was proved.

11       THE COURT:  But you are presumably going to follow

12 the same line of argument you made in your opening which is he

13 was a highly decorated and maybe you won't use the word

14 "heroic."

15       MR. LUSTBERG:  I really wasn't, no.

16       THE COURT:  No, but in your opening, you said "hero"

17 as I recall --

18       MR. LUSTBERG:  Yes.

19       THE COURT:  -- or something to that effect and,

20 obviously, that has now been reinforced, in part, by reference

21 to this joke, but then it prompted the witness, at your

22 asking, to say, yes, my understanding was that he was highly

23 decorated and was a hero in the street crime unit.  So you

24 have put in that evidence and you have followed up on that

25 theme.

Proceedings                                      1811

1        I'm not asking you to drop it in your argument, but

2   the point is if you are going to make use of that, those

3   references, because you opened on it and, quite honestly, I

4   didn't know if he was going to testify but now it's come in

5   through this witness, the question is does the government get

6   to offer, as the rules permit, some instances -- here's where

7   I wonder or where I question how far it can go -- but whether

8   the government gets to ask the witness, who's turned out to be

9   a bit of a character witness, in part, whether or not that

10  person's opinion of Mr. McMahon would be affected if he knew

11  that Mr. McMahon had two substantiated CCRB findings of not

12  credibility or non, yes, non-credibility and abuse of

13  authority.

14        That's what you said, right, Mr. Heeren?

15        MR. HEEREN:  Yes, Your Honor.

16        For clarity, it's five substantiated findings of

17  abuse -- three substantiated findings of abuse of authority,

18  one substantiated finding of discourtesy and then one separate

19  substantiated finding of abuse of authority in a different

20  incident.

21        THE COURT:  Now, properly, the government gets to

22  ask those questions to challenge the reputation evidence that

23  has been offered or good character evidence that's offered.

24        The government, of course, does not get to prove up

25  any of those incidents nor do they get to argue as a matter of

Proceedings                                    1812

1   fact that he was, he committed those offenses, and I'll give a

2   limiting instruction, but it can be offered for the limited

3   purpose of challenging what has been effectively introduced ad

4   character evidence, good character evidence, and that is fair.

5          You can cry foul but when you elicited it -- and I

6   assumed you knew you were going to do that because you opened

7   on the same theme, I'm not sure how you thought it would come

8   in otherwise -- you should have expected some kind of response

9   since, obviously, you and your client know what the record is.

10  I presume the government turned over the discovery relating to

11  that if it was -- well, I shouldn't assume that.

12         MR. HEEREN:  We did not turn over the CCRB

13  documents.  They're not discoverable in the ordinary course.

14         THE COURT:  Right.

15         MR. HEEREN:  As Your Honor referenced, it's his own

16  record.  I would also note that many of the CC -- I don't know

17  if these specifically are, but many of these are now on a

18  public database as well.

19         THE COURT:  So I will allow the government limited

20  cross-examination about would your opinion about his

21  reputation as a hero or as a decorated officer be different if

22  you knew, and then you could recite them, but I want you to do

23  it in the most bland way, that he was, he has X number of

24  substantiated CCRB claims for whatever it is and that's it.

25  The government doesn't get to do anything more.

CMH      OCR      RDR      FCRR

Proceedings                                              1813

1          If he says no, it wouldn't affect my opinion, the

2   most the government gets to argue is you shouldn't credit that

3   reputation evidence because it seems to be immutable or

4   unimpervious to any kind of negative information and that's

5   it.

6          MR. LUSTBERG:  Just so the record is clear, from my

7   perspective, I did not call this and I was not intending to

8   call any other reputation or opinion witness.

9          This witness was explaining a particular word that

10  was used in a particular text that the government, and I

11  didn't know when I was asking that question, just so it's

12  clear, who the hero was that was being referred to in that

13  text, whether it was Mr. McMahon or somebody else.

14         THE COURT:  But it doesn't require you to intend it.

15         MR. LUSTBERG:  I understand.

16         THE COURT:  It's come in and it's before the jury

17  but let me say this.  I'm somewhat skeptical on this claim

18  because you opened on calling him a hero officer and I don't

19  know how you expected it to come in.

20         MR. LUSTBERG:  It wasn't through him.

21         THE COURT:  But you opened it, you suggested it in

22  your opening, and then it did come in and it is in the record

23  now.  The question really just is not whether you intended

24  that but what is fair for the government to do to try to

25  impeach that reputation evidence that has come in.

Proceedings                                    1814

1          MR. LUSTBERG:  So Your Honor knows and, I mean, the

2    Court may be aware of this, these are apparently -- I still

3    don't have them.  And, you know, should I have looked for

4    them?  Maybe.  But I mean CCRB, the CCRB is a civilian

5    complaint review board.  It's not, there's not a standard of

6    proof where stuff has to be established by any particular

7    standard of evidence.

8          I suppose that Mr. Gallowitz may answer it that way,

9    I don't know, but I mean rather -- the point is that this

10   opens up, you know, for me, this can of worms about whether I

11   need to put on evidence of the unreliability of CCRB findings

12   or that kind of thing.

13         THE COURT:  No.  You can certainly redirect and ask

14   the witness why it doesn't change his opinion, and I'm sure

15   he'll blast back by saying, I don't credit anything that CCRB

16   says as a former police officer.  Fine, it's all within the

17   context of the basis for his opinion, whether the jury should

18   accept his opinion about Mr. McMahon's reputation as a hero

19   cop, all fair game, but within that framework, you can ask

20   those questions.

21         Let me also say this.  I don't think you can really

22   say, Oh, I didn't intend to elicit that answer, when you're

23   looking at a reference that you know this witness made to "SCU

24   hero."

25         MR. LUSTBERG:  I thought it was --

Proceedings                                              1815

1          THE COURT:  Hang on.  You could have thought

2    whatever.  I don't know what your client told you obviously,

3    but he was there in the moment.  You could have misunderstood

4    what the comment was about but, nonetheless, you did open that

5    door.  Wittingly or unwittingly, the door has been opened, the

6    evidence has been put into the record, the government gets to

7    make a fair response to the extent that that good character

8    reputation evidence is in there, and then you get to

9    rehabilitate or do whatever you think is appropriate on

10   redirect.  I can predict what this witness will say when you

11   ask him why doesn't that affect your view of Mr. McMahon as a

12   great cop and I'm sure he'll criticize the CCRB.  That's --

13   whatever he wants to do is fine, but that's all fair game for

14   both sides to go into.

15         MR. LUSTBERG:  I just want to make sure that I

16   understand the extent to which the government can inquire

17   though.  I mean I assume that the government can inquire as to

18   the specific facts of those cases.

19         THE COURT:  No.  The government -- and I do want

20   this to be very tightly scripted.

21         You will simply give, and I don't want you to milk

22   it and say are you aware of this one, are you aware of that

23   one.  Give the summary number of substantiated findings and

24   the type.  So would your opinion change if you knew that he

25   was the subject of five substantiated abuse of authority

CMH      OCR      RDR      FCRR

Proceedings                                                    1816

1   findings by CCRB and one or two, whatever it is, findings by

2   CCRB of non-credibility.  That's it.

3          I don't want you milking this.  I don't want you

4   belaboring it.  You get in that and you're stuck with whatever

5   answer he gives you, yes or no.  If you want to ask why, you

6   can, it's up to you, but I think we all know what his answer

7   will be.

8          MR. HEEREN:  Your Honor, on the credibility finding,

9   it's not a -- as you see in the CCRB reports, it's not an

10  allegation recommendation.  It is a finding about his

11  testimony in the course of one of the hearings.

12         THE COURT:  But they made that finding.

13         MR. HEEREN:  It is in the findings section as a

14  finding.  I can highlight the specific one.

15         THE COURT:  I'm a little more concerned about that.

16         MR. HEEREN:  I understand.

17         THE COURT:  Because it's somewhat far afield.

18         I think that you should stick with the substantiated

19  findings that they made about abuse of authority and that's it

20  because that goes to character as a hero cop.

21         The credibility finding might be in a very specific

22  issue and I don't think that that's fair to question his

23  reputation as a good officer based on a very fact-specific

24  finding that the CCRB made and so just stick with the

25  substantiated findings of certain conduct.

Proceedings                                          1817

1         MR. HEEREN:  Yes, Your Honor.

2         THE COURT:  Okay.

3         MR. LUSTBERG:  Your Honor, just one last thing.  So

4    that I can do meaningful redirect on this subject, I would

5    request that the government turn over any records it has with

6    regards to the CCRB cases at this point since I don't have

7    them.

8         THE COURT:  Well, we're not going to be getting into

9    the specifics of what the CCRB proceedings were, but I do

10   think the defense should -- okay, you have it there,

11   Mr. Heeren -- get a copy of this, the substantiated findings,

12   what the language says, so that Mr. Lustberg can redirect as

13   appropriate.

14        MR. HEEREN:  For the record, I've provided both of

15   the complete case closing forms that we received.

16        THE COURT:  Okay.  So, folks, I've eaten into your

17   break.  Why don't you take a nature break if you need one.

18   Let's be ready to go in five minutes.

19        Mr. Lustberg, if you need a break before you do

20   redirect, I'll obviously give you some time.

21        MR. LUSTBERG:  Thank you.

22        (Recess taken.)

23        (In open court; outside the presence of the jury.)

24        THE COURT:  Let's go on the record for a moment.

25        So, folks, I'm trying to figure out the timing for

Proceedings                                              1818

1   today because it's possible that I will let the jury go home

2   before lunch because it would be unfair or unkind to them to

3   have them leave for an hour lunch only then to be excused

4   right after they get back.

5            So, Mr. Tung, I want to inquire of your client

6   whether he intends to plead -- this is terrible, I'm about to

7   do a plea which is why I had it in my mind, I'm so sorry --

8   whether or not your client wants to take the stand.

9            So, Mr. Zhu, yesterday, we discussed your right to

10  remain silent and not have it used against you at trial, but

11  we also discussed your right to take the witness stand if you

12  want to in your own defense.  You told me that you hadn't

13  decided yet.

14           Have you decided whether or not you want to testify?

15           DEFENDANT ZHU:  No, no testifying.

16           THE COURT:  Sorry?

17           DEFENDANT ZHU:  No testifying.

18           THE COURT:  So you don't want to testify?

19           DEFENDANT ZHU:  Yes, correct.

20           THE COURT:  You understand, Mr. Zhu, it's your right

21  to testify and no one can prevent you from doing that

22  including your lawyer, do you understand that?

23           DEFENDANT ZHU:  Okay.  Okay.

24           THE COURT:  Do you understand?

25           DEFENDANT ZHU:  Okay.  Okay.

Proceedings                                    1819

1          THE COURT:  No.  The question is do you understand

2    me?

3          DEFENDANT ZHU:  Understood.

4          THE COURT:  Okay.  Even if Mr. Tung advised you not

5    to testify, you could still testify.  Do you understand that?

6          DEFENDANT ZHU:  Yeah.  Yeah.

7          THE COURT:  So you understand?

8          DEFENDANT ZHU:  Understood.

9          THE COURT:  And it is your decision not to testify,

10   is that correct?

11         DEFENDANT ZHU:  Correct.

12         THE COURT:  Okay.  Then let me go back to the

13   attorneys now for a moment.

14         My understanding, Mr. Lustberg, is that the only

15   other thing you would want to do in your defense case is offer

16   up some stipulations, is that right?

17         MR. LUSTBERG:  I will read two stipulations in the

18   record.

19         THE COURT:  And, Ms. Wong, you'll confirm that, for

20   Mr. Zheng, you are not presenting any evidence, is that

21   correct?

22         MS. WONG:  That is correct.

23         THE COURT:  And your client is not testifying?

24         MS. WONG:  That's correct.

25         THE COURT:  It goes without saying, Mr. Lustberg,

Proceedings                                                1820

1   that Mr. McMahon is not testifying?

2          MR. LUSTBERG:  I think you confirmed that with him

3   yesterday.

4          THE COURT:  Yes.  I just wanted to be sure in

5   realtime now that that's still the decision especially in

6   light of things we discussed just before the break or during

7   the break.

8          Is that correct, Mr. McMahon; you still do not want

9   to testify?

10         DEFENDANT McMAHON:  That's correct.

11         THE COURT:  And then, Mr. Tung, you don't have any

12  evidence to put on, is that correct?

13         MR. TUNG:  That's correct, Your Honor.

14         THE COURT:  Okay.  Good.  So then I think it makes

15  the most sense to allow the government to do

16  cross-examination.  If we need to take a brief break for you,

17  Mr. Lustberg, to digest the CCRB information that you've

18  provided, I'll give you that, but then I would like to have

19  the redirect, if any, and the conclusion of the defense case

20  done before I let the jury go for the day and without a lunch

21  break.

22         Okay.  Any objection to proceeding in that manner?

23         Government?

24         MR. HEEREN:  No, Your Honor.

25         THE COURT:  Mr. Lustberg?

Proceedings                          1821

1           MR. LUSTBERG:  No.

2           MR. GOLDBERGER:  No, Your Honor.

3           MR. TUNG:  No, Your Honor.

4           THE COURT:  Okay.  Good.

5           We'll go ahead and get the jury now and we'll start

6   with the government's cross, but I should ask of Mr. Tung and

7   Mr. Goldberger, did you want to examine this witness on

8   direct?

9           MR. GOLDBERGER:  No.

10          MR. TUNG:  No, Your Honor.

11          THE COURT:  So let's get the witness back up here.

12          MR. LUSTBERG:  And I'm going to do the "Wow"

13  correction.

14          THE COURT:  Yes, correct the "Wow" series of texts.

15          Where is the witness?  Someone get him from outside.

16          (Witness resumes the stand.)

17          (Jury enters.)

18          THE COURT:  Please be seated, everyone.

19          Okay.  So, Mr. Lustberg, you wanted to ask a couple

20  more questions.

21          MR. LUSTBERG:  I just wanted to clarify -- I said no

22  further questions, but I wanted to qualify one thing I got

23  wrong.

24          THE COURT:  Do you want to put the exhibit back up?

25          MR. LUSTBERG:  Yes.

Gallowitz - direct - Lustberg                1822

1           THE CLERK:  Yes, Exhibit 4019B.

2           MR. LUSTBERG:  4019B, page one.

3    BY MR. LUSTBERG:  (Continuing)

4    Q    Okay.  I asked you, Mr. Gallowitz, whether -- this was an

5    e-mail from Mr. McMahon to you and it says, "Tlo says he

6    wanted by INTERPOL.  Wow."

7           I asked you why you said, "Wow," but it turns out,

8    based on this, that Mister, it was Mr. McMahon who said,

9    "Wow."  Do you see that?

10   A    Yes.

11          MR. LUSTBERG:  And I just wanted to -- I don't

12   remember what Mr. Gallowitz's response to that was.  What's on

13   the next slide.  The next slide is Mr. McMahon too?  That's

14   it.

15   Q    So Mr. McMahon was just letting you know that there was,

16   that this, the target was, of the surveillance was on an

17   INTERPOL warrant, right?

18   A    Yes.

19          MR. LUSTBERG:  Okay.  That's all I have.  Thank you,

20   Judge.

21          THE COURT:  Thank you very much, Mr. Lustberg.

22          Any examination by other defendants?

23          Mr. Goldberger?

24          MR. GOLDBERGER:  No, Your Honor.

25          THE COURT:  Mr. Tung?

Gallowitz - cross - Heeren                    1823

1        MR. RUNG:  No, Your Honor.

2        THE COURT:  Okay.  So cross-examination by the

3   government.

4        MR. HEEREN:  Thank you, Your Honor.

5   CROSS-EXAMINATION

6   BY MR. HEEREN:

7   Q    Good morning, Mr. Gallowitz.

8   A    Good morning.

9        MR. HEEREN:  Good morning, ladies and gentlemen.

10       THE JURY:  Good morning.

11  Q    Mr. Gallowitz, I believe you testified on direct that you

12  previously worked for the New York City Police Department?

13  A    Yes.

14  Q    How long did you work for them again?

15  A    Twenty years.

16  Q    Okay.  And during those 20 years, among the positions you

17  held was the position of detective, right?

18  A    Yes.

19  Q    And as a detective, part of your job was to investigate

20  and hopefully solve crimes, right?

21  A    Yes.

22  Q    And to do that, you would investigate and gather facts,

23  right?

24  A    Yes.

25  Q    You would look for suspicious activity, correct?

Gallowitz - cross - Heeren                    1824

1    A    Potentially.

2    Q    That would be pertinent to an -- would suspicious

3    activity be pertinent to a criminal investigation?

4    A    Yes.

5    Q    Sometimes you would interview witnesses?

6    A    Yes.

7    Q    And when you didn't understand something a witness said,

8    would you ask follow-up questions?

9    A    Potentially, yes.

10   Q    If an answer didn't make sense, you would ask them to

11   clarify, right?

12   A    It's a very broad question.  You know, you're assuming

13   I'm by myself asking questions.  It's a broad question.

14   Q    I guess what I just want to understand is if something

15   didn't make sense to you that a person said, would you, as a

16   general matter, try to follow up and under, and get a better

17   understanding through further questioning?

18   A    Sometimes, yes.

19   Q    Okay.  Now, after you figured out who committed a crime,

20   you would sometimes make arrests as a police officer, is that

21   right?

22   A    Yes.

23   Q    How many, approximately, arrests did you make while you

24   were at the NYPD?  I know.

25   A    Personally, about 500.  Involved in a couple thousand.

Gallowitz - cross - Heeren                1825

1    Q    Okay.  And sometimes when you made arrests, would you get

2    an arrest warrant to make that arrest?

3    A    Almost never.

4    Q    Almost never?  You are familiar with arrest warrants

5    though, right?

6    A    I don't believe I've ever obtained an arrest warrant, no.

7    Q    Do you know what an arrest warrant is?

8    A    If you have probable cause, you go to the District

9    Attorney's Office and they'll potentially get you an arrest

10   warrant.

11   Q    Right.  And did you learn about that as a member of the

12   NYPD?

13   A    I was not in the detective squad where that would take

14   place frequently so that's not something that I would do.

15   Q    Okay.  But did you know about it at the NYPD?

16              MR. LUSTBERG:  Your Honor, objection to this line of

17   questioning.  I have no idea what the relevance is.

18              THE COURT:  I'll give you a little leeway but you

19   need to make that connection sooner.  So go ahead.

20              MR. HEEREN:  Sure, Your Honor.

21              THE COURT:  Ask your next question.  I mean I think

22   he didn't answer that question.

23              MR. HEEREN:  I don't think so, Your Honor.

24   A    Do I know what an arrest warrant is?  Is that your

25   question?

Gallowitz - cross - Heeren                    1826

1   Q    While you were at the NYPD.

2   A    Yes.

3   Q    And after you arrested someone, I think you just said,

4   the DA's Office would take over at that point, right?

5   A    Yes.

6   Q    And they would handle prosecuting them, right?

7   A    Correct.

8   Q    Okay.  And as a police officer, an NYPD police officer,

9   you're a government employee, right?

10  A    Yes.

11  Q    And the people, the prosecutors at the DA's office, they

12  were government employees as well, right?

13  A    Yes.

14  Q    Now, you were asked -- I'm going to change topics.

15       Do you recall being asked some questions on direct

16  examination about your invoices to Mr. McMahon?

17  A    About one invoice, yes.

18  Q    And that invoice was made out to McMahon Investigative

19  Group, right?

20  A    Correct.

21  Q    And that's because you were hired by the company McMahon

22  Investigative Group, right?

23  A    Correct.

24  Q    You were not working in a personal capacity for Michael

25  McMahon, right?

Gallowitz - cross - Heeren                    1827

1   A    Correct.

2   Q    And so you billed it to the client which was the company,

3   right?

4   A    That's correct.

5   Q    Now, you -- I believe you indicated on direct that you

6   did not know who Mr. McMahon's clients were, correct?

7   A    Correct.

8   Q    Mr. McMahon never gave you their names, right?

9   A    No.

10  Q    I want to show you what's been previously admitted as

11  Government's Exhibit 902F, as in "Frank."

12            MR. HEEREN:  And if you can blow that up, please.

13  Q    Do you recognize anyone in this picture?

14  A    Yes.

15  Q    Who do you recognize?

16  A    Michael McMahon.

17  Q    Do you recognize anyone else in the picture?

18  A    No.

19  Q    Were you there when this picture was taken?

20  A    No.

21  Q    So you have no knowledge of what occurred during the time

22  of this picture, is that right?

23  A    That's correct.

24  Q    I want to show you what's been admitted into evidence as

25  Government's Exhibit 103C.

Gallowitz - cross - Heeren                    1828

1          MR. HEEREN:  And if you can blow up the bottom left

2     corner, please.

3     Q    The person in the black jacket, do you recognize that as

4     Michael McMahon?

5     A    Based on the quality of the picture, maybe.

6     Q    Okay.  Did you ever take a meeting with Michael McMahon

7     and any of his clients at a Panera Bread in April of 2017?

8     A    No.

9     Q    Okay.  So you have no knowledge of what occurred at that,

10    at a meeting, at any meeting in April 2017 at a Panera Bread

11    between Michael McMahon and any of his clients, is that right?

12    A    That's correct.

13    Q    Now, I believe, I believe you testified on direct exam

14    that you regarded Mr. McMahon as highly decorated and heroic,

15    is that right?

16    A    Correct.

17    Q    Would your opinion about Mr. McMahon's reputation as a

18    hero or highly decorated officer be affected if you knew he

19    was the subject of a substantiated finding of discourtesy by

20    the Civilian Complaint Review Board?

21    A    Absolutely not.

22    Q    Would your opinion about his reputation as a hero or

23    highly decorated officer be affected if you knew he was the

24    subject of four additional substantiated findings for abuse of

25    authority by the Civilian Complaint Review Board?

Gallowitz - cross - Heeren                    1829

1    A    Absolutely not.

2    Q    Mr. Gallowitz, do you recall asking some questions about

3    when you texted Mr. McMahon which you characterized as a joke

4    about receiving a call about an abduction?

5    A    I'm not sure what the question is.

6    Q    Sure.  Do you recall on direct examination being asked

7    about a series of text messages where you said to Michael

8    McMahon we're going to get a call from the New Jersey State

9    Police about an abduction?

10   A    I recall seeing the text message, yes.

11   Q    And I believe you characterized it on direct as a joke,

12   is that right?

13   A    Correct.

14   Q    Okay.  And you said you, I think you said something like

15   you have a lot of jokes, right?

16   A    Yes.

17   Q    Probably some about lawyers too?

18   A    Maybe.

19   Q    Maybe.  But you didn't, you didn't joke about a lawyer at

20   that point in time, right?

21   A    At what point in time?

22   Q    Well, when you sent the text, the joke wasn't about a

23   lawyer showing up, right?

24   A    No.

25   Q    It wasn't a joke about someone coming to collect a debt,

Gallowitz - cross - Heeren                    1830

1   right?

2   A     No.

3   Q     And do you know what a process server is?

4   A     Yes.

5   Q     What is a process server?

6   A     Someone who serves court documents to individuals or

7   companies.

8   Q     Right.  Like things for, like, subpoena for a civil

9   lawsuit, right?

10  A     Yes.

11  Q     You didn't joke about a process server coming, right?

12  A     No.

13  Q     You joked about somebody being abducted, taken from one

14  place to another, right?

15  A     That was the joke, yes.

16  Q     Okay.  Do you recall being asked several questions on

17  direct examination about calling, about Michael McMahon

18  calling the local police department?

19  A     Yes.

20  Q     And the reason why you called -- well, withdrawn.

21        I believe you also testified that you carried your

22  gun with you on the surveillance, right?

23  A     Every day.

24  Q     You always carry your gun on surveillance?

25  A     Yes.

Gallowitz - cross - Heeren                1831

1    Q    And you called -- Michael McMahon called the police to

2    let them know you were going to be there, right?

3    A    That's what I was told, yes.

4    Q    Right.  And one reason why he would do that, to your

5    understanding, one reason why he would do that is to make sure

6    they don't show up and find you with guns; they know you're

7    there, because it can be a little concerning otherwise, right?

8    A    Never crossed my mind once, no.

9    Q    No?  Okay.  And when you called the police to let them

10   know you're there, you know that if they get a call for a

11   suspicious vehicle, they're less likely to show up, right?

12   A    Correct.

13   Q    And you also know that Mr. McMahon did not tell them

14   anything about what you were doing other than you were doing

15   surveillance, correct?

16   A    I have no idea.

17   Q    Okay.  Let me see if I can show you something that will

18   refresh your recollection.

19        MR. HEEREN:  I'd like to show for the witness only

20   what's been marked by the government as Government's

21   Exhibit EG-3 which for defense purposes, this has previously

22   been marked as Government's Exhibit 4019, at page 135.

23        First, if we can show Mr. Gallowitz the top half --

24   well, I think we can see all of it.

25   Q    This is another text message between you and Michael

Gallowitz - cross - Heeren                    1832

1    McMahon along the lines of the others we've seen, right?

2    A    Yes.

3    Q    And this text message was sent on October 5, 2016, right?

4    A    Yes.

5              MR. HEEREN:  Your Honor, the government moves to

6    admit Government's Exhibit EG-3.

7              MR. LUSTBERG:  No objection.

8              MR. GOLDBERGER:  No objection.

9              MR. TUNG:  No objection.

10             THE COURT:  Admitted.  You may publish.

11             (So marked.)

12

13             (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

*Gallowitz - Cross - Heeren*                    1833

1   BY MR. HEEREN (Continuing):

2           MR. HEEREN:  Just blowing up the text part.

3   Q    You wrote:  You are mot planning to Short Hills PD why we

4   are there, correct?

5           There's a typo, but did I read that right.

6   A    That's what it says, yes.

7   Q    Then let's look at page two, the response.  McMahon

8   writes back:  No, just a phone call to them.

9           Did I read that right?

10  A    Yes.

11          MR. HEEREN:  You can put that down.  Thank you,

12  Ms. McMahon.

13  Q    Mr. Gallowitz, I believe you testified on direct that you

14  have conducted dozens of surveillances all in the same way and

15  that's why this wasn't -- this particular one wasn't a problem

16  for you; is that right?

17  A    Correct.

18  Q    In those dozens of prior surveillances, how many involved

19  your client bringing an elderly man from halfway across the

20  world to --

21          MR. LUSTBERG:  Objection.

22          THE COURT:  Overruled.

23          If you can, answer that.

24  A    Repeat the question.

25  Q    Sure.  In the dozens of surveillances that you said were

*Gallowitz - Redirect - Lustberg*                    1834

1    done the same way, in how many instances did your client bring

2    an elderly man from a foreign country to the United States as

3    part of the surveillance?

4    A    None.

5              MR. HEEREN:  No further questions, your Honor.

6              THE COURT:  Thank you, Mr. Heeren.

7              Redirect?

8              MR. LUSTBERG:  Just one question.

9              THE COURT:  All right.

10   REDIRECT EXAMINATION

11   BY MR. LUSTBERG:

12   Q    Mr. Gallowitz, Mr. Heeren just asked you a few questions

13   about why -- whether your opinion of Mr. McMahon would change

14   based upon the fact that there were certain substantiated

15   allegations in front of the Citizens Complaint Review Board.

16              Do you remember those questions?

17              THE COURT:  Civilian Complaint Review Board, but go

18   ahead.

19              MR. LUSTBERG:  I said citizens.  I meant civilian.

20   Thanks.  I should know that.

21   A    I remember being asked that just now.

22   Q    You said that it absolutely would not change your

23   opinion, correct?

24   A    Correct.

25   Q    And why is that?

*Gallowitz - Redirect - Lustberg*                                    1835

1   A    So, if you want to talk about the Civilian Complaint

2   Review Board, it changed throughout.  I'm talking about my

3   tenure in the police department.

4        It was basically an internal board that had outside

5   members.  And then at some point, it changed and it had

6   nothing to do with the police department and became like a

7   government entity.

8        So, you didn't specify when those took place.  And

9   you know, when it was internal, it was viewed as not

10  legitimate in many people's eyes.

11  Q    And when you say it was "not legitimate in many people's

12  eyes," what do you mean by that?

13  A    So, you have so many interactions with the public when

14  you're a police officer, a detective.  Anybody can make a

15  complaint about anything.  We viewed it as a numbers game.

16  Just like when you get a red light summons, the judge is going

17  to give some people off and some people not.

18       It was a numbers game in the police department at

19  one point of who got substantiated and who didn't.

20       MR. LUSTBERG:  Thank you, Judge.  Nothing further.

21       Thank you.

22       THE COURT:  Thank you.

23       Any recross?

24       MR. HEEREN:  No, your Honor.

25       THE COURT:  Thank you very much.  Thank you for your

*Proceedings*                                                        1836

1    testimony.  You're free to go.

2              (Witness excused.)

3              THE COURT:  Mr. Lustberg, did you want to introduce

4    anything else or call any other witnesses?

5              MR. LUSTBERG:  Actually, Ms. Conti will handle this.

6              THE COURT:  Ms. Conti, you have the floor.

7              MS. CONTI:  I just want to read two stipulations

8    into the record.

9              THE COURT:  All right.

10             MS. CONTI:  I'll guess I'll do that on the Elmo to

11   start.

12             The first one has been marked Defendant McMahon

13   Exhibit ZZ.

14             THE COURT:  Okay, published on the Elmo.

15             (Exhibit published to the jury.)

16             MS. CONTI:  The stipulation McMahon Exhibit ZZ

17   reads:

18             It is hereby stipulated and agreed by and between

19   the undersigned parties through the undersigned counsel that:

20             Government Exhibit 407 consists of true and accurate

21   copies of records obtained from the Township of Millburn

22   Police Department.

23             Government Exhibit 410 consists of true and accurate

24   copies of records obtained from the Warren Township Police

25   Department.

*Proceedings*                                                          1837

1          The exhibits identified above are authentic pursuant

2     to Federal Rules of Evidence 901 and 902.  Government Exhibits

3     407 and 410 are records of regularly conducted activities as

4     defined by Rule 803(6) of the Federal Rules of Evidence.

5     Government Exhibits 407 and 410 are admissible in evidence at

6     trial.

7          This stipulation, which is marked McMahon Exhibit

8     ZZ, is admissible in evidence at trial.

9               THE COURT:  Thank you.

10              Anything else?

11              MS. CONTI:  I'm just going to pull the exhibits up

12    as well, if I can switch to the...

13              THE COURT:  The computer from there?

14              You're lucky, Mr. Lustberg, she understands the

15    technology.

16              MR. LUSTBERG:  You have no idea.

17              THE COURT:  I think I do.

18              MR. LUSTBERG:  I know you do.

19              MS. CONTI:  My computer doesn't understand the

20    technology, though.

21              So, I'm showing what has been marked as Government

22    Exhibit 401 pursuant to the --

23              THE COURTROOM DEPUTY:  407.

24              MS. CONTI:  Sorry, 407, pursuant to the McMahon

25    Exhibit ZZ stipulation.

*Proceedings*                                                          1838

1           (Exhibit published to the jury.)

2           MS. CONTI:  And I'll just blow this up.

3           And I'd like to move in for submission Government

4    Exhibit 407.

5           THE COURT:  It is admitted.

6           Weren't there other exhibits that were --

7           MS. CONTI:  Yes, and moving to Government Exhibit

8    410, I'd like to move into evidence as well.

9           THE COURT:  Both of those are admitted and they may

10   be published.

11          Thank you, Mr. Lustberg, on that.

12          (Government Exhibits 407 and 410 so marked.)

13          (Exhibit published to the jury.)

14          MS. CONTI:  Thank you, your Honor.

15          THE COURT:  Now we're looking at 410.

16          MS. CONTI:  Yes, this is Government Exhibit 410.

17          And then I'm going to read the other exhibit.

18          THE COURT:  Okay.

19          MS. CONTI:  Switching back to the Elmo.

20          So, I'm now reading what has been marked as McMahon

21   Exhibit AAA:

22          It is hereby stipulated and agreed by and between

23   the undersigned parties through the undersigned counsel that:

24          The phone number for the Township of Millburn Police

25   Department is 973-564-7001.

*Proceedings*                                                    1839

1          The phone number for the Millburn Police Department

2     is 908-753-1146.

3          This stipulation, which is marked McMahon

4     Exhibit AAA, is admissible in evidence at trial.

5          One second, your Honor.

6          MR. LUSTBERG:  With that, your Honor, Defendant

7     McMahon rests.

8          THE COURT:  Thank you very much, Mr. Lustberg.

9          Does Defendant Zheng want to introduce any evidence

10    or --

11         MR. GOLDBERGER:  No, we rest.

12         THE COURT:  And Mr. Tung for Mr. Zhu?

13         MR. TUNG:  We rest too.

14         THE COURT:  Thank you very much, everyone.

15         Ladies and gentlemen, it means we are ending our day

16    a little early.  And in fact, you don't even have to break for

17    lunch because we're ending at quarter after noon.

18         So, what's going to happen is there are matters that

19    I need to address with the parties between now and tomorrow

20    morning, when you will hear summations by the parties.

21         So, you have the rest of the day off.  Hopefully

22    you'll enjoy it.  Do not talk about the case, do not do any

23    research, and keep an open mind.  We are truly in the final

24    stages of the trial.

25         Let me also add, just in case you're wondering,

*Proceedings*                                                    1840

1   after the summations I will instruct you on the law and then

2   you will begin deliberating.

3           Thank you, everyone.  Have a great afternoon and

4   evening.

5           (Jury exits.)

6           THE COURT:  So, folks, why don't we do this:  Let's

7   take a slightly longer lunch break since we have the benefit

8   of additional time.  Let's start again at two.  And that's

9   partly driven by the fact that I have a 1 o'clock matter also

10  to deal with.  So, we'll start at two with the charge

11  conference.  Obviously, we will address the filings from

12  yesterday from Mr. McMahon's lawyers and the Government.

13          The one thing I want to put on the record as well,

14  though, regarding the issue that just arose based on the CCRB

15  information and what was the character evidence that came in,

16  I did want to make clear that I did weigh the probative value

17  of -- or, rather, I considered the prejudice, I should say, or

18  the potential prejudice of the cross-examination that the

19  Government did and requested to do.

20          And what I intend to do is include in the jury

21  charges, which we'll discuss in a moment, a further limiting

22  instruction that they should not consider any reference to

23  substantiated CCRB allegations with respect to determining the

24  Defendant's guilt or innocence but, rather, that information

25  was permitted or that cross-examination was permitted for a

*Proceedings*                                                    1841

1   very limited purpose, which was simply as it relates to the

2   testimony by the witness regarding the reputation of

3   Mr. McMahon or his opinion about the reputation of Mr. McMahon

4   for good character.

5          Obviously, it will be phrased much more artfully

6   than I just expressed it.

7          But also, if, Mr. Lustberg, you and your colleague

8   want to suggest a limiting instruction, you can do so.  So, if

9   you cobble together something over the break, just offer that

10  up to my law clerk, and we'll consider that.

11         MR. LUSTBERG:  Thank you, your Honor.  We will.

12         It was actually mentioned yesterday there were just

13  a couple tweaks we had, and one of them was to the limiting

14  instruction that you already had with regard to the other

15  matters, in part because I think you wrote that before some of

16  those came in.

17         So, we'll tweak that all together.

18         THE COURT:  That's good.  And that's where I would

19  add it as well, just to say that all of those pieces of

20  information really should only be given limited consideration

21  by the jury.  And this one in particular, I will cabin in by

22  saying it really only goes to their assessment of his opinion

23  about Mr. McMahon's reputation for good character.

24         So, we'll see you at 2 o'clock then.  Thanks,

25  everyone.  Have a good lunch.          (Luncheon recess taken.)

*Charge Conference*                                                1842

1          AFTERNOON SESSION

2              2 o'clock p.m.

3

4          (In open court; jury not present.)

5          THE COURT:  Let's go on the record.

6          MR. LUSTBERG:  Your Honor, just before you start, I

7   wanted to let you know Mr. McMahon is not present and I just

8   want to formally waive his appearance.

9          I spoke to him at length and told him that I didn't

10  think that he needed to be present for this and that I would

11  tell the Court.  If necessary, I can get him here.

12         THE COURT:  No.  In fact, often defendants choose

13  not to be here for the charge conference since it's not really

14  something they can contribute to or opine about.

15         So, Mr. Zheng --

16         MR. GOLDBERGER:  I'll let my client go as well.

17         THE COURT:  Okay.

18         Mr. Zheng, you're waiving your appearance here for

19  the charge conference?

20         DEFENDANT ZHENG:  Yes.

21         THE COURT:  Mr. Tung, do you know if Mr. Zhu wants

22  to be here for the charge conference?

23         MR. TUNG:  Mr. Zhu indicates that he still wanted to

24  participate.

25         THE COURT:  Certainly.  That is his right and he

*Charge Conference*                                                    1843

 1  should stay here, then.

 2          Why don't we go in order, just because I think that

 3  will be the most efficient even though I know we have some

 4  more substantive issues to discuss further on in the charges.

 5  But let's just start from the beginning.

 6          So, as I mentioned yesterday, my normal process is

 7  I'll have the parties let me know where their first objection,

 8  comment, or suggestion is and then we'll go through the

 9  instructions in order.

10          So, Government, where's your first comment,

11  suggestion, or objection?

12          MR. HEEREN:  Our first ones, which are typos, so

13  minor, are on Page 1, the second paragraph.

14          THE COURT:  Okay.

15          MR. HEEREN:  And they are -- I believe Zheng

16  Congying's name is incorrectly spelled.  The last name should

17  not have a "H" in it, at least in my draft.

18          THE COURT:  Page 1, let me get to the right page.

19          Sorry, what did you say, no "G" at the end?

20          MR. HEEREN:  No.  No "H" in Congying.

21          THE COURT:  You're right.

22          MR. HEEREN:  In that same sentence, we would add --

23  we would strike "one count of" as unnecessary verbiage.

24          And we would ask to include at the end right before

25  the word "stalking," "interstate."

*Charge Conference*                                                    1844

1          Just to be clear it should read, "conspiracy to

2    engage in interstate stalking, and interstate stalking."

3          THE COURT:  Yes.

4          MR. HEEREN:  And that's all we have on Page 1, your

5    Honor.

6          THE COURT:  So, that sentence will now read:  The

7    Defendant, Michael McMahon, Zheng Congying -- correctly

8    spelled -- and Zhu Yong are charged with one count of

9    conspiracy to act as an agent of a foreign government, acting

10   as an agent of a foreign government, conspiracy to engage in

11   interstate stalking, and interstate stalking."

12         Correct.

13         MR. HEEREN:  That's right.

14         We had proposed to strike "one count of" just

15   because it's a little confusing, but it's more...

16         THE COURT:  You're absolutely right.  Let's do that.

17         Any objections to those requested changes?

18         MR. LUSTBERG:  No, your Honor.

19         MR. GOLDBERGER:  No, your Honor.

20         MR. TUNG:  No, your Honor.

21         THE COURT:  Okay.  Next thing from the Government,

22   what page?

23         MR. HEEREN:  One moment, your Honor.  I believe our

24   next one is not until -- I believe it's Page 11, but my red

25   lining may have changed things.

*Charge Conference*                                          1845

1          It is in the section charts -- excuse me, it's in

2    the section, Section 15, transcripts --

3          Do I have one before that?

4          MS. ARFA:  Seven.

5          THE COURT:  Let me ask my law clerk to do one thing.

6          Since it's a little confusing to have the page

7    numberings go one, two, and start over again, could you do

8    just the little Roman "i", "ii", for the next page.  And the

9    table of contents will be little Roman iii and iv, and then

10   we'll start with 1.

11         Sorry, what did you say now, Mr. Heeren?

12         MR. HEEREN:  I misspoke, your Honor.  Our next one

13   is at Page 6.  It's Part 7, testimony of law enforcement

14   officers.

15         THE COURT:  Does anyone else have anything before

16   Page 6?

17         MR. LUSTBERG:  No, your Honor.

18         I shouldn't speak for the others.

19         MR. GOLDBERGER:  No, your Honor.

20         MR. TUNG:  No.

21         THE COURT:  Go ahead.

22         MR. HEEREN:  In the first sentence of Section 7, we

23   would propose adding "current and former" before "law

24   enforcement officers."

25         THE COURT:  Any objection?

*Charge Conference*                                    1846

1          MR. LUSTBERG:  No.

2          MR. GOLDBERGER:  No, your Honor.

3          THE COURT:  So we'll make that change.

4          Next?

5          MR. HEEREN:  Our next one is in Section 13,

6    translations.  It's a minor typo.

7          THE COURT:  Okay, what section is it?

8          MR. HEEREN:  13, your Honor, translations.

9          THE COURT:  Is it page -- oh, Section 13, not

10   Page 13.

11         MR. HEEREN:  Yes, I'm going by sections.  It's a

12   little bit easier, I think.

13         THE COURT:  All right.  Go ahead.

14         MR. HEEREN:  And it's the fifth line.  The sentence

15   begins, "The interpreters translated the witnesses'

16   testimony..."

17         There's just an extra "S."

18         THE COURT:  I see that.  Corrected.

19         MR. HEEREN:  Then our next one is...

20         THE COURT:  I'll leave it to the defense to

21   interject if you have something in between the last page and

22   the next one the Government mentions.

23         MR. HEEREN:  The next one is Section 15, transcripts

24   of audio recordings.  And this is just to clarify -- it's a

25   modification to clarify that the transcripts were through

*Charge Conference*                                              1847

1    subtitles.

2           So, the way we propose to do it is in the first

3    sentence, we would change "distribute" to "use."  So, the

4    sentence begins, "The Government has been permitted to use

5    transcripts," and then it continues.

6           THE COURT:  Can I ask you one question?

7           Am I wrong, I thought at one point you might have

8    distributed transcripts without using them as subtitles.

9           MR. HEEREN:  We did that for I believe one

10   recording, the recording at the hotel.

11          THE COURT:  Right.

12          MR. HEEREN:  And then we showed it on the screen

13   while they heard -- while the witness heard the Chinese

14   language and was able to speak about it.

15          THE COURT:  So, shouldn't this remain the same and

16   maybe, if anything, add "distribute or use transcripts"?

17          MR. HEEREN:  That's fine too.

18          THE COURT:  Let's just do that because that's at

19   least what I think we were thinking, my law clerk and I, when

20   we used that phrasing, because at least I remembered that

21   there was a freestanding transcript given to them in a binder.

22          So, the Government has been permitted to distribute

23   or use transcripts.

24          MR. HEEREN:  Yes.

25          THE COURT:  Should we say "transcripts" or

*Charge Conference*                                                              1848

1    "subtitles"?

2            MR. HEEREN:  The way we had tried to make that

3    clear, since it's still, I think, technically a transcript

4    even though in subtitle form, is that at the end of the

5    sentence we just add the following phrase; so after the word

6    "evidence," we'd say, "comma, many of which you saw in the

7    form of subtitles to videos that were played for you."

8            THE COURT:  I'm not sure that actually makes sense

9    because the sentence you're referring to starts with

10   "however," right?

11           MR. HEEREN:  No.  I'm still on the first sentence,

12   your Honor.

13           THE COURT:  Oh, I see what you're saying.  Okay.

14           MR. LUSTBERG:  Sorry, I'm lost.

15           THE COURT:  We're looking at the first sentence --

16           MR. LUSTBERG:  I see the sentence, I have just lost

17   the train of what the proposed change is.

18           THE COURT:  How about this, "or used transcripts,

19   some in the form of subtitles"?  How about that?

20           MR. HEEREN:  That's fine, your Honor.

21           THE COURT:  So, the first sentence of Section 15

22   will read, "The Government has been permitted to distribute or

23   use transcripts, some in the form of subtitles containing the

24   Government's interpretation of what was said," and then the

25   rest will remain the same.

*Charge Conference*                                                  1849

1          Any objection to that?

2          MR. LUSTBERG:  No, your Honor.

3          THE COURT:  Okay.  So we'll make that change and

4    then I think it will apply to everything.  Okay.

5          Anything else?

6          MR. HEEREN:  Nothing in that section.

7          Our next one is a minor typo in Section 18,

8    cautionary and limiting instructions, but I think that brings

9    us to at least our first substantive item that Mr. Lustberg

10   filed a few moments ago, unless defense counsel has anything

11   else before that.

12         THE COURT:  So, we're going to take out "if

13   applicable" in Section 18.  Clearly, it does apply.

14         Anything before Section 18 from the defense?

15         If so, just let me know.  We're now on Page 12.

16         MR. LUSTBERG:  Nothing for Mr. McMahon, your Honor.

17         THE COURT:  Mr. Goldberger?

18         MR. GOLDBERGER:  Nothing, your Honor.

19         THE COURT:  Mr. Tung?

20         MR. TUNG:  Nothing.

21         THE COURT:  So, now let's address the limiting

22   instructions.  The defense, specifically Mr. Lustberg, has

23   offered up a track change version.  Everyone has a copy, I

24   assume.

25         MR. HEEREN:  Yes, your Honor.

*Charge Conference*                                          1850

1        THE COURT:  I'm going to take a moment to review it

2   and then I'll hear from the Government if they have any

3   objections to it.

4        (Pause in proceedings.)

5        THE COURT:  This actually seems fine to me, the

6   proposed revised version.

7        Does the Government have any issue with it?

8        MR. HEEREN:  Some minor ones, your Honor.

9        In the first paragraph, the last sentence, "This

10  evidence can be only considered by you only," I would strike

11  the first "only."

12       MR. LUSTBERG:  At least one of the two.

13       THE COURT:  So, let's strike the first one.

14       "This evidence can be considered by you only for

15  that particular purpose."

16       MR. LUSTBERG:  Sorry about that.

17       THE COURT:  No, it's okay.

18       MR. LUSTBERG:  Just so it's clear, I just took out

19  that other sentence because I don't think you had actually

20  given any limiting instructions during the trial that's, you

21  know...

22       THE COURT:  I think that's right, I did not end up

23  doing it at the moment, at least for these.

24       I do, of course, recall giving the transcript

25  instruction a few times, but I didn't -- I don't think I gave

1   them the limiting instruction on the other crimes.  I think we

2   just discussed it but I never instructed the jury.

3           So, this is better anyway, I think.

4           MR. HEEREN:  I will note, your Honor, you have given

5   other limiting instructions.  For example, after

6   Mr. Goldberger's opening as well as related to the

7   demonstratives.

8           But we don't believe -- we take it that the jury

9   will follow the instructions and don't need to be reminded of

10  that.

11          THE COURT:  That's right.  But more importantly, I

12  didn't mention any of these that are in this section.

13          MR. HEEREN:  Correct.

14          THE COURT:  Okay.  So, now, anything else from the

15  Government with respect to the proposed revised version of

16  Section 18?

17          MR. HEEREN:  Not until the paragraph that begins

18  "second," which I think is technically the third paragraph.

19          We would propose striking the addition of

20  "Mr. McMahon is not charged with any offenses as a result of

21  these violations" and just begin with "Evidence that

22  Mr. McMahon."

23          The Court's going to instruct the jury on what he's

24  charged with elsewhere in the instructions and I think it

25  would only cause confusion to talk about what he is and is not

*Charge Conference*                                          1852

1   charged with here.  The important point is clear from the

2   remainder, which is the evidence that was admitted is to be

3   used only for this limited purpose regarding intent.

4            THE COURT:  Mr. Lustberg, do you want to be heard on

5   this?

6            MR. LUSTBERG:  Your Honor, I just want -- it's

7   pretty transparent.  I just want it to be clear that there are

8   a number of potential offenses that have been raised by the

9   Government's presentation and that Mr. McMahon is not charged

10  with any other offenses.

11           I'm not wedded to this language, but that was the

12  thought that I was trying to convey; that he's not charged

13  with tax offenses, he's not charged with violation of privacy

14  laws.  Those are things that are not matters for which he's

15  charged.

16           THE COURT:  I'm going to leave it as proposed by

17  Mr. Lustberg and Ms. Conti.  I think this is fine because I

18  think in this context it makes the point clearly and I don't

19  think the jury will be confused that somehow it doesn't mean

20  that it isn't relevant, because the next sentence says that it

21  is, to the crimes charged in the indictment.

22           So, I'm going to leave that as is.  I think that's

23  helpful.

24           MR. HEEREN:  Yes, your Honor.

25           I did miss a typo in the paragraph immediately above

*Charge Conference*                                          1853

1    in the second to last sentence, where it says "which I will

2    also refer to in these instructions," it should be an "S."

3                THE COURT:  Yes.

4                MR. HEEREN:  Yes.

5                THE COURT:  Excellent.

6                MR. HEEREN:  Then the last substantive one is on the

7    character witness limiting instruction.  It's the word

8    "challenging" that Mr. Lustberg has proposed.

9                My understanding of the rule -- the Government's

10   understanding of the rule is that the character, be it the

11   cross-examination is admissible to assess the credibility of

12   the witnesses' testimony as to the Defendant's character.

13               So, rather than using the word "challenging," the

14   Government would propose using some phrasing that makes it --

15   makes clear that the purpose is for the jury's assessment of

16   the witnesses' testimony on that subject.  I think

17   "assessment" was the word I recall the Court using before we

18   took a break.

19               And, so, I don't feel strongly about the exact

20   phrasing, but I don't think "challenging" is necessarily

21   accurate.

22               MR. LUSTBERG:  I was doing my best to channel what I

23   remembered the Court saying, but I think Mr. Heeren's point is

24   well taken.  "Challenging" is a little broad.

25               I wish I remembered what your Honor had said at the

*Charge Conference*                                                    1854

1  time because I think you laid out a very good limiting

2  instruction earlier and I just didn't write it down.

3          THE COURT:  How about, "Those proceedings were only

4  raised in the context -- " maybe, "raised to the extent you

5  think it's relevant to assessing Mr. Gallowitz's opinion," but

6  that actually doesn't make sense.  Hold on one second.

7          I actually don't think I was that clear about how it

8  should be phrased either.  Hold on a second.

9          So, those proceedings were only raised...

10          MR. HEEREN:  Your Honor, how about "raised in the

11  context of assessing"?

12          THE COURT:  I think that's fine.

13          MR. LUSTBERG:  I'm fine with that too, your Honor.

14          THE COURT:  The hesitation really was over mixing

15  sort of why it was raised versus how it should be considered,

16  if that makes sense.

17          MR. LUSTBERG:  Yes.

18          THE COURT:  And I think this is neutral enough.  So,

19  "were only raised in the context of assessing Mr. Gallowitz's

20  opinion."

21          I think it's fine; not perfect, but I think that

22  will work.  Sorry.  If I can come up with something better, I

23  would, but I think that that's fine.

24          MR. LUSTBERG:  So do I.

25          THE COURT:  Hang on one second.

*Charge Conference*                                      1855

1          (Discussion off the record.)

2          THE COURT:  My law clerk was wanting to confirm that

3     there's no objection to this proposed strikeout of the second

4     part of the very first sentence of this section.  And that

5     begins, "During the trial in this case, I admitted particular

6     items of evidence for a limited purpose."

7               And it is correct we are striking it because I never

8     instructed anybody on it during the trial.  So, it is struck.

9     I'm confirming for my law clerk now that I understand what the

10    question is.

11              That's going to make the record sound like

12    gibberish, but...

13              Anything else after Section 18?  What's next?

14

15              (Continued on the following page.)

16

17

18

19

20

21

22

23

24

25

Charge Conference                              1856

1    (Continuing)

2         MR. HEEREN:  I think the next item is No. 19, which

3    is the uncalled witnesses equally available but raises the

4    material witness question raised by Mr. Lustberg.

5         THE COURT:  Yes.  Okay.  That is on page -- what

6    page is that on?  It is the same page, yes, in the original.

7         So, Mr. Lustberg, I have reviewed the proposed

8    charge you want on this and I'm not going to include that.  I

9    don't think or agree that that is the state of the law, this

10   notion of inferring something negative from the fact that the

11   Government did not call a witness who has invoked the Fifth

12   and could have been immunized.  You cite, I think, one

13   decision from 1997.  You cite another case that I don't think

14   stands for that proposition.  But the Government, I think, has

15   the better of the argument, and it cites to a more recent

16   Second Circuit case that says there has to be some indication

17   that the testimony from the witness who was not called by the

18   Government would have been exculpatory.

19        Here, I don't think, based on the representation of

20   the Government, and I haven't heard anything to contradict

21   that, that the testimony of Mr. Finning, or Agent Finning

22   would be at all exculpatory.  If anything, it would be

23   inculpatory in many ways as to Mr. McMahon.

24        And secondly, I don't find that it is material

25   either because, as everyone knows, this issue about whether

Charge Conference                                        1857

1    Mr. McMahon had Agent Finning do something that was contrary

2    to his duties is, as we just discussed, being offered for a

3    very limited purpose, namely to assess Mr. McMahon's intent.

4    And even on that, it is definitely peripheral evidence, I

5    would say, at best, as opposed to the evidence that has been

6    introduced that the Government will argue demonstrates his

7    intent and knowledge at the time.  And that includes some of

8    his direct statements through texts or otherwise.  So I just

9    don't find that there is any basis to include the instruction

10   you propose.

11            MR. LUSTBERG:  Your Honor.

12            THE COURT:  Yes, go ahead.

13            MR. LUSTBERG:  I understand the Court's ruling, and

14   I just want the record to be clear as to why I believe the

15   testimony that Mr. Finning would have provided would have been

16   exculpatory.

17            THE COURT:  Okay.

18            MR. LUSTBERG:  It's one thing really only and it was

19   something that came up during the cross-examination of Ms.

20   Habeeb, which I thought was going to be predecessor to Mr.

21   Finning's testimony but turned out not to be, and that was Mr.

22   Finning would, based on his 302, have testified that at the

23   time he was, in fact, doing work on Chinese money laundering,

24   so there would have been a reason for him to pursue this

25   information other than as a favor to Mr. McMahon.  And that's

1  -- so it was for that reason -- that was why I was considering

2  calling Mr. Finning.  That was the evidence that I thought

3  that we would educe.  So I just wanted the record to be clear

4  before going forward so that -- so that, you know, there is an

5  understanding as to what the exculpatory nature of the

6  evidence that I was seeking was.

7         THE COURT:  Well, interestingly, when I heard her

8  testify, I assumed that that's why you wanted to call Mr.

9  Finning, to elicit from him that it would be proper for him to

10 do the search if he himself wanted to start an investigation

11 of that sort.  But it doesn't sound like the 302 suggests that

12 much, rather, what you just said was that he was

13 investigating, you just said now Chinese money laundering.

14        MR. LUSTBERG:  Right.

15        THE COURT:  And that seems different than -- I don't

16 know if this implicates Chinese money laundering, as opposed

17 to efforts to repatriate Chinese citizens.  So that connection

18 is tenuous, at best, based on the 302.  But even if that could

19 be considered exculpatory, I think it's still not material,

20 although I think the bulk of the evidence that would be

21 elicited would not be exculpatory in large part.  So that's a

22 very thin read, I think, to rely upon.  But even still, I

23 don't think it is material, because overall this issue is

24 peripheral and I'm using the language to some extent from

25 *Solomon,* the Second Circuit case cited by the Government from

1    2002, because it really is just a very small bit of evidence

2    that the Government is going to try to argue in terms of

3    intent and knowledge, but it is overwhelmed by other evidence

4    that I just mentioned that goes to Mr. McMahon's intent and

5    knowledge.  So I wouldn't allow in this instruction, which is

6    quite dramatic and would essentially tell the jury they could

7    find a negative inference based on this scintilla of

8    potentially exculpatory evidence that I don't think actually

9    is necessarily exculpatory based on the 302 recitation that

10   you just mentioned.  So, for all of those reasons, I'm not

11   allowing in that instruction.

12          So that takes us back now to the equally available

13   instruction that was included.  Just so everyone understands,

14   and as indicated by the bracketed if applicable, I was

15   anticipating that there might be some argument about witnesses

16   who were not called, but I think -- my suggestion is to take

17   this instruction out entirely unless someone really intends to

18   argue that someone was not called besides -- I'm sorry, Mr.

19   Lustberg, do you still intend to argue that Mr. Finning could

20   have been called?

21          MR. LUSTBERG:  No, I won't argue that.  But I do

22   think there have been some names that have come up pretty

23   consistently that were not called by either side, so I still

24   think that this instruction is appropriate.  So I will give

25   you one example.

Charge Conference                                    1860

1          THE COURT:  No. Hang on a second.

2          If you think that, though, are you okay with the

3   instruction as worded?

4          MR. LUSTBERG:  Yes.  Yes.

5          THE COURT:  Okay.  That's fine.  We will leave it in

6   as is.  It says -- and oftentimes it's the defense who objects

7   -- that the parties have equal ability to call witnesses.

8          You're fine with that?

9          MR. LUSTBERG:  Yes.

10          THE COURT:  How about other members of the defense

11   teams, any objection to Section 19?

12          MR. GOLDBERGER:  We want it in.

13          THE COURT:  And Mr. Tung?

14          MR. TUNG:  We want it in.

15          THE COURT:  Okay.  All right.  So Government, do you

16   have any objection?

17          MR. HEEREN:  No, Your Honor, but I would note that

18   we -- to the extent there's summation on certain -- well,

19   withdrawn.

20          I will object at the appropriate time.

21          THE COURT:  Object to argument?

22          MR. HEEREN:  I was thinking ahead, Your Honor.  No

23   objection here, Your Honor.

24          THE COURT:  Okay.  Well, I prefer there not be

25   objections based on any arguments that shouldn't be made that

1   you anticipate.  Does that make sense?  I mean, in other

2   words -- what are you thinking of?

3            MR. HEEREN:  My concern is is that there were some

4   cross-examination questions that were sustained regarding, for

5   example, an individual named Chen Chaohong and why he wasn't

6   on trial.  Obviously it depends on precisely what might be

7   said, but we would anticipate objecting to any line of

8   argument that strays into that area of who is on trial, who is

9   not on trial.

10           THE COURT:  Well, I do want to caution all parties

11  that you should not be making that kind of argument, because,

12  as I was instruct the jury, it is irrelevant to them why

13  individuals who are mentioned are not on trial and that is not

14  an appropriate consideration for them.  So I will trust that

15  the defense counsel aren't going to make that argument because

16  that's not proper argument.

17           MR. GOLDBERGER:  Well, Judge, we need to discuss

18  this then.

19           THE COURT:  Okay.

20           MR. GOLDBERGER:  For instance, Mr. Chen, Chen

21  Chaohong, although he is not present as a witness, witnesses

22  in this case gave extremely important testimony about him.  He

23  was the initiator.

24           THE COURT:  Right.

25           MR. GOLDBERGER:  So, while I understand Your Honor's

1    charge that witnesses are equally available to both sides,

2    since the defendant doesn't have any burden of proof at all,

3    it's the burden of proof on the Government to prove guilt

4    beyond a reasonable doubt and I think it is perfectly

5    appropriate for us to, since Mr. Kuang spoke at length about

6    his conversation and they introduced yesterday that there was

7    a telephone call that went on between Chen and Kuang on the

8    day that this all took place or the day after, I think it's

9    perfectly appropriate for us to talk about Chen.  He was the

10   one who instituted the entire events.

11              THE COURT:  But what do you want to say about it to

12   the jury?

13              MR. GOLDBERGER:  I want to say that the Government

14   has the burden of proof in terms of proving this case beyond a

15   reasonable doubt and that Mr. Chen, okay, is somebody, okay,

16   that should be a witness in this case.

17              THE COURT:  No.  That's exactly the opposite of what

18   my instruction is to them, is that they are to focus on the

19   evidence before them, not on what other evidence could have

20   been brought before them.  So it is standard, at least to my

21   mind, to say to the jury what I am going to instruct them,

22   which is they are not to question why certain witnesses were

23   not called or why the Government didn't produce certain

24   evidence.

25              MR. GOLDBERGER:  Judge, with all due respect, I have

1   always thought that cases are decided on the evidence or lack

2   thereof, and in this case, there couldn't be a more important

3   name in the case then Chen.  Kuang -- Kuang gave him full

4   credit, so to speak, for instituting the situation, number

5   one; number two, they put into evidence the fact that he had a

6   telephone call while Kuang was at the location.  Now, for us

7   to not talk about Chen at all is -- I mean, does that make any

8   sense?  It's like leaving out the most important part of case

9   from our point of view.

10           THE COURT:  But, again, it is a question of nuance.

11  You certainly can argue that there is insufficient evidence to

12  find beyond a reasonable doubt that -- let me back up a bit.

13           You can certainly argue that you say that the

14  evidence that the Government has put forth is insufficient to

15  show whatever the proposition is, right.  You can say there is

16  just not enough evidence.  But what you can't do is say the

17  only way you can find if there is enough evidence is if the

18  Government called this particular witness, Mr. Chen.  That's

19  not proper argument.  The Government is stuck with whatever

20  evidence they put forward.  But you can't suggest to them the

21  fact that they did not call Mr. Chen means that there isn't --

22  well, actually, I should retract that.  They could suggest

23  that without hearing from Mr. Chen, you submit that there's

24  not enough evidence.  I guess you could say that.

25           It's an interesting question.  It's a fine line

1   between saying there is not enough evidence without hearing

2   the other side of the conversation and saying that the

3   Government had a duty to call a witness.  But, again, I think

4   the key is for you to focus on --

5            MR. GOLDBERGER:  I don't think -- Your Honor, with

6   all due respect, I don't think it's a question of the

7   Government's duty.  I think it is the question of what the

8   evidence in the case is and what the evidence shows.  And what

9   the evidence clearly shows here is that the reason that this

10  conduct went on was because Mr. Chen spoke to both Mr. Kuang

11  and to my client about going ahead with this kind of conduct.

12  And without him, there is no evidence of the fact that this

13  would have been instituted at all.  And, so, the fact that --

14  if Your Honor doesn't permit us to talk about Chen, I mean --

15           THE COURT:  I think you're misunderstanding me.  I'm

16  not saying you can't talk about Chen.  Again, as I'm trying to

17  explain, if you will let me finish, is that there is a fine

18  line between saying the Government should have called this

19  witness and because the Government didn't do that, there is

20  insufficient evidence versus saying look at the evidence that

21  the Government has put before you, it's only Mr. Kuang's

22  testimony that suggests that your client Mr. Zheng is the one

23  who directly communicated with Chen or was working for the

24  Chinese Government or knew he was working for the Chinese

25  Government.  That's different than saying the Government had

Charge Conference                                    1865

1    an obligation in some way -- and I know you're not phrasing it

2    at as duty -- but you're sort of focusing on everything they

3    didn't produce and again suggesting that because they didn't

4    produce it, there's not enough.

5            MR. GOLDBERGER:  Well, Judge, if we can just -- I

6    think this is really important and that's why I'm going to

7    press the issue with you, Kuang's most important testimony for

8    the Government was how this all got started.

9            THE COURT:  Hang on.  You don't need to explain it

10   to me.  I fully understand what you're saying.  I'm trying to

11   explain to you the line, I think -- and I'm acknowledging it

12   is a little difficult to parse it, but there is something

13   qualitatively different and I think proper or improper about

14   suggesting that the Government should have called Chen versus

15   saying what they have put before you is not enough, and you

16   heard this supposed evidence from Mr. Kuang but you shouldn't

17   believe him versus saying the Government should have called

18   Chen, because the Government doesn't have a duty or an

19   obligation to put on any certain type of evidence or to call

20   all the witnesses who were called as witnesses --

21           MR. GOLDBERGER:  I will be glad --

22           THE COURT:  You have to let me finish, please.

23           MR. GOLDBERGER:  Okay.

24           THE COURT:  -- to call as witnesses everyone who was

25   mentioned.  I just want to make sure you don't stray into some

1   kind of improper argument to suggest that there is a duty, and

2   I know you're trying to argue this, but the Government has a

3   duty to call every person who might have been involved in

4   this.  That's really what this instruction is about.  I'm not

5   saying you can't argue.  Again, this is what I'm sort of

6   openly ruminating about is I don't think there is anything

7   improper about saying I submit to you that without hearing

8   from Chen you don't have enough.  Maybe you can say something

9   to that effect, that Kuang isn't enough.

10              MR. GOLDBERGER:  Your last suggestion seems fine.

11              THE COURT:  I don't think the Government can really

12   object to that.  There are two people in a conversation.  The

13   Government puts forth one part of the conversation and he says

14   I say that what they've given you is not enough without

15   hearing from Mr. Chen.  I'm not particularly happy about that

16   formulation.  But that seems to me sort of at least an

17   argument that can be made and then you get into the equally

18   available witness charge.

19              MR. HEEREN:  I think the issue is what the -- it's

20   the focus.  The focus should be on the evidence.  And you can

21   focus on the evidence of what is or what is not in the record

22   as it relates to Chen Chaohong.

23              THE COURT:  But I think that's Government's

24   argument.

25              All I'm saying is can you make the argument and then

1    you give the response.

2                 MR. HEEREN:  Fair enough.

3                 THE COURT:  What I don't want to do, and I will

4    instruct the jury, and anyone can say it, the Government can

5    say it, you will be instructed that the Government isn't

6    obligated to call every single potential witness and the focus

7    should be on what is before you as opposed to what is not

8    before you, and then I will give the equally available witness

9    charge.  All right.

10                MR. HEEREN:  Thank you, Your Honor.

11                THE COURT:  Yes.  We strayed into closings already.

12                So let's move on.  Let me say this, I don't think

13   these issues are amenable to a very bright line division.

14   Obviously, I'll be listening to make sure it doesn't stray

15   into improper argument.  What I just said now, and it seems to

16   be what Mr. Goldberger wants to argue, is I think appropriate.

17                Okay.  Now, moving on, we are on page 13.  Who's got

18   something next?  Let's put it that way.

19                MR. HEEREN:  Our next one, Your Honor, is not until

20   venue, which is Roman numeral I of the next section.

21                THE COURT:  Page 16.

22                MR. LUSTBERG:  I think I have one before that.

23                THE COURT:  Okay.

24                MR. LUSTBERG:  I'm losing track.  This is actually

25   related to this last discussion.  Yes, it is.  This is the

Charge Conference                           1868

1  reasonable doubt instruction.  And I actually went back and
2  looked at some prior instructions from Your Honor and the part
3  that was missing in this one was in the third -- I'm sorry --
4  the fourth sentence, which currently reads, "It is a doubt
5  that a reasonable person has after carefully weighing all of
6  the evidence."
7          In other instructions that Your Honor has provided,
8  you added the words "or lack of evidence," and I can give you
9  examples of other instructions that we have found of this
10  Court that says that.  But I think it kind of goes to Mr.
11  Goldberger's point.  So we would ask that those four words be
12  added at the conclusion of that sentence.
13          THE COURT:  It's funny.  I'm sure that where I
14  included it, it was requested by the defense because I think
15  the formulation that is here I think is the somewhat standard
16  one.
17          MR. LUSTBERG:  Okay.  I can tell you --
18          THE COURT:  I don't have any problem including it.
19  Does the Government object?
20          MR. HEEREN:  One second, Your Honor.
21          MR. LUSTBERG:  I can give you the citations.
22          THE COURT:  To where I have included it, you mean?
23          MR. LUSTBERG:  Yes.
24          THE COURT:  Like I said, I think it's because it's
25  been suggested to me.  As I recall, the standard instruction

1   probably stops at "all of the evidence."

2           MR. HEEREN:  Your Honor, could we actually get the

3   citation.  We have looked at the Court's fairly recent ones

4   too and I don't know that we have seen that.  I'm sure Mr.

5   Lustberg has it.  It would be helpful for us.

6           THE COURT:  Yes.

7           MR. LUSTBERG:  I do.  It is a July 20, 2022 docket

8   entry in a case United States versus Burgos-Collazo,

9   20-criminal-492.  I'm happy to forward it to all the parties.

10  I can tell you I picked it out because I actually mentioned it

11  in my opening and thought the instruction would be the same,

12  but either way, you're always taking your chances when you do

13  that.

14          THE COURT:  Right.

15          MR. LUSTBERG:  But I will forward this right now to

16  the Government as well so you have it in front of you.

17          MR. HEEREN:  Thank you, Mr. Lustberg.

18          So I think the Government does object, Your Honor.

19  First, as a baseline point, as the Court noted, it is not in

20  the standard instruction that's normally given on Sand or

21  otherwise.  Although I take Mr. Lustberg at his word, that it

22  was in that case; it's not one that the Court gives as a

23  matter of course either, my concern substantively, beyond sort

24  of that it's not of ordinary, is that it implies that the jury

25  can consider the absence of evidence in the sense they can

1    consider things not in evidence, and I think that is a

2    dangerous road to go down.

3              THE COURT:  I tend to agree.  When I read it, and I

4    don't remember how it is I ended up including it in the

5    Burgos-Collazo case, it strikes me as incorrect in a certain

6    way because the point is to say you should consider all the

7    evidence you do have before you and decide if you still have a

8    doubt because the Government has the burden of proof.  I agree

9    with Mr. Heeren, that somehow suggesting the lack of evidence

10   could easily cause the jury to speculate about what else could

11   have been gotten and that's always a danger.

12             MR. LUSTBERG:  Well, let me just be clear as to how

13   I would -- why it's relevant for Mr. McMahon in particular.

14   So one thing about this case, and I think everybody would

15   agree, that with regard to Mr. McMahon it's a circumstantial

16   case in the sense that there is not a witness who's going to

17   say he or she told Mr. McMahon that he was working for China.

18   There is no statement from Mr. McMahon saying I was working

19   for China.  It's a puzzle that the Government is trying to put

20   together to make that argument.  And I think I should be able

21   to argue that there's no one saying that.  That's a lack of

22   evidence.  That's an absence of evidence.

23             This is an instruction, for what it's worth, that in

24   my career it's given in every case, but, you know, the Circuit

25   has model instructions and it's there, so I don't have to deal

1  with this kind of discussion.  But I think that that's a

2  perfectly appropriate argument to say that they didn't have

3  that.

4          THE COURT:  No.  So here's the problem, and it is a

5  very nuanced argument, I will acknowledge, but there is to me

6  something different about saying that the evidence the

7  Government has put forth is insufficient to demonstrate beyond

8  a reasonable doubt that Mr. McMahon had the relevant intent,

9  right, the necessary intent, versus there is a lack of

10 evidence, which almost suggests that the Government should be

11 required to put on direct evidence about it.  The word lack is

12 different than insufficient.  Insufficient has -- causes one

13 to focus on what is before them.  Lack of evidence causes one

14 to focus on what has not put before them.

15          Now, I think you would argue those are the same, but

16 they are not, in my opinion.  And I think the reason this

17 instruction, which is the standard one, and which in all the

18 other cases that the Government at least has cited back to me

19 I have followed, because it is a standard instruction, I think

20 that that's why it is phrased as such, which is you should

21 weigh all the evidence that is before you and decide if you

22 think it's sufficient to prove beyond a reasonable doubt, not

23 focusing on other things that could have been brought that

24 aren't before you or the lack of that evidence.  Because of

25 course one could summarize that it would be great if they had

1  a recording of something that Mr. McMahon said that showed

2  exactly that he -- showed directly that he knew he was working

3  for the Chinese Government.

4          So, again, I know it seems perhaps subtle, but I do

5  think there is a distinction, at least in terms of emphasis

6  and the formulation you want, and obviously I gave it once,

7  but now I would reconsider that if I focused on it further.

8          MR. LUSTBERG:  Judge, I apologize that I didn't know

9  about that instruction.  It was actually attached as an

10 exhibit to the original Government's proposed instructions,

11 which is how I found out about it.  Just so you understand,

12 that's where I got this from.  Maybe that doesn't matter.  It

13 does feel like there should be a -- if that's the case, let me

14 just look at the instruction again.

15         THE COURT:  You know what, it's funny, I was looking

16 at the banner.  Now I realize that's the filing banner.  It's

17 interesting because I'm looking at one of Judge Garaufis'

18 charges and he says you should consider all of the proof

19 presented at trial or any lack of proof in determining whether

20 you have a reasonable doubt.  So this is in document 193-4,

21 which is part of the Government's attachments of jury

22 instructions given in other cases.

23         And I probably misspoke earlier when I said that the

24 cases of mine that they attached all have this construction

25 that I just mentioned, or instruction, I guess perhaps more

1  accurately, because I was looking at the banner at the top

2  which has to do with the filing in this case.  That's the ECF

3  banner.

4        So I can't say categorically, but it does seems to

5  me, based on my own recollection, that I typically follow the

6  standard instruction.  And being forced now to think about

7  that particular wording, I do find that there's a difference,

8  especially if it ends with or lack thereof.

9        Lack of proof is --

10        MR. HEEREN:  So, Your Honor, to the extent it gives

11  any comfort, for lack of a better word, there is in the -- in

12  Section 11 that talks about the lack of duty to call

13  witnesses, to produce evidence, and so forth, there's a more

14  clear discussion of reasonable doubt and talks about how

15  reasonable doubt can arise from a lack of evidence and talks

16  about sort of the -- does a more thorough job of explaining

17  the issue you're sort of discussing with us right now.  So you

18  don't need to import it again into the reasonable doubt

19  standard.  So I guess for whatever it's worth, the point is

20  made elsewhere that reasonable doubt can arise from a lack of

21  evidence put forth by the Government and that sort of gets to

22  where we are talking about.

23        THE COURT:  Although that could cut the other way,

24  which is why not then include that where we are talking

25  specifically about reasonable doubt.

1          I don't think there is anything that magical about

2     including it, to be honest, because obviously the defense can

3     argue there simply is insufficient or a lack of evidence to

4     prove guilt beyond a reasonable doubt.

5          MR. HEEREN:  And, Your Honor, just to answer that

6     question, it's because the particular phrasing in the

7     reasonable doubt section is doubt that a reasonable person has

8     after carefully weighing all of the evidence.

9          THE COURT:  Right.

10         MR. HEEREN:  And that's the key phrase, is the

11    weighing.  And that's different, right, because it's referring

12    to what was considered in the case.  And it may not be enough

13    evidence; it may be insufficient, but you're not weighing what

14    could have been there.

15         THE COURT:  I think at the end of the day I'm going

16    to stick with the formulation that appears to be the more

17    traditional standard one.  And certainly I think is the one

18    probably in Sand, I'm guessing.  I don't remember what the

19    origin of that one is.  I'm going to leave it as is I think

20    for the very reason that Mr. Heeren stated.  I think, as I

21    said before, it may be a subtle difference, but emphasis

22    should be on what is before them, what evidence is before them

23    and not what evidence could have been before them and is not.

24    I'm going to leave that as is.

25         But as the Government notes, there is a reference

Charge Conference                                    1875

1   earlier to the fact that a lack of evidence could contribute

2   to reasonable doubt in the prior section.  And certainly the

3   defense is free to make that argument.

4          And, finally, I guess I would say I don't think that

5   change is going to -- certainly I don't think it prejudices

6   the defendants in any way, but I would prefer to have the jury

7   focus on what is before them, especially given the nature of

8   some of the arguments that I think will be made.

9          All right.  So I'm going to overrule that objection.

10         Let's go beyond a reasonable doubt.  What's the next

11  comment or suggestion?

12         MR. HEEREN:  The next item, Your Honor, is the venue

13  instruction.  I guess starting at a high level, I don't

14  believe there is any objection to venue at the close of the

15  Government's case, so I think at this point there doesn't need

16  to be a venue instruction.

17         THE COURT:  Is anyone going to argue that venue is

18  lacking here?

19         MR. LUSTBERG:  We certainly filed pretrial motions

20  addressed to venue, which the Court denied.

21         THE COURT:  Well, I have heard evidence that would

22  establish venue.  I think there was some effort to establish

23  that Mr. McMahon's account, for example, might have been in

24  the Eastern District or maybe monies were paid from the

25  Eastern District, and then I think Mr. Zhu, he lives in

Charge Conference                                    1876

1   Flushing; correct?  Wasn't this lawyer from Flushing, Ms. Shi?

2              MR. HEEREN:  She was, yes.

3              THE COURT:  Okay.  And then as to Mr. Zheng.

4              MR. GOLDBERGER:  Mr. Zheng picked up Mr. Kuang in

5   Flushing.

6              THE COURT:  Right.  So, it's up to you, folks.  You

7   can still argue it, but I think there has been evidence enough

8   for venue since venue need only be proved by a preponderance.

9              And then there all of the people coming through the

10  airport as part of the alleged conspiracy.

11             MR. LUSTBERG:  I'm okay with omitting it.

12             THE COURT:  Okay.  So long as no one is arguing it.

13  Obviously if someone raises it in their argument, then I will

14  instruct them, but less is less when it comes to instructions

15  and the jurors will be happy.  We will take out the --

16             MR. LUSTBERG:  I will note, Your Honor, there is the

17  interstate element of the stalking statute that we will talk

18  about later, which has the same thing.  Part of my thinking in

19  which it should be eliminated is because it is sort of

20  duplicative and maybe confusing because there it's an element

21  that has to be proven beyond a reasonable doubt and here it is

22  a preponderance, so I think the Government is right by

23  omitting it here.

24             THE COURT:  Right, especially because they may

25  confuse what the standard is with respect to interstate

1    stalking.

2             MR. LUSTBERG:  Exactly.

3             THE COURT:  I think that's a fair point.  Good

4    point.

5             So, going on, anything else?

6             MR. HEEREN:  To venue, if we have to raise it, there

7    is some language we would want to propose, but I think since

8    it sounds like it is unlikely to come up, we can table that

9    since I think it would be a fairly quick discussion with the

10   Court if we had to have the language.

11            THE COURT:  Are you sure you don't want to at least

12   preview it so that we can insert something quickly?

13            MR. HEEREN:  Sure, whatever the Court wants.

14            THE COURT:  So what would be the edits you would

15   propose?

16            MR. HEEREN:  In paragraph two, I think the language

17   might have gotten a little jumbled.  The way I would rewrite

18   the sentences is it would begin the same, which would be "To

19   establish that venue for a charged crime is appropriate in the

20   Eastern District of New York, the Government must prove that,"

21   we would add "some act in furtherance of their crime occurred

22   here," period.

23            And then the next sentence would begin "Even if

24   other acts were committed outside this district or if the

25   crime was completed elsewhere, and then you would add "venue

Charge Conference                          1878

1   is established," and then it would continue in the -- as is,

2   "so long as some act in furtherance of the crime took place in

3   this district."  It is a little bit repetitive but it makes it

4   clear.

5           THE COURT:  I'm not sure that makes any substantive

6   difference.

7           MR. HEEREN:  No.  The way it was currently written,

8   I think two sentences got merged and it was a little

9   confusing.

10          And then there is another substantive sentence after

11  that.

12          THE COURT:  It's funny, I mean, to me the sentence

13  reads just fine.  It is a little long, but I think it

14  communicates the thoughts accurately and fully.  I don't

15  really mind breaking them up.

16          Does anyone on the defense side care if we break it

17  down into three separate sentences?

18          MR. LUSTBERG:  No, Your Honor.

19          MR. TUNG:  No, Your Honor.

20          MR. GOLDBERGER:  No.

21          THE COURT:  All right.  So we will get those from

22  the Government after this in case we need to reinsert the

23  venue instruction.

24          Go ahead, Mr. Heeren.

25          MR. HEEREN:  And then the one additional sentence to

Charge Conference                    1879

1   add to that would be "In a conspiracy," comma, "actions of

2   co-conspirators, as well as actions caused by co-conspirators,

3   are sufficient to confer venue if it was reasonably

4   foreseeable to the defendants that the acts would occur in the

5   Eastern District of New York.

6               THE COURT:  All right.  So you have put it down for

7   the record.

8               Any objection to that addition if we ended up using

9   the venue instruction, Mr. Lustberg?

10              MR. LUSTBERG:  No, Your Honor.

11              MR. GOLDBERGER:  No, Your Honor.

12              MR. TUNG:  No, Your Honor.

13              THE COURT:  Let's hope we don't have to.  We will

14  have the transcript if we need it for that change.

15              Do you want to lengthen this one further?

16              MR. HEEREN:  No, Your Honor.

17              THE COURT:  It's an awful lot on a somewhat

18  uncontroversial proposition.  It's not your fault.  It started

19  off long.

20              MR. HEEREN:  Sometimes it's quite controversial.

21              No, Your Honor.  There is some typo stuff, but it is

22  not worth getting into.

23              THE COURT:  Let's move ahead and assume for the

24  moment this issue won't arise since no one intends to dispute

25  venue.

Charge Conference                                    1880

1              Next comment.

2              MR. HEEREN:  The next for the Government is in

3    Section 3B, intentionally.

4              THE COURT:  Yes, on page 18.

5              MR. HEEREN:  And, so, just to parallel the language

6    in the section above A, I think we should say, A defendant

7    acts intentionally" because the sentence above says, "A

8    defendant acts knowingly."  I'm also fine with a person acts

9    knowingly and a person acts intentionally, whichever it is,

10   just that that's the same.

11             THE COURT:  Parallelism.

12             Does the defense care either way?

13             MR. LUSTBERG:  I think it is probably a good idea to

14   be parallel, but I don't care.

15             THE COURT:  How about just a person for both of

16   them?  "A person acts knowingly" under the knowingly section

17   and "a person acts intentionally"?

18             MR. HEEREN:  That's fine, Your Honor.

19             THE COURT:  All right.

20             MR. HEEREN:  The next change is to shorten this

21   again.  The second paragraph under "intentionally," which is

22   the point about state of mind being inferential, there is a

23   similar but not identical sentence at the end of the

24   paragraph, at the end of the conscious avoidance section.  And

25   what the Government would propose is taking the one -- the

1   paragraph from the intentional section, so the second

2   paragraph under "intentionally," and moving that to after the

3   "conscious avoidance" paragraph and striking the second

4   version of that that exists in the "conscious avoidance"

5   paragraph.

6              THE COURT:  Okay.

7              MR. HEEREN:  Does that make sense?

8              THE COURT:  It does, except for the fact I didn't

9   quite follow where you were.  Where is the portion you would

10  move?  How does it start?

11             MR. HEEREN:  So, it's in the second paragraph under

12  "intentionally" and it begins "The issues of knowledge and

13  intent require you" --

14             THE COURT:  I see exactly what you're saying.  My

15  apologies for cutting you off.  I see exactly that these two

16  are the same.  You would remove the first par of --

17             MR. HEEREN:  I would just take that entire paragraph

18  and move that to after the "conscious avoidance" paragraph,

19  the first paragraph under "conscious avoidance."

20             THE COURT:  And replace that one?

21             MR. HEEREN:  Correct, because the second one, it is

22  actually shorter and not quite as helpful.

23             THE COURT:  I think that make sense.  Does anyone

24  object to that?

25             MR. LUSTBERG:  One moment.

Charge Conference                              1882

1          THE COURT:  Just so it's clear, it would be a

2    wholesale supplanting of the second paragraph under

3    intentionally with respect to the second paragraph under

4    conscious avoidance, one would replace the other.

5          MR. LUSTBERG:  I agree that it should only be in one

6    of the two.  They seem very similar.

7          THE COURT:  They are almost identical.  One could

8    sit here and figure out what the additional sentence is.  I

9    know that the second sentence in the "intentionally" paragraph

10   is not in the "conscious avoidance" section.

11         MR. LUSTBERG:  I'm okay with Mr. Heeren's proposed

12   change.

13         THE COURT:  All right.  So any objection, Mr.

14   Goldberger or Mr.  Tung?

15         MR. TUNG:  No.

16         MR. GOLDBERGER:  No.

17         THE COURT:  So we will make that change.  We will

18   replace the one on page 19 with the one on page 18.

19         MR. HEEREN:  For whatever it's worth, I think that

20   that paragraph is relevant to all of the knowledge and intent

21   points anyway, so I think it makes sense that it comes after

22   all three of those instructions.

23         THE COURT:  I think that's right.  All right.

24   Anything else from the Government?

25         MR. HEEREN:  Not until conspiracy, Section 5A.

Charge Conference                                       1883

1              THE COURT:  You realize that's the next page, right?

2      I get all excited when you say not until.  It's the next page.

3      Does anyone have anything before that?

4              MR. LUSTBERG:  No.

5              THE COURT:  Now, we are looking at page 20.

6              MR. HEEREN:  Under conspiracy generally, the second

7      paragraph that begins a conspiracy is an agreement by two or

8      more persons, there is -- after the sentence "A conspiracy is

9      in and of itself a crime," we would propose to add if a

10     conspiracy exists, even if it fails to achieve its purpose, it

11     is still a punishable crime.

12             THE COURT:  Okay.  I think that is certainly

13     expressed elsewhere, because I know I've seen that language.

14             Am I wrong?  I thought we had that somewhere else.

15             MR. HEEREN:  I think it was in our proposal and it

16     may have fallen out.  I could be wrong.

17             MR. LUSTBERG:  That's one I saw myself as well.

18             THE COURT:  Maybe look up purpose or achieve, Kate,

19     and see if you can find it.

20             Maybe you're right.  I don't know how I would have

21     read it then.

22             Yes, we will put that in there.  So the additional

23     sentence is "If a conspiracy exists."

24             MR. HEEREN:  Yes.

25             THE COURT:  "Even if it fails to achieve its

Charge Conference                    1884

1  purpose, it is still a punishable crime," and that follows, as

2  you know, Kate, after a conspiracy is in and of itself a

3  crime.

4            Any objection to that?

5            MR. LUSTBERG:  No.

6            MR. GOLDBERGER:  No, Your Honor.

7            MR. TUNG:  No, Your Honor.

8            THE COURT:  All right.

9            Mr. Heeren, anything else?  I'm going to go to you

10  now because at some point someone is going to sneak in one.

11  Right now you're leading the pack.

12

13            (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

*Proceedings*                                                    1885

1              (In open court.)

2              MR. HEEREN:  I do go a few pages further ahead.

3              THE COURT:  Be still my beating heart.

4              MR. HEEREN:  It's the aiding and abetting section.

5              THE COURT:  Okay.  Page 25.  Anything before then?

6    Page 25.

7              MR. HEEREN:  You have to flip back and forth here

8    to make sure I know where I am.  It's a typo in the

9    paragraph that begins, to establish that the defendant

10   participated in the commission of the crime.  This is

11   probably the next line.

12             THE COURT:  On Page 26, yes.  To establish that

13   the defendant knowingly associated themselves.

14             MR. HEEREN:  The paragraph immediately before

15   that, your Honor.

16             THE COURT:  Okay.

17             MR. HEEREN:  The sixth line in that Paragraph 1

18   who has knowledge about crime is being committed or is about

19   to be committed little typo.

20             THE COURT:  Wow that is impressive.

21             MR. HEEREN:  I don't actually think I made that

22   edit.

23             MR. LUSTBERG:  I think it fall into the category

24   of you better get a life.

25             THE COURT:  The thing is when I read it I pick it

*Proceedings*                                                        1886

1    up so it's better we get it now.

2          MR. HEEREN:  In the bullets, it has it in plural.

3    The first bullet is singular, as something he wished to

4    bring about.  And the next are in the plural, themselves and

5    their.  I think it should be himself and his actions because

6    they are considering this on an individual basis about each

7    defendant.

8          MR. LUSTBERG:  I agree.

9          THE COURT:  It's interesting because I think there

10   is a movement to make all of these -- right?

11         MR. HEEREN:  I'm also fine with they and them, too

12   if we're doing they and them throughout.

13         THE COURT:  We'll stick with the more conservative

14   did he knowingly associate himself because at least it

15   starts off as singular but whatever.  Okay.

16         Did he seek by his actions?  We'll make those

17   changes.

18         Anything after that?  Or what's after that?

19         MR. HEEREN:  The next one is the withdrawal

20   instruction and I think the Government's -- has opposed the

21   instruction.

22         THE COURT:  Now, let's talk about this.  The

23   Government's objection is based on the fact that they don't

24   believe there is sufficient evidence to warrant this

25   instruction, so let me hear from Mr. Zheng's counsel on this

*Proceedings*                                                    1887

1  because it be honest when I included this it's because I

2  assumed that Mr. Zheng was going to testify in part based on

3  the opening.  And then in part based on what was I think an

4  initial response that Mr. Zheng might testify so that's why

5  we included it.  At this point, I don't know what the

6  evidence is that would support a theory of withdrawal from

7  the conspiracy by Mr. Zheng.

8           MR. GOLDBERGER:  Well, certainly, the second trip

9  by himself where Kuang was not with him the next day where

10  he goes up to the home again whether or not he took or he

11  didn't take the note off the door.

12          THE COURT:  Well, there's no evidence he did and

13  the evidence suggests that.

14          MR. GOLDBERGER:  Actually there is, Judge.

15          THE COURT:  You really do have to let me finish

16  just for the Court reporter's sake.  So all I was saying is

17  there was evidence indicating that the note had been taken

18  down by then but go ahead.

19          MR. GOLDBERGER:  As I recall, he did get in touch

20  with Chen.

21          THE COURT:  Who is he?

22          MR. GOLDBERGER:  I'm talking about the defendant.

23  He got in touch with Chen and told him that he had taken

24  down the note.

25          THE COURT:  So you're saying through their

*Proceedings*                                              1888

1   cooperating witness, there's testimony that the cooperating

2   witness heard your client call Mr. Chen and say he took down

3   the note?  I don't recall that testimony, but I don't have a

4   perfect recall as to the record.

5             MR. GOLDBERGER:  The Government made a statement

6   or part of a statement --

7             THE COURT:  Postarrest.

8             MR. GOLDBERGER:  -- that Mr. Zheng made.

9             And during that statement, a portion of it

10  indicates that he did call Mr. Chen and he took down the

11  note and I think that that's appropriate for us to argue

12  that he withdrew from the conspiracy.

13            THE COURT:  Okay.

14            MR. GOLDBERGER:  At that point.

15            THE COURT:  I do recall something in his

16  postarrest about that.

17            So if that's true, and I'm turning now to the

18  Government, why shouldn't the defense be able to argue

19  withdrawal from the conspiracy even if the Government is

20  going to argue that that was impossible since a note had

21  been taken down.  I assume you're going to argue that that

22  was a false exculpatory statement.

23            MR. HEEREN:  We are going to do that, your Honor.

24  It is a false exculpatory statement.

25            THE COURT:  I suspect the problem is if it isn't,

*Proceedings*                                                    1889

1    it's hearsay.  In other words, it's being offered for the

2    truth that he actually did those things.

3              MR. GOLDBERGER:  If I may, Judge?

4              We do have a film, tape, of him going by himself

5    not with Kuang the next day.  Now, whether he whether or not

6    he took something down or he didn't he has something in his

7    hand and to could be argued that it's a note or it may be

8    argued that it's a telephone, it could be argued a lot of

9    things.  But after he's arrested, they played part of the

10   statement that he made and what was allowed to be played,

11   and has already been played for the jury, is that he did

12   call Chen.

13             And by the way, I think what's supported there in

14   terms of him calling Chen is that he volunteered to the

15   Government to call Chen and tape record any conversations

16   that he had with him then but he certainly called Chen to

17   let him know, he said this, that he had taken down the note

18   and was not a part of this anymore and I think that's

19   clearly we should be permitted to argue withdrawal.

20             The Government can be permitted, I think,

21   obviously, we'll argue that he didn't withdraw from the

22   conspiracy, that it was already completed, it was that it's

23   a lie, that he took down the note.  They can argue whatever

24   they want, but I think we should be at least allowed to make

25   the argument.

*Proceedings*                                                    1890

1          THE COURT:  Well, let me say I think your

2    co-counsel is whispering to you.

3          One is I think the part about him offering it make

4    recorded conversations with Chen didn't come in that was he

5    can included and secondly, and I don't actually know the

6    answer to this but it's interesting to me that the

7    Government offered, or I presume, allowed in that portion of

8    the tape to argue false exculpatory that it's evidence of

9    his consciousness of guilt because he lied to the agents

10   about having taken down the note or having called Chen and

11   telling Chen he took down the note, I guess, either of those

12   being lies allegedly.

13         If they're not false exculpatories, though, then

14   it would seem to me as I said a moment ago to be hearsay

15   vis-à-vis the defendant because they're offered for their

16   truth, namely, that he took down the note and they are

17   out-of-court statements so normally they wouldn't be

18   admissible because they're hearsay.

19         But, yes, the Government put them in for their own

20   purpose.  The question is whether or not you can argue to

21   the jury that they should consider them for their truth when

22   they're actually not admissible for their truth.  A did

23   there ever come a time own statement saying I did X, Y, or Z

24   can't be offered to show that he actually did do that.

25         So I don't think you can argue to the jury that

*Proceedings*                                              1891

1   they should consider that for its truth which puts a bit of

2   a dent in your withdrawal argument.

3          MR. GOLDBERGER:  I'm not sure I understand, Judge.

4   The Government allowed that portion, I mean, they could have

5   objected and said just what your Honor is saying now, but

6   they allowed and without any problem that it be played.

7          THE COURT:  To use to for a non-hearsay purpose,

8   namely, to show consciousness of guilt because they lied.

9   They're saying it can't be offered for its truth.  It can

10  only be offered as evidence of him lying to agents which is

11  an indication of his guilty conscience.  That's the purpose,

12  the admissible purpose of this.  The inadmissible purposes

13  of this is to argue that they're true, that he took down the

14  note.

15         MR. GOLDBERGER:  Excuse me, Judge, there was never

16  any argument on the Government's part that that statement

17  that he made was false.  That statement that he made about

18  calling Chen was false.

19         THE COURT:  Well, they haven't made the argument

20  yet because summation hasn't been made yet.  The Government

21  will tell me, why did you allow in or play that portion of

22  the tape?  And I don't remember if this is part of the

23  compromise with your allowed to in under completeness.

24         MS. CHEN:  Your Honor, we did not we preserved our

25  objection as to completeness and does for the exact reason

*Proceedings*                                                1892

1    that you identified that it was part of the clip that was

2    played.  It was part of the false exculpatory which would

3    again not be offered for its truth.  For example, in other

4    portions of video, defendant Zheng states he never posted

5    the note on the door.

6              Again, that's obviously not being offered for the

7    fact that defendant Zheng did, in fact, did not post the

8    note on the door.  It's precisely for guilty state of mind

9    and so to allow it to be offered for it's truth would not

10   have any hearsay exception, I don't think there is a hearsay

11   exception that's available here.

12             THE COURT:  So it is straightforward legal

13   principle that you cannot argue that it -- that the jury

14   should consider it for its truth because that clearly is

15   hearsay, that's the problem.  He can't offer up his own

16   exculpatory statement that was made out of court.  So if

17   that's the case when all you're left with is him going back

18   to the house the next day which is in and of itself

19   equivocal, obviously.

20             MR. GOLDBERGER:  Let me ask the Court a question

21   then.  The Government is going to argue, then I assume

22   because that's that are saying why they put it in is that

23   that was a false exculpatory.  Am I not permitted to argue

24   that the Government is wrong?  If they're going to make that

25   argument, and that's why they put it in, why do I not have

*Proceedings*                                                    1893

1   the right to say I think the Government's argument is

2   incorrect.

3          THE COURT:  Right.  That I think is fair because,

4   obviously, if the Government wants to use it as a false

5   exculpatory, the defense should be allowed to argue that

6   it's not false.  If you get to that point, then, can it be

7   considered for its truth because that would be the obvious

8   implication that it's true.

9          MS. CHEN:  I think, your Honor, the argument is, I

10  admit, this is quite nuanced.  The argument would be that

11  the statements made by defendant Zheng actually are not

12  indicative an am guilty state of mind.  Not that the

13  statement itself was true, that would be the counter

14  argument to the reason it's being offered by the Government.

15         THE COURT:  Say that again.

16         MR. GOLDBERGER:  I didn't quite understand that at

17  all.

18         THE COURT:  You lost me on that.

19         MS. CHEN:  So the Government, as articulated, is

20  intending to offer that statement as a false exculpatory as

21  to the defendant's Zheng state of mind I think counsel.

22         THE COURT:  Hang on.  The false exculpatory being

23  that he didn't take down the note.  He didn't go back to

24  take down the note.

25         MS. CHEN:  Correct.  Well, yes, I think that's

*Proceedings*                                                    1894

1    right.

2           MR. GOLDBERGER:  Judge, the.

3           THE COURT:  You know, hang on, I think at the end

4    of day, given the state of the evidence and the fact that

5    whatever the Government argues about that statement, which I

6    assume is going to be along the lines of you shouldn't

7    credit that.  There's no evidence or not no evidence but you

8    shouldn't credit his statement that he went back to the

9    house the next day for that purpose that's really what you

10   want to argue, right.

11          I think if that's the case, the defense ought to

12   be able to argue the converse because they're just trying to

13   rebut the evidence you're trying to put in which leaves you

14   with getting in what would otherwise be inadmissible

15   hearsay.

16          MR. HEEREN:  So, just to clarify, your Honor.  I

17   don't think that's what our argument is.  Our argument is

18   that not what you shouldn't credit it.  It's that this is

19   affirmative, a false statement, that shows a guilty mind,

20   right, which is different than saying don't credit it,

21   right?  It is a provable lie based on other facts.

22          MR. GOLDBERGER:  I'm not sure I understand, Judge.

23          The Government plays the tape of him going back to

24   the house, all right?  I don't know what they're going to

25   say as to why he went back to the house by himself without

*Proceedings*                                                    1895

1    Kuang.  But I think it's a reasonable supposition that the

2    reason he went back to the house is the reason that he said

3    he went back to the house which is that he went back to the

4    house to take down the note.

5           However, the note was there, or not there or what

6    he did, what he didn't do is in the evidence.  It's in the

7    pictures.  So they can argue whatever they want.  I think

8    it's certainly fair for me to argue to the jury he went back

9    because he didn't want to be a part of this anymore and he

10   went to take down the note.  He was there for a few seconds,

11   he went to the door.  And I remember from the tape, he

12   turned and left.  So he either took the note or he didn't

13   take the note and they can argue what whatever they want.  I

14   should be able to argue, they put it into evidence.

15          THE COURT:  No, I think the difference from an

16   evidentiary standpoint is that, and maybe to remove it from

17   this context let's just suppose it's a question about

18   shooting someone or not shooting someone and the question

19   becomes:  Why did the person shoot them?

20          The Government wants to say that Mr. Kuang is

21   going to affirmatively lie about why he went back to the

22   house.  I don't think he's necessarily going to lie about

23   going back to the house but I don't know what the Government

24   has argument is.

25          What the Government saying is that his attempt to

*Proceedings*                                                    1896

1    throw the agents off the track as to the why is some

2    everyday of consciousness of guilt whereas you want to argue

3    that it is true, that that's why he went back.

4           So it's, well, actually I guess how yeah

5    Mr. Heeren.  Let me go back.  You're correct that he's

6    affirmatively lying that is your argument.  But the problem

7    is if the defense wants to argue, no, it's not a lie, he

8    didn't affirmatively lie, don't you end up back in the same

9    place that the jury should believe that it was a true

10   statement.

11          MR. HEEREN:  I don't think so because then it

12   becomes hearsay, right?  And I know that sounds weird, but

13   the point is, is that if it happens to be the case that in

14   this circumstance the lies that he told are directly related

15   to the actions that defense counsel cares about.  There are

16   circumstances where a person would lie in a material way in

17   an interview and you would say:  These are lies and those

18   lies in the interview show their guilty state of mind.  And,

19   theoretically, defense counsel could say they weren't lies

20   but then they can't go further and say, you should believe

21   those statements and rely on them for X, Y, and Z reasons.

22          MR. GOLDBERGER:  Judge, if I may?

23          What is the Government going to argue about the

24   fact that, very clearly, he went back to the house the next

25   day by himself and went to the front door.

1     THE COURT:  They're going to argue there's no

2  evidence as to why he went back.  And so, you shouldn't

3  conclude anything, I assume.

4     MR. GOLDBERGER:  What are they going to argue?

5     THE COURT:  That's what I'm saying.

6     MR. GOLDBERGER:  They're going to argue that he

7  just decided to take another trip to New Jersey?

8     THE COURT:  Well, the Government makes a "who

9  knows why," but it doesn't relate to why he was there

10  day before and so disregard it, I assume.  I shouldn't be

11  speaking for the Government but that's why I assume they

12  will argue.

13     MR. GOLDBERGER:  That doesn't make any sense,

14  Judge, to make that argument.  He you went back for no

15  reason at all.

16     THE COURT:  It's not that.  It's just a question

17  the jury can't decide what the reason was.  There wasn't

18  sufficient evidence about it.  It can't be used for the

19  purpose you want because it isn't enough to show he withdrew

20  from the conspiracy which is what you would like to be able

21  to argue.  Right now, what we're arguing about is the

22  Government's position that you don't even have enough

23  evidence in the record.  Admissible, competent evidence in

24  the record to own make the argument that he withdrew from

25  the conspiracy.

*Proceedings*                                              1898

1      I don't know if the Government's going to argue

2  about him being back, it can just be a nothing, a question

3  mark, that never gets answered and it's irrelevant I guess

4  the Government could argue.

5      But focusing on the point that is being raised

6  here is:  What is the evidence that he withdrew from the

7  conspiracy?  Right now what you have is him going back the

8  second day to the same house and the statement he made to

9  the agents which the Government seeks to admit is a false

10  exculpatory.  And the quandary, I think, I'm grappling with

11  is given that that's the admissible purpose, or the proper

12  purpose for admitting it, I don't think I can let you argue

13  to the jury that they should accept it as true, it's

14  improper.

15      MR. GOLDBERGER:  There was other evidence, Judge,

16  as I recall from Kuang himself who was there on the first

17  day that there was a call or a conversations about taking

18  the notes down.  And as your Honor may recall, there was a

19  second quick trip back in the car to go back to the house.

20      THE COURT:  But it was to take down two of the

21  three, not to take all of them down.  And there was

22  testimony that they did that because it was too much or

23  something like that.

24      MR. GOLDBERGER:  But, Judge, you're preventing

25  from arguing that, since there was a third note there, that

*Proceedings* 1899

1    he wasn't back home the next day by himself without Kuang

2    and going to the front door where the note was.

3          Now, what is the Government has argue as to what

4    he was doing he was what sightseeing.  Doesn't make any

5    sense that he would go back there if it didn't have

6    something to do with the note.  Why would he do it?  I mean,

7    logic is that he went back to take the note back maybe he

8    did, maybe he didn't.  But then they could argue whatever

9    they want.  I certainly should be able to argue that that's

10   what he was going back for.

11         THE COURT:  Yes, go ahead.

12         MS. CHEN:  Your Honor, just to clarify what the

13   evidence actually showed, Mr. Kuang testified that before

14   they even left the house the first time, two notes were

15   taken down because they were too obvious and could be

16   spotted by neighbors amongst other things.  Then Mr. Kuang

17   and defendant Zheng left and were asked to return to take

18   photos of the notes, defendant Zheng there's testimony that

19   defendant Zheng added another piece of tape, videos were

20   taken, and then they left.

21         There was additional testimony by Zhu Fong that

22   she and Xu Qin took the note down and there is evidence of

23   the notes because we have the notes and they've been

24   admitted into evidence and each kind of individual who

25   interacted with the notes testified as to the fact that that

*Proceedings*                                                    1900

1    was the note that was taken down.

2           I believe Mr. Kuang as to the ripped-up notes

3    said, yes, those were the notes that defendant Zheng the two

4    notes that he took down originally and so there is no actual

5    evidence that September 5th the morning that I believe

6    defendant Zheng returned to the home there was a note there

7    and there was a note, in fact, taken down.

8           MR. GOLDBERGER:  Your Honor, let me just finish

9    because in my mind, this is not making any sense.  The

10   defendant went back to the home on the second day.  That's

11   clearly the everyday in the case.  Pause we all saw it.

12          Now, the jury saw that, okay.  And now, there is

13   that's evidence in this case that he went back to that home.

14   They can argue whatever they want as to why he went back I

15   have to be since it's evidence in the case, I have to be

16   allowed to present an argument as to why I think he went

17   back to the home and what I think the evidence shows.  They

18   can argue whatever they want as to -- I don't think I've

19   heard an argument from them as to, yeah, as we sit here now

20   as to why he went back or why they think he went back and I

21   think I should be at least allowed to argue about why here

22   is a man who was back this on his own by himself and he goes

23   back to the house and he goes up to the door now, the jury

24   can come to whatever conclusions they want as to why he went

25   back.  They may accept the Government's argument, they may

*Proceedings*                                      1901

1    accept my argument but I've got to be able to make that

2    argument it's part of the evidence in the case.

3             THE COURT:  The question, though, when it comes to

4    jury instructions, though, and the law is whether or not

5    there's sufficient evidence to justify the giving of an

6    instruction.  And really what I was trying to do just now is

7    to have both sides explain what the evidence is and

8    primarily to have you explain Mr. Goldberger what evidence

9    you have that you say justifies this withdrawal instruction

10   and as best I can tell is it this act of going back to the

11   house the next day because I'm more convinced that you

12   should not be allowed to argue the truth of his statement

13   that he went back for the purpose of, or actually, did go

14   and get the note which is fairly demonstrably not true, but

15   that he went back to get the note.  That shouldn't be argued

16   because you can't argue the truth of his statement to the

17   agents that was made out of court.

18             But I actually do think that the evidence that he

19   went back to the house I don't know if I would say

20   inexplicably but there's no evidence to say that it was

21   related in some way to the conspiracy because the

22   Government's evidence is that the conspiracy or the act in

23   furtherance thereof was done on the day before.

24             I do think you get to argue withdrawal based on

25   that.  Even though I think it's a close call whether or not

*Proceedings*                                          1902

1    it's sufficient but it is a fact that has been established

2    to with some evidence and I think you should be allowed to

3    article that.

4            So just to draw the lines carefully about what you

5    can argue based on and what you can't is you can't suggest

6    to the jury that his statement that he went back for that

7    purpose, which he made to the agents out of court, is true.

8    The Government's obviously going to be allowed to use it for

9    the purposes of establishing a false exculpatory now but you

10   can't argue the truth you have to.  But you can argue the

11   evident about him returning to the house the next day and

12   make your argument about withdrawal based on that.

13           So I will include this instruction and allow both

14   sides to make the argument for and against withdrawal of the

15   conspiracy.

16           MS. CHEN:  Your Honor, this instruction will be

17   included the Government does have an addition in the preview

18   beginning, for example.

19           THE COURT:  Okay.

20           MS. CHEN:  I believe the sentence currently reads,

21   a defendant may withdraw from a conspiracy by wholly

22   depriving.  We would add by giving a timely warning about

23   the conspiracy to proper law enforcement officials or wholly

24   depriving his prior efforts of effectiveness in the

25   commission of the crime in the rest of the sentence remains

*Proceedings*                                                  1903

1    the same.  And that was taken from your Honor's instruction

2    recently in full play as well as in the stand instruction as

3    well.

4              THE COURT:  Right.  I wonder, though, if this

5    whole, for example, section should be taken out only because

6    I think it's not going to be exhaustive but you have I don't

7    have any problem including that because it's one way in

8    which a conspirator can do that.

9              Mr. Goldberger, do you have any objection or

10   Ms. Wong?

11             MR. GOLDBERGER:  I'm just reading it now, your

12   Honor, just give movie a minute, please.

13             THE COURT:  When it tracks Sand that's true the

14   sentence is to give examples and, like I said, it's

15   imperfect at best because it can never be exhaustive.  It

16   can be a little more complete.

17             MR. GOLDBERGER:  My only thought, Judge, is I

18   should be able to argue withdrawal based on prior

19   conversation and I don't think that in order to for the

20   defendant have withdrawn from the he has to notify the

21   police.

22             THE COURT:  No, but remember this is just an

23   example paragraph says, for example, he may withdraw by

24   doing this, this, or this.  But you can argue that that's

25   not the only way.  Evenly not quite sure how you're arguing

*Proceedings*                                                    1904

1    to but I assume it's more along the lines of depriving his

2    prior efforts of effectiveness.  That would be your argument

3    but that's in there as well.  So I don't think there's any

4    problem with giving another example.  It's not meant to be

5    the necessary means but a means.

6              MR. HEEREN:  And your Honor, just to be clear, I

7    think the reason why those examples are in there is to make

8    clear to the jury the quality of conduct that's needed to

9    constitute withdrawal, right?

10             And so, I do think and I don't think this would be

11   surprising the Government plans to assertively argue that

12   simply returning to the scene of the crime is not anywhere

13   near what's required for true withdrawal.  And those

14   examples and the rest of the instruction are important to

15   making that point.

16             THE COURT:  No, I do think that they are

17   instructive will illuminating so I'm going to include that

18   additional example which is giving timely warning to law

19   enforcement or whatever was said, my claw clerk had it down.

20   Then it would be whole by wholly depriving his prior efforts

21   every effectiveness or by doing acts that are inconsistent

22   with the objects of the conspiracy.  Which obviously is a

23   basis upon which you can argue, Mr. Goldberger that he

24   withdraw.

25             MR. GOLDBERGER:  Yes, your Honor.

*Proceedings*                                               1905

1          THE COURT:  All right.  Anything else with regard

2     to that instruction?

3          From the Government?

4          MR. HEEREN:  No, your Honor.

5          THE COURT:  Okay.  From Mr. Goldberger?

6          MR. GOLDBERGER:  No, your Honor.

7          THE COURT:  Any other defendant, I assume?

8          MR. LUSTBERG:  No, your Honor.

9          MR. TUNG:  No, your Honor.

10          THE COURT:  All right.  Now we have to go to the

11     multiconspiracy objection unless the Government has

12     something else to talk about.  The.

13          MR. HEEREN:  Our next one is a typo in Count One

14     so I think not.

15          THE COURT:  Okay.  Page.

16          MR. HEEREN:  Well, I think the multiconspiracy

17     probably does come next, your Honor.

18          THE COURT:  Okay.  Right.  Exactly.  So it will

19     probably if right after this multi, sorry, after the

20     withdrawal from the conspiracy instruction and let me call

21     up what was suggested my Mr. Lustberg and Ms. Conti.

22          MR. LUSTBERG:  I think was verbatim from Sand.

23          THE COURT:  Yes.  And so, so my reaction to the

24     proposed instruction was that it was fine but I know the

25     Government objects and wants me to do a far slimmer, leaner

*Proceedings*                                                    1906

1    version which I have used before at least twice which

2    doesn't mean that I'm wedded to that construction, I don't

3    particularly want too use the one I've used before.  I feel

4    that the defense now that I'm comparing them side by side is

5    still much more so on the charge conspiracy.  So, for

6    example, in the one that I've used before that the

7    Government recites is its filing yesterday, I think or today

8    actually, today.  If you look at the second paragraph, it

9    talks about two people joining to form a conspiracy and then

10   by contrast multiple conspires exist when there are separate

11   unlawful agreements to achieve distinct purposes.  But then

12   it goes back to talking about single conspiracy despite

13   changes in personnel, et cetera.

14          And then it further says, The fact that members of

15   a conspiracy may change does not necessarily imply that

16   separate conspires exist.  A single conspiracy is not

17   transposed into multiple conspires.  And then it has a

18   concluding sentence of, On the other hand, if you find that

19   a conspiracy charged in the indictment did not exist, you

20   cannot find any defendant guilty of that conspiracy.  But it

21   really doesn't emphasize much or focus or describe very much

22   about multiple conspires so on balance I think the defense's

23   instruction is fairer.  And given the nature of the facts in

24   this case, I think it's appropriate.  I'm actually trying to

25   pull it up now.

*Proceedings*                                                    1907

1        I'll hear from the Government who obviously

2   objects to that.

3        MR. HEEREN:  Yes, your Honor.

4        First, looking at it big picture we just think

5   that the instruction you've given previously shorter is just

6   more clear.  Judge Sand is good but he's not perfect, and

7   some of his instructions are less clear than others.  And I

8   think this is a good example of one that is hardly a model

9   of clarity.

10        We have some particular, going to the particulars,

11   the biggest difference between the two and it my mind is

12   that the Court's instructions prior instructions makes more

13   clear that changes in the personnel as well as the

14   difference in timing of the personnel in terms of people

15   coming and going at different times is much more clear in

16   the Court's instruction.

17        And where the biggest problem with is in the

18   instruction in the portion of the Sand instruction, the

19   fifth paragraph, you have it where it says, So long as you

20   find that some of the co-conspirators continued to act for

21   the entire duration of the conspiracy for the purposes

22   charged in the indictment.

23        Respectfully, I think that's wrong.

24   Conspiracies -- it's not wrong.  I want to be clear, it's

25   not wrong in that the defense did not misquote anything, I'm

*Proceedings*                                                    1908

1  not criticizing them.  It's in Sand but -- and I looked to

2  see if there is any explanation in the notes and it's not --

3  there's none.  And I think it's a misstatement because you

4  can conceive of conspiracies where the same conspiracy

5  continues even though different players in the conspiracy

6  change.

7           So if you have a leader of a conspiracy and a new

8  leader takes over at the same time, but at different points

9  in time different members change you could you have what

10 looks like at a time moment in time a whole new set of

11 personnel but it's the same conspiracy as long as it's

12 continuous and as long as you can show the ongoing nature of

13 the purpose or goal of the conspiracy.

14          So if we're going to use relevant defendant's

15 proposal, I would propose strike the so long as you find

16 language at the end because I think it's inaccurate.  I

17 would also propose that the next sentence instead of saying

18 that the members are not always identical, we would use the

19 Court's language which was, excuse me, let me find it again.

20 I think it's is we have a similar language.  May change I

21 think is what I would say instead of the fact that the

22 members of the conspiracy may change instead of not always

23 identical.  So those are our two primary concerns with it.

24 But by and large, we just think it's too wordy and leads to

25 more confusion than clarity.

*Proceedings*                                                      1909

1        THE COURT:  It's interesting because a lot of the

2   language is the same, I mean, between the two instructions.

3   In fact, if you look at the proposed Sand instruction, the

4   two paragraphs after the introductory paragraphs summarizing

5   the parties' arguments I think are the same.  The third

6   paragraph, sorry, the fourth paragraph of the instruction,

7   however, I think is not in the one that I've used before.

8   And I actually think that's an important concept for the

9   jury to understand that if they find there's proof of

10  several separate and independent conspiracies, that's not

11  proof of a significant one.  Unless one of the conspiracies

12  proved is the single conspiracy.  I think that that is

13  something that should be included.  I don't disagree with

14  you although I actually am not sure whether or not you have

15  to have at least one co-conspirator who continues to factor

16  entire duration of the conspiracy.

17        I guess it is possible that you could have a

18  conspiracy, the object of which is identical but entirely

19  new players or new conspirators.

20        MR. HEEREN:  So the reason why I think that why I

21  would argue that we know that it be true is because

22  conspiracies can be proven with not only unindicted but

23  unidentified conspirators, right.  So you have circumstances

24  in the Blumenthal case, one of the two major hub-and-spoke

25  cases is the perfect example of that.  You have this case

*Proceedings*                                                    1910

1   involving people essentially violating liquor controls

2   during World War II and they charge the different liquor

3   sellers and those individuals did not know, ultimately, who

4   they were purchasing it from above.  There was a front

5   company but it was stipulated the front company wasn't it.

6   It was unknown.  And the Court held it was still a

7   conspiracy a hub-and-spoke conspiracy because they had the

8   ring around it, right, they had the same objective.

9           So I think the point is if you can't even tell who

10  is at the center of the conspiracy then why must -- how

11  could it be the case that you have to find that the same

12  person acted for the duration you have to.

13          THE COURT:  Mr. Lustberg, do you have any thoughts

14  on this?

15          MR. LUSTBERG:  So I actually don't have any

16  particular thoughts on that specific issue.  I honestly

17  don't know the law on whether there has to be at least one

18  person who is there for the entire time.

19          Certainly, I mean, both of those instructions

20  convey the idea that personnel may change and you know we

21  don't I think that's correct.  I just don't -- I literally

22  don't know.  I think the Sand instruction is very clear.

23  And as the Court said, I think it's -- I like the fact that

24  it really emphasizes the charge, the comparison between the

25  proof and what was charge the which is I think the key to

*Proceedings*                                        1911

1   this instruction.

2          As far as that one question of whether there needs

3   to be some continuity beginning to end I apologize, your

4   Honor I just haven't done that legal research.

5          THE COURT:  I don't know the answer either and I

6   don't know if we need to resolve it because I don't think

7   the theory of this case depends on that in that the

8   Government is going to argue, I assume, that there were

9   consistent players at the hub of this conspiracy.  So I

10  think it's best just to not include that language because I,

11  too, doubt whether or not that's an entirely accurate

12  statement of law.  But, in any event, I don't think it's

13  necessary to instruct the jury on that here and risk

14  misstating the law.

15         My inclination is actually to go with the version

16  proposed by the defense, remove that language, though, about

17  the conspirators or at least one conspiracy having to act

18  for the entire duration for the reasons that I just said and

19  I think was there another comment by the Government about

20  the defense's proposed instruction.

21         MR. HEEREN:  Yes, I think it's not as significant.

22  But the next sentence are not always identical.  We would

23  propose maybe change instead of are not always identical.

24  The idea that not always identical implies that it normally

25  should be identical and I think that's wrong, too.  Most of

*Proceedings*                                         1912

1   the time, conspires are not always identical, they're often

2   shifting.  So "may change" is a much more neutral phrasing.

3          MR. LUSTBERG:  That's fine.

4          THE COURT:  Which paragraph is that in of the

5   proposed one?

6          I see it.

7          MR. HEEREN:  Paragraph 5, last sentence.

8          THE COURT:  Okay.  The fact of the members of a

9   conspiracy may change.

10          Is that what you want to do?

11          MR. HEEREN:  Yes.

12          THE COURT:  Does not necessarily imply the rest of

13   that sentence.

14          MR. HEEREN:  Correct, your Honor.

15          THE COURT:  Okay.  So we will adopt the

16   Mr. McMahon's version of multiple conspiracies instruction

17   and insert it right after the withdrawal section and before

18   we get to the actual discussion of the counts themselves

19   with the two changes we discussed.  So the "so long" section

20   of the first sentence of the fifth paragraph will be removed

21   and then the last sentence will be changed to include "may

22   change" as opposed to "are not always identical."

23          Now, moving on to Count One, that's the first

24   substantive discussion of the law.

25          Any comments on objections?  We're on Page 29 of

*Proceedings*                                                    1913

1    the transaction.

2              MR. HEEREN:  Just a typo, your Honor right after,

3    sorry, one second, your Honor.

4              On Page 30, the first paragraph after the block

5    quote.  I think it says, the last sentence says, "I will

6    next instruction you," it should say "instruct."

7              THE COURT:  Okay.  Sounds good.

8              MR. HEEREN:  And now the important stuff.  We

9    don't have another one until Count Two.

10             THE COURT:  Anything before that from the defense?

11             MR. LUSTBERG:  No, your Honor.

12             THE COURT:  Okay.  So Count Two, what page?

13             MR. HEEREN:  Page 32.

14             THE COURT:  All right.

15             MR. HEEREN:  And it's in the listing of the

16   elements.  It's in the fourth element.

17             THE COURT:  Yes.

18             MR. HEEREN:  I don't think -- I would propose

19   striking the "as an agent for the Government or an official

20   of China" portion of the fourth element.  It should just

21   read:  "The defendant acted at least in part while in the

22   United States."

23             I don't feel particularly strongly about it I

24   think it's confusing because the jury has already been

25   instructed that element one is the defendant acted as an

*Proceedings*                                                    1914

1    agent of a foreign government or official.  And the fourth

2    element just makes clear that that acting had to be done at

3    least in part while in the United States.

4              THE COURT:  Yes, that makes sense.  I think we

5    took this directly from what you folks proposed, right?

6              MR. HEEREN:  If we did, then that's may fault so I

7    take the blame there.

8              MR. GOLDBERGER:  Your Honor, if I may?

9              THE COURT:  Yes.

10             MR. GOLDBERGER:  I'm not sure that there's any

11   evidence in the case at all about my client acting on behalf

12   of a foreign government.  The only evidence in the case is

13   that there were conversations with Chen by both Kuang and my

14   client.

15             THE COURT:  Okay.  But that's going to be your

16   argument to the jury.  This is talking about the what the

17   instructions are.

18             MR. GOLDBERGER:  We don't get to the instructions

19   if there's no count against them.  What I'm saying to the

20   Court is that how can there be -- they don't have any

21   evidence, the Government, of the fact that our clients were

22   acting in any way, shape, or form on behalf of the Chinese

23   Government.  They were acting on behalf of Mr. Chen for sure

24   based on the conversations.

25             (Continued on the next page.)

Case 1:21-cr-00265-PKC    Document 260    Filed 06/21/23    Page 178 of 224 PageID #:
2912

*Charge Conference*                                                        1915

1    (Continuing)

2         THE COURT:  So, that would be the basis for a motion

3    for a directed verdict, but I have not heard you make one

4    until now.  I think that's what you're intimating.

5         However, there was evidence of the note itself,

6    which the Government will argue would have given someone who

7    wasn't consciously avoiding the truth that it was the

8    Government who was after Mr. Zhu, the John Doe victim, because

9    the note said, "Come back to China and serve ten years and

10   your family will be fine."

11        MR. GOLDBERGER:  The testimony from both -- well,

12   certainly from Mr. Kuang, who spoke to Mr. Chen, was that this

13   direction as to what should be done was based on a dailo or

14   some gangster theory.

15        THE COURT:  Right.

16        MR. GOLDBERGER:  The Government has never -- the

17   Government of China has never, ever, ever, as far as I can

18   tell reviewing the case, been mentioned as the source of

19   wanting to have anything done.

20        THE COURT:  So Mr. Goldberger, I'm going to

21   interpret your comments now as being impromptu Rule 29, if I'm

22   not mistaken, motion for a directed verdict after -- before

23   the jury gets the case.  I will reserve on it, but I do think

24   at this point the jury -- the case should go forward.

25        I do think there's some evidence certainly from

*Linda A. Marino, Official Court Reporter*

1    which a jury could conclude that Mr. Zheng knew or consciously

2    avoided the reality that he was acting on behalf of the

3    Chinese government; primarily, because of the nature of the

4    note and what it said.

5            So, you can obviously renew that objection after the

6    verdict depending on what it is, but that's how I'm going to

7    interpret your statement now.

8            That, however, has nothing to do with the

9    instruction I give to the jury as to which the Government is

10   suggesting for Count Two that we simply remove the somewhat

11   redundant and potentially confusing language in the fourth

12   element which repeats what's required for the first element.

13           So, let me hear from Mr. Lustberg or anyone else who

14   wants, Mr. Tung or Mr. Goldberger, if you want to comment on

15   that.

16           MR. LUSTBERG:  Your Honor, I think, first of all, I

17   was also remiss in not moving under Rule 29, even

18   understanding that Courts always do reserve.

19           THE COURT:  Right.  And understanding now that you

20   don't have to --

21           MR. LUSTBERG:  I understand.

22           THE COURT:  You don't have to preserve it by making

23   it before, as used to be the case.  So, you obviously can

24   still make a motion after the verdict.

25           So, let's go back --

*Charge Conference* 1917

1      MR. LUSTBERG:  Yes, to this issue, your Honor, I

2  actually think the Government's suggestion is a little bit --

3  makes it a little bit more confusing because -- so, the

4  language.  It says, "Fourth, the Defendant acted, at least in

5  part, as an agent for the government or an official of China

6  while in the United States."

7      The Government, I think, is proposing...

8      THE COURT:  Taking out the part where it says --

9      MR. LUSTBERG:  "As agent."

10      But an element that the Defendant acted while in the

11  United States, it doesn't mean anything.  I mean, it can be --

12  does that mean if you have lunch in the United States, that

13  that's enough?

14      It has to be tied.  The actions have to be tied to

15  the offense at issue.  And that's the reason why this language

16  exists.

17      So, I would oppose deleting that language.  I get

18  that it's redundant, but I think that the actions in the

19  United States at issue have to be in connection with this

20  offense.

21      THE COURT:  I am inclined to leave it in as well.

22      I think that simply to say "acted" without any

23  connection to the first element or the primary essence of the

24  crime would be -- could be confusing.  So, I think that as it

25  is it's a proper statement of the requirement.

1          And if the jury is confused because it repeats the

2     requirement that they had find that the person acted as an

3     agent of a foreign government, then perhaps they should acquit

4     because they still have to find that and they also have to

5     find that that conduct occurred while in the United States or

6     that those actions occurred while in the U.S.

7          So, I'm going to leave it as is.

8          MR. HEEREN:  Yes, your Honor.

9          THE COURT:  What else?

10         MR. HEEREN:  The next proposal is at the end.  It

11    would be to insert a sentence at the end of the last paragraph

12    on Page 32.  So, right after the sentence that ends "other

13    compensation be received."

14         THE COURT:  Yes.

15         MR. HEEREN:  And the new sentence would be, "The

16    agreement may be established either by direct contact between

17    the agent and foreign government or indirect contact through

18    an intermediary or intermediaries."

19         THE COURT:  Let me repeat it for my law clerk.  The

20    agreement may be established either by direct --

21         Actually, do you have realtime in front of you?

22         THE LAW CLERK:  Yes.

23         THE COURT:  So you can see it.

24         -- either by direct contact between the agent and

25    foreign government or indirect contact through an intermediary

1    or intermediaries.

2            I know that when the Government submitted its

3    original proposed charges, they included language to the

4    effect that the agency relationship could be through an

5    intermediary.

6            Does the defense have an objection to that language?

7            I didn't include it originally because I was a

8    little concerned about the lack of case law on this issue.

9    But let me say as a common sense proposition, it strikes me as

10   straightforward enough.

11           Mr. Lustberg, go ahead.

12           MR. LUSTBERG:  Your Honor, I'm puzzled by it because

13   this is a case where the Government has this big board up

14   there with everybody's pictures and their titles, which are

15   government titles.  So, I don't think there's a basis for

16   arguing that there even are intermediaries.

17           And I think that there's the danger that this

18   lightens the burden of proof.  It seems to be arguing that

19   there can be some lesser relationship with the government.

20   I'm not sure that it matters because the argument, certainly

21   with respect to my client, would have to do with direct

22   contact with Chinese officials.

23           So, I'm not really sure I'm following what the basis

24   of that is or why it should be...

25           THE COURT:  It seems clear to me that the

*Charge Conference*                                                  1920

1    Government's theory is that your client had contact with Zhu

2    Feng, but that Zhu Feng was not an official of the Chinese

3    government but rather was an intermediary between the Chinese

4    government and your client.

5              MR. LUSTBERG:  But the case they put in also

6    includes contacts between my client and the guy who is called

7    Eric Yan, who is the lead defendant in the caption of this

8    case.  So, it's not -- their theory was not limited to --

9              THE COURT:  Be that as it may, the question really

10   is -- obviously, the Government can argue either or both

11   theories of acting as an agent for a foreign government, but

12   the question really is, is it the law?

13             And I'll acknowledge that I think Judge Cogan wrote

14   a decision that suggests that normal agency principles or U.S.

15   common law agency principles shouldn't necessarily be grafted

16   on to this FARA statute because it's unique.  I do think,

17   however, that it makes sense if the FARA statute is going to

18   have any enforceability or impact or meaning, that a person

19   could still be liable if they aren't acting directly with a

20   Chinese official, because, likely, the Chinese official isn't

21   going to come here and directly or I shouldn't say -- isn't

22   always going to directly communicate with the person who is

23   carrying out the acts in the U.S., but it makes sense for the

24   enforceability for the statute and to achieve its purpose that

25   intermediaries used by the Chinese government so long as the

*Charge Conference*                                          1921

1  person who carries out the acts knows or believes they are

2  working for the Chinese government ultimately would suffice.

3          So, I'm coming at it from the point of view of based

4  on the legislative history of this statute and what it was

5  intended to accomplish, it seems to me a logical reading is

6  the one the Government proposes, notwithstanding what Judge

7  Cogan said in his decision about not wholesale applying agency

8  principles to the statute.

9          I don't know if he specifically had this issue in

10 mind, but I'm just acknowledging that there's a dearth of case

11 law on this issue and that one decision by Judge Cogan could

12 be read to undermine the Government's argument, but I don't

13 feel that it does.

14         So, putting aside, Mr. Lustberg, what the Government

15 is going to argue, and I think it could encompass both

16 theories, both a direct connection to Eric Yan, who is an

17 official, and indirect contact to, for example, Tu Lan, who is

18 another government official but who was working through I

19 think Eric Zhu?

20         No, what was his first name?

21         MR. LUSTBERG:  Johnny.

22         THE COURT:  Johnny Zhu?

23         MR. HEEREN:  Zhu Feng, yes, your Honor.

24         THE COURT:  The question is should they be allowed

25 to argue both, and I think they should.  So, I want to hear

1    the counterargument to that.

2              And include this language in order to facilitate or

3    explain that argument; not explain, but provide a legal basis

4    for that argument.

5              MR. LUSTBERG:  I don't have anything.

6              THE COURT:  All right.  I'm going to include this

7    additional sentence, recognizing that, as I said before, the

8    case law is undeveloped in this area.

9              And quite honestly, the Second Circuit could

10   disagree, but ultimately it would be helpful if there was some

11   decision on this issue.

12             MR. HEEREN:  So your Honor, to give you just a

13   little comfort -- I don't want to argue a point I've already

14   won.

15             THE COURT:  Right, exactly.

16             MR. HEEREN:  So, I'm happy to be quiet if you prefer

17   me to.

18             THE COURT:  Go ahead, make the record for powers

19   above us.

20             MR. HEEREN:  So, first just a tiny clarifying point.

21   Section 951 and FARA are different statutes.

22             THE COURT:  Right.

23             MR. HEEREN:  So, we're dealing with Section 951.

24   And in the context of Section 951, there is actually

25   substantial case law that indirect relationships are

1   sufficient.  The primary modern one is, of course, *Rafiekian*,

2   991 F. 3d 529 from the Fourth Circuit, which explicitly held

3   that the relationship can be, quote, established by direct

4   contact or via an intermediary, and that's where we get our

5   language from.

6           But that's not the only decision.  In *United States*

7   *v. Chung*, 659 F. 3d 815 in the Ninth Circuit, the Defendant

8   was convicted while he worked for a business, Boeing, and

9   passed information indirectly to the Chinese Government.

10          And perhaps most relevant, though actually old, and

11  I think that the Courts happen to forget it, there's actually

12  80-year-old precedent in this very circuit on this exact

13  issue.  *United States v. Heime*, a Judge Hand decision from

14  1945.  It's 151 F. 2d 813.  That interpreted the predecessor

15  statute, 22 U.S.C. 233, which was materially identical on this

16  point.  And in that case, the Court affirmed the conviction of

17  a man who was indirectly receiving requests from the German

18  Government through a German automotive company.

19          So, I understand the Court's point about the Circuit

20  has not really ruled squarely on the modern statute, but I do

21  think that the body of law is -- while not as robust as some

22  of the other common statutes, there is a real body here that

23  supports it, in addition to, as your Honor pointed out, sort

24  of both the legislative history and sort of the common sense

25  interpretation of how it should be applied.

*Charge Conference*                                          1924

1        THE COURT:  I'm aware that the proposed instruction

2   from the Government on this agency issue was largely drawn

3   from the jury charge in *Abouammo*, which was a Northern

4   District of California case, that, in turn incorporates the

5   Fourth Circuit's decision in *Rafiekian*.  So, I understand that

6   there is some authority, albeit perhaps indirect, on this

7   interpretation.

8            And like I said, to me, it makes perfect sense in

9   order to achieve the actual purposes of the statute and the

10  realities in which or given the realities in which these cases

11  are going to arise.  So, I'm not particularly concerned about

12  including this one sentence, but, like I said, I think the

13  Circuit may well have a different view.  I don't know.

14  Perhaps not.  But it would be actually helpful to get some

15  guidance on this issue if it does arise or come up on appeal.

16           So, we will add that one other sentence to the

17  instruction for Count Two, the Section 951 instruction.

18           Anything else on Count Two?

19       MR. HEEREN:  This should be welcome news, I think,

20  which is I think we can strike the entirety of the last

21  paragraph about the means of notification.  Since the parties

22  have stipulated that no notification has been made, I think

23  there can be a simple sentence about that it's been stipulated

24  to.

25           The way we have it phrased, though I think we're not

*Linda A. Marino, Official Court Reporter*

1  beholden to the language, is, "As to the notification

2  required, the parties have stipulated that none of the

3  Defendants nor the alleged co-conspirators have notified the

4  Attorney General related to the alleged conduct in this case."

5          MR. LUSTBERG:  No objection.

6          THE COURT:  All right.  No objection to that, so

7  we'll adopt that language.

8          Any objection, Mr. Goldberger or Mr. Tung?

9          MR. GOLDBERGER:  No, your Honor.

10          MR. TUNG:  No, your Honor.

11          THE COURT:  Anything else with respect to Count Two

12  from anyone?

13          MR. LUSTBERG:  No.

14          THE COURT:  Now moving on to Count Three, anything

15  about Count Three?  Or Count Four?

16          MR. HEEREN:  The only thing, your Honor, is I think

17  it would make sense in the instruction at this point to name

18  the victims.  They have obviously appeared by their true names

19  in court at this point and I think it would reduce any

20  confusion.

21          THE COURT:  All right.  So, we'll substitute the

22  John and Jane Doe references with their real names.

23          MR. HEEREN:  Yes.  And just so that everybody has

24  it, John Doe 1 is Xu Jin, Jane Doe 1 is Liu Fang, and Jane Doe

25  2 is Xinzi Xu.

*Charge Conference*                                              1926

1    THE COURT:  And her name is formulated in --

2    MR. HEEREN:  Sorry, it's not, it's --

3    THE COURT:  Xu Xinzi.

4    MR. HEEREN:  It should be, yes, thank you.

5    THE COURT:  And Liu Fang is L-I-U F-A and not

6  F-E-N-G, right?

7    MS. ARFA:  It's "A."

8    THE COURT:  So, we'll substitute all those.

9    MR. HEEREN:  And I think because they've heard her

10  name as "Sabrina" also, if we could include also known as

11  Sabrina Xu for Jane Doe 2.

12    THE COURT:  Okay.

13    Now, are you suggesting, though, that we change the

14  language in the indictment or just in the surrounding language

15  in the instruction?

16    And I'm looking at Page 34, for example.

17    MR. HEEREN:  I think both.  I don't believe --

18  obviously, if there's an objection to changing the indictment,

19  we'll more carefully consider it, but I think if there's no

20  objection from the Defendants that it's appropriate to make a

21  trial indictment for something limited, like replacing a name

22  like this.

23    THE COURT:  Well, we can put in the real names in

24  brackets instead of the John and Jane Doe.  I just wasn't sure

25  what you were requesting.

*Charge Conference*                                               1927

1          MR. HEEREN:  Yes, I think it's in both places.

2          THE COURT:  Does the defense have any objection, and

3    I can't imagine you would, that we bracket in the real names

4    when we recite the charges in the indictment for Counts Three

5    and Four?

6          MR. LUSTBERG:  No, your Honor.

7          MR. GOLDBERGER:  No, your Honor.

8          MR. TUNG:  No, your Honor.

9          THE COURT:  So we'll do that as well.

10         Anything else with respect to Counts Three and Four

11   from the Government?

12         MR. HEEREN:  Yes, your Honor.  Page 36 in the

13   elements, the second element, we have a couple of additions.

14         So, second, that the Defendant traveled in

15   interstate and we would add "or foreign" commerce with the

16   intent to harass, and then we would add "or intimidate."

17         And then the sentence continues or place under

18   surveillance with adding the word "the" intent to harass or

19   intimidate.

20         And I think that was an error in the Government's

21   original instructions.

22         THE COURT:  I'm not sure the "the" is an error,

23   but...

24         MR. HEEREN:  Fair enough.

25         THE COURT:  That's just a word preference.

*Charge Conference*                                              1928

1     So, it seems to me correct that the statute

2 prohibits traveling -- travel in interstate or foreign

3 commerce.

4     Any objection to those additions?

5     MR. LUSTBERG:  No, your Honor.

6     MR. GOLDBERGER:  No, your Honor.

7     MR. TUNG:  No, your Honor.

8     THE COURT:  And then we'll make the other change,

9 "harass or intimidate, or place under surveillance with --"

10 I'm going to leave it with "intent" without "the."

11     Does anyone care?

12     MR. HEEREN:  No, your Honor.

13     MR. LUSTBERG:  I like it better with the "the."

14     THE COURT:  You guys like the "the"?

15     MR. LUSTBERG:  I do.

16     THE COURT:  So, we'll put in "the."  That seems to

17 be the vote.  The "the" will be inserted.

18     MR. LUSTBERG:  The most significant area of

19 agreement between me and Mr. Heeren all trial.

20     THE COURT:  Right.

21     And we'll substitute the names throughout, the real

22 names of the victims.

23     MR. HEEREN:  Our next one is in Page 37, the last

24 paragraph on that page.

25     THE COURT:  Okay.

*Charge Conference*                                          1929

1      MR. HEEREN:  We would propose breaking that single

2 sentence into two sentences because those are two separate

3 definitions under the statute.

4           And, so, the way we would change it is that it would

5 be, "The term 'immediate family member' means a spouse,

6 parent, brother, sister, child, or ward.  The term also

7 includes," and then "any other person" and the remainder of

8 the sentence.

9           And for what it's worth, we propose that because

10 when you put them together, it could be read to mean spouse,

11 parent, brother, sister, child, et cetera, dot, dot, dot, that

12 lives in the household, and that's not accurate.

13      THE COURT:  Right.  And that's why it can't be part

14 of one sentence even if you insert that "or" before ward, is

15 your position.

16      MR. HEEREN:  I think it creates the risk of

17 confusion, yes.

18      THE COURT:  Any objection to that?

19      MR. LUSTBERG:  No, your Honor.

20      MR. GOLDBERGER:  No, your Honor.

21      MR. TUNG:  No, your Honor.

22      THE COURT:  So the term also includes "any other

23 person."

24           Anything from the defense on any of the charges

25 themselves?

*Charge Conference*                                                1930

1          MR. LUSTBERG:  Nothing further from Mr. McMahon.

2          MR. GOLDBERGER:  No, your Honor.

3          MR. TUNG:  No.

4          THE COURT:  Anything else relating to the closing

5    instructions?

6          MR. HEEREN:  Nothing from the Government, your

7    Honor.

8          MR. LUSTBERG:  Nothing from the defense.

9          MR. GOLDBERGER:  Nothing from the defense, your

10   Honor.

11         MR. TUNG:  Nothing.

12         THE COURT:  Good.  So, I think we're done with the

13   changes to the jury charges.  We will post a track change and

14   a clean version of the jury instructions on the docket so you

15   can review those before tomorrow.  And obviously, if we've

16   made any mistakes or there are any issues to still address,

17   we'll address those at nine tomorrow.

18         Now, the verdict sheet, any comments, objections, or

19   suggestions with respect to the verdict sheet?

20         MR. LUSTBERG:  I'll provide my standard objection to

21   having "guilty" come before "not guilty," given the burden of

22   proof and presumption of innocence.

23         THE COURT:  You know, it's funny.  In the last trial

24   I had, that came up for the first time.  And I don't have any

25   problem inverting it.

*Charge Conference*                                          1931

1           Does the Government?

2           MR. HEEREN:  No, your Honor.

3           THE COURT:  So, we'll invert to "not guilty and

4   guilty."

5           MR. HEEREN:  The Government's only proposal would

6   be, and I don't know if this is possible, but if we could get

7   the last defendant for Count Two on the same page.

8           THE COURT:  That's fine.  Strangely, I thought of

9   that too.  I was trying to decide if that really bothered me

10  enough.

11          But we'll do that.

12          MR. HEEREN:  That was it.

13          THE COURT:  Does everyone else understand?  We'll

14  put a page break after Count One.

15          And then we may have to play with Count Four, which

16  I assume will be bumped to the next page.

17          That's it?

18          Good.  So, we'll invert those and make sure all the

19  counts have all the Defendants on the same page.

20          We'll see you tomorrow morning at nine, everyone.

21  Thank you very much.

22          (A chorus of thank yous.)

23

24          (Matter adjourned until Wednesday, June 14, 2023, at

25  9 o'clock a.m.)

1932

## I N D E X

**WITNESS**                                                          **PAGE**


**LIPING SHI**
    DIRECT EXAMINATION BY MR. LUSTBERG          1743
    DIRECT EXAMINATION BY MR. TUNG              1746
    CROSS-EXAMINATION BY MS. CHEN               1756
    REDIRECT EXAMINATION BY MR. LUSTBERG        1763
    REDIRECT EXAMINATION BY MR. TUNG            1765

**PAUL BRICKFIELD**
    DIRECT EXAMINATION BY MR. LUSTBERG          1767
    CROSS-EXAMINATION BY MS. BONOMO             1770

**ERIC GALLOWITZ**
    DIRECT EXAMINATION BY MR. LUSTBERG          1772
    CROSS-EXAMINATION BY MR. HEEREN             1823
    REDIRECT EXAMINATION BY MR. LUSTBERG        1834

## E X H I B I T S

Government Exhibit 5O6G                         1740

Government Exhibit 713                          1741

Defendant Zhu Exhibit A                         1754

McMahon Exhibit BBB was marked for
identification                                  1781

Government's Exhibit EG-3                       1832

Government Exhibits 407 and 410                 1838

## $

**$100** [1] - 1770:1
**$5,000** [1] - 1770:17

## '

**'16** [1] - 1791:21
**'17** [1] - 1791:21
**'84** [1] - 1768:1
**'90** [2] - 1768:1, 1768:2
**'93** [1] - 1768:2
**'immediate** [1] - 1929:5

## 0

**07102** [1] - 1739:4

## 1

**1** [9] - 1777:6, 1840:9, 1843:13, 1843:18, 1844:4, 1845:10, 1885:17, 1925:24
**1,120** [1] - 1803:17
**10** [2] - 1769:6, 1787:16
**10013** [1] - 1739:7
**103C** [1] - 1827:25
**11** [2] - 1844:24, 1873:12
**11201** [2] - 1738:17, 1739:15
**11354** [1] - 1739:11
**11:15** [1] - 1804:4
**11:30** [2] - 1804:4, 1804:11
**12** [1] - 1849:15
**13** [6] - 1738:7, 1846:5, 1846:8, 1846:9, 1846:10, 1867:17
**135** [1] - 1831:22
**136-20** [1] - 1739:10
**14** [2] - 1762:6, 1931:24
**15** [7] - 1740:16, 1741:8, 1769:6, 1781:22, 1845:2, 1846:23, 1848:21
**151** [1] - 1923:14
**16** [1] - 1867:21
**1740** [1] - 1932:14
**1741** [1] - 1932:15
**1743** [1] - 1932:5
**1746** [1] - 1932:5
**1754** [1] - 1932:16
**1756** [1] - 1932:6
**1763** [1] - 1932:6
**1765** [1] - 1932:7
**1767** [1] - 1932:8
**1770** [1] - 1932:9
**1772** [1] - 1932:10
**1781** [1] - 1932:17
**18** [7] - 1849:7, 1849:13, 1849:14, 1851:16, 1855:13, 1880:4, 1882:18
**1823** [1] - 1932:11
**1832** [1] - 1932:18
**1834** [1] - 1932:11
**1838** [1] - 1932:19
**19** [3] - 1856:2, 1860:11, 1882:18
**193-4** [1] - 1872:20
**1945** [1] - 1923:14
**1990s** [1] - 1772:21
**1993** [1] - 1768:3
**19960165** [1] - 1762:4
**19960165@qq.com** [1] - 1762:18
**1997** [1] - 1856:13

## 2

**2** [6] - 1779:19, 1779:22, 1841:24, 1842:2, 1925:25, 1926:11
**20** [3] - 1823:16, 1869:7, 1883:5
**20-criminal-492** [1] - 1869:9
**2002** [1] - 1859:1
**2003** [1] - 1756:13
**2005** [2] - 1768:14, 1768:21
**2007** [3] - 1768:14, 1773:2, 1773:3
**2016** [18] - 1744:1, 1747:5, 1752:15, 1758:23, 1761:14, 1761:15, 1762:6, 1766:1, 1768:23, 1770:20, 1774:15, 1776:6, 1781:22, 1783:21, 1785:5, 1785:9, 1785:25, 1832:3
**2017** [7] - 1786:7, 1787:16, 1789:19, 1789:23, 1828:7, 1828:10
**2019** [1] - 1768:21
**2022** [1] - 1869:7
**2023** [2] - 1738:7, 1931:24
**20530** [1] - 1738:22

## 21-CR-265(PKC [1] - 1738:3

**22** [1] - 1923:15
**225** [1] - 1739:15
**23** [1] - 1761:14
**233** [1] - 1923:15
**24** [1] - 1752:15
**25** [4] - 1788:7, 1788:14, 1885:5, 1885:6
**26** [1] - 1885:12
**271** [1] - 1738:16
**28** [2] - 1788:7, 1788:14
**29** [3] - 1912:25, 1915:21, 1916:17
**2d** [1] - 1923:14

## 3

**3** [1] - 1778:18
**30** [1] - 1913:4
**302** [4] - 1857:22, 1858:11, 1858:18, 1859:9
**306** [1] - 1739:7
**3095** [2] - 1786:19, 1803:12
**32** [2] - 1913:13, 1918:12
**34** [2] - 1781:11, 1926:16
**36** [2] - 1789:22, 1927:12
**37** [1] - 1928:23
**38th** [1] - 1739:10
**39** [1] - 1789:22
**3B** [1] - 1880:3
**3d** [2] - 1923:2, 1923:7

## 4

**4** [1] - 1778:18
**4/4/2017** [1] - 1789:13
**4/5/2017** [1] - 1789:14
**401** [2] - 1739:7, 1837:22
**4019** [3] - 1781:11, 1798:14, 1831:22
**4019-B** [8] - 1777:6, 1778:18, 1779:22, 1788:7, 1788:14, 1789:22, 1796:9, 1798:14
**4019B** [3] - 1804:17, 1822:1, 1822:2
**403** [1] - 1806:18
**407** [8] - 1836:20, 1837:3, 1837:5, 1837:23, 1837:24,
1838:4, 1838:12, 1932:19
**410** [8] - 1836:23, 1837:3, 1837:5, 1838:8, 1838:12, 1838:15, 1838:16, 1932:19
**42** [1] - 1781:11
**43** [1] - 1796:10
**431K** [3] - 1762:8, 1762:23, 1763:5

## 5

**5** [4] - 1787:16, 1789:23, 1832:3, 1912:7
**500** [1] - 1824:25
**506G** [5] - 1740:7, 1740:10, 1740:13, 1740:14, 1932:14
**529** [1] - 1923:2
**55** [1] - 1797:15
**5A** [1] - 1882:25
**5th** [1] - 1900:5

## 6

**6** [2] - 1845:13, 1845:16
**608(b** [1] - 1806:19
**63** [1] - 1798:15
**659** [1] - 1923:7
**6:30** [1] - 1771:12
**6th** [1] - 1796:12

## 7

**7** [2] - 1845:13, 1845:22
**713** [3] - 1741:6, 1741:14, 1932:15
**718-613-2484** [1] - 1739:16

## 8

**80-year-old** [1] - 1923:12
**803(6(1** [1] - 1837:4
**813** [1] - 1923:14
**815** [1] - 1923:7

## 9

**9** [1] - 1931:25
**9/11** [1] - 1773:2
**901** [1] - 1837:2
**902** [1] - 1837:2
**902F** [1] - 1827:11
**908-753-1146** [1] - 1839:2
**950** [1] - 1738:22
**951** [4] - 1922:21, 1922:23, 1922:24, 1924:17
**973-564-7001** [1] - 1838:25
**991** [1] - 1923:2
**9:00** [1] - 1738:8

## A

**a.m** [2] - 1738:8, 1931:25
**AAA** [2] - 1838:21, 1839:4
**abducted** [1] - 1830:13
**abduction** [4] - 1797:25, 1798:8, 1829:4, 1829:9
**abetting** [1] - 1885:4
**ability** [2] - 1810:3, 1860:7
**able** [10] - 1778:19, 1847:14, 1870:20, 1888:18, 1894:12, 1895:14, 1897:20, 1899:9, 1901:1, 1903:18
**Abouammo** [1] - 1924:3
**absence** [2] - 1869:25, 1870:22
**absolutely** [5] - 1779:10, 1828:21, 1829:1, 1834:22, 1844:16
**abuse** [8] - 1805:25, 1811:12, 1811:17, 1811:19, 1815:25, 1816:19, 1828:24
**accept** [4] - 1814:18, 1898:13, 1900:25, 1901:1
**access** [2] - 1760:15, 1775:13
**accident** [1] - 1773:11
**accomplish** [1] - 1921:5
**According** [1] - 1766:15
**account** [4] - 1758:6, 1758:12, 1761:25, 1875:23
**accounts** [2] - 1758:15, 1761:22
**accurate** [5] - 1836:20, 1836:23,

6/13/23 - USA v. MCMAHON, ZHU, ZHENG - 21-CR-265 (PKC)          2

1853:21, 1911:11, 1929:12
**accurately** [2] - 1873:1, 1878:14
**achieve** [6] - 1883:10, 1883:18, 1883:25, 1906:11, 1920:24, 1924:9
**acknowledge** [2] - 1871:5, 1920:13
**acknowledging** [2] - 1865:11, 1921:10
**acquit** [1] - 1918:3
**act** [8] - 1754:25, 1844:9, 1877:21, 1878:2, 1901:10, 1901:22, 1907:20, 1911:17
**acted** [7] - 1910:12, 1913:21, 1913:25, 1917:4, 1917:10, 1917:22, 1918:2
**acting** [10] - 1754:25, 1759:13, 1844:9, 1914:2, 1914:11, 1914:22, 1914:23, 1916:2, 1920:11, 1920:19
**actions** [8] - 1879:1, 1879:2, 1886:5, 1886:16, 1896:15, 1917:14, 1917:18, 1918:6
**activities** [2] - 1774:13, 1837:3
**activity** [2] - 1823:25, 1824:3
**acts** [13] - 1806:14, 1809:11, 1877:24, 1879:4, 1880:7, 1880:8, 1880:9, 1880:16, 1880:17, 1904:21, 1920:23, 1921:1
**actual** [4] - 1790:15, 1900:4, 1912:18, 1924:9
**ad** [1] - 1812:3
**add** [15] - 1764:21, 1764:24, 1839:25, 1841:19, 1843:22, 1847:16, 1848:5, 1877:21, 1877:25, 1879:1, 1883:9, 1902:22, 1924:16, 1927:15, 1927:16
**added** [3] - 1868:8, 1868:12, 1899:19
**adding** [2] - 1845:23, 1927:18

**addition** [5] - 1774:18, 1851:19, 1879:8, 1902:17, 1923:23
**additional** [10] - 1765:1, 1786:8, 1828:24, 1840:8, 1878:25, 1882:8, 1883:22, 1899:21, 1904:18, 1922:7
**additions** [2] - 1927:13, 1928:4
**address** [10] - 1750:13, 1758:19, 1762:19, 1765:23, 1793:5, 1839:19, 1840:11, 1849:21, 1930:16, 1930:17
**addressed** [1] - 1875:20
**addressing** [1] - 1807:15
**adjourned** [1] - 1931:24
**admissible** [10] - 1751:5, 1837:5, 1837:8, 1839:4, 1853:11, 1890:18, 1890:22, 1891:12, 1897:23, 1898:11
**admit** [8] - 1740:19, 1741:1, 1741:6, 1749:21, 1753:23, 1832:6, 1893:10, 1898:9
**admitted** [17] - 1740:8, 1740:11, 1740:13, 1741:13, 1749:19, 1749:25, 1754:7, 1759:23, 1762:8, 1827:10, 1827:24, 1832:10, 1838:5, 1838:9, 1852:2, 1855:5, 1899:24
**admitting** [1] - 1898:12
**adopt** [2] - 1912:15, 1925:7
**advised** [1] - 1819:4
**affect** [2] - 1813:1, 1815:11
**affected** [3] - 1811:10, 1828:18, 1828:23
**affirmatively** [3] - 1895:21, 1896:6, 1896:8
**affirmed** [2] - 1804:22, 1923:16
**afield** [1] - 1816:17
**afternoon** [1] - 1840:3
**AFTERNOON** [1] -

1842:1
**agency** [5] - 1919:4, 1920:14, 1920:15, 1921:7, 1924:2
**Agent** [2] - 1856:21, 1857:1
**agent** [10] - 1844:9, 1844:10, 1913:19, 1914:1, 1917:5, 1917:9, 1918:3, 1918:17, 1918:24, 1920:11
**agents** [6] - 1890:9, 1891:10, 1896:1, 1898:9, 1901:17, 1902:7
**ago** [9] - 1744:2, 1772:14, 1776:6, 1784:6, 1788:16, 1788:19, 1800:23, 1849:10, 1890:14
**agree** [6] - 1856:9, 1870:3, 1870:8, 1870:15, 1882:5, 1886:8
**agreed** [2] - 1836:18, 1838:22
**agreeing** [1] - 1797:3
**agreement** [18] - 1746:3, 1747:16, 1749:21, 1749:23, 1749:25, 1750:2, 1750:7, 1753:17, 1754:10, 1761:3, 1761:5, 1761:8, 1766:16, 1766:17, 1883:7, 1918:16, 1918:20, 1928:19
**agreements** [2] - 1748:5, 1906:11
**agrees** [1] - 1788:17
**ahead** [26] - 1750:24, 1753:3, 1766:14, 1777:12, 1777:18, 1786:6, 1786:23, 1788:22, 1794:4, 1794:6, 1800:15, 1821:5, 1825:19, 1834:18, 1845:21, 1846:13, 1857:12, 1860:22, 1864:11, 1878:24, 1879:23, 1885:2, 1887:18, 1899:11, 1919:11, 1922:18
**aided** [1] - 1739:19
**aiding** [1] - 1885:4
**airport** [1] - 1876:10
**albeit** [1] - 1924:6
**allegation** [1] -

1816:10
**allegations** [2] - 1834:15, 1840:23
**alleged** [4] - 1810:9, 1876:10, 1925:3, 1925:4
**allegedly** [1] - 1890:12
**allow** [6] - 1812:19, 1820:15, 1859:5, 1891:21, 1892:9, 1902:13
**allowed** [14] - 1806:13, 1889:10, 1889:24, 1890:7, 1891:4, 1891:6, 1891:23, 1893:5, 1900:16, 1900:21, 1901:12, 1902:2, 1902:8, 1921:24
**allowing** [1] - 1859:11
**almost** [4] - 1825:3, 1825:4, 1871:10, 1882:7
**alpha** [1] - 1750:14
**amenable** [1] - 1867:13
**AMERICA** [1] - 1738:3
**amount** [1] - 1773:19
**another..** [1] - 1779:20
**answer** [16] - 1793:8, 1804:20, 1807:24, 1809:6, 1809:22, 1814:8, 1814:22, 1816:5, 1816:6, 1824:10, 1825:22, 1833:23, 1874:5, 1890:6, 1911:5
**answered** [3] - 1795:5, 1808:9, 1898:3
**anticipate** [2] - 1861:1, 1861:7
**anticipating** [1] - 1859:15
**anyway** [2] - 1851:3, 1882:21
**apologies** [2] - 1777:12, 1881:15
**apologize** [5] - 1779:2, 1780:6, 1808:1, 1872:8, 1911:3
**appeal** [1] - 1924:15
**appear** [1] - 1805:7
**appearance** [2] - 1842:8, 1842:18
**appeared** [2] - 1804:18, 1925:18
**applicable** [2] - 1849:13, 1859:14

**application** [2] - 1762:12, 1763:8
**applied** [1] - 1923:25
**apply** [2] - 1849:4, 1849:13
**applying** [1] - 1921:7
**appreciate** [1] - 1764:20
**approach** [1] - 1742:11
**appropriate** [15] - 1806:8, 1806:18, 1815:9, 1817:13, 1859:24, 1860:20, 1861:14, 1862:5, 1862:9, 1867:16, 1871:2, 1877:19, 1888:11, 1906:24, 1926:20
**approximate** [1] - 1769:24
**April** [14] - 1786:7, 1787:16, 1789:19, 1789:23, 1791:21, 1795:12, 1795:13, 1795:15, 1795:16, 1795:22, 1796:12, 1828:7, 1828:10
**Arabic** [2] - 1750:15, 1750:16
**area** [5] - 1769:10, 1785:20, 1861:8, 1922:8, 1928:18
**ARFA** [3] - 1738:17, 1845:4, 1926:7
**argue** [73] - 1750:21, 1811:25, 1813:2, 1857:6, 1859:2, 1859:18, 1859:19, 1859:21, 1863:11, 1863:13, 1866:2, 1866:5, 1867:16, 1870:21, 1871:15, 1874:3, 1875:17, 1876:7, 1888:11, 1888:18, 1888:20, 1888:21, 1889:19, 1889:21, 1889:23, 1890:8, 1890:20, 1890:25, 1891:13, 1892:13, 1892:21, 1892:23, 1893:5, 1894:10, 1894:12, 1895:7, 1895:8, 1895:13, 1895:14, 1896:2, 1896:7, 1896:23, 1897:1, 1897:4, 1897:6, 1897:12, 1897:21, 1898:1, 1898:4,

1898:12, 1899:3, 1899:8, 1899:9, 1900:14, 1900:18, 1900:21, 1901:12, 1901:16, 1901:24, 1902:5, 1902:10, 1903:18, 1903:24, 1904:11, 1904:23, 1909:21, 1911:8, 1915:6, 1920:10, 1921:15, 1921:25, 1922:13

**argued** [4] - 1889:7, 1889:8, 1901:15

**argues** [1] - 1894:5

**arguing** [6] - 1876:12, 1897:21, 1898:25, 1903:25, 1919:16, 1919:18

**argument** [50] - 1806:17, 1810:3, 1810:12, 1811:1, 1856:15, 1859:15, 1860:21, 1861:8, 1861:11, 1861:15, 1861:16, 1863:19, 1866:1, 1866:17, 1866:24, 1866:25, 1867:15, 1870:20, 1871:2, 1871:5, 1875:3, 1876:13, 1889:25, 1891:2, 1891:16, 1891:19, 1892:25, 1893:1, 1893:9, 1893:10, 1893:14, 1894:17, 1895:24, 1896:6, 1897:14, 1897:24, 1900:16, 1900:19, 1900:25, 1901:1, 1901:2, 1902:12, 1902:14, 1904:2, 1914:16, 1919:20, 1921:12, 1922:3, 1922:4

**arguments** [3] - 1860:25, 1875:8, 1909:5

**arise** [5] - 1873:15, 1873:20, 1879:24, 1924:11, 1924:15

**arose** [1] - 1840:14

**arrest** [9] - 1774:7, 1774:9, 1825:2, 1825:4, 1825:6, 1825:7, 1825:9, 1825:24

**arrested** [2] - 1826:3, 1889:9

**arrests** [3] - 1824:20,

1824:23, 1825:1

**artfully** [1] - 1841:5

**article** [1] - 1902:3

**articulated** [1] - 1893:19

**aside** [2] - 1782:24, 1921:14

**Ass** [1] - 1790:10

**assertively** [1] - 1904:11

**assess** [2] - 1853:11, 1857:3

**assessing** [1] - 1854:5, 1854:11, 1854:19

**assessment** [3] - 1841:22, 1853:15, 1853:17

**assist** [1] - 1755:16

**Assistant** [1] - 1767:25

**assistant** [1] - 1768:1

**Assistants** [1] - 1738:19

**assisting** [1] - 1755:1

**associate** [1] - 1886:14

**associated** [2] - 1762:5, 1885:13

**assume** [16] - 1786:14, 1804:14, 1812:11, 1815:17, 1849:24, 1879:23, 1888:21, 1892:21, 1894:6, 1897:3, 1897:10, 1897:11, 1904:1, 1905:7, 1911:8, 1931:16

**assumed** [3] - 1812:6, 1858:8, 1887:2

**assuming** [1] - 1824:12

**attached** [4] - 1749:14, 1783:19, 1872:9, 1872:24

**attachment** [11] - 1748:4, 1749:14, 1752:4, 1752:21, 1753:2, 1753:4, 1753:12, 1754:9, 1781:23, 1782:3, 1782:7

**attachments** [1] - 1872:21

**attempt** [1] - 1895:25

**attention** [4] - 1744:1, 1768:22, 1776:5, 1786:7

**ATTORNEY** [1] - 1738:15

**attorney** [12] - 1744:20, 1746:20, 1746:24, 1747:4, 1754:10, 1756:15, 1757:13, 1758:7, 1767:22, 1768:4, 1768:15, 1769:5

**Attorney** [4] - 1738:19, 1738:23, 1768:1, 1925:4

**Attorney's** [1] - 1825:9

**attorney-client** [1] - 1754:10

**attorneys** [1] - 1819:13

**atypical** [12] - 1778:5, 1791:19, 1791:22, 1793:4, 1793:11, 1793:16, 1793:17, 1793:21, 1795:7, 1795:10, 1795:17, 1795:24

**audio** [1] - 1846:24

**August** [6] - 1752:15, 1761:14, 1766:1, 1768:23, 1770:20

**authentic** [1] - 1837:1

**authority** [7] - 1811:13, 1811:17, 1811:19, 1815:25, 1816:19, 1828:25, 1924:6

**automotive** [1] - 1923:18

**AUTUMN** [1] - 1739:4

**available** [7] - 1782:14, 1856:3, 1859:12, 1862:1, 1866:18, 1867:8, 1892:11

**Avenue** [2] - 1738:22, 1739:10

**avoid** [1] - 1782:4

**avoidance** [7] - 1880:24, 1881:3, 1881:4, 1881:18, 1881:19, 1882:4, 1882:10

**avoided** [1] - 1916:2

**avoiding** [1] - 1915:7

**aware** [4] - 1814:2, 1815:22, 1924:1

**awesome** [1] - 1777:5

**awful** [1] - 1879:17

---

**B**

---

**B-R-I-C-K-F-I-E-L-D** [1] - 1767:12

**background** [2] -

1756:9, 1775:8

**background-type** [1] - 1775:8

**bad** [1] - 1790:18

**balance** [1] - 1906:22

**banner** [4] - 1872:16, 1873:1, 1873:3

**based** [26] - 1758:16, 1760:20, 1805:17, 1816:23, 1822:8, 1828:5, 1834:14, 1840:14, 1856:19, 1857:22, 1858:18, 1859:7, 1859:9, 1860:25, 1873:5, 1886:23, 1887:2, 1887:3, 1894:21, 1901:24, 1902:5, 1902:12, 1903:18, 1914:24, 1915:13, 1921:3

**Based** [1] - 1744:4

**baseline** [1] - 1869:19

**basis** [8] - 1814:17, 1857:9, 1886:6, 1904:23, 1915:2, 1919:15, 1919:23, 1922:3

**Bates** [1] - 1748:10

**bathroom** [1] - 1756:6

**BBB** [4] - 1781:10, 1781:13, 1781:15, 1932:17

**be..** [2] - 1797:21, 1919:24

**beating** [1] - 1885:3

**became** [1] - 1835:6

**because..** [1] - 1777:16

**become** [1] - 1800:21

**becomes** [2] - 1895:19, 1896:12

**BEFORE** [1] - 1738:12

**begin** [5] - 1804:4, 1840:2, 1851:21, 1877:18, 1877:23

**beginning** [10] - 1774:15, 1796:9, 1798:13, 1808:5, 1808:11, 1808:15, 1809:13, 1843:5, 1902:18, 1911:3

**begins** [7] - 1846:15, 1847:4, 1851:17, 1855:5, 1881:12, 1883:7, 1885:9

**behalf** [7] - 1742:1, 1759:10, 1759:13, 1914:11, 1914:22, 1914:23, 1916:2

**beholden** [1] - 1925:1

**belaboring** [1] - 1816:4

**believes** [1] - 1921:1

**benefit** [1] - 1840:7

**Bergen** [1] - 1768:2

**best** [6] - 1853:22, 1857:5, 1858:18, 1901:10, 1903:15, 1911:10

**better** [10] - 1783:12, 1789:3, 1824:16, 1851:3, 1854:22, 1856:15, 1873:11, 1885:24, 1886:1, 1928:13

**between** [20] - 1795:15, 1795:22, 1796:11, 1828:11, 1831:25, 1836:18, 1838:22, 1839:19, 1846:21, 1862:7, 1864:1, 1864:18, 1907:11, 1909:2, 1910:24, 1918:16, 1918:24, 1920:3, 1920:6, 1928:19

**beyond** [10] - 1771:4, 1862:4, 1862:14, 1863:12, 1869:23, 1871:7, 1871:22, 1874:4, 1875:10, 1876:21

**big** [3] - 1774:2, 1907:4, 1919:13

**biggest** [2] - 1907:11, 1907:17

**billed** [1] - 1827:2

**binder** [1] - 1847:21

**bit** [12] - 1756:9, 1772:23, 1778:21, 1799:5, 1811:9, 1846:12, 1859:1, 1863:12, 1878:3, 1891:1, 1917:2, 1917:3

**black** [1] - 1828:3

**blame** [1] - 1914:7

**bland** [1] - 1812:23

**blank** [2] - 1753:7, 1755:3

**blast** [1] - 1814:15

**block** [1] - 1913:4

**blow** [7] - 1762:12, 1777:23, 1778:21, 1778:23, 1827:12, 1828:1, 1838:2

**Blow** [1] - 1762:23

**blowing** [1] - 1833:2

**Blumenthal** [1] -

1909:24
**blurry** [1] - 1783:9
**Board** [5] - 1828:20, 1828:25, 1834:15, 1834:17, 1835:2
**board** [3] - 1814:5, 1835:4, 1919:13
**body** [2] - 1923:21, 1923:22
**Boeing** [1] - 1923:8
**bolded** [1] - 1754:15
**Bonomo** [1] - 1771:7
**BONOMO** [5] - 1738:18, 1738:23, 1770:10, 1771:6, 1932:9
**bothered** [1] - 1931:9
**bottom** [4] - 1742:3, 1762:14, 1783:11, 1828:1
**box** [4] - 1742:11, 1762:15, 1767:6, 1771:19
**bracket** [1] - 1927:3
**bracketed** [1] - 1859:14
**brackets** [1] - 1926:24
**branch** [1] - 1763:13
**Bread** [3] - 1770:17, 1828:7, 1828:10
**break** [14] - 1804:3, 1817:17, 1817:19, 1820:6, 1820:7, 1820:16, 1820:21, 1839:16, 1840:7, 1841:9, 1853:18, 1878:16, 1931:14
**breaking** [2] - 1878:15, 1929:1
**BREON** [1] - 1738:15
**Brian** [1] - 1768:15
**Brickfield** [5] - 1767:5, 1767:11, 1767:19, 1770:2, 1770:11
**BRICKFIELD** [2] - 1767:13, 1932:8
**brief** [2] - 1805:11, 1820:16
**Briefly** [1] - 1763:19
**bright** [1] - 1867:13
**Bring** [2] - 1779:24, 1780:3
**bring** [5] - 1780:8, 1780:13, 1781:6, 1834:1, 1886:4
**bringing** [1] - 1833:19
**brings** [1] - 1849:8
**broad** [3] - 1824:12, 1824:13, 1853:24
**Broadway** [1] - 1739:7

**Brooklyn** [3] - 1738:6, 1738:17, 1739:15
**brother** [2] - 1929:6, 1929:11
**brought** [2] - 1862:20, 1871:23
**bulk** [1] - 1858:20
**bullet** [1] - 1886:3
**bullets** [1] - 1886:2
**bumped** [1] - 1931:16
**burden** [6] - 1862:2, 1862:3, 1862:14, 1870:8, 1919:18, 1930:21
**Bureau** [1] - 1763:13
**Burgos** [2] - 1869:8, 1870:5
**Burgos-Collazo** [2] - 1869:8, 1870:5
**business** [4] - 1743:19, 1744:21, 1803:21, 1923:8
**but..** [2] - 1855:12, 1927:23
**BY** [30] - 1738:17, 1739:4, 1739:8, 1739:11, 1743:6, 1746:19, 1756:2, 1763:21, 1765:14, 1767:18, 1770:10, 1772:8, 1776:1, 1777:20, 1795:2, 1803:1, 1822:3, 1823:6, 1833:1, 1834:11, 1932:5, 1932:5, 1932:6, 1932:6, 1932:7, 1932:8, 1932:9, 1932:10, 1932:11, 1932:11
**Bye** [1] - 1771:13

# C

**cabin** [1] - 1841:21
**Cadman** [2] - 1738:16, 1739:15
**Caidain** [1] - 1763:14
**Caidian** [1] - 1763:13
**CAIDIAN** [1] - 1763:14
**California** [1] - 1924:4
**cannot** [3] - 1750:19, 1892:13, 1906:20
**Cantonese** [1] - 1757:3
**capacity** [1] - 1826:24
**caption** [1] - 1920:7
**car** [2] - 1789:25, 1898:19
**card** [1] - 1744:22

**care** [4] - 1878:16, 1880:12, 1880:14, 1928:11
**career** [1] - 1870:24
**careful** [1] - 1743:15
**carefully** [4] - 1868:5, 1874:8, 1902:4, 1926:19
**cares** [1] - 1896:15
**carried** [1] - 1830:21
**carries** [1] - 1921:1
**carry** [3] - 1780:15, 1780:18, 1830:24
**carrying** [1] - 1920:23
**case** [65] - 1745:12, 1745:22, 1746:21, 1759:7, 1769:11, 1769:18, 1774:14, 1793:14, 1804:5, 1805:20, 1817:15, 1819:15, 1820:19, 1839:22, 1839:25, 1855:5, 1856:13, 1856:16, 1858:25, 1861:22, 1862:14, 1862:16, 1863:2, 1863:3, 1863:8, 1864:8, 1869:8, 1869:22, 1870:5, 1870:14, 1870:16, 1870:24, 1872:13, 1873:2, 1874:12, 1875:15, 1878:22, 1892:17, 1894:11, 1896:13, 1900:11, 1900:13, 1900:15, 1901:2, 1906:24, 1909:24, 1909:25, 1910:11, 1911:7, 1914:11, 1914:12, 1915:18, 1915:23, 1915:24, 1916:23, 1919:8, 1919:13, 1920:5, 1920:8, 1921:10, 1922:8, 1922:25, 1923:16, 1924:4, 1925:4
**cases** [14] - 1745:17, 1773:20, 1773:23, 1774:1, 1774:11, 1774:14, 1815:18, 1817:6, 1863:1, 1871:18, 1872:22, 1872:24, 1909:25, 1924:10
**cash** [3] - 1770:17, 1803:18, 1803:20
**categorically** [1] - 1873:4
**category** [1] - 1885:23

**CAUSE** [1] - 1738:11
**caused** [1] - 1879:2
**causes** [2] - 1871:12, 1871:13
**caution** [1] - 1861:10
**cautionary** [1] - 1849:8
**CC** [1] - 1812:16
**CCC** [1] - 1784:16
**CCRB** [19] - 1805:24, 1809:25, 1811:11, 1812:12, 1812:24, 1814:4, 1814:11, 1814:15, 1815:12, 1816:1, 1816:2, 1816:9, 1816:24, 1817:6, 1817:9, 1820:17, 1840:14, 1840:23
**cell** [1] - 1785:17
**Center** [1] - 1739:3
**center** [1] - 1910:10
**certain** [8] - 1774:1, 1816:25, 1834:14, 1860:18, 1862:22, 1862:23, 1865:19, 1870:5
**Certainly** [1] - 1842:25
**certainly** [17] - 1793:9, 1814:13, 1863:11, 1863:13, 1874:17, 1875:2, 1875:5, 1875:19, 1883:12, 1887:8, 1889:16, 1895:8, 1899:9, 1910:19, 1915:12, 1915:25, 1919:20
**cetera** [2] - 1906:13, 1929:11
**challenge** [1] - 1811:22
**Challenging** [1] - 1853:24
**challenging** [4] - 1812:3, 1853:8, 1853:13, 1853:20
**chances** [1] - 1869:12
**change** [29] - 1814:14, 1815:24, 1826:14, 1834:13, 1834:22, 1846:3, 1847:3, 1848:17, 1849:3, 1849:23, 1875:5, 1879:14, 1880:20, 1882:12, 1882:17, 1906:15, 1908:6, 1908:9, 1908:20, 1908:22, 1910:20, 1911:23, 1912:2, 1912:9, 1912:22,

1926:13, 1928:8, 1929:4, 1930:13
**changed** [4] - 1835:2, 1835:5, 1844:25, 1912:21
**changes** [6] - 1844:17, 1886:17, 1906:13, 1907:13, 1912:19, 1930:13
**changing** [1] - 1926:18
**channel** [1] - 1853:22
**Chaohong** [3] - 1861:5, 1861:21, 1866:22
**character** [17] - 1805:17, 1805:21, 1806:24, 1807:6, 1809:23, 1811:9, 1811:23, 1812:4, 1815:7, 1816:20, 1840:15, 1841:4, 1841:23, 1853:7, 1853:10, 1853:12
**characterization** [1] - 1783:24
**characterized** [2] - 1829:3, 1829:11
**charge** [13] - 1840:10, 1842:13, 1842:19, 1842:22, 1856:8, 1862:1, 1866:18, 1867:9, 1906:5, 1910:2, 1910:24, 1910:25, 1924:3
**charged** [12] - 1844:8, 1851:20, 1851:24, 1852:1, 1852:9, 1852:12, 1852:13, 1852:15, 1852:21, 1877:19, 1906:19, 1907:22
**charges** [8] - 1742:4, 1840:21, 1843:4, 1872:18, 1919:3, 1927:4, 1929:24, 1930:13
**charts** [1] - 1845:1
**check** [4] - 1803:18, 1803:19, 1808:10, 1809:3
**checks** [3] - 1775:8, 1775:9, 1775:10
**Chen** [35] - 1861:5, 1861:20, 1862:7, 1862:9, 1862:15, 1863:3, 1863:7, 1863:18, 1863:21, 1863:23, 1864:10, 1864:14, 1864:16,

1864:23, 1865:14,
1865:18, 1866:8,
1866:15, 1866:22,
1887:20, 1887:23,
1888:2, 1888:10,
1889:12, 1889:14,
1889:15, 1889:16,
1890:4, 1890:10,
1890:11, 1891:18,
1914:13, 1914:23,
1915:12
**CHEN** [29] - 1738:12,
1738:18, 1748:7,
1750:3, 1750:10,
1750:16, 1754:4,
1755:23, 1756:2,
1760:1, 1760:25,
1761:18, 1762:7,
1762:11, 1762:22,
1763:1, 1763:5,
1763:8, 1763:16,
1766:8, 1766:23,
1891:24, 1893:9,
1893:19, 1893:25,
1899:12, 1902:16,
1902:20, 1932:6
**child** [2] - 1929:6,
1929:11
**China** [11] - 1756:15,
1757:13, 1769:19,
1779:9, 1796:4,
1870:17, 1870:19,
1913:20, 1915:9,
1915:17, 1917:5
**Chinese** [32] -
1745:22, 1749:8,
1749:18, 1750:9,
1750:19, 1750:22,
1755:16, 1757:1,
1757:5, 1757:7,
1757:8, 1793:6,
1793:18, 1801:20,
1847:13, 1857:23,
1858:13, 1858:16,
1858:17, 1864:24,
1872:3, 1914:22,
1916:3, 1919:22,
1920:2, 1920:3,
1920:20, 1920:25,
1921:2, 1923:9
**choose** [2] - 1741:24,
1842:12
**chorus** [1] - 1931:22
**CHRISTINE** [2] -
1738:18, 1738:23
**Chung** [1] - 1923:7
**Circuit** [8] - 1856:16,
1858:25, 1870:24,
1922:9, 1923:2,
1923:7, 1923:19,

1924:13
**circuit** [1] - 1923:12
**Circuit's** [1] - 1924:5
**circumstance** [2] -
1809:6, 1896:14
**circumstances** [2] -
1896:16, 1909:23
**circumstantial** [1] -
1870:15
**citation** [1] - 1869:3
**citations** [1] - 1868:21
**cite** [2] - 1856:12,
1856:13
**cited** [2] - 1858:25,
1871:18
**cites** [1] - 1856:15
**Citizens** [1] - 1834:15
**citizens** [2] - 1834:19,
1858:17
**City** [1] - 1823:12
**civil** [1] - 1830:8
**civilian** [2] - 1814:4,
1834:19
**Civilian** [4] - 1828:20,
1828:25, 1834:17,
1835:1
**claim** [1] - 1813:17
**claims** [1] - 1812:24
**clarify** [9] - 1740:10,
1746:9, 1804:13,
1821:21, 1824:11,
1846:24, 1846:25,
1894:16, 1899:12
**clarifying** [1] -
1922:20
**clarity** [4] - 1788:20,
1811:16, 1907:9,
1908:25
**claw** [1] - 1904:19
**clean** [1] - 1930:14
**clear** [26] - 1813:6,
1813:12, 1840:16,
1844:1, 1848:3,
1850:18, 1852:1,
1852:7, 1853:15,
1854:7, 1857:14,
1858:3, 1870:12,
1873:14, 1878:4,
1882:1, 1904:6,
1904:8, 1907:6,
1907:7, 1907:13,
1907:15, 1907:24,
1910:22, 1914:2,
1919:25
**clearly** [7] - 1768:6,
1852:18, 1864:9,
1889:19, 1892:14,
1896:24, 1900:11
**Clearly** [1] - 1849:13
**clerk** [7] - 1841:10,

1845:5, 1847:19,
1855:2, 1855:9,
1904:19, 1918:19
**CLERK** [2] - 1822:1,
1918:22
**client** [27] - 1754:10,
1755:1, 1764:7,
1764:11, 1787:11,
1791:13, 1797:11,
1797:12, 1798:24,
1812:9, 1815:2,
1818:5, 1818:8,
1819:23, 1827:2,
1833:19, 1834:1,
1842:16, 1864:11,
1864:22, 1888:2,
1914:11, 1914:14,
1919:21, 1920:1,
1920:4, 1920:6
**client's** [1] - 1754:25
**clients** [7] - 1758:14,
1758:16, 1803:20,
1827:6, 1828:7,
1828:11, 1914:21
**clip** [1] - 1892:1
**close** [4] - 1741:2,
1771:24, 1875:14,
1901:25
**closing** [2] - 1817:15,
1930:4
**closings** [1] - 1867:11
**co** [7] - 1773:9,
1879:2, 1890:2,
1907:20, 1909:15,
1925:3
**co-conspirator** [1] -
1909:15
**co-conspirators** [4] -
1879:2, 1907:20,
1925:3
**co-counsel** [1] -
1890:2
**co-workers** [1] -
1773:9
**cobble** [1] - 1841:9
**Cogan** [3] - 1920:13,
1921:7, 1921:11
**Collazo** [2] - 1869:8,
1870:5
**colleague** [2] -
1777:5, 1841:7
**collect** [2] - 1744:15,
1829:25
**collection** [1] -
1745:14
**Combat** [1] - 1781:1
**combat** [1] - 1781:6
**comfort** [2] - 1873:11,
1922:13
**coming** [10] - 1744:3,

1745:13, 1750:4,
1750:18, 1764:19,
1829:25, 1830:11,
1876:9, 1907:15,
1921:3
**comma** [2] - 1848:6,
1879:1
**comment** [7] - 1815:4,
1843:8, 1843:10,
1875:11, 1880:1,
1911:19, 1916:14
**comments** [3] -
1912:25, 1915:21,
1930:18
**commerce** [2] -
1927:15, 1928:3
**commission** [2] -
1885:10, 1902:25
**committed** [5] -
1812:1, 1824:19,
1877:24, 1885:18,
1885:19
**common** [5] -
1773:22, 1919:9,
1920:15, 1923:22,
1923:24
**communicate** [6] -
1757:11, 1757:22,
1757:25, 1758:3,
1758:5, 1920:22
**communicated** [4] -
1757:10, 1757:21,
1757:23, 1864:23
**communicates** [1] -
1878:14
**communication** [4] -
1764:10, 1768:24,
1799:19, 1800:20
**communications** [1] -
1764:16
**companies** [1] -
1830:7
**company** [10] -
1772:18, 1774:2,
1787:5, 1787:6,
1787:10, 1826:21,
1827:2, 1910:5,
1923:18
**comparing** [1] -
1906:4
**comparison** [1] -
1910:24
**compensation** [1] -
1918:13
**competent** [1] -
1897:23
**complaint** [2] -
1814:5, 1835:15
**Complaint** [1] -
1828:20, 1828:25,

1834:15, 1834:17,
1835:1
**complete** [4] -
1749:15, 1750:5,
1817:15, 1903:16
**completed** [2] -
1877:25, 1889:22
**completely** [2] -
1800:3, 1806:21
**completeness** [2] -
1891:23, 1891:25
**compliance** [1] -
1772:18
**compromise** [1] -
1891:23
**computer** [4] - 1760:1,
1779:1, 1837:13,
1837:19
**Computer** [1] -
1739:19
**Computer-aided** [1] -
1739:19
**computerized** [1] -
1739:18
**conceive** [1] - 1908:4
**concept** [1] - 1909:8
**concern** [4] - 1778:7,
1779:8, 1861:3,
1869:23
**concerned** [3] -
1816:15, 1919:8,
1924:11
**concerning** [1] -
1831:7
**concerns** [1] -
1908:23
**conclude** [2] - 1897:3,
1916:1
**concludes** [1] -
1794:7
**concluding** [1] -
1906:18
**conclusion** [2] -
1820:19, 1868:12
**conclusions** [1] -
1900:24
**conduct** [6] - 1816:25,
1864:10, 1864:11,
1904:8, 1918:5,
1925:4
**conducted** [2] -
1833:14, 1837:3
**conducting** [1] -
1785:20
**confer** [1] - 1879:3
**conference** [4] -
1840:11, 1842:13,
1842:19, 1842:22
**confirm** [4] - 1758:19,
1760:12, 1819:19,

1855:2
**confirmed** [1] - 1820:2
**confirming** [1] - 1855:9
**confuse** [1] - 1876:25
**confused** [2] - 1852:19, 1918:1
**confusing** [8] - 1844:15, 1845:6, 1876:20, 1878:9, 1913:24, 1916:11, 1917:3, 1917:24
**confusion** [4] - 1851:25, 1908:25, 1925:20, 1929:17
**congratulating** [1] - 1797:1
**Congying** [3] - 1739:7, 1843:20, 1844:7
**CONGYING** [1] - 1738:8
**Congying's** [1] - 1843:16
**connection** [9] - 1759:20, 1784:4, 1795:15, 1808:12, 1825:19, 1858:17, 1917:19, 1917:23, 1921:16
**conscience** [1] - 1891:11
**conscious** [7] - 1880:24, 1881:3, 1881:4, 1881:18, 1881:19, 1882:4, 1882:10
**consciously** [2] - 1915:7, 1916:1
**consciousness** [3] - 1890:9, 1891:8, 1896:2
**conservative** [1] - 1886:13
**consider** [10] - 1840:22, 1841:10, 1869:25, 1870:1, 1870:6, 1872:18, 1890:21, 1891:1, 1892:14, 1926:19
**consideration** [2] - 1841:20, 1861:14
**considered** [7] - 1840:17, 1850:10, 1850:14, 1854:15, 1858:19, 1874:12, 1893:7
**considering** [2] - 1858:1, 1886:6
**consistent** [1] -

1911:9
**consistently** [1] - 1859:23
**consists** [3] - 1752:3, 1836:20, 1836:23
**conspiracies** [5] - 1907:24, 1908:4, 1909:10, 1909:11, 1909:22, 1912:16
**conspiracy** [49] - 1844:1, 1844:9, 1844:10, 1876:10, 1879:1, 1882:25, 1883:6, 1883:7, 1883:8, 1883:10, 1883:23, 1884:2, 1887:7, 1888:12, 1888:19, 1889:22, 1897:20, 1897:25, 1898:7, 1901:21, 1901:22, 1902:15, 1902:21, 1902:23, 1904:22, 1905:20, 1906:5, 1906:9, 1906:12, 1906:15, 1906:16, 1906:19, 1906:20, 1907:21, 1908:4, 1908:5, 1908:7, 1908:11, 1908:13, 1908:22, 1909:12, 1909:16, 1909:18, 1910:7, 1910:10, 1911:9, 1911:17, 1912:9
**conspirator** [2] - 1903:8, 1909:15
**conspirators** [7] - 1879:2, 1907:20, 1909:19, 1909:23, 1911:17, 1925:3
**conspires** [5] - 1906:10, 1906:16, 1906:17, 1906:22, 1912:1
**constitute** [1] - 1904:9
**construction** [2] - 1872:24, 1906:2
**consultation** [2] - 1747:1
**contact** [12] - 1761:7, 1766:17, 1769:14, 1770:21, 1918:16, 1918:17, 1918:24, 1918:25, 1919:22, 1920:1, 1921:17, 1923:4
**contacted** [4] - 1776:4, 1776:7, 1776:9, 1776:11
**contacts** [1] - 1920:6

**containing** [1] - 1848:23
**Conte** [1] - 1778:19
**content** [2] - 1749:9, 1750:20
**contentions** [1] - 1742:7
**contents** [2] - 1750:21, 1845:9
**context** [12] - 1750:6, 1750:9, 1773:16, 1807:12, 1809:18, 1814:17, 1852:18, 1854:4, 1854:11, 1854:19, 1895:17, 1922:24
**Conti** [5] - 1777:14, 1836:5, 1836:6, 1852:17, 1905:21
**CONTI** [12] - 1739:4, 1836:7, 1836:10, 1836:16, 1837:11, 1837:19, 1837:24, 1838:2, 1838:7, 1838:14, 1838:16, 1838:19
**continue** [2] - 1783:7, 1878:1
**continued** [3] - 1739:1, 1792:5, 1907:20
**Continued** [9] - 1748:14, 1751:18, 1775:16, 1794:8, 1802:21, 1832:13, 1855:15, 1884:13, 1914:25
**continues** [4] - 1847:5, 1908:5, 1909:15, 1927:17
**Continuing** [9] - 1746:24, 1776:3, 1777:22, 1795:4, 1803:1, 1822:3, 1833:1, 1856:1, 1915:1
**continuity** [1] - 1911:3
**continuous** [1] - 1908:12
**contradict** [1] - 1856:20
**contrary** [1] - 1857:1
**contrast** [1] - 1906:10
**contribute** [2] - 1842:14, 1875:1
**controls** [1] - 1910:1
**controversial** [1] - 1879:20
**conversation** [9] - 1747:7, 1755:7,

1764:1, 1804:17, 1862:6, 1864:2, 1866:12, 1866:13, 1903:19
**conversations** [5] - 1889:15, 1890:4, 1898:17, 1914:13, 1914:24
**converse** [1] - 1894:12
**convey** [2] - 1852:12, 1910:20
**convicted** [1] - 1923:8
**conviction** [1] - 1923:16
**convinced** [1] - 1901:11
**convinces** [1] - 1798:21
**cool** [2] - 1796:20, 1796:25
**cooperating** [2] - 1888:1
**cop** [6] - 1807:3, 1807:4, 1807:5, 1814:19, 1815:12, 1816:20
**copies** [2] - 1836:21, 1836:24
**copy** [4] - 1761:4, 1788:1, 1817:11, 1849:23
**corner** [2] - 1762:15, 1828:2
**corporate** [1] - 1757:16
**Correct** [22] - 1746:1, 1747:6, 1747:9, 1747:17, 1752:25, 1753:9, 1753:11, 1753:22, 1754:13, 1755:6, 1756:18, 1759:2, 1759:5, 1759:8, 1762:21, 1765:17, 1766:12, 1772:12, 1833:17, 1834:24, 1844:12, 1851:13
**correct** [59] - 1740:12, 1741:11, 1744:5, 1747:8, 1747:12, 1748:3, 1764:25, 1765:2, 1766:7, 1766:17, 1770:25, 1771:2, 1771:4, 1772:11, 1772:16, 1787:9, 1787:13, 1788:18, 1793:10, 1799:13, 1800:4, 1805:3, 1805:4,

1808:8, 1818:19, 1819:10, 1819:11, 1819:21, 1819:22, 1819:24, 1820:8, 1820:10, 1820:12, 1820:13, 1821:14, 1823:25, 1826:7, 1826:20, 1826:23, 1827:1, 1827:4, 1827:6, 1827:7, 1827:23, 1828:12, 1828:16, 1829:13, 1831:12, 1831:15, 1833:4, 1834:23, 1855:7, 1876:1, 1881:21, 1893:25, 1896:5, 1910:21, 1912:14, 1928:1
**corrected** [1] - 1790:18
**Corrected** [1] - 1846:18
**correction** [1] - 1821:13
**correctly** [2] - 1770:19, 1844:7
**corroborates** [1] - 1750:1
**counsel** [11] - 1754:25, 1781:17, 1836:19, 1838:23, 1849:10, 1861:15, 1886:25, 1890:2, 1893:21, 1896:15, 1896:19
**Count** [14] - 1905:13, 1912:23, 1913:9, 1913:12, 1916:10, 1924:17, 1924:18, 1925:11, 1925:14, 1925:15, 1931:7, 1931:14, 1931:15
**count** [4] - 1843:23, 1844:8, 1844:14, 1914:19
**counter** [1] - 1893:13
**counterargument** [1] - 1922:1
**country** [1] - 1834:2
**counts** [2] - 1912:18, 1931:19
**Counts** [2] - 1927:4, 1927:10
**county** [1] - 1768:1
**County** [2] - 1744:21, 1768:2
**couple** [5] - 1772:14, 1821:19, 1824:25, 1841:13, 1927:13
**course** [11] - 1788:13,

1803:20, 1806:4,
1807:9, 1811:24,
1812:13, 1816:11,
1850:24, 1869:23,
1871:25, 1923:1
**Court's** [7] - 1851:23,
1857:13, 1869:3,
1907:12, 1907:16,
1908:19, 1923:19
**Courthouse** [1] -
1738:5
**courthouse** [1] -
1769:5
**COURTROOM** [7] -
1742:14, 1743:11,
1759:25, 1767:9,
1771:22, 1784:14,
1837:23
**courtroom** [2] -
1772:15, 1804:9
**Courts** [2] - 1916:18,
1923:11
**cover** [3] - 1749:12,
1749:13, 1783:18
**covert** [6] - 1774:19,
1774:23, 1789:19,
1789:20, 1800:24,
1801:8
**Covert** [1] - 1774:20
**CRAIG** [1] - 1738:19
**creates** [1] - 1929:16
**credibility** [9] -
1806:1, 1807:8,
1807:9, 1811:12,
1816:2, 1816:8,
1816:21, 1853:11
**credit** [7] - 1813:2,
1814:15, 1863:4,
1894:7, 1894:8,
1894:18, 1894:20
**Crime** [4] - 1780:12,
1780:22, 1808:5,
1809:17
**crime** [16] - 1809:11,
1810:23, 1824:19,
1877:19, 1877:21,
1877:25, 1878:2,
1883:9, 1883:11,
1884:1, 1884:3,
1885:10, 1885:18,
1902:25, 1904:12,
1917:24
**crimes** [3] - 1823:20,
1851:1, 1852:21
**criminal** [12] -
1743:21, 1743:22,
1744:20, 1756:19,
1759:3, 1768:3,
1768:15, 1769:4,
1801:24, 1802:3,

1802:9, 1824:3
**CRIMINAL** [1] -
1738:11
**Criminal** [1] - 1744:21
**criminality** [1] -
1802:1
**critical** [1] - 1806:12
**criticize** [1] - 1815:12
**criticizing** [1] - 1908:1
**cross** [16] - 1755:22,
1763:22, 1770:8,
1779:8, 1791:24,
1805:5, 1806:19,
1812:20, 1820:16,
1821:6, 1823:2,
1840:18, 1840:25,
1853:11, 1857:19,
1861:4
**CROSS** [6] - 1756:1,
1770:9, 1823:5,
1932:6, 1932:9,
1932:11
**cross-examination**
[12] - 1755:22,
1763:22, 1770:8,
1806:19, 1812:20,
1820:16, 1823:2,
1840:18, 1840:25,
1853:11, 1857:19,
1861:4
**CROSS-**
**EXAMINATION** [6] -
1756:1, 1770:9,
1823:5, 1932:6,
1932:9, 1932:11
**crossed** [1] - 1831:8
**crowded** [1] - 1777:15
**crude** [1] - 1798:2
**cry** [1] - 1812:5
**culled** [1] - 1762:15
**current** [1] - 1845:23
**cut** [1] - 1873:23
**cutting** [1] - 1881:15

## D

**D.C** [1] - 1738:22
**DA's** [2] - 1826:4,
1826:11
**dailo** [1] - 1915:13
**danger** [2] - 1870:11,
1919:17
**dangerous** [1] -
1870:2
**dark** [1] - 1798:9
**data** [3] - 1762:13,
1763:9, 1782:14
**Database** [1] - 1775:8
**database** [7] - 1775:9,
1775:10, 1782:10,

1782:13, 1784:24,
1785:2, 1812:18
**databases** [3] -
1775:11, 1775:14,
1778:2
**date** [3] - 1750:14,
1762:5, 1806:19
**dated** [2] - 1761:14,
1781:22
**dates** [4] - 1786:15,
1787:15, 1789:12
**David** [3] - 1769:4,
1770:20, 1770:23
**days** [2] - 1786:11,
1789:18
**DDD** [1] - 1787:25
**deal** [4] - 1790:24,
1806:13, 1840:10,
1870:25
**dealing** [1] - 1922:23
**dearth** [1] - 1921:10
**debt** [3] - 1744:15,
1745:14, 1829:25
**decide** [4] - 1870:7,
1871:21, 1897:17,
1931:9
**decided** [4] - 1818:13,
1818:14, 1863:1,
1897:7
**decision** [11] -
1766:12, 1819:9,
1820:5, 1856:13,
1920:14, 1921:7,
1921:11, 1922:11,
1923:6, 1923:13,
1924:5
**decorated** [13] -
1780:20, 1805:16,
1807:5, 1809:7,
1809:15, 1809:20,
1810:7, 1810:13,
1810:23, 1812:21,
1828:14, 1828:18,
1828:23
**DEFENDANT** [11] -
1818:15, 1818:17,
1818:19, 1818:23,
1818:25, 1819:3,
1819:6, 1819:8,
1819:11, 1820:10,
1842:20
**Defendant** [20] -
1739:3, 1739:6,
1739:10, 1749:4,
1751:16, 1752:3,
1752:8, 1754:2,
1754:8, 1759:24,
1762:20, 1836:12,
1839:6, 1839:9,
1844:7, 1917:4,

1917:10, 1923:7,
1927:14, 1932:16
**defendant** [28] -
1745:18, 1784:15,
1805:15, 1862:2,
1880:6, 1880:8,
1885:9, 1885:13,
1886:7, 1887:22,
1890:15, 1892:4,
1892:7, 1893:11,
1899:17, 1899:18,
1899:19, 1900:3,
1900:6, 1900:10,
1902:21, 1903:20,
1905:7, 1906:20,
1913:21, 1913:25,
1920:7, 1931:7
**defendant's** [4] -
1805:20, 1893:21,
1908:14
**Defendant's** [3] -
1751:15, 1840:24,
1853:12
**Defendants** [4] -
1742:2, 1925:3,
1926:20, 1931:19
**defendants** [6] -
1738:10, 1749:3,
1822:22, 1842:12,
1875:6, 1879:4
**defense** [42] -
1741:23, 1743:21,
1749:2, 1751:9,
1756:19, 1768:3,
1768:15, 1769:4,
1783:25, 1806:8,
1817:10, 1818:12,
1819:15, 1820:19,
1831:21, 1846:20,
1849:10, 1849:14,
1849:22, 1860:6,
1860:10, 1861:15,
1868:14, 1874:2,
1875:3, 1878:16,
1880:12, 1888:18,
1893:5, 1894:11,
1896:7, 1896:15,
1896:19, 1906:4,
1907:25, 1911:16,
1913:10, 1919:6,
1927:2, 1929:24,
1930:8, 1930:9
**Defense** [4] - 1743:2,
1767:14, 1772:4,
1781:10
**defense's** [2] -
1906:22, 1911:20
**defined** [1] - 1837:4
**definitely** [2] -
1799:17, 1857:4

**definitions** [1] -
1929:3
**delay** [1] - 1779:2
**delays** [1] - 1780:7
**deleting** [1] - 1917:17
**deliberating** [1] -
1840:2
**demonstrably** [1] -
1901:14
**demonstrate** [1] -
1871:7
**demonstrates** [1] -
1857:6
**demonstratives** [1] -
1851:7
**denied** [1] - 1875:20
**dent** [1] - 1891:2
**department** [4] -
1830:18, 1835:3,
1835:6, 1835:18
**Department** [6] -
1772:25, 1823:12,
1836:22, 1836:25,
1838:25, 1839:1
**DEPARTMENT** [1] -
1738:21
**deposition** [3] -
1740:16, 1740:18,
1741:9
**depriving** [4] -
1902:22, 1902:24,
1904:1, 1904:20
**DEPUTY** [7] - 1742:14,
1743:11, 1759:25,
1767:9, 1771:22,
1784:14, 1837:23
**describe** [3] - 1773:7,
1789:9, 1906:21
**despite** [1] - 1906:12
**detective** [7] - 1773:1,
1780:21, 1809:16,
1823:17, 1823:19,
1825:13, 1835:14
**determining** [2] -
1840:23, 1872:19
**dialects** [2] - 1757:1,
1757:3
**difference** [6] -
1873:7, 1874:21,
1878:6, 1895:15,
1907:11, 1907:14
**different** [21] -
1757:17, 1757:19,
1757:20, 1783:1,
1793:25, 1811:19,
1812:21, 1858:15,
1864:25, 1865:13,
1871:6, 1871:12,
1874:11, 1894:20,
1907:15, 1908:5,

1908:8, 1908:9,
1910:2, 1922:21,
1924:13
**difficult** [1] - 1865:12
**digest** [1] - 1820:17
**DIRECT** [8] - 1743:5,
1746:18, 1767:17,
1772:7, 1932:5,
1932:5, 1932:8,
1932:10
**direct** [22] - 1747:11,
1758:25, 1768:22,
1770:13, 1793:3,
1821:8, 1823:11,
1826:15, 1827:5,
1828:13, 1829:6,
1829:11, 1830:17,
1833:13, 1857:8,
1871:11, 1918:16,
1918:20, 1918:24,
1919:21, 1921:16,
1923:3
**directed** [2] - 1915:3,
1915:22
**directing** [3] - 1744:1,
1776:5, 1786:6
**direction** [1] - 1915:13
**directly** [9] - 1743:14,
1805:18, 1864:23,
1872:2, 1896:14,
1914:5, 1920:19,
1920:21, 1920:22
**disagree** [2] -
1909:13, 1922:10
**discourtesy** [2] -
1811:18, 1828:19
**discoverable** [1] -
1812:13
**discovery** [2] -
1806:10, 1812:10
**discuss** [3] - 1840:21,
1843:4, 1861:17
**discussed** [7] -
1761:9, 1818:9,
1818:11, 1820:6,
1851:2, 1857:2,
1912:19
**discussing** [1] -
1873:17
**discussion** [8] -
1789:15, 1794:7,
1867:25, 1871:1,
1873:14, 1877:9,
1912:18, 1912:24
**Discussion** [1] -
1855:1
**displayed** [1] -
1783:23
**dispute** [1] - 1879:24
**disregard** [2] - 1784:1,

1897:10
**distinct** [1] - 1906:11
**distinction** [1] -
1872:5
**distinctly** [1] -
1808:19
**distribute** [4] - 1847:3,
1847:16, 1847:22,
1848:22
**distributed** [1] -
1847:8
**district** [2] - 1877:24,
1878:3
**DISTRICT** [4] - 1738:1,
1738:1, 1738:12,
1738:16
**District** [6] - 1825:8,
1875:24, 1875:25,
1877:20, 1879:5,
1924:4
**division** [3] - 1772:22,
1773:10, 1867:13
**DIVISION** [1] -
1738:21
**docket** [2] - 1869:7,
1930:14
**document** [24] -
1749:9, 1749:15,
1750:6, 1752:7,
1752:14, 1752:22,
1752:24, 1753:5,
1753:10, 1753:14,
1777:10, 1782:1,
1782:3, 1782:5,
1782:8, 1782:9,
1782:25, 1784:12,
1786:18, 1787:2,
1787:21, 1804:18,
1804:24, 1872:20
**documents** [2] -
1812:13, 1830:6
**Doe** [7] - 1915:8,
1925:22, 1925:24,
1926:11, 1926:24
**done** [12] - 1775:3,
1775:6, 1779:11,
1803:6, 1820:20,
1834:1, 1901:23,
1911:4, 1914:2,
1915:13, 1915:19,
1930:12
**door** [10] - 1805:16,
1815:5, 1887:11,
1892:5, 1892:8,
1895:11, 1896:25,
1899:2, 1900:23
**dot** [3] - 1929:11
**doubt** [21] - 1862:4,
1862:15, 1863:12,
1868:1, 1868:4,

1870:8, 1871:8,
1871:22, 1872:20,
1873:14, 1873:15,
1873:18, 1873:20,
1873:25, 1874:4,
1874:7, 1875:2,
1875:10, 1876:21,
1911:11
**down** [35] - 1745:20,
1760:6, 1771:10,
1804:8, 1804:10,
1833:11, 1854:2,
1870:2, 1878:17,
1879:6, 1887:18,
1887:24, 1888:2,
1888:10, 1888:21,
1889:6, 1889:17,
1889:23, 1890:10,
1890:11, 1890:16,
1891:13, 1893:23,
1893:24, 1895:4,
1895:10, 1898:18,
1898:20, 1898:21,
1899:15, 1899:22,
1900:1, 1900:4,
1900:7, 1904:19
**dozens** [5] - 1803:6,
1833:14, 1833:18,
1833:25
**draft** [1] - 1843:17
**dramatic** [1] - 1859:6
**draw** [1] - 1902:4
**drawn** [1] - 1924:2
**driven** [1] - 1840:9
**driving** [2] - 1789:25,
1790:1
**drop** [1] - 1811:1
**drug** [1] - 1808:21
**DUBIN** [1] - 1739:6
**due** [2] - 1862:25,
1864:6
**duly** [3] - 1743:3,
1767:15, 1772:5
**Dumb** [1] - 1790:11
**dumbass** [1] -
1790:17
**Dump** [1] - 1790:8
**dump** [1] - 1790:16
**duplicative** [1] -
1876:20
**duration** [4] - 1907:21,
1909:16, 1910:12,
1911:18
**During** [1] - 1855:5
**during** [11] - 1742:3,
1785:24, 1787:18,
1820:6, 1823:16,
1827:21, 1850:20,
1855:8, 1857:19,
1888:9, 1910:2

**duties** [1] - 1857:2
**duty** [7] - 1864:3,
1864:7, 1865:2,
1865:18, 1866:1,
1866:3, 1873:12

---

## E

**E-mail** [1] - 1739:16
**e-mail** [60] - 1747:18,
1747:19, 1747:24,
1748:1, 1749:7,
1749:11, 1749:14,
1749:17, 1750:4,
1750:8, 1750:13,
1752:3, 1752:10,
1752:18, 1752:21,
1753:1, 1753:13,
1753:21, 1753:22,
1754:10, 1757:25,
1758:1, 1758:11,
1758:13, 1758:15,
1758:19, 1758:22,
1760:8, 1760:12,
1760:13, 1760:14,
1762:14, 1762:19,
1764:16, 1765:20,
1765:22, 1765:23,
1765:25, 1766:15,
1777:24, 1778:22,
1779:21, 1779:23,
1781:18, 1783:18,
1788:23, 1789:23,
1790:7, 1791:8,
1797:24, 1799:9,
1799:22, 1800:17,
1800:22, 1807:13,
1822:5
**e-mailed** [1] - 1764:4
**e-mails** [3] - 1780:24,
1799:21, 1800:2
**early** [1] - 1839:16
**earn** [1] - 1803:8
**easier** [1] - 1846:12
**easily** [1] - 1870:10
**East** [1] - 1738:16
**Eastern** [4] - 1875:24,
1875:25, 1877:20,
1879:5
**EASTERN** [2] -
1738:1, 1738:16
**eaten** [1] - 1817:16
**ECF** [1] - 1873:2
**edit** [1] - 1885:22
**edits** [1] - 1877:14
**educe** [1] - 1858:3
**effect** [3] - 1810:19,
1866:9, 1919:4
**effectively** [1] - 1812:3
**effectiveness** [3] -

1902:24, 1904:2,
1904:21
**efficient** [1] - 1843:3
**effort** [1] - 1875:22
**efforts** [4] - 1858:17,
1902:24, 1904:2,
1904:20
**EG-3** [3] - 1831:21,
1832:6, 1932:18
**either** [18] - 1775:12,
1785:14, 1790:24,
1791:17, 1809:24,
1854:8, 1856:25,
1859:23, 1869:12,
1869:23, 1880:12,
1890:11, 1895:12,
1911:5, 1918:16,
1918:20, 1918:24,
1920:10
**Either** [1] - 1764:3
**elderly** [2] - 1833:19,
1834:2
**element** [11] -
1876:17, 1876:20,
1913:16, 1913:20,
1913:25, 1914:2,
1916:12, 1917:10,
1917:23, 1927:13
**elements** [2] -
1913:16, 1927:13
**elicit** [3] - 1809:22,
1814:22, 1858:9
**elicited** [2] - 1812:5,
1858:21
**eliminated** [1] -
1876:19
**Elmo** [4] - 1747:20,
1836:10, 1836:14,
1838:19
**elsewhere** [4] -
1851:24, 1873:20,
1877:25, 1883:13
**emphasis** [2] -
1872:5, 1874:21
**emphasize** [1] -
1906:21
**emphasizes** [1] -
1910:24
**employed** [4] -
1743:7, 1743:8,
1767:21, 1772:17
**employee** [1] - 1826:9
**employees** [1] -
1826:12
**employer** [1] -
1763:10
**Employer** [1] -
1763:12
**encompass** [1] -
1921:15

end [15] - 1745:25, 1796:18, 1843:19, 1843:24, 1848:4, 1850:22, 1874:15, 1880:23, 1880:24, 1894:3, 1896:8, 1908:16, 1911:3, 1918:10, 1918:11

ended [3] - 1746:2, 1870:4, 1879:8

ending [2] - 1839:15, 1839:17

ends [3] - 1752:1, 1873:8, 1918:12

enforceability [2] - 1920:18, 1920:24

enforcement [8] - 1756:21, 1775:12, 1779:13, 1789:15, 1845:13, 1845:24, 1902:23, 1904:19

engage [4] - 1761:11, 1774:13, 1844:2, 1844:10

engaged [1] - 1809:10

English [1] - 1756:24

enjoy [1] - 1839:22

enters [2] - 1740:1, 1821:17

entire [6] - 1862:10, 1881:17, 1907:21, 1909:16, 1910:18, 1911:18

entirely [3] - 1859:17, 1909:18, 1911:11

entirety [1] - 1924:20

entity [1] - 1835:7

entry [1] - 1869:8

equal [1] - 1860:7

equally [5] - 1856:3, 1859:12, 1862:1, 1866:17, 1867:8

equivocal [1] - 1892:19

Eric [5] - 1771:17, 1771:25, 1920:7, 1921:16, 1921:19

ERIC [2] - 1772:3, 1932:10

error [2] - 1927:20, 1927:22

especially [4] - 1820:5, 1873:8, 1875:7, 1876:24

ESQ [5] - 1739:4, 1739:5, 1739:8, 1739:8, 1739:11

essence [1] - 1917:23

essentially [5] - 1791:2, 1804:20, 1809:23, 1859:6, 1910:1

establish [6] - 1751:3, 1875:22, 1877:19, 1885:9, 1885:12

established [6] - 1814:6, 1878:1, 1902:1, 1918:16, 1918:20, 1923:3

establishing [1] - 1902:9

estate [1] - 1743:20

et [2] - 1906:13, 1929:11

evasive [1] - 1797:4

evening [1] - 1840:4

evenly [1] - 1903:25

event [1] - 1911:12

events [1] - 1862:10

eventually [1] - 1773:13

everyday [2] - 1896:2, 1900:11

Evidence [3] - 1837:2, 1837:4, 1851:21

evidence [145] - 1740:24, 1741:24, 1742:5, 1742:6, 1754:3, 1777:6, 1777:10, 1778:18, 1779:22, 1786:18, 1786:21, 1788:8, 1788:18, 1788:21, 1789:21, 1796:9, 1798:13, 1803:11, 1806:13, 1806:24, 1807:14, 1808:25, 1810:6, 1810:8, 1810:24, 1811:22, 1811:23, 1812:4, 1813:3, 1813:25, 1814:7, 1814:11, 1815:6, 1815:8, 1819:20, 1820:12, 1827:24, 1837:5, 1837:8, 1838:8, 1839:4, 1839:9, 1840:15, 1848:6, 1850:10, 1850:14, 1852:2, 1855:6, 1857:4, 1857:5, 1858:2, 1858:6, 1858:20, 1859:1, 1859:3, 1859:8, 1862:19, 1862:24, 1863:1, 1863:5, 1863:11, 1863:14, 1863:16, 1863:17, 1863:20, 1863:24, 1864:1, 1864:8,

1864:9, 1864:12, 1864:20, 1865:16, 1865:19, 1866:20, 1866:21, 1868:6, 1868:8, 1869:1, 1869:25, 1870:1, 1870:7, 1870:9, 1870:22, 1871:6, 1871:10, 1871:11, 1871:13, 1871:21, 1871:24, 1873:13, 1873:15, 1873:21, 1874:3, 1874:8, 1874:13, 1874:22, 1874:23, 1875:1, 1875:21, 1876:7, 1886:24, 1887:6, 1887:12, 1887:13, 1887:17, 1890:8, 1891:10, 1894:4, 1894:7, 1894:13, 1895:6, 1895:14, 1897:2, 1897:18, 1897:23, 1898:6, 1898:15, 1899:13, 1899:22, 1899:24, 1900:5, 1900:13, 1900:15, 1900:17, 1901:2, 1901:5, 1901:7, 1901:8, 1901:18, 1901:20, 1901:22, 1902:2, 1914:11, 1914:12, 1914:21, 1915:5, 1915:25

evident [1] - 1902:11

evidentiary [1] - 1895:16

exact [3] - 1853:19, 1891:25, 1923:12

exactly [10] - 1745:15, 1776:9, 1778:16, 1862:17, 1872:2, 1877:2, 1881:14, 1881:15, 1905:18, 1922:15

exam [1] - 1828:13

EXAMINATION [23] - 1743:5, 1746:18, 1756:1, 1763:20, 1765:13, 1767:17, 1770:9, 1772:7, 1776:1, 1777:20, 1795:2, 1823:5, 1834:10, 1932:5, 1932:5, 1932:6, 1932:6, 1932:7, 1932:8, 1932:9, 1932:10, 1932:11, 1932:11

examination [19] - 1747:11, 1755:22, 1758:25, 1763:22, 1770:8, 1806:19, 1809:13, 1812:20, 1820:16, 1822:22, 1823:2, 1826:16, 1826:9, 1830:17, 1840:18, 1840:25, 1853:11, 1857:19, 1861:4

examine [1] - 1821:7

examined [3] - 1743:3, 1767:15, 1772:5

example [18] - 1750:11, 1759:16, 1851:5, 1859:25, 1861:5, 1875:23, 1892:3, 1902:18, 1903:5, 1903:23, 1904:4, 1904:18, 1906:6, 1907:8, 1909:25, 1921:17, 1926:16

examples [4] - 1868:9, 1903:14, 1904:7, 1904:14

Excellent [1] - 1853:5

except [1] - 1881:8

exception [2] - 1892:10, 1892:11

exchange [5] - 1790:2, 1790:13, 1796:8, 1796:11, 1800:10

excited [1] - 1883:2

exclamation [1] - 1781:2

exculpatories [1] - 1890:13

exculpatory [19] - 1856:18, 1856:22, 1857:16, 1858:5, 1858:19, 1858:21, 1859:8, 1859:9, 1888:22, 1888:24, 1890:8, 1892:2, 1892:16, 1892:23, 1893:5, 1893:20, 1893:22, 1898:10, 1902:9

excuse [3] - 1845:1, 1891:15, 1908:19

excused [5] - 1767:2, 1771:14, 1804:9, 1818:3, 1836:2

exhaustive [2] - 1903:6, 1903:15

Exhibit [62] - 1740:13,

1740:14, 1741:6, 1741:14, 1752:3, 1752:8, 1754:3, 1754:7, 1754:8, 1759:24, 1760:2, 1762:8, 1762:10, 1762:20, 1762:23, 1763:7, 1765:21, 1777:6, 1778:18, 1779:22, 1781:10, 1781:11, 1781:13, 1781:15, 1784:16, 1786:19, 1787:25, 1788:7, 1788:14, 1789:22, 1796:9, 1798:14, 1803:11, 1803:12, 1804:17, 1822:1, 1827:11, 1827:25, 1831:21, 1831:22, 1832:6, 1836:13, 1836:15, 1836:16, 1836:20, 1836:23, 1837:7, 1837:22, 1837:25, 1838:1, 1838:4, 1838:7, 1838:13, 1838:16, 1838:21, 1839:4, 1932:14, 1932:15, 1932:16, 1932:17, 1932:18

exhibit [15] - 1748:8, 1749:3, 1751:8, 1751:9, 1751:11, 1752:2, 1761:1, 1778:17, 1788:11, 1788:17, 1804:14, 1805:9, 1821:24, 1838:17, 1872:10

exhibits [3] - 1837:1, 1837:11, 1838:6

Exhibits [4] - 1837:2, 1837:5, 1838:12, 1932:19

exist [4] - 1775:11, 1906:10, 1906:16, 1906:19

exists [4] - 1881:4, 1883:10, 1883:23, 1917:16

exits [2] - 1804:7, 1840:5

expected [2] - 1812:8, 1813:19

expenses [1] - 1803:17

experience [3] - 1760:21, 1772:24, 1805:22

explain [9] - 1774:21, 1798:9, 1864:17,

1865:9, 1865:11, 1901:7, 1901:8, 1922:3
**explaining** [3] - 1807:24, 1813:9, 1873:16
**explanation** [1] - 1908:2
**explanatory** [1] - 1797:7
**explicitly** [1] - 1923:2
**expressed** [3] - 1808:21, 1841:6, 1883:13
**extent** [7] - 1741:7, 1815:7, 1815:16, 1854:4, 1858:24, 1860:18, 1873:10
**extra** [2] - 1781:5, 1846:17
**extremely** [1] - 1861:22
**eyes** [2] - 1835:10, 1835:12
**eyesight** [1] - 1783:8

## F

**FA** [1] - 1926:5
**face** [1] - 1799:10
**facilitate** [1] - 1922:2
**fact** [30] - 1806:18, 1810:5, 1812:1, 1816:23, 1834:14, 1839:16, 1840:9, 1842:12, 1856:10, 1857:23, 1863:5, 1863:21, 1864:12, 1864:13, 1875:1, 1881:8, 1886:23, 1892:7, 1894:4, 1896:24, 1899:25, 1900:7, 1902:1, 1906:14, 1908:21, 1909:3, 1910:23, 1912:8, 1914:21
**fact-specific** [1] - 1816:23
**factor** [1] - 1909:15
**facts** [5] - 1806:15, 1815:18, 1823:22, 1894:21, 1906:23
**fails** [2] - 1883:10, 1883:25
**Fair** [1] - 1927:24
**fair** [12] - 1761:13, 1806:15, 1812:4, 1813:24, 1814:19, 1815:7, 1815:13, 1816:22, 1867:2,

1877:3, 1893:3, 1895:8
**fairer** [1] - 1906:23
**fairly** [3] - 1869:3, 1877:9, 1901:14
**fall** [1] - 1885:23
**fallen** [1] - 1883:16
**false** [15] - 1888:22, 1888:24, 1890:8, 1890:13, 1891:17, 1891:18, 1892:2, 1892:23, 1893:4, 1893:6, 1893:20, 1893:22, 1894:19, 1898:9, 1902:9
**familiar** [2] - 1757:7, 1825:4
**family** [3] - 1754:25, 1915:10, 1929:5
**Fang** [2] - 1925:24, 1926:5
**far** [7] - 1793:13, 1797:23, 1811:7, 1816:17, 1905:25, 1911:2, 1915:17
**FARA** [3] - 1920:16, 1920:17, 1922:21
**father** [1] - 1798:21
**fault** [2] - 1879:18, 1914:6
**favor** [1] - 1857:25
**Federal** [2] - 1837:2, 1837:4
**fee** [2] - 1754:10, 1761:9
**Feng** [2] - 1920:2, 1921:23
**FENG** [1] - 1926:6
**Ferry** [1] - 1800:6
**few** [8] - 1774:17, 1786:21, 1788:15, 1834:12, 1849:10, 1850:25, 1885:2, 1895:10
**Fida** [1] - 1747:20
**Fifth** [1] - 1856:11
**fifth** [3] - 1846:14, 1907:19, 1912:20
**figure** [2] - 1817:25, 1882:8
**figured** [1] - 1824:19
**filed** [2] - 1849:10, 1875:19
**filing** [3] - 1872:16, 1873:2, 1906:7
**filings** [1] - 1840:11
**film** [1] - 1889:4
**final** [1] - 1839:23
**finally** [1] - 1875:4
**findings** [13] -

1805:25, 1811:11, 1811:16, 1811:17, 1814:11, 1815:23, 1816:1, 1816:13, 1816:19, 1816:25, 1817:11, 1828:24
**fine** [25] - 1749:20, 1749:22, 1814:16, 1815:13, 1847:17, 1848:20, 1850:5, 1852:17, 1854:12, 1854:13, 1854:21, 1854:23, 1860:5, 1860:8, 1863:25, 1864:17, 1866:10, 1878:13, 1880:8, 1880:18, 1886:11, 1905:24, 1912:3, 1915:10, 1931:8
**finish** [4] - 1864:17, 1865:22, 1887:15, 1900:8
**Finning** [8] - 1856:21, 1857:1, 1857:15, 1857:22, 1858:2, 1858:9, 1859:19
**Finning's** [1] - 1857:21
**firm** [4] - 1757:15, 1772:19, 1773:5
**first** [45] - 1743:3, 1749:7, 1754:9, 1761:18, 1762:22, 1767:15, 1768:1, 1772:5, 1772:13, 1773:2, 1773:18, 1778:1, 1780:10, 1790:18, 1831:23, 1836:12, 1843:7, 1843:10, 1843:12, 1845:22, 1847:2, 1848:11, 1848:15, 1848:21, 1849:9, 1850:9, 1850:11, 1850:13, 1855:4, 1869:19, 1881:16, 1881:19, 1886:3, 1898:16, 1899:14, 1907:4, 1912:20, 1912:23, 1913:4, 1916:12, 1916:16, 1917:23, 1921:20, 1922:20, 1930:24
**First** [1] - 1773:9
**five** [3] - 1811:16, 1815:25, 1817:18
**flip** [2] - 1782:25, 1885:7
**floor** [1] - 1836:6
**Flushing** [4] -

1739:11, 1876:1, 1876:5
**focus** [10] - 1862:18, 1864:4, 1866:20, 1866:21, 1867:6, 1871:13, 1871:14, 1875:7, 1906:21
**focused** [1] - 1872:7
**focusing** [3] - 1865:2, 1871:23, 1898:5
**folks** [6] - 1804:12, 1817:16, 1817:25, 1840:6, 1876:6, 1914:5
**follow** [6] - 1810:11, 1824:8, 1824:16, 1851:9, 1873:5, 1881:9
**follow-up** [1] - 1824:8
**followed** [4] - 1797:4, 1797:7, 1810:24, 1871:19
**following** [10] - 1740:11, 1748:14, 1749:1, 1751:18, 1775:16, 1779:23, 1786:7, 1848:5, 1855:15, 1919:23
**follows** [4] - 1743:4, 1767:16, 1772:6, 1884:1
**Fong** [1] - 1899:21
**FOR** [1] - 1738:11
**forced** [1] - 1873:6
**foreign** [12] - 1749:8, 1834:2, 1844:9, 1844:10, 1914:1, 1914:12, 1918:3, 1918:17, 1918:25, 1920:11, 1927:15, 1928:2
**foreseeable** [1] - 1879:4
**forget** [1] - 1923:11
**form** [10] - 1783:22, 1794:2, 1802:12, 1806:25, 1848:4, 1848:7, 1848:19, 1848:23, 1906:9, 1914:22
**formally** [3] - 1740:7, 1740:13, 1842:8
**former** [2] - 1814:16, 1845:23
**forms** [1] - 1817:15
**formulated** [1] - 1926:1
**formulation** [4] - 1866:16, 1868:15, 1872:6, 1874:16

**forth** [6] - 1863:14, 1866:13, 1871:7, 1873:13, 1873:21, 1885:7
**forward** [6] - 1766:16, 1858:4, 1863:20, 1869:9, 1869:15, 1915:24
**forwarded** [1] - 1765:23
**foul** [1] - 1812:5
**Four** [4] - 1925:15, 1927:5, 1927:10, 1931:15
**four** [3] - 1781:1, 1828:24, 1868:11
**fourth** [6] - 1868:4, 1909:6, 1913:16, 1913:20, 1914:1, 1916:11
**Fourth** [3] - 1917:4, 1923:2, 1924:5
**Fox** [1] - 1779:17
**framework** [1] - 1814:19
**Frank** [1] - 1827:11
**free** [3] - 1766:25, 1836:1, 1875:3
**freestanding** [1] - 1847:21
**frequently** [1] - 1825:14
**friend** [3] - 1744:17, 1766:6, 1789:25
**friendly** [1] - 1773:18
**front** [9] - 1783:24, 1799:10, 1834:15, 1869:16, 1896:25, 1899:2, 1910:4, 1910:5, 1918:21
**full** [4] - 1750:4, 1750:18, 1863:3, 1903:2
**fully** [2] - 1865:10, 1878:14
**funny** [4] - 1868:13, 1872:15, 1878:12, 1930:23
**furtherance** [3] - 1877:21, 1878:2, 1901:23

## G

**gain** [1] - 1775:13
**Gallowitz** [21] - 1771:17, 1771:25, 1772:9, 1775:10, 1778:1, 1779:3, 1780:8, 1781:18,

1786:25, 1795:5,
1803:8, 1805:14,
1807:15, 1814:8,
1822:4, 1823:7,
1823:11, 1829:2,
1831:23, 1833:13,
1834:12
**GALLOWITZ** [2] -
1772:3, 1932:10
**Gallowitz's** [3] -
1822:12, 1854:5,
1854:19
**game** [5] - 1806:15,
1814:19, 1815:13,
1835:15, 1835:18
**gangster** [1] - 1915:14
**Garaufis'** [1] - 1872:17
**Gateway** [1] - 1739:3
**gather** [2] - 1788:19,
1823:22
**General** [1] - 1925:4
**general** [4] - 1776:16,
1790:19, 1790:20,
1824:16
**generally** [1] - 1883:6
**GENNA** [1] - 1739:4
**gentlemen** [2] -
1823:9, 1839:15
**German** [2] - 1923:17,
1923:18
**gibberish** [1] -
1855:12
**GIBBONS** [1] - 1739:3
**given** [22] - 1740:18,
1745:9, 1762:24,
1762:25, 1780:9,
1780:14, 1841:20,
1847:21, 1850:20,
1851:4, 1866:14,
1869:20, 1870:24,
1872:22, 1875:7,
1894:4, 1898:11,
1906:23, 1907:5,
1915:6, 1924:10,
1930:21
**glad** [1] - 1865:21
**glasses** [1] - 1783:9
**goal** [1] - 1908:13
**Goldberger** [14] -
1755:20, 1770:5,
1821:7, 1822:23,
1849:17, 1867:16,
1882:14, 1901:8,
1903:9, 1904:23,
1905:5, 1915:20,
1916:14, 1925:8
**GOLDBERGER** [67] -
1739:6, 1739:8,
1754:6, 1755:21,
1770:6, 1821:2,

1821:9, 1822:24,
1832:8, 1839:11,
1842:16, 1844:19,
1845:19, 1846:2,
1849:18, 1860:12,
1861:17, 1861:20,
1861:25, 1862:13,
1862:25, 1864:5,
1865:5, 1865:21,
1865:23, 1866:10,
1876:4, 1878:20,
1879:11, 1882:16,
1884:6, 1887:8,
1887:14, 1887:19,
1887:22, 1888:5,
1888:8, 1888:14,
1889:3, 1891:3,
1891:15, 1892:20,
1893:16, 1894:2,
1894:22, 1896:22,
1897:4, 1897:6,
1897:13, 1898:15,
1898:24, 1900:8,
1903:11, 1903:17,
1904:25, 1905:6,
1914:8, 1914:10,
1914:18, 1915:11,
1915:16, 1925:9,
1927:7, 1928:6,
1929:20, 1930:2,
1930:9
**Goldberger's** [2] -
1851:6, 1868:11
**Gonzalez** [1] -
1751:11
**got'em** [2] - 1796:19,
1796:22
**government** [57] -
1755:9, 1755:13,
1755:16, 1767:23,
1767:25, 1788:3,
1793:6, 1793:19,
1801:21, 1804:19,
1804:23, 1806:4,
1807:13, 1808:1,
1808:2, 1808:25,
1810:8, 1811:5,
1811:8, 1811:21,
1811:24, 1812:10,
1812:19, 1812:25,
1813:2, 1813:10,
1813:24, 1815:6,
1815:16, 1815:17,
1815:19, 1817:5,
1820:15, 1820:23,
1823:3, 1826:9,
1826:12, 1831:20,
1832:5, 1835:7,
1844:9, 1844:10,
1914:1, 1914:12,
1916:3, 1917:5,

1918:3, 1918:17,
1918:25, 1919:15,
1919:19, 1920:3,
1920:4, 1920:11,
1920:25, 1921:2,
1921:18
**Government** [155] -
1738:15, 1740:2,
1740:13, 1740:14,
1740:15, 1741:6,
1741:14, 1741:16,
1745:22, 1749:24,
1750:24, 1751:9,
1755:22, 1762:8,
1763:12, 1765:23,
1765:24, 1770:8,
1777:6, 1779:22,
1781:11, 1786:19,
1788:1, 1788:6,
1788:13, 1789:21,
1793:14, 1796:3,
1796:9, 1798:14,
1836:20, 1836:23,
1837:2, 1837:5,
1837:21, 1838:3,
1838:7, 1838:12,
1838:16, 1840:12,
1840:19, 1843:10,
1844:21, 1846:22,
1847:4, 1847:22,
1848:22, 1850:2,
1850:7, 1851:15,
1853:14, 1856:11,
1856:14, 1856:18,
1856:20, 1857:6,
1858:25, 1859:2,
1860:15, 1862:3,
1862:13, 1862:23,
1863:14, 1863:18,
1863:19, 1864:3,
1864:18, 1864:19,
1864:21, 1864:24,
1864:25, 1865:8,
1865:14, 1865:17,
1865:18, 1866:2,
1866:11, 1866:13,
1867:4, 1867:5,
1868:19, 1869:16,
1869:18, 1870:8,
1870:19, 1871:7,
1871:10, 1871:18,
1872:3, 1873:21,
1874:25, 1876:22,
1877:20, 1878:22,
1880:2, 1880:25,
1882:24, 1888:5,
1888:18, 1888:19,
1889:15, 1889:20,
1890:7, 1890:19,
1891:4, 1891:20,
1892:21, 1892:24,

1893:4, 1893:14,
1893:19, 1894:5,
1894:23, 1895:20,
1895:23, 1895:25,
1896:23, 1897:8,
1897:11, 1898:4,
1898:9, 1899:3,
1902:17, 1904:11,
1905:3, 1905:11,
1905:25, 1906:7,
1907:1, 1911:8,
1911:19, 1913:19,
1914:21, 1914:23,
1915:6, 1915:8,
1915:16, 1915:17,
1916:9, 1917:7,
1919:2, 1919:13,
1920:10, 1921:6,
1921:14, 1923:9,
1923:18, 1924:2,
1927:11, 1930:6,
1931:1, 1932:14,
1932:15, 1932:19
**Government's** [29] -
1740:10, 1827:11,
1827:25, 1831:20,
1831:22, 1832:6,
1848:24, 1852:9,
1853:9, 1864:7,
1866:23, 1872:10,
1872:21, 1875:15,
1886:20, 1886:23,
1891:16, 1893:1,
1897:22, 1898:1,
1900:25, 1901:22,
1902:8, 1917:2,
1920:1, 1921:12,
1927:20, 1931:5,
1932:18
**government's** [1] -
1821:6
**grafted** [1] - 1920:15
**grappling** [1] -
1898:10
**Great** [1] - 1796:17
**great** [3] - 1815:12,
1840:3, 1871:25
**Group** [3] - 1773:6,
1826:19, 1826:22
**guess** [12] - 1785:2,
1824:14, 1836:10,
1863:24, 1872:25,
1873:19, 1875:4,
1875:13, 1890:11,
1896:4, 1898:3,
1909:17
**guessing** [1] -
1874:18
**guidance** [1] -
1924:15

**guilt** [6] - 1840:24,
1862:3, 1874:4,
1890:9, 1891:8,
1896:2
**guilty** [10] - 1891:11,
1892:8, 1893:12,
1894:19, 1896:18,
1906:20, 1930:21,
1931:3, 1931:4
**gun** [10] - 1779:24,
1780:3, 1780:8,
1780:13, 1780:16,
1780:18, 1781:7,
1801:13, 1830:22,
1830:24
**guns** [2] - 1807:16,
1831:6
**guy** [2] - 1798:2,
1920:6
**guys** [1] - 1928:14

## H

**Habeeb** [1] - 1857:20
**half** [1] - 1831:23
**halfway** [1] - 1833:19
**hand** [3] - 1762:14,
1889:7, 1906:18
**Hand** [1] - 1923:13
**handle** [3] - 1755:1,
1826:6, 1836:5
**Hang** [1] - 1854:25
**hang** [6] - 1860:12,
1815:1, 1860:1,
1865:9, 1893:22,
1894:3
**happy** [6] - 1797:11,
1805:4, 1866:15,
1869:9, 1876:15,
1922:16
**harass** [3] - 1927:16,
1927:18, 1928:9
**harassing** [1] - 1803:3
**hard** [1] - 1754:18
**hardly** [1] - 1907:8
**head** [2] - 1768:12,
1805:8
**hear** [9] - 1743:16,
1746:5, 1810:4,
1839:20, 1850:2,
1886:25, 1907:1,
1916:13, 1921:25
**heard** [16] - 1765:19,
1773:11, 1779:15,
1779:17, 1808:19,
1847:13, 1852:4,
1856:20, 1858:7,
1865:16, 1875:21,
1888:2, 1900:19,
1915:3, 1926:9

hearing [4] - 1863:23, 1864:1, 1866:7, 1866:15
hearings [1] - 1816:11
hearsay [9] - 1889:1, 1890:14, 1890:18, 1891:7, 1892:10, 1892:15, 1894:15, 1896:12
heart [1] - 1885:3
HEEREN [169] - 1738:19, 1740:4, 1740:7, 1740:22, 1741:3, 1741:5, 1741:10, 1741:12, 1741:16, 1788:11, 1788:20, 1791:3, 1796:5, 1800:1, 1801:15, 1802:11, 1804:25, 1805:11, 1805:14, 1807:4, 1807:8, 1809:2, 1809:10, 1811:15, 1812:12, 1812:15, 1816:8, 1816:13, 1816:16, 1817:1, 1817:14, 1820:24, 1823:4, 1823:6, 1823:9, 1825:20, 1825:23, 1827:12, 1828:1, 1831:19, 1832:5, 1833:1, 1833:2, 1833:11, 1834:5, 1835:24, 1843:12, 1843:15, 1843:20, 1843:22, 1844:4, 1844:13, 1844:23, 1845:12, 1845:22, 1846:5, 1846:8, 1846:11, 1846:14, 1846:19, 1846:23, 1847:9, 1847:12, 1847:17, 1847:24, 1848:2, 1848:11, 1848:20, 1849:6, 1849:25, 1850:8, 1851:4, 1851:13, 1851:17, 1852:24, 1853:4, 1853:6, 1854:10, 1856:2, 1860:17, 1860:22, 1861:3, 1866:19, 1867:2, 1867:10, 1867:19, 1868:20, 1869:2, 1869:17, 1873:10, 1874:5, 1874:10, 1875:12, 1876:2, 1877:6, 1877:13, 1877:16, 1878:7,

1878:25, 1879:16, 1879:20, 1880:2, 1880:5, 1880:18, 1880:20, 1881:7, 1881:11, 1881:17, 1881:21, 1882:19, 1882:25, 1883:6, 1883:15, 1883:24, 1885:2, 1885:4, 1885:7, 1885:14, 1885:17, 1885:21, 1886:2, 1886:11, 1886:19, 1888:23, 1894:16, 1896:11, 1904:6, 1905:4, 1905:13, 1905:16, 1907:3, 1909:20, 1911:21, 1912:7, 1912:11, 1912:14, 1913:2, 1913:8, 1913:13, 1913:15, 1913:18, 1914:6, 1918:8, 1918:10, 1918:15, 1921:23, 1922:12, 1922:16, 1922:20, 1922:23, 1924:19, 1925:16, 1925:23, 1926:2, 1926:4, 1926:9, 1926:17, 1927:1, 1927:12, 1927:24, 1928:12, 1928:23, 1929:1, 1929:16, 1930:6, 1931:2, 1931:5, 1931:12, 1932:11
Heeren [12] - 1741:18, 1811:14, 1817:11, 1834:6, 1834:12, 1845:11, 1870:9, 1874:20, 1878:24, 1884:9, 1896:5, 1928:19
Heeren's [2] - 1853:23, 1882:11
Heime [1] - 1923:13
held [4] - 1793:1, 1823:17, 1910:6, 1923:2
help [1] - 1766:7
helpful [6] - 1793:12, 1852:23, 1869:5, 1881:22, 1922:10, 1924:14
hereby [2] - 1836:18, 1838:22
hero [21] - 1780:9, 1780:14, 1780:19, 1807:14, 1807:15, 1807:17, 1808:5,

1808:10, 1808:15, 1809:1, 1809:19, 1810:16, 1810:23, 1812:21, 1813:12, 1813:18, 1814:18, 1814:24, 1816:20, 1828:18, 1828:22
heroic [9] - 1780:22, 1805:15, 1807:4, 1809:11, 1809:17, 1809:21, 1810:14, 1828:14
hesitation [1] - 1854:14
high [1] - 1875:13
highlight [2] - 1805:19, 1816:14
highly [11] - 1780:20, 1805:16, 1807:4, 1809:7, 1809:15, 1810:7, 1810:13, 1810:22, 1828:14, 1828:18, 1828:23
Hills [4] - 1769:10, 1769:12, 1785:6, 1833:3
himself [12] - 1771:1, 1808:4, 1858:10, 1886:5, 1886:14, 1887:9, 1889:4, 1894:25, 1896:25, 1898:16, 1899:1, 1900:22
hired [4] - 1770:14, 1776:22, 1790:23, 1826:21
history [2] - 1921:4, 1923:24
hmm [1] - 1796:24
Hold [2] - 1854:6, 1854:8
hold [2] - 1765:5, 1783:7
home [8] - 1797:14, 1818:1, 1887:10, 1899:1, 1900:6, 1900:10, 1900:13, 1900:17
honest [2] - 1874:2, 1887:1
honestly [3] - 1811:3, 1910:16, 1922:9
Honor [165] - 1740:5, 1741:3, 1741:5, 1741:12, 1741:16, 1741:20, 1742:19, 1746:14, 1747:14, 1749:11, 1750:3, 1750:17, 1752:6, 1754:2, 1755:21,

1755:23, 1763:1, 1763:16, 1766:23, 1770:3, 1770:6, 1770:7, 1771:9, 1772:2, 1777:11, 1781:14, 1786:20, 1791:3, 1792:2, 1793:7, 1796:5, 1800:1, 1802:11, 1805:1, 1805:11, 1806:2, 1807:5, 1808:7, 1809:2, 1809:24, 1811:15, 1812:15, 1814:1, 1816:8, 1817:1, 1817:3, 1820:13, 1820:24, 1821:2, 1821:3, 1821:10, 1822:24, 1823:1, 1823:4, 1825:16, 1825:20, 1825:23, 1832:5, 1834:5, 1835:24, 1838:14, 1839:5, 1839:6, 1841:11, 1842:6, 1844:5, 1844:18, 1844:19, 1844:20, 1844:23, 1845:12, 1845:17, 1845:19, 1846:2, 1846:8, 1848:12, 1848:20, 1849:2, 1849:16, 1849:18, 1849:25, 1850:8, 1851:4, 1852:6, 1852:24, 1853:25, 1854:10, 1854:13, 1857:11, 1860:17, 1860:22, 1860:23, 1864:5, 1864:14, 1867:10, 1867:19, 1868:2, 1868:7, 1868:20, 1869:2, 1869:18, 1873:10, 1874:5, 1875:12, 1876:16, 1878:18, 1878:19, 1879:10, 1879:11, 1879:12, 1879:16, 1879:21, 1880:18, 1884:6, 1884:7, 1885:15, 1888:23, 1891:5, 1891:24, 1893:9, 1894:16, 1898:18, 1899:12, 1900:8, 1902:16, 1903:12, 1904:6, 1904:25, 1905:4, 1905:6, 1905:8, 1905:9, 1905:17, 1907:3, 1911:4, 1912:14, 1913:2,

1913:3, 1913:11, 1914:8, 1916:16, 1917:1, 1918:8, 1919:12, 1921:23, 1922:12, 1923:23, 1925:9, 1925:10, 1925:16, 1927:6, 1927:7, 1927:8, 1927:12, 1928:5, 1928:6, 1928:7, 1928:12, 1929:19, 1929:20, 1929:21, 1930:2, 1930:7, 1930:10, 1931:2
Honor's [2] - 1861:25, 1903:1
HONORABLE [1] - 1738:12
hook [1] - 1773:17
hooked [2] - 1773:14, 1773:16
hope [1] - 1879:13
hopefully [1] - 1823:20
Hopefully [1] - 1839:21
hoping [1] - 1798:21
hotel [1] - 1847:10
hour [2] - 1797:5, 1818:3
hourly [1] - 1769:24
house [18] - 1799:11, 1892:18, 1894:9, 1894:24, 1894:25, 1895:2, 1895:3, 1895:4, 1895:22, 1895:23, 1896:24, 1898:8, 1898:19, 1899:14, 1900:23, 1901:11, 1901:19, 1902:11
household [1] - 1929:12
housekeeping [1] - 1740:4
hub [1] - 1909:24, 1910:7, 1911:9
hub-and-spoke [2] - 1909:24, 1910:7
Hui [4] - 1762:25, 1765:16, 1765:25, 1766:2
humor [1] - 1798:9
Hunanese [1] - 1757:2
Hunt [1] - 1779:17

## I

idea [8] - 1745:12, 1769:18, 1825:17,

1831:16, 1837:16, 1880:13, 1910:20, 1911:24
**identical** [12] - 1880:23, 1882:7, 1908:18, 1908:23, 1909:18, 1911:22, 1911:23, 1911:24, 1911:25, 1912:1, 1912:22, 1923:15
**identification** [3] - 1781:16, 1787:25, 1932:17
**identified** [2] - 1837:1, 1892:1
**identify** [1] - 1741:5
**ii** [1] - 1845:8
**II** [1] - 1910:2
**iii** [1] - 1845:9
**illuminating** [1] - 1904:17
**imagine** [1] - 1927:3
**immediately** [2] - 1852:25, 1885:14
**Immigrants** [1] - 1756:20
**immigration** [3] - 1743:19, 1743:20, 1756:16
**immunized** [1] - 1856:12
**immutable** [1] - 1813:3
**impact** [1] - 1920:18
**impeach** [1] - 1813:25
**imperfect** [1] - 1903:15
**implicates** [1] - 1858:16
**implication** [1] - 1893:8
**implies** [2] - 1869:24, 1911:24
**imply** [2] - 1906:15, 1912:12
**import** [1] - 1873:18
**important** [11] - 1750:7, 1750:11, 1852:1, 1861:22, 1863:2, 1863:8, 1865:6, 1865:7, 1904:14, 1909:8, 1913:8
**importantly** [1] - 1851:11
**impossible** [1] - 1888:20
**impression** [3] - 1745:15, 1745:16, 1759:6

**impressive** [1] - 1885:20
**impromptu** [1] - 1915:21
**improper** [5] - 1865:13, 1866:1, 1866:7, 1867:15, 1898:14
**inaccurate** [1] - 1908:16
**inadmissible** [2] - 1891:12, 1894:14
**inappropriate** [1] - 1798:3
**incident** [2] - 1790:15, 1811:20
**incidents** [2] - 1806:16, 1811:25
**inclination** [1] - 1911:15
**inclined** [1] - 1917:21
**include** [13] - 1840:20, 1843:24, 1856:8, 1857:9, 1873:24, 1902:13, 1904:17, 1911:10, 1912:21, 1919:7, 1922:2, 1922:6, 1926:10
**included** [9] - 1859:13, 1868:14, 1868:22, 1887:1, 1887:5, 1890:5, 1902:17, 1909:13, 1919:3
**includes** [4] - 1857:7, 1920:6, 1929:7, 1929:22
**including** [8] - 1755:3, 1806:14, 1818:22, 1868:18, 1870:4, 1874:2, 1903:7, 1924:12
**inconsistent** [1] - 1904:21
**incorporates** [1] - 1924:4
**incorrect** [4] - 1804:15, 1804:24, 1870:5, 1893:2
**incorrectly** [1] - 1843:16
**inculpatory** [1] - 1856:23
**independent** [4] - 1782:22, 1782:24, 1800:19, 1909:10
**independently** [1] - 1799:4
**indicated** [2] - 1827:5, 1859:14

**indicates** [2] - 1842:23, 1888:10
**indicating** [1] - 1887:17
**indication** [4] - 1801:19, 1801:23, 1856:16, 1891:11
**indicative** [1] - 1893:12
**indictment** [7] - 1852:21, 1906:19, 1907:22, 1926:14, 1926:18, 1926:21, 1927:4
**indirect** [5] - 1918:17, 1918:25, 1921:17, 1922:25, 1924:6
**indirectly** [2] - 1923:9, 1923:17
**individual** [7] - 1760:18, 1762:25, 1802:15, 1802:17, 1861:5, 1886:6, 1899:24
**individuals** [3] - 1830:6, 1861:13, 1910:3
**inexplicably** [1] - 1901:20
**inference** [1] - 1859:7
**inferential** [1] - 1880:22
**inferring** [1] - 1856:10
**inform** [1] - 1785:15
**information** [14] - 1747:3, 1759:12, 1759:14, 1765:1, 1769:14, 1770:21, 1770:24, 1813:4, 1820:17, 1840:15, 1840:24, 1841:20, 1857:25, 1923:9
**informed** [1] - 1776:21
**informs** [1] - 1795:7
**initial** [1] - 1887:4
**initiator** [1] - 1861:23
**injured** [1] - 1773:11
**innocence** [2] - 1840:24, 1930:22
**inquire** [5] - 1742:18, 1772:1, 1815:16, 1815:17, 1818:5
**inquiry** [2] - 1784:4, 1805:17
**insert** [4] - 1877:12, 1912:17, 1918:11, 1929:14
**inserted** [1] - 1928:17
**insight** [1] - 1769:21
**instance** [1] - 1861:20

**instances** [2] - 1811:6, 1834:1
**instead** [5] - 1908:17, 1908:21, 1908:22, 1911:23, 1926:24
**instituted** [2] - 1862:10, 1864:13
**instituting** [1] - 1863:4
**instruct** [9] - 1742:3, 1840:1, 1851:23, 1861:12, 1862:21, 1867:4, 1876:14, 1911:13, 1913:6
**instructed** [5] - 1851:2, 1855:8, 1867:5, 1913:25
**instruction** [64] - 1807:24, 1812:2, 1840:22, 1841:8, 1841:14, 1850:25, 1851:1, 1853:7, 1854:2, 1857:9, 1859:5, 1859:11, 1859:13, 1859:17, 1859:24, 1860:3, 1862:18, 1866:4, 1868:1, 1868:25, 1869:11, 1869:20, 1870:23, 1871:17, 1871:19, 1872:9, 1872:14, 1872:25, 1873:6, 1875:13, 1875:16, 1878:23, 1879:9, 1886:20, 1886:21, 1886:25, 1901:6, 1901:9, 1902:13, 1902:16, 1903:1, 1903:2, 1904:14, 1905:2, 1905:20, 1905:24, 1906:23, 1907:5, 1907:16, 1907:18, 1909:3, 1909:6, 1910:22, 1911:1, 1911:20, 1912:16, 1913:6, 1916:9, 1924:1, 1924:17, 1925:17, 1926:15
**instructions** [27] - 1843:9, 1849:8, 1849:22, 1850:20, 1851:5, 1851:9, 1851:24, 1853:2, 1868:2, 1868:7, 1868:9, 1870:25, 1872:10, 1872:22, 1876:14, 1882:22, 1901:4, 1907:7, 1907:12, 1909:2, 1910:19, 1914:17,

1914:18, 1927:21, 1930:5, 1930:14
**instructive** [1] - 1904:17
**insufficient** [8] - 1863:11, 1863:14, 1864:20, 1871:7, 1871:12, 1874:3, 1874:13
**intend** [6] - 1805:23, 1809:22, 1813:14, 1814:22, 1840:20, 1859:19
**intended** [3] - 1770:23, 1813:23, 1921:5
**intending** [2] - 1813:7, 1893:20
**intends** [3] - 1818:6, 1859:17, 1879:24
**intent** [12] - 1852:3, 1857:3, 1857:7, 1859:3, 1859:4, 1871:8, 1871:9, 1881:13, 1882:20, 1927:16, 1927:18, 1928:10
**intentional** [1] - 1881:1
**intentionally** [9] - 1880:3, 1880:7, 1880:9, 1880:17, 1880:21, 1881:2, 1881:12, 1882:3, 1882:9
**interacted** [1] - 1899:25
**interactions** [1] - 1835:13
**interesting** [5] - 1863:25, 1872:17, 1886:9, 1890:6, 1909:1
**interestingly** [1] - 1858:7
**interfering** [1] - 1790:24
**interject** [1] - 1846:21
**intermediaries** [4] - 1918:18, 1919:1, 1919:16, 1920:25
**intermediary** [5] - 1918:18, 1918:25, 1919:5, 1920:3, 1923:4
**internal** [2] - 1835:4, 1835:9
**internet** [1] - 1801:25
**Interpol** [7] - 1776:22, 1777:25, 1779:6,

1779:23, 1791:20, 1795:11, 1802:4
**INTERPOL** [2] - 1822:6, 1822:17
**interpret** [3] - 1807:17, 1915:21, 1916:7
**interpretation** [3] - 1848:24, 1923:25, 1924:7
**interpreted** [1] - 1923:14
**interpreters** [1] - 1846:15
**interpreting** [1] - 1799:2
**interstate** [9] - 1843:25, 1844:2, 1844:11, 1876:17, 1876:25, 1927:15, 1928:2
**interview** [3] - 1824:5, 1896:17, 1896:18
**interviews** [1] - 1774:16
**intimating** [1] - 1915:4
**intimidate** [3] - 1927:16, 1927:19, 1928:9
**introduce** [2] - 1836:3, 1839:9
**introduced** [5] - 1768:15, 1808:1, 1812:3, 1857:6, 1862:6
**introductory** [1] - 1909:4
**invert** [2] - 1931:3, 1931:18
**inverting** [1] - 1930:25
**investigate** [2] - 1823:19, 1823:22
**investigating** [1] - 1858:13
**investigation** [6] - 1776:8, 1776:15, 1776:19, 1779:12, 1824:3, 1858:10
**investigations** [1] - 1779:11
**investigative** [2] - 1772:19, 1773:5
**Investigative** [3] - 1773:6, 1826:18, 1826:22
**investigator** [26] - 1744:9, 1744:10, 1744:13, 1744:19, 1744:24, 1745:9, 1753:18, 1753:19, 1755:2, 1760:20,

1763:24, 1764:2, 1764:6, 1768:16, 1768:17, 1769:1, 1769:9, 1769:12, 1769:23, 1770:22, 1773:3, 1773:14, 1774:2, 1774:12, 1775:5, 1775:12
**investigators** [3] - 1773:22, 1774:3, 1778:5
**invoice** [4] - 1787:5, 1803:16, 1826:17, 1826:18
**invoices** [1] - 1826:16
**invoked** [1] - 1856:11
**involve** [1] - 1805:24
**involved** [7] - 1745:22, 1761:15, 1776:11, 1802:1, 1824:25, 1833:18, 1866:3
**involvement** [2] - 1771:3, 1797:18
**involving** [2] - 1755:1, 1910:1
**IRISA** [1] - 1738:18
**irrelevant** [2] - 1861:12, 1898:3
**is..** [1] - 1846:19
**issue** [23] - 1793:2, 1794:2, 1806:12, 1816:22, 1840:14, 1850:7, 1856:25, 1858:23, 1865:7, 1866:19, 1873:17, 1879:24, 1910:16, 1917:1, 1917:15, 1917:19, 1919:8, 1921:9, 1921:11, 1922:11, 1923:13, 1924:2, 1924:15
**issues** [6] - 1805:21, 1806:20, 1843:4, 1867:13, 1881:12, 1930:16
**item** [3] - 1849:9, 1856:2, 1875:12
**items** [1] - 1855:6
**itself** [5] - 1883:9, 1884:2, 1892:18, 1893:13, 1915:5
**iv** [1] - 1845:9

## J

**jacket** [1] - 1828:3
**Jane** [5] - 1925:22, 1925:24, 1926:11, 1926:24
**Jason** [2] - 1738:9,

1744:3
**Jersey** [16] - 1739:4, 1744:12, 1744:14, 1744:23, 1745:9, 1768:2, 1768:7, 1769:1, 1769:7, 1769:10, 1769:12, 1776:12, 1785:6, 1797:25, 1829:8, 1897:7
**Jin** [1] - 1925:24
**job** [2] - 1823:19, 1873:16
**John** [4] - 1915:8, 1925:22, 1925:24, 1926:24
**Johnny** [2] - 1921:21, 1921:22
**joining** [1] - 1906:9
**joke** [20] - 1780:15, 1780:16, 1780:17, 1780:18, 1781:4, 1781:6, 1798:2, 1798:4, 1798:6, 1798:8, 1808:3, 1809:19, 1810:21, 1829:3, 1829:11, 1829:19, 1829:22, 1829:25, 1830:11, 1830:15
**joked** [1] - 1830:13
**jokes** [1] - 1829:15
**joking** [1] - 1809:5
**Judge** [19] - 1822:20, 1835:20, 1861:17, 1865:5, 1872:17, 1887:14, 1889:3, 1891:3, 1891:15, 1894:22, 1897:14, 1898:15, 1898:24, 1903:17, 1907:6, 1920:13, 1921:6, 1921:11, 1923:13
**judge** [7] - 1807:12, 1808:20, 1835:16, 1862:25, 1872:8, 1894:2, 1896:22
**JUDGE** [1] - 1738:12
**July** [1] - 1869:7
**jumbled** [1] - 1877:17
**June** [2] - 1738:7, 1931:24
**jurors** [1] - 1876:15
**jury** [62] - 1740:1, 1741:23, 1754:1, 1760:2, 1762:10, 1763:7, 1765:21, 1772:24, 1774:21, 1783:25, 1793:1, 1813:16, 1814:17,

1817:23, 1818:1, 1820:20, 1821:5, 1821:17, 1836:15, 1838:1, 1838:13, 1840:20, 1841:21, 1842:4, 1851:2, 1851:8, 1851:23, 1852:19, 1859:6, 1861:12, 1862:12, 1862:21, 1867:4, 1869:24, 1870:10, 1872:21, 1875:6, 1889:11, 1890:21, 1890:25, 1892:13, 1895:8, 1896:9, 1897:17, 1898:13, 1900:12, 1900:23, 1901:4, 1902:6, 1904:8, 1909:9, 1911:13, 1913:24, 1914:16, 1915:23, 1915:24, 1916:1, 1916:9, 1918:1, 1924:3, 1930:13, 1930:14
**Jury** [2] - 1804:7, 1840:5
**JURY** [2] - 1738:11, 1823:10
**jury's** [1] - 1853:15
**JUSTICE** [1] - 1738:21
**justifies** [1] - 1901:9
**justify** [1] - 1901:5

## K

**Kate** [2] - 1883:18, 1884:2
**keen** [1] - 1783:13
**keep** [4] - 1797:9, 1800:9, 1804:6, 1839:23
**keeps** [1] - 1789:25
**KERVENG** [1] - 1739:10
**Kevin** [1] - 1746:20
**KEVIN** [2] - 1739:10, 1739:11
**key** [3] - 1864:4, 1874:10, 1910:25
**kind** [18] - 1743:21, 1754:14, 1757:14, 1758:14, 1760:5, 1760:6, 1773:14, 1782:14, 1806:24, 1812:8, 1813:4, 1814:12, 1861:11, 1864:11, 1866:1, 1868:10, 1871:1, 1899:24

**kinds** [1] - 1806:20
**Kings** [1] - 1744:21
**know..** [1] - 1850:21
**knowing** [1] - 1774:25
**knowingly** [6] - 1880:8, 1880:9, 1880:16, 1885:13, 1886:14
**knowledge** [9] - 1745:21, 1827:21, 1828:9, 1857:7, 1859:3, 1859:5, 1881:12, 1882:20, 1885:18
**known** [3] - 1738:9, 1741:11, 1926:10
**knows** [7] - 1781:25, 1798:11, 1809:20, 1814:1, 1856:25, 1897:9, 1921:1
**Kuang** [20] - 1862:5, 1862:7, 1863:3, 1863:6, 1864:10, 1865:16, 1866:9, 1876:4, 1887:9, 1889:5, 1895:1, 1895:20, 1898:16, 1899:1, 1899:13, 1899:16, 1900:2, 1914:13, 1915:12
**Kuang's** [2] - 1864:21, 1865:7

## L

**lack** [19] - 1806:1, 1863:1, 1868:8, 1870:9, 1870:21, 1871:9, 1871:11, 1871:13, 1871:24, 1872:19, 1873:8, 1873:9, 1873:11, 1873:12, 1873:15, 1873:20, 1874:3, 1875:1, 1919:8
**lacking** [1] - 1875:18
**ladies** [1] - 1823:9
**Ladies** [1] - 1839:15
**laid** [1] - 1854:1
**Lan** [1] - 1921:17
**language** [29] - 1749:8, 1757:11, 1817:12, 1847:14, 1852:11, 1858:24, 1877:7, 1877:10, 1877:16, 1880:5, 1883:13, 1908:16, 1908:19, 1908:20, 1909:2, 1911:10, 1911:16, 1916:11,

1917:4, 1917:15, 1917:17, 1919:3, 1919:6, 1922:2, 1923:5, 1925:1, 1925:7, 1926:14
languages [1] - 1756:23
large [2] - 1858:21, 1908:24
largely [1] - 1924:2
Larry [1] - 1772:9
last [17] - 1795:20, 1817:3, 1843:16, 1846:21, 1850:9, 1853:1, 1853:6, 1866:10, 1867:25, 1912:7, 1912:21, 1913:5, 1918:11, 1924:20, 1928:23, 1930:23, 1931:7
late [1] - 1806:19
laughed [1] - 1798:11
laundering [3] - 1857:23, 1858:13, 1858:16
law [33] - 1743:18, 1743:21, 1743:22, 1756:20, 1757:15, 1775:12, 1779:13, 1789:15, 1840:1, 1841:10, 1845:5, 1845:13, 1845:23, 1847:19, 1855:2, 1855:9, 1856:9, 1901:4, 1902:23, 1904:18, 1910:17, 1911:12, 1911:14, 1912:24, 1918:19, 1919:8, 1920:12, 1920:15, 1921:11, 1922:8, 1922:25, 1923:21
Law [1] - 1760:9
LAW [2] - 1739:10, 1918:22
LAWRENCE [1] - 1739:5
laws [1] - 1852:14
lawsuit [1] - 1830:9
lawyer [9] - 1743:10, 1756:10, 1756:12, 1759:3, 1761:11, 1818:22, 1829:19, 1829:23, 1876:1
lawyers [2] - 1829:17, 1840:12
laying [1] - 1807:23
lead [3] - 1747:13, 1793:9, 1920:7
leader [2] - 1908:7,

1908:8
leading [4] - 1762:3, 1793:2, 1793:8, 1884:11
leads [2] - 1772:23, 1908:24
leaner [1] - 1905:25
learn [4] - 1759:12, 1759:14, 1759:15, 1825:11
least [23] - 1806:6, 1806:7, 1843:17, 1847:19, 1847:20, 1849:9, 1850:12, 1850:23, 1862:20, 1866:16, 1871:18, 1872:5, 1877:11, 1886:14, 1889:24, 1900:21, 1906:1, 1909:15, 1910:17, 1911:17, 1913:21, 1914:3, 1917:4
leave [10] - 1818:3, 1846:20, 1852:16, 1852:22, 1860:5, 1874:19, 1874:24, 1917:21, 1918:7, 1928:10
leaves [1] - 1894:13
leaving [2] - 1782:24, 1863:8
leeway [1] - 1825:18
left [7] - 1762:23, 1828:1, 1892:17, 1895:12, 1899:14, 1899:17, 1899:20
Left [1] - 1771:12
legal [4] - 1747:1, 1892:12, 1911:4, 1922:3
legislative [2] - 1921:4, 1923:24
legitimate [2] - 1835:10, 1835:11
length [2] - 1842:9, 1862:5
lengthen [1] - 1879:15
less [4] - 1831:11, 1876:14, 1907:7
lesser [1] - 1919:19
letter [4] - 1748:8, 1749:3, 1749:12, 1749:13
letters [1] - 1749:3
letting [1] - 1822:15
level [1] - 1875:13
Levine [3] - 1769:4, 1770:20, 1770:23
liable [1] - 1920:19
Licensed [1] -

1744:12
licensed [4] - 1744:14, 1744:23, 1755:1, 1769:1
lie [7] - 1889:23, 1894:21, 1895:21, 1895:22, 1896:7, 1896:8, 1896:16
lied [2] - 1890:9, 1891:8
lies [5] - 1890:12, 1896:14, 1896:17, 1896:18, 1896:19
life [1] - 1885:24
light [2] - 1820:6, 1835:16
lightens [1] - 1919:18
likely [2] - 1831:11, 1920:20
limited [9] - 1812:2, 1812:19, 1841:1, 1841:20, 1852:3, 1855:6, 1857:3, 1920:8, 1926:21
limiting [11] - 1812:2, 1840:21, 1841:8, 1841:13, 1849:8, 1849:21, 1850:20, 1851:1, 1851:5, 1853:7, 1854:1
Linda [1] - 1739:14
lindacsr@aol.com [1] - 1739:16
line [13] - 1742:3, 1760:5, 1762:6, 1810:12, 1825:16, 1846:14, 1861:7, 1863:25, 1864:18, 1865:11, 1867:13, 1885:11, 1885:17
lines [5] - 1753:7, 1832:1, 1894:6, 1902:4, 1904:1
lining [1] - 1844:25
Liping [2] - 1742:9, 1742:16
LIPING [3] - 1742:16, 1743:1, 1932:4
liping@ shilawoffices.com [1] - 1758:20
liquor [2] - 1910:1, 1910:2
listed [1] - 1762:14
listening [1] - 1867:14
listing [1] - 1913:15
literally [1] - 1910:21
Liu [2] - 1925:24, 1926:5
LIU [1] - 1926:5

lives [2] - 1875:25, 1929:12
living [2] - 1797:5, 1797:8
local [7] - 1785:15, 1785:19, 1787:19, 1788:24, 1789:4, 1789:15, 1830:18
locate [15] - 1744:9, 1744:15, 1745:18, 1745:20, 1760:20, 1764:13, 1764:14, 1766:5, 1766:7, 1766:11, 1776:16, 1776:20, 1778:11, 1782:16, 1802:15
located [1] - 1796:23
locating [2] - 1755:2, 1802:16
location [2] - 1785:6, 1863:6
logic [1] - 1899:7
logical [1] - 1921:5
LOL [4] - 1780:25, 1798:10, 1799:7, 1799:8
look [13] - 1754:14, 1761:13, 1776:23, 1779:5, 1782:25, 1808:22, 1823:25, 1833:7, 1864:20, 1872:14, 1883:18, 1906:8, 1909:3
looked [6] - 1757:24, 1804:18, 1814:3, 1868:2, 1869:3, 1908:1
looking [23] - 1746:10, 1760:18, 1774:25, 1783:17, 1783:18, 1783:23, 1784:2, 1787:14, 1790:14, 1800:17, 1802:6, 1802:8, 1804:24, 1809:14, 1814:23, 1838:15, 1848:15, 1872:15, 1872:17, 1873:1, 1883:5, 1907:4, 1926:16
looks [1] - 1908:10
losing [1] - 1867:24
lost [2] - 1848:14, 1848:16, 1893:18
loudly [1] - 1743:16
lucky [1] - 1837:14
lunch [7] - 1818:2, 1818:3, 1820:20, 1839:17, 1840:7, 1841:25, 1917:12
Luncheon [1] -

1841:25
Lustberg [39] - 1741:19, 1741:25, 1742:8, 1742:18, 1746:25, 1771:15, 1772:1, 1772:9, 1804:16, 1817:12, 1817:19, 1819:14, 1819:25, 1820:17, 1820:25, 1821:19, 1822:21, 1836:3, 1837:14, 1838:11, 1839:8, 1841:7, 1849:9, 1849:22, 1852:4, 1852:17, 1853:8, 1856:4, 1856:7, 1859:19, 1869:5, 1869:17, 1869:21, 1879:9, 1905:21, 1910:13, 1916:13, 1919:11, 1921:14
LUSTBERG [163] - 1739:5, 1741:20, 1742:9, 1742:19, 1743:6, 1746:7, 1746:14, 1751:7, 1751:13, 1763:19, 1763:21, 1764:19, 1765:7, 1767:3, 1767:5, 1767:18, 1770:2, 1771:9, 1771:17, 1772:2, 1772:8, 1776:2, 1777:10, 1777:16, 1777:19, 1777:21, 1781:14, 1782:2, 1782:6, 1784:15, 1786:20, 1786:24, 1787:24, 1788:2, 1788:6, 1788:13, 1792:2, 1793:7, 1793:22, 1794:1, 1795:3, 1800:3, 1800:14, 1803:1, 1803:25, 1805:4, 1805:10, 1806:2, 1806:6, 1807:12, 1807:22, 1808:7, 1808:18, 1808:20, 1809:24, 1810:15, 1810:18, 1813:6, 1813:15, 1813:20, 1814:1, 1814:25, 1815:15, 1817:3, 1817:21, 1819:17, 1820:2, 1821:1, 1821:12, 1821:21, 1821:25, 1822:2, 1822:3, 1822:11, 1822:19, 1825:16,

1832:7, 1833:21, 1834:8, 1834:11, 1834:19, 1835:20, 1836:5, 1837:16, 1837:18, 1839:6, 1841:11, 1842:6, 1844:18, 1845:17, 1846:1, 1848:14, 1848:16, 1849:2, 1849:16, 1850:12, 1850:16, 1850:18, 1852:6, 1853:22, 1854:13, 1854:17, 1854:24, 1857:11, 1857:13, 1857:18, 1858:14, 1859:21, 1860:4, 1860:9, 1867:22, 1867:24, 1868:17, 1868:21, 1868:23, 1869:7, 1869:15, 1870:12, 1872:8, 1875:19, 1876:11, 1876:16, 1877:2, 1878:18, 1879:10, 1880:13, 1881:25, 1882:5, 1882:11, 1883:4, 1883:17, 1884:5, 1885:23, 1886:8, 1905:8, 1905:22, 1910:15, 1912:3, 1913:11, 1916:16, 1916:21, 1917:1, 1917:9, 1919:12, 1920:5, 1921:21, 1922:5, 1925:5, 1925:13, 1927:6, 1928:5, 1928:13, 1928:15, 1928:18, 1929:19, 1930:1, 1930:8, 1930:20, 1932:5, 1932:6, 1932:8, 1932:10, 1932:11

**lustberg** [1] - 1781:24

**lying** [2] - 1891:10, 1896:6

# M

**magical** [1] - 1874:1

**mail** [61] - 1739:16, 1747:18, 1747:19, 1747:24, 1748:1, 1749:7, 1749:11, 1749:14, 1749:17, 1750:4, 1750:8, 1750:13, 1752:3, 1752:10, 1752:18, 1752:21, 1753:1, 1753:13, 1753:21,

1753:22, 1754:10, 1757:25, 1758:1, 1758:11, 1758:13, 1758:15, 1758:19, 1758:22, 1760:8, 1760:12, 1760:13, 1760:14, 1762:14, 1762:19, 1764:16, 1765:20, 1765:22, 1765:23, 1765:25, 1766:15, 1777:24, 1778:22, 1779:21, 1779:23, 1781:18, 1783:18, 1788:23, 1789:23, 1790:7, 1791:8, 1797:24, 1799:9, 1799:22, 1800:17, 1800:22, 1807:13, 1822:5

**mailed** [1] - 1764:4

**mails** [3] - 1780:24, 1799:21, 1800:2

**major** [1] - 1909:24

**male** [1] - 1755:2

**man** [4] - 1833:19, 1834:2, 1900:22, 1923:17

**Mandarin** [4] - 1756:25, 1757:2, 1757:12

**maneuvers** [1] - 1797:4

**manner** [1] - 1820:22

**marino** [1] - 1739:14

**mark** [6] - 1740:16, 1749:2, 1749:6, 1760:6, 1787:25, 1898:3

**marked** [21] - 1740:14, 1740:21, 1740:22, 1741:14, 1752:2, 1754:8, 1759:23, 1763:11, 1781:15, 1784:14, 1784:15, 1831:20, 1831:22, 1832:11, 1836:12, 1837:7, 1837:21, 1838:12, 1838:20, 1839:3, 1932:17

**marking** [1] - 1781:9

**matches** [1] - 1740:23

**material** [5] - 1856:4, 1856:24, 1858:19, 1858:23, 1896:16

**materially** [1] - 1923:15

**matrimonial** [2] - 1743:19, 1745:17

**Matter** [1] - 1931:24

**matter** [18] - 1755:1,

1761:7, 1761:15, 1771:3, 1772:10, 1776:11, 1782:20, 1801:6, 1801:9, 1801:24, 1802:3, 1802:9, 1803:9, 1811:25, 1824:16, 1840:9, 1869:23, 1872:12

**matters** [4] - 1839:18, 1841:15, 1852:14, 1919:20

**McMahon** [133] - 1738:8, 1739:3, 1742:1, 1742:9, 1745:3, 1745:4, 1764:6, 1768:13, 1768:17, 1770:14, 1770:16, 1772:10, 1772:20, 1773:8, 1774:4, 1775:7, 1776:7, 1776:18, 1777:24, 1778:14, 1778:22, 1779:21, 1779:24, 1780:3, 1780:20, 1780:25, 1781:5, 1781:12, 1781:15, 1781:22, 1782:21, 1783:19, 1784:4, 1784:16, 1785:7, 1785:8, 1785:15, 1785:17, 1786:8, 1787:8, 1787:16, 1787:19, 1787:25, 1788:24, 1789:6, 1789:14, 1789:24, 1789:25, 1790:8, 1790:10, 1791:8, 1796:11, 1796:17, 1796:19, 1797:2, 1797:4, 1797:11, 1797:14, 1797:23, 1798:10, 1798:17, 1798:20, 1799:9, 1799:12, 1799:19, 1800:5, 1800:10, 1800:12, 1800:20, 1801:10, 1801:19, 1803:9, 1804:18, 1807:15, 1809:5, 1809:15, 1810:1, 1811:10, 1811:11, 1813:13, 1815:11, 1820:1, 1820:8, 1820:10, 1822:5, 1822:8, 1822:13, 1822:15, 1826:16, 1826:18, 1826:21, 1826:25, 1827:8, 1827:16, 1828:4, 1828:6,

1828:11, 1828:14, 1829:3, 1829:8, 1830:17, 1831:1, 1831:13, 1832:1, 1833:7, 1833:12, 1834:13, 1836:12, 1836:16, 1837:7, 1837:24, 1838:20, 1839:3, 1839:7, 1841:3, 1842:7, 1844:7, 1849:16, 1851:20, 1851:22, 1852:9, 1856:23, 1857:1, 1857:25, 1870:13, 1870:15, 1870:17, 1870:18, 1871:8, 1872:1, 1930:1, 1932:17

**McMahon's** [14] - 1759:1, 1769:14, 1770:21, 1787:5, 1799:23, 1814:18, 1827:6, 1828:17, 1840:12, 1841:23, 1857:3, 1859:4, 1875:23, 1912:16

**mean** [44] - 1759:14, 1774:22, 1774:23, 1780:14, 1781:3, 1785:3, 1790:5, 1790:19, 1790:22, 1793:11, 1795:13, 1796:22, 1797:6, 1798:1, 1798:5, 1800:17, 1800:22, 1801:25, 1806:11, 1807:18, 1809:22, 1810:5, 1810:9, 1814:1, 1814:4, 1814:9, 1815:17, 1825:21, 1835:12, 1852:19, 1861:1, 1863:7, 1864:14, 1868:22, 1878:12, 1891:4, 1899:6, 1906:2, 1909:2, 1910:19, 1917:11, 1917:12, 1929:10

**meaning** [1] - 1920:18

**meaningful** [1] - 1817:4

**means** [6] - 1839:15, 1863:21, 1904:5, 1924:21, 1929:5

**meant** [10] - 1780:6, 1780:10, 1790:16, 1793:16, 1798:6, 1798:23, 1807:17, 1808:10, 1834:19, 1904:4

**meet** [2] - 1759:9, 1807:22

**meeting** [3] - 1828:6, 1828:10

**member** [1] - 1825:11

**member'** [1] - 1929:5

**members** [7] - 1835:5, 1860:10, 1906:14, 1908:9, 1908:18, 1908:22, 1912:8

**memory** [4] - 1777:9, 1779:5, 1784:3, 1791:11

**mention** [1] - 1851:12

**mentioned** [13] - 1759:6, 1759:18, 1763:22, 1764:11, 1841:12, 1843:6, 1859:4, 1859:10, 1861:13, 1865:25, 1869:10, 1872:25, 1915:18

**mentions** [1] - 1846:22

**MEREDITH** [1] - 1738:17

**merged** [1] - 1878:8

**message** [6] - 1799:2, 1808:13, 1808:15, 1829:10, 1831:25, 1832:3

**messages** [3] - 1788:19, 1800:4, 1829:7

**met** [8] - 1744:20, 1745:5, 1755:11, 1756:7, 1759:3, 1768:14, 1772:11, 1772:21

**Michael** [21] - 1739:3, 1745:3, 1759:1, 1768:13, 1768:14, 1770:14, 1770:16, 1770:21, 1772:20, 1773:8, 1809:5, 1826:24, 1827:16, 1828:4, 1828:6, 1829:7, 1830:17, 1831:1, 1831:25, 1844:7

**MICHAEL** [1] - 1738:8

**microphone** [4] - 1743:11, 1743:13, 1754:22, 1771:24

**mid** [1] - 1772:21

**might** [10] - 1779:8, 1808:4, 1816:21, 1847:7, 1859:15, 1861:6, 1866:3, 1875:23, 1877:17,

1887:4
**Mike** [9] - 1769:14,
1769:16, 1772:10,
1780:20, 1781:4,
1781:5, 1801:19,
1809:15, 1809:20
milk [1] - 1815:21
milking [1] - 1816:3
**Millburn** [3] - 1836:21,
1838:24, 1839:1
**mind** [18] - 1779:8,
1791:24, 1792:3,
1804:6, 1818:7,
1831:8, 1839:23,
1862:21, 1878:15,
1880:22, 1892:8,
1893:12, 1893:21,
1894:19, 1896:18,
1900:9, 1907:11,
1921:10
**mine** [1] - 1872:24
**minor** [5] - 1740:4,
1843:13, 1846:6,
1849:7, 1850:8
**minute** [2] - 1788:19,
1903:12
**minutes** [2] - 1788:15,
1817:18
**misconduct** [1] -
1810:8
**misquote** [1] -
1907:25
**misreading** [1] -
1805:9
**misrepresent** [1] -
1805:7
**miss** [1] - 1852:25
**missed** [1] - 1804:25
**missing** [1] - 1868:3
**misspoke** [2] -
1845:12, 1872:23
**misstatement** [1] -
1908:3
**misstating** [1] -
1911:14
**mistake** [1] - 1788:8
**mistaken** [1] - 1915:22
**mistakes** [1] - 1930:16
**Mister** [1] - 1822:8
**misunderstanding** [1]
- 1864:15
**misunderstood** [2] -
1804:14, 1815:3
**mixing** [1] - 1854:14
**model** [2] - 1870:25,
1907:8
**modern** [2] - 1923:1,
1923:20
**modification** [1] -
1846:25

**moment** [16] -
1742:12, 1763:1,
1767:7, 1771:20,
1804:25, 1815:3,
1817:24, 1819:13,
1840:21, 1844:23,
1850:1, 1850:23,
1879:24, 1881:25,
1890:14, 1908:10
**moments** [4] -
1780:22, 1809:17,
1809:21, 1849:10
**money** [5] - 1798:22,
1802:9, 1857:23,
1858:13, 1858:16
**monies** [1] - 1875:24
**more..** [1] - 1844:15
**morning** [17] - 1740:3,
1746:22, 1746:23,
1756:3, 1756:4,
1767:19, 1767:20,
1770:11, 1770:12,
1804:3, 1823:7,
1823:8, 1823:9,
1823:10, 1839:20,
1900:5, 1931:20
**most** [9] - 1812:23,
1813:2, 1820:15,
1843:3, 1863:8,
1865:7, 1911:25,
1923:10, 1928:18
**Mostly** [2] - 1743:19,
1743:20
**mostly** [3] - 1756:16,
1757:8, 1783:25
**mot** [1] - 1833:3
**motion** [3] - 1915:2,
1915:22, 1916:24
**motions** [1] - 1875:19
**move** [13] - 1740:15,
1741:6, 1743:13,
1743:14, 1753:23,
1754:2, 1754:22,
1838:3, 1838:8,
1867:12, 1879:23,
1881:10, 1881:18
**moved** [1] - 1773:9
**movement** [1] -
1886:10
**moves** [1] - 1832:5
**movie** [1] - 1903:12
**moving** [6] - 1838:7,
1867:17, 1881:2,
1912:23, 1916:17,
1925:14
**MR** [440] - 1740:4,
1740:7, 1740:22,
1741:3, 1741:5,
1741:10, 1741:12,
1741:16, 1741:20,

1742:9, 1742:19,
1743:6, 1746:7,
1746:14, 1746:17,
1746:19, 1747:12,
1747:14, 1747:23,
1748:10, 1749:5,
1749:11, 1749:20,
1750:23, 1751:1,
1751:6, 1751:7,
1751:13, 1751:15,
1752:6, 1753:24,
1754:2, 1754:6,
1755:18, 1755:21,
1763:19, 1763:21,
1764:19, 1765:7,
1765:11, 1765:14,
1766:19, 1767:3,
1767:5, 1767:18,
1770:2, 1770:6,
1770:7, 1771:9,
1771:17, 1772:2,
1772:8, 1776:2,
1777:10, 1777:16,
1777:19, 1777:21,
1781:14, 1782:2,
1782:6, 1784:15,
1786:20, 1786:24,
1787:24, 1788:2,
1788:6, 1788:11,
1788:13, 1788:20,
1791:3, 1792:2,
1793:7, 1793:22,
1794:1, 1795:3,
1796:5, 1800:1,
1800:3, 1800:14,
1801:15, 1802:11,
1803:1, 1803:25,
1804:25, 1805:4,
1805:10, 1805:11,
1805:14, 1806:2,
1806:6, 1807:4,
1807:8, 1807:12,
1807:22, 1808:7,
1808:18, 1808:20,
1809:2, 1809:10,
1809:24, 1810:15,
1810:18, 1811:15,
1812:12, 1812:15,
1813:6, 1813:15,
1813:20, 1814:1,
1814:25, 1815:15,
1816:8, 1816:13,
1816:16, 1817:1,
1817:3, 1817:14,
1817:21, 1819:17,
1820:2, 1820:13,
1820:24, 1821:1,
1821:2, 1821:3,
1821:9, 1821:10,
1821:12, 1821:21,
1821:25, 1822:2,

1822:3, 1822:11,
1822:19, 1822:24,
1823:1, 1823:4,
1823:6, 1823:9,
1825:16, 1825:20,
1825:23, 1827:12,
1828:1, 1831:19,
1832:5, 1832:7,
1832:8, 1832:9,
1833:1, 1833:2,
1833:11, 1833:21,
1834:5, 1834:8,
1834:11, 1834:19,
1835:20, 1835:24,
1836:5, 1837:16,
1837:18, 1839:6,
1839:11, 1839:13,
1841:11, 1842:6,
1842:16, 1842:23,
1843:12, 1843:15,
1843:20, 1843:22,
1844:4, 1844:13,
1844:18, 1844:19,
1844:20, 1844:23,
1845:12, 1845:17,
1845:19, 1845:20,
1845:22, 1846:1,
1846:2, 1846:5,
1846:8, 1846:11,
1846:14, 1846:19,
1846:23, 1847:9,
1847:12, 1847:17,
1847:24, 1848:2,
1848:11, 1848:14,
1848:16, 1848:20,
1849:2, 1849:6,
1849:16, 1849:18,
1849:20, 1849:25,
1850:8, 1850:12,
1850:16, 1850:18,
1851:4, 1851:13,
1851:17, 1852:6,
1852:24, 1853:4,
1853:6, 1853:22,
1854:10, 1854:13,
1854:17, 1854:24,
1856:2, 1857:11,
1857:13, 1857:18,
1858:14, 1859:21,
1860:4, 1860:9,
1860:12, 1860:14,
1860:17, 1860:22,
1861:3, 1861:17,
1861:20, 1861:25,
1862:13, 1862:25,
1864:5, 1865:5,
1865:21, 1865:23,
1866:10, 1866:19,
1867:2, 1867:10,
1867:19, 1867:22,
1867:24, 1868:17,

1868:20, 1868:21,
1868:23, 1869:2,
1869:7, 1869:15,
1869:17, 1870:12,
1872:8, 1873:10,
1874:5, 1874:10,
1875:12, 1875:19,
1876:2, 1876:4,
1876:11, 1876:16,
1877:2, 1877:6,
1877:13, 1877:16,
1878:7, 1878:18,
1878:19, 1878:20,
1878:25, 1879:10,
1879:11, 1879:12,
1879:16, 1879:20,
1880:2, 1880:5,
1880:13, 1880:18,
1880:20, 1881:7,
1881:11, 1881:17,
1881:21, 1881:25,
1882:5, 1882:11,
1882:15, 1882:16,
1882:19, 1882:25,
1883:4, 1883:6,
1883:15, 1883:17,
1883:24, 1884:5,
1884:6, 1884:7,
1885:2, 1885:4,
1885:7, 1885:14,
1885:17, 1885:21,
1885:23, 1886:2,
1886:8, 1886:11,
1886:19, 1887:8,
1887:14, 1887:19,
1887:22, 1888:5,
1888:8, 1888:14,
1888:23, 1889:3,
1891:3, 1891:15,
1892:20, 1893:16,
1894:2, 1894:16,
1894:22, 1896:11,
1896:22, 1897:4,
1897:6, 1897:13,
1898:15, 1898:24,
1900:8, 1903:11,
1903:17, 1904:6,
1904:25, 1905:4,
1905:6, 1905:8,
1905:9, 1905:13,
1905:16, 1905:22,
1907:3, 1909:20,
1910:15, 1911:21,
1912:3, 1912:7,
1912:11, 1912:14,
1913:2, 1913:8,
1913:11, 1913:13,
1913:15, 1913:18,
1914:6, 1914:8,
1914:10, 1914:18,
1915:11, 1915:16,

1916:16, 1916:21, 1917:1, 1917:9, 1918:8, 1918:10, 1918:15, 1919:12, 1920:5, 1921:21, 1921:23, 1922:5, 1922:12, 1922:16, 1922:20, 1922:23, 1924:19, 1925:5, 1925:9, 1925:10, 1925:13, 1925:16, 1925:23, 1926:2, 1926:4, 1926:9, 1926:17, 1927:1, 1927:6, 1927:7, 1927:8, 1927:12, 1927:24, 1928:5, 1928:6, 1928:7, 1928:12, 1928:13, 1928:15, 1928:18, 1928:23, 1929:1, 1929:16, 1929:19, 1929:20, 1929:21, 1930:1, 1930:2, 1930:3, 1930:6, 1930:8, 1930:9, 1930:11, 1930:20, 1931:2, 1931:5, 1931:12, 1932:5, 1932:5, 1932:6, 1932:7, 1932:8, 1932:10, 1932:11, 1932:11

**MS** [46] - 1748:7, 1750:3, 1750:10, 1750:16, 1754:4, 1754:5, 1755:23, 1756:2, 1760:1, 1760:25, 1761:18, 1762:7, 1762:11, 1762:22, 1763:1, 1763:5, 1763:8, 1763:16, 1766:8, 1766:23, 1770:10, 1771:6, 1819:22, 1819:24, 1836:7, 1836:10, 1836:16, 1837:11, 1837:19, 1837:24, 1838:2, 1838:7, 1838:14, 1838:16, 1838:19, 1845:4, 1891:24, 1893:9, 1893:19, 1893:25, 1899:12, 1902:16, 1902:20, 1926:7, 1932:6, 1932:9

**multi** [1] - 1905:19
**multiconspiracy** [2] - 1905:11, 1905:16
**multiple** [4] - 1906:10,

1906:17, 1906:22, 1912:16
**must** [2] - 1877:20, 1910:10

# N

**N.Y.P.D** [2] - 1780:12, 1780:21
**N366** [1] - 1739:15
**name** [26] - 1741:9, 1742:15, 1744:25, 1745:2, 1745:8, 1746:20, 1755:2, 1759:1, 1762:24, 1762:25, 1765:16, 1767:5, 1767:10, 1769:14, 1771:17, 1771:23, 1772:9, 1773:5, 1843:16, 1863:3, 1921:20, 1925:17, 1926:1, 1926:10, 1926:21
**named** [4] - 1744:2, 1768:15, 1770:20, 1861:5
**namely** [3] - 1857:3, 1890:16, 1891:8
**names** [8] - 1827:8, 1859:22, 1925:18, 1925:22, 1926:23, 1927:3, 1928:21, 1928:22
**narcotics** [2] - 1772:22, 1773:10
**NATIONAL** [1] - 1738:21
**natural** [1] - 1766:15
**nature** [6] - 1817:17, 1858:5, 1875:7, 1906:23, 1908:12, 1916:3
**near** [1] - 1904:13
**Neary** [1] - 1768:15
**necessarily** [7] - 1761:25, 1853:20, 1859:9, 1895:22, 1906:15, 1912:12, 1920:15
**necessary** [5] - 1741:7, 1842:11, 1871:9, 1904:5, 1911:13
**need** [28] - 1745:18, 1764:7, 1764:8, 1764:14, 1764:24, 1764:25, 1765:1, 1765:2, 1774:1, 1774:3, 1784:17, 1784:19, 1790:21,

1814:11, 1817:17, 1817:19, 1820:16, 1825:19, 1839:19, 1851:9, 1861:17, 1865:9, 1873:18, 1875:15, 1876:8, 1878:22, 1879:14, 1911:6
**needed** [3] - 1744:13, 1842:10, 1904:8
**needs** [5] - 1744:15, 1745:19, 1764:11, 1810:3, 1911:2
**negative** [3] - 1813:4, 1856:10, 1859:7
**neighbors** [1] - 1899:16
**Net** [1] - 1779:15
**neutral** [2] - 1854:18, 1912:2
**Never** [1] - 1761:6
**never** [22] - 1745:5, 1758:13, 1764:1, 1764:16, 1765:19, 1772:11, 1781:4, 1781:5, 1801:22, 1806:10, 1825:3, 1825:4, 1827:8, 1831:8, 1851:2, 1855:7, 1891:15, 1892:4, 1898:3, 1903:15, 1915:16, 1915:17
**NEW** [2] - 1738:1, 1738:16
**new** [6] - 1783:24, 1908:7, 1908:10, 1909:19, 1918:15
**New** [27] - 1738:6, 1738:17, 1739:4, 1739:7, 1739:11, 1739:15, 1744:12, 1744:14, 1744:23, 1745:9, 1756:15, 1768:2, 1768:7, 1769:1, 1769:7, 1769:10, 1769:12, 1772:24, 1776:12, 1785:6, 1797:25, 1823:12, 1829:8, 1877:20, 1879:5, 1897:7
**Newark** [1] - 1739:4
**news** [1] - 1924:19
**Next** [3] - 1752:20, 1844:21, 1846:4
**next** [64] - 1767:3, 1778:25, 1779:19, 1780:5, 1780:23, 1781:1, 1783:13,

1789:5, 1790:7, 1790:9, 1791:7, 1792:5, 1794:8, 1797:22, 1799:6, 1799:8, 1802:21, 1822:13, 1825:21, 1832:13, 1844:24, 1845:8, 1845:12, 1846:5, 1846:19, 1846:22, 1846:23, 1849:7, 1852:20, 1855:13, 1856:2, 1867:18, 1867:19, 1867:20, 1875:10, 1875:12, 1877:23, 1880:1, 1880:2, 1880:20, 1883:1, 1883:2, 1884:13, 1885:11, 1886:4, 1886:19, 1887:9, 1889:5, 1892:18, 1894:9, 1896:24, 1899:1, 1901:11, 1902:11, 1905:13, 1905:17, 1908:17, 1911:22, 1913:6, 1914:25, 1918:10, 1928:23, 1931:16
**nice** [2] - 1743:16, 1797:10
**nine** [3] - 1767:25, 1930:17, 1931:20
**Ninth** [1] - 1923:7
**NJ** [1] - 1784:10
**njparcel.com** [1] - 1784:22
**njparcels.com** [1] - 1784:10
**non** [4] - 1811:12, 1816:2, 1891:7
**non-credibility** [2] - 1811:12, 1816:2
**non-hearsay** [1] - 1891:7
**None** [1] - 1834:4
**none** [2] - 1908:3, 1925:2
**nonetheless** [1] - 1815:4
**noon** [1] - 1839:17
**normal** [3] - 1751:4, 1843:6, 1920:14
**normally** [3] - 1869:20, 1890:17, 1911:24
**Northern** [1] - 1924:3
**note** [41] - 1793:14, 1805:14, 1812:16, 1851:4, 1860:17, 1876:16, 1887:11,

1887:17, 1887:24, 1888:3, 1888:11, 1888:20, 1889:7, 1889:17, 1889:23, 1890:10, 1890:11, 1890:16, 1891:14, 1892:5, 1892:8, 1893:23, 1893:24, 1895:4, 1895:5, 1895:10, 1895:12, 1895:13, 1898:25, 1899:2, 1899:6, 1899:7, 1899:22, 1900:1, 1900:6, 1900:7, 1901:14, 1901:15, 1915:5, 1915:9, 1916:4
**noted** [1] - 1869:19
**notes** [11] - 1874:25, 1898:18, 1899:14, 1899:18, 1899:23, 1899:25, 1900:2, 1900:3, 1900:4, 1908:2
**nothing** [6] - 1746:8, 1770:3, 1810:2, 1835:6, 1898:2, 1916:8
**Nothing** [10] - 1835:20, 1849:6, 1849:16, 1849:18, 1849:20, 1930:1, 1930:6, 1930:8, 1930:9, 1930:11
**notice** [4] - 1749:7, 1806:3, 1806:7, 1806:20
**notification** [3] - 1924:21, 1924:22, 1925:1
**notified** [1] - 1925:3
**notify** [1] - 1903:20
**notion** [1] - 1856:10
**notwithstanding** [1] - 1921:6
**nuance** [1] - 1863:10
**nuanced** [2] - 1871:5, 1893:10
**number** [13] - 1740:25, 1748:11, 1785:19, 1788:12, 1789:7, 1789:8, 1812:23, 1815:23, 1838:24, 1839:1, 1852:8, 1863:4, 1863:5
**numberings** [1] - 1845:7
**numbers** [5] - 1750:15, 1750:16,

1762:3, 1835:15,
1835:18
**numeral** [1] - 1867:20
**NW** [1] - 1738:22
**NY** [1] - 1739:7
**NYPD** [9] - 1772:22,
1773:1, 1805:22,
1809:16, 1824:24,
1825:12, 1825:15,
1826:1, 1826:8

## O

**o'clock** [4] - 1840:9,
1841:24, 1842:2,
1931:25
**object** [12] - 1750:18,
1750:25, 1804:19,
1804:23, 1806:3,
1860:20, 1860:21,
1866:12, 1868:19,
1869:18, 1881:24,
1909:18
**objected** [1] - 1891:5
**objecting** [1] - 1861:7
**objection** [42] -
1749:24, 1750:4,
1754:4, 1754:5,
1754:6, 1791:3,
1796:5, 1801:15,
1802:11, 1820:22,
1825:16, 1832:7,
1832:8, 1832:9,
1843:7, 1843:11,
1845:25, 1849:1,
1855:3, 1860:11,
1860:16, 1860:23,
1875:9, 1875:14,
1879:8, 1882:13,
1884:4, 1886:23,
1891:25, 1903:9,
1905:11, 1916:5,
1919:6, 1925:5,
1925:6, 1925:8,
1926:18, 1926:20,
1927:2, 1928:4,
1929:18, 1930:20
**Objection** [2] -
1766:8, 1833:21
**objections** [6] -
1793:15, 1844:17,
1850:3, 1860:25,
1912:25, 1930:18
**objective** [1] - 1910:8
**objects** [4] - 1860:6,
1904:22, 1905:25,
1907:2
**obligated** [1] - 1867:6
**obligation** [2] -
1865:1, 1865:19

**obtained** [3] - 1825:6,
1836:21, 1836:24
**obtaining** [1] -
1760:17
**obvious** [3] - 1807:19,
1893:7, 1899:15
**Obviously** [3] -
1750:19, 1840:11,
1841:5
**obviously** [28] -
1740:17, 1757:24,
1800:22, 1806:2,
1806:11, 1809:3,
1810:20, 1812:9,
1815:2, 1817:20,
1816:4, 1867:14,
1872:6, 1874:2,
1876:13, 1889:21,
1892:6, 1892:19,
1893:4, 1902:8,
1904:22, 1907:1,
1916:5, 1916:23,
1920:10, 1925:18,
1926:18, 1930:15
**Occasionally** [1] -
1743:23
**occasions** [1] -
1768:20
**occupation** [1] -
1763:10
**Occupation** [1] -
1763:12
**occur** [1] - 1879:4
**occurred** [6] - 1749:1,
1827:21, 1828:9,
1877:21, 1918:5,
1918:6
**October** [11] - 1776:6,
1781:22, 1785:5,
1785:9, 1791:20,
1795:12, 1795:13,
1795:14, 1795:15,
1795:22, 1832:3
**OF** [5] - 1738:1,
1738:3, 1738:11,
1738:16, 1738:21
**offense** [2] - 1917:15,
1917:20
**offenses** [5] - 1812:1,
1851:20, 1852:8,
1852:10, 1852:13
**offer** [5] - 1811:6,
1841:9, 1841:19,
1892:15, 1893:20
**offered** [15] - 1811:23,
1812:2, 1849:23,
1857:2, 1889:1,
1890:7, 1890:15,
1890:24, 1891:9,
1891:10, 1892:3,

1892:6, 1892:9,
1893:14
**offering** [2] - 1749:16,
1890:3
**office** [3] - 1746:25,
1747:4, 1826:11
**OFFICE** [1] - 1739:10
**Office** [3] - 1760:10,
1825:9, 1826:4
**officer** [17] - 1780:21,
1808:17, 1808:22,
1809:8, 1809:11,
1809:16, 1809:20,
1812:21, 1813:18,
1814:16, 1816:23,
1824:20, 1826:8,
1828:18, 1828:23,
1835:14
**officers** [2] - 1845:14,
1845:24
**official** [8] - 1913:19,
1914:1, 1917:5,
1920:2, 1920:20,
1921:17, 1921:18
**Official** [1] - 1739:14
**officials** [2] - 1902:23,
1919:22
**often** [3] - 1751:9,
1842:12, 1912:1
**oftentimes** [1] -
1860:6
**old** [1] - 1923:10
**omitting** [2] - 1876:11,
1876:23
**once** [3] - 1774:16,
1831:8, 1872:6
**one** [135] - 1740:4,
1742:5, 1745:21,
1750:21, 1751:4,
1757:24, 1761:22,
1763:1, 1763:4,
1767:7, 1773:23,
1774:1, 1778:2,
1780:23, 1781:1,
1784:8, 1790:7,
1790:9, 1795:14,
1798:12, 1799:6,
1802:7, 1804:12,
1804:22, 1805:11,
1811:18, 1815:22,
1815:23, 1816:1,
1816:11, 1816:14,
1817:3, 1817:17,
1818:21, 1821:22,
1822:2, 1826:17,
1830:13, 1831:4,
1831:5, 1833:15,
1834:8, 1835:19,
1836:12, 1840:13,
1841:13, 1841:21,

1843:23, 1844:8,
1844:14, 1844:24,
1845:3, 1845:5,
1845:7, 1845:12,
1846:5, 1846:19,
1846:22, 1846:23,
1847:6, 1847:7,
1847:9, 1849:7,
1850:12, 1850:13,
1853:6, 1854:6,
1854:25, 1856:12,
1857:18, 1859:25,
1862:10, 1863:5,
1864:22, 1866:13,
1867:19, 1867:22,
1868:3, 1868:16,
1868:20, 1869:22,
1870:14, 1870:21,
1871:12, 1871:13,
1871:17, 1871:25,
1872:17, 1874:17,
1874:19, 1876:12,
1878:25, 1879:15,
1879:24, 1880:25,
1881:20, 1881:21,
1881:25, 1882:4,
1882:5, 1882:7,
1882:18, 1883:17,
1884:10, 1886:19,
1890:3, 1903:7,
1905:13, 1906:3,
1906:6, 1907:8,
1909:7, 1909:11,
1909:15, 1909:24,
1910:17, 1911:2,
1911:17, 1912:5,
1913:3, 1913:9,
1913:25, 1915:3,
1921:6, 1921:11,
1923:1, 1924:12,
1924:16, 1928:23,
1929:14
**One** [7] - 1739:3,
1741:3, 1839:5,
1844:23, 1905:13,
1912:23, 1931:14
**ones** [3] - 1843:12,
1850:8, 1869:3
**ongoing** [1] - 1908:12
**only-Chinese** [1] -
1750:19
**open** [11] - 1740:1,
1752:1, 1785:2,
1785:3, 1795:1,
1804:6, 1815:4,
1817:23, 1839:23,
1842:4, 1885:1
**opened** [6] - 1805:16,
1811:3, 1812:6,
1813:18, 1813:21,

1815:5
**opening** [6] - 1810:12,
1810:16, 1813:22,
1851:6, 1869:11,
1887:3
**openings** [1] - 1806:6
**openly** [1] - 1866:6
**opens** [1] - 1814:10
**Operation** [2] -
1779:15, 1779:17
**opine** [1] - 1842:14
**opinion** [20] -
1805:15, 1807:6,
1808:21, 1811:10,
1812:20, 1813:1,
1813:8, 1814:14,
1814:17, 1814:18,
1815:24, 1828:17,
1828:22, 1834:13,
1834:23, 1841:3,
1841:22, 1854:5,
1854:20, 1871:16
**opportunity** [3] -
1740:19, 1807:19,
1810:1
**oppose** [1] - 1917:17
**opposed** [6] -
1787:11, 1857:5,
1858:16, 1867:7,
1886:20, 1912:22
**opposite** [1] - 1862:17
**order** [8] - 1744:15,
1745:20, 1755:16,
1843:2, 1843:9,
1903:19, 1922:2,
1924:9
**ordinary** [2] - 1812:13,
1869:24
**origin** [1] - 1874:19
**original** [5] - 1760:8,
1856:6, 1872:10,
1919:3, 1927:21
**originally** [2] - 1900:4,
1919:7
**otherwise** [6] -
1740:16, 1812:8,
1831:7, 1857:8,
1869:21, 1894:14
**ought** [1] - 1894:11
**out-of-court** [1] -
1890:17
**outside** [5] - 1793:1,
1817:23, 1821:15,
1835:4, 1877:24
**outweighs** [1] -
1810:4
**overall** [1] - 1858:23
**overrule** [1] - 1875:9
**Overruled** [5] -
1766:9, 1791:4,

1796:16, 1801:16,
1833:22
**overt** [8] - 1774:19,
1775:1, 1789:19,
1799:10, 1800:21,
1800:24, 1801:8,
1801:13
**overwhelmed** [1] -
1859:3
**own** [13] - 1772:18,
1791:1, 1793:15,
1797:18, 1812:15,
1818:12, 1873:5,
1890:19, 1890:23,
1892:15, 1897:24,
1900:22
**owns** [1] - 1742:5

## P

**P.C** [2] - 1739:3,
1739:6
**P.D** [2] - 1788:24,
1789:4
**p.m** [1] - 1842:2
**pack** [2] - 1799:4,
1884:11
**page** [54] - 1748:14,
1751:18, 1753:4,
1753:24, 1754:9,
1760:6, 1760:25,
1761:18, 1762:11,
1762:22, 1763:5,
1775:16, 1778:25,
1780:5, 1783:13,
1788:12, 1788:17,
1789:5, 1791:7,
1792:5, 1794:8,
1798:13, 1802:21,
1822:2, 1831:22,
1832:13, 1833:7,
1843:18, 1844:22,
1845:6, 1845:8,
1846:9, 1846:21,
1855:15, 1856:5,
1856:6, 1867:17,
1867:21, 1880:4,
1882:18, 1883:1,
1883:2, 1883:5,
1884:13, 1905:15,
1913:12, 1914:25,
1928:24, 1931:7,
1931:14, 1931:16,
1931:19
**Page** [24] - 1777:6,
1779:19, 1779:22,
1796:10, 1797:15,
1798:15, 1843:13,
1843:18, 1844:4,
1844:24, 1845:13,

1845:16, 1846:10,
1849:15, 1885:5,
1885:6, 1885:12,
1912:25, 1913:4,
1913:13, 1918:12,
1926:16, 1927:12,
1928:23
**PAGE** [1] - 1932:3
**Pages** [5] - 1778:18,
1781:11, 1788:7,
1788:14, 1789:22
**pages** [2] - 1783:1,
1783:5, 1885:2
**paid** [4] - 1803:15,
1803:16, 1803:18,
1875:24
**PAMELA** [1] - 1738:12
**Panera** [3] - 1770:17,
1828:7, 1828:10
**papers** [3] - 1745:20,
1759:19, 1759:20
**par** [1] - 1881:16
**paragraph** [34] -
1843:13, 1850:9,
1851:17, 1851:18,
1852:25, 1877:16,
1880:21, 1880:24,
1881:1, 1881:2,
1881:3, 1881:5,
1881:11, 1881:17,
1881:18, 1881:19,
1882:2, 1882:3,
1882:9, 1882:20,
1883:7, 1885:9,
1885:14, 1903:23,
1906:8, 1907:19,
1909:6, 1912:4,
1912:20, 1913:4,
1918:11, 1924:21,
1928:24
**Paragraph** [2] -
1885:17, 1912:7
**paragraphs** [2] -
1909:4
**parallel** [2] - 1880:5,
1880:14
**parallelism** [1] -
1880:11
**Parcels** [1] - 1784:10
**parent** [2] - 1929:6,
1929:11
**parse** [1] - 1865:12
**part** [39] - 1758:7,
1788:2, 1788:3,
1788:18, 1804:17,
1806:7, 1806:23,
1809:13, 1810:20,
1811:9, 1823:19,
1833:2, 1834:3,
1841:15, 1855:4,

1858:21, 1863:8,
1866:13, 1868:2,
1872:21, 1876:10,
1876:18, 1887:2,
1887:3, 1888:6,
1889:9, 1889:18,
1890:3, 1891:16,
1891:22, 1892:1,
1892:2, 1895:9,
1901:2, 1913:21,
1914:3, 1917:5,
1917:8, 1929:13
**Part** [1] - 1845:13
**partially** [1] - 1784:18
**participate** [2] -
1740:19, 1842:24
**participated** [1] -
1885:10
**particular** [22] -
1744:11, 1764:13,
1771:3, 1783:18,
1796:2, 1801:9,
1805:24, 1807:24,
1807:25, 1813:9,
1813:10, 1814:6,
1833:15, 1841:21,
1850:15, 1855:5,
1863:18, 1870:13,
1873:7, 1874:6,
1907:10, 1910:16
**particularly** [5] -
1805:19, 1866:15,
1906:3, 1913:23,
1924:11
**particulars** [1] -
1907:10
**parties** [11] - 1742:6,
1836:19, 1838:23,
1839:19, 1839:20,
1843:7, 1860:7,
1861:10, 1869:9,
1924:21, 1925:2
**parties'** [1] - 1909:5
**partly** [1] - 1840:9
**party** [2] - 1742:4,
1770:24
**party's** [1] - 1742:4
**pass** [1] - 1770:24
**passed** [1] - 1923:9
**past** [1] - 1795:19
**PAUL** [4] - 1739:8,
1767:11, 1767:13,
1932:8
**Paul** [2] - 1767:5,
1767:11
**pause** [1] - 1900:11
**Pause** [3] - 1741:4,
1763:3, 1850:4
**pay** [7] - 1770:17,
1781:1, 1781:5,

1781:6, 1787:9,
1787:10
**paying** [2] - 1770:1,
1787:12
**PD** [1] - 1833:3
**PEACE** [1] - 1738:15
**Pennsylvania** [1] -
1738:22
**people** [9] - 1782:16,
1826:11, 1835:17,
1866:12, 1876:9,
1906:9, 1907:14,
1910:1
**people's** [2] - 1835:10,
1835:11
**People's** [2] - 1779:9,
1791:25
**perfect** [5] - 1854:21,
1888:4, 1907:6,
1909:25, 1924:8
**perfectly** [3] - 1862:4,
1862:9, 1871:2
**perform** [1] - 1774:24
**performing** [1] -
1782:19
**perhaps** [7] - 1742:1,
1804:14, 1872:4,
1872:25, 1918:3,
1923:10, 1924:6
**Perhaps** [1] - 1924:14
**period** [3] - 1768:22,
1776:5, 1877:22
**peripheral** [2] -
1857:4, 1858:24
**permit** [4] - 1740:8,
1807:6, 1811:6,
1864:14
**permitted** [8] -
1840:25, 1847:4,
1847:22, 1848:22,
1889:19, 1889:20,
1892:23
**person** [30] - 1764:13,
1764:14, 1765:15,
1765:18, 1766:5,
1766:7, 1774:24,
1778:12, 1778:15,
1802:6, 1824:15,
1828:3, 1866:3,
1868:5, 1874:7,
1880:8, 1880:9,
1880:15, 1880:16,
1880:17, 1895:19,
1896:16, 1910:12,
1910:18, 1918:2,
1920:18, 1920:22,
1921:1, 1929:7,
1929:23
**person's** [3] -
1765:25, 1778:15,

1811:10
**personal** [1] - 1826:24
**personally** [2] -
1745:5, 1824:25
**personnel** [5] -
1906:13, 1907:13,
1907:14, 1908:11,
1910:20
**persons** [1] - 1883:8
**perspective** [1] -
1813:7
**pertaining** [1] -
1755:12
**pertinent** [3] - 1807:6,
1824:2, 1824:3
**phone** [7] - 1757:22,
1757:23, 1785:17,
1833:8, 1838:24,
1839:1
**photo** [1] - 1755:3
**photos** [2] - 1764:15,
1899:18
**phrase** [3] - 1807:25,
1848:5, 1874:10
**phrased** [5] - 1804:21,
1841:5, 1854:8,
1871:20, 1924:25
**phrasing** [6] -
1847:20, 1853:14,
1853:20, 1865:1,
1874:6, 1912:2
**pick** [1] - 1885:25
**picked** [2] - 1869:10,
1876:4
**picture** [8] - 1765:15,
1778:23, 1827:13,
1827:17, 1827:19,
1827:22, 1828:5,
1907:4
**pictures** [5] - 1798:16,
1798:18, 1799:11,
1895:7, 1919:14
**piece** [2] - 1769:16,
1899:19
**pieces** [1] - 1841:19
**place** [9] - 1744:11,
1825:14, 1830:14,
1835:8, 1862:8,
1878:2, 1896:9,
1927:17, 1928:9
**places** [1] - 1927:1
**planning** [1] - 1833:3
**plans** [1] - 1904:11
**plate** [3] - 1785:19,
1789:7, 1789:8
**play** [4] - 1740:9,
1891:21, 1903:2,
1931:15
**played** [7] - 1740:24,
1848:7, 1889:9,

1889:10, 1889:11, 1891:6, 1892:2
**players** [3] - 1908:5, 1909:19, 1911:9
**plays** [1] - 1894:23
**Plaza** [2] - 1738:16, 1739:15
**plea** [1] - 1818:7
**plead** [1] - 1818:6
**plural** [2] - 1886:2, 1886:4
**point** [45] - 1758:4, 1758:5, 1776:21, 1798:19, 1801:19, 1803:2, 1806:22, 1809:24, 1811:2, 1814:9, 1817:6, 1826:4, 1829:20, 1829:21, 1835:5, 1835:19, 1847:7, 1852:1, 1852:18, 1853:23, 1863:9, 1868:11, 1869:19, 1870:6, 1873:19, 1875:15, 1877:3, 1877:4, 1880:22, 1884:10, 1887:5, 1888:14, 1893:6, 1896:13, 1898:5, 1904:15, 1910:9, 1915:24, 1921:3, 1922:13, 1922:20, 1923:16, 1923:19, 1925:17, 1925:19
**pointed** [2] - 1765:24, 1923:23
**points** [3] - 1781:2, 1882:21, 1908:8
**Police** [8] - 1772:25, 1797:25, 1823:12, 1829:9, 1836:22, 1836:24, 1838:24, 1839:1
**police** [19] - 1780:20, 1785:15, 1785:19, 1787:19, 1798:9, 1809:7, 1809:15, 1814:16, 1824:20, 1826:8, 1830:18, 1831:1, 1831:9, 1835:3, 1835:6, 1835:14, 1835:18, 1903:21
**portion** [9] - 1750:19, 1762:23, 1881:9, 1888:9, 1890:7, 1891:4, 1891:21, 1907:18, 1913:20
**portions** [1] - 1892:4
**position** [4] - 1750:5,

1823:17, 1897:22, 1929:15
**positions** [1] - 1823:16
**positive** [2] - 1804:20, 1806:25
**possibility** [1] - 1799:20
**possible** [5] - 1782:22, 1784:5, 1818:1, 1909:17, 1931:6
**possibly** [2] - 1800:5, 1801:18
**post** [2] - 1892:7, 1930:13
**postarrest** [2] - 1888:7, 1888:16
**posted** [1] - 1892:4
**poster** [3] - 1778:15, 1779:3, 1779:7
**potential** [4] - 1764:7, 1840:18, 1852:8, 1867:6
**potentially** [6] - 1791:5, 1824:1, 1824:9, 1825:9, 1859:8, 1916:11
**powers** [1] - 1922:18
**practice** [4] - 1743:18, 1756:16, 1767:23
**precedent** [1] - 1923:12
**precisely** [2] - 1861:6, 1892:8
**predecessor** [2] - 1857:20, 1923:14
**predict** [1] - 1815:10
**prefer** [3] - 1860:24, 1875:6, 1922:16
**preference** [1] - 1927:25
**prejudice** [3] - 1810:5, 1840:17, 1840:18
**prejudices** [1] - 1875:5
**premarked** [4] - 1748:8, 1748:10, 1752:8, 1781:10
**prepare** [3] - 1747:15, 1807:18, 1807:19
**prepared** [6] - 1748:1, 1752:10, 1752:24, 1753:10, 1753:18, 1754:11
**preponderance** [2] - 1876:8, 1876:22
**presence** [2] - 1793:1, 1817:23
**present** [7] - 1768:3,

1785:20, 1842:4, 1842:7, 1842:10, 1861:21, 1900:16
**presentation** [1] - 1852:9
**presented** [1] - 1872:19
**presenting** [1] - 1819:20
**preserve** [2] - 1751:11, 1916:22
**preserved** [1] - 1891:24
**press** [1] - 1865:7
**presumably** [1] - 1810:11
**presume** [2] - 1812:10, 1890:7
**presumption** [1] - 1930:22
**pretrial** [1] - 1875:19
**pretty** [3] - 1797:7, 1852:7, 1859:22
**prevent** [1] - 1818:21
**preventing** [1] - 1898:24
**preview** [2] - 1877:12, 1902:17
**previously** [6] - 1744:21, 1770:13, 1823:12, 1827:10, 1831:21, 1907:5
**primarily** [3] - 1782:16, 1901:8, 1916:3
**primary** [3] - 1908:23, 1917:23, 1923:1
**principle** [1] - 1892:13
**principles** [3] - 1920:14, 1920:15, 1921:8
**privacy** [1] - 1852:13
**Private** [2] - 1753:19, 1769:12
**private** [29] - 1744:9, 1744:10, 1744:13, 1744:19, 1744:23, 1745:8, 1753:18, 1755:2, 1760:20, 1763:23, 1764:1, 1764:5, 1767:23, 1768:3, 1768:16, 1768:17, 1768:25, 1769:9, 1769:23, 1770:22, 1772:19, 1773:3, 1773:5, 1773:14, 1773:22, 1774:12, 1775:5, 1775:12, 1778:5
**probable** [1] - 1825:8

**probative** [2] - 1810:4, 1840:16
**problem** [14] - 1768:7, 1768:11, 1806:23, 1833:15, 1868:18, 1871:4, 1888:25, 1891:6, 1892:15, 1896:6, 1903:7, 1904:4, 1907:17, 1930:25
**proceed** [1] - 1752:5
**proceeding** [1] - 1820:22
**Proceedings** [1] - 1739:18
**proceedings** [7] - 1741:4, 1763:3, 1809:25, 1817:9, 1850:4, 1854:3, 1854:9
**process** [5] - 1805:25, 1830:3, 1830:5, 1830:11, 1843:6
**produce** [4] - 1862:23, 1865:3, 1865:4, 1873:13
**produced** [1] - 1739:19
**professional** [1] - 1775:13
**professionalism** [1] - 1805:21
**prohibits** [1] - 1928:2
**project** [1] - 1771:24
**prompted** [1] - 1810:21
**proof** [15] - 1750:1, 1764:15, 1814:6, 1862:2, 1862:3, 1862:14, 1870:8, 1872:18, 1872:19, 1873:9, 1909:9, 1909:11, 1910:25, 1919:18, 1930:22
**proper** [7] - 1858:9, 1861:16, 1863:19, 1865:13, 1898:11, 1902:23, 1917:25
**properly** [2] - 1798:25, 1811:21
**proposal** [4] - 1883:15, 1908:15, 1918:10, 1931:5
**propose** [15] - 1845:23, 1847:2, 1851:19, 1853:14, 1857:10, 1877:7, 1877:15, 1880:25, 1883:9, 1908:15, 1908:17, 1911:23,

1913:18, 1929:1, 1929:9
**proposed** [19] - 1766:17, 1844:14, 1848:17, 1850:6, 1851:15, 1852:16, 1853:8, 1855:3, 1856:7, 1872:10, 1882:11, 1905:24, 1909:3, 1911:16, 1911:20, 1912:5, 1914:5, 1919:3, 1924:1
**proposes** [1] - 1921:6
**proposing..** [1] - 1917:7
**proposition** [4] - 1856:14, 1863:15, 1879:18, 1919:9
**proprietary** [4] - 1775:11, 1778:2, 1782:10, 1782:12
**prosecuting** [1] - 1826:6
**prosecutor** [1] - 1768:2
**prosecutors** [1] - 1826:11
**provable** [1] - 1894:21
**prove** [5] - 1811:24, 1862:3, 1871:22, 1874:4, 1877:20
**proved** [3] - 1810:10, 1876:8, 1909:12
**proven** [2] - 1876:21, 1909:22
**provide** [8] - 1744:25, 1749:10, 1751:8, 1755:5, 1770:21, 1770:22, 1922:3, 1930:20
**provided** [7] - 1754:20, 1754:24, 1766:16, 1817:14, 1820:18, 1857:15, 1868:7
**proving** [1] - 1862:14
**public** [2] - 1812:18, 1835:13
**Public** [1] - 1763:12
**publish** [5] - 1751:1, 1762:7, 1788:22, 1832:10
**published** [9] - 1760:2, 1762:10, 1763:7, 1765:21, 1836:14, 1836:15, 1838:1, 1838:10, 1838:13
**pull** [3] - 1778:19,

1837:11, 1906:25
**Pull** [1] - 1743:11
**punishable** [2] - 1883:11, 1884:1
**purchasing** [1] - 1910:4
**purports** [1] - 1749:17
**purpose** [29] - 1776:14, 1776:17, 1776:19, 1776:20, 1802:10, 1802:13, 1802:16, 1812:3, 1841:1, 1850:15, 1852:3, 1853:15, 1855:6, 1857:3, 1883:10, 1883:18, 1884:1, 1890:20, 1891:7, 1891:11, 1891:12, 1894:9, 1897:19, 1898:11, 1898:12, 1901:13, 1902:7, 1908:13, 1920:24
**purposes** [7] - 1802:8, 1831:21, 1891:12, 1902:9, 1906:11, 1907:21, 1924:9
**pursuant** [3] - 1837:1, 1837:22, 1837:24
**pursue** [1] - 1857:24
**push** [1] - 1783:10
**put** [38] - 1740:24, 1741:24, 1807:12, 1807:14, 1808:25, 1810:6, 1810:8, 1810:24, 1814:11, 1815:6, 1820:12, 1821:24, 1833:11, 1840:13, 1863:5, 1863:14, 1863:20, 1864:21, 1865:15, 1865:19, 1867:18, 1870:19, 1871:7, 1871:11, 1871:14, 1873:21, 1879:6, 1883:22, 1890:19, 1892:22, 1892:25, 1894:13, 1895:14, 1920:5, 1926:23, 1928:16, 1929:10, 1931:14
**puts** [2] - 1866:13, 1891:1
**putting** [1] - 1921:14
**puzzle** [1] - 1870:19
**puzzled** [1] - 1919:12

## Q

**Qin** [1] - 1899:22

**QQ** [4] - 1758:11, 1758:13, 1761:22, 1761:25
**qq.com** [3] - 1758:14, 1761:20, 1762:3
**qualify** [1] - 1821:22
**qualitatively** [1] - 1865:13
**quality** [1] - 1828:5, 1904:8
**quandary** [1] - 1898:10
**quarter** [2] - 1760:6, 1839:17
**query** [1] - 1782:20
**questioning** [4] - 1746:24, 1807:13, 1824:17, 1825:17
**questions** [28] - 1749:13, 1754:1, 1755:18, 1755:20, 1763:16, 1765:7, 1766:19, 1771:6, 1786:22, 1794:5, 1803:7, 1804:16, 1805:19, 1805:23, 1808:24, 1811:22, 1814:20, 1821:20, 1821:22, 1824:8, 1824:13, 1826:15, 1829:2, 1830:16, 1834:5, 1834:12, 1834:16, 1861:4
**quick** [3] - 1792:4, 1877:9, 1898:19
**quicker** [1] - 1768:8
**quickly** [1] - 1877:12
**quiet** [1] - 1922:16
**quite** [9] - 1811:3, 1859:6, 1879:20, 1881:9, 1881:22, 1893:10, 1893:16, 1903:25, 1922:9
**quote** [2] - 1913:5, 1923:3

## R

**Rafiekian** [2] - 1923:1, 1924:5
**raise** [2] - 1806:20, 1877:6
**raised** [8] - 1852:8, 1854:4, 1854:10, 1854:15, 1854:19, 1856:4, 1898:5
**raised..** [1] - 1854:9
**raises** [2] - 1856:3, 1876:13
**ran** [2] - 1756:5,

1784:3
**rate** [1] - 1769:24
**rather** [7] - 1797:2, 1814:9, 1840:17, 1840:24, 1853:13, 1858:12, 1920:3
**reached** [4] - 1744:20, 1744:22, 1745:6, 1745:8
**reaction** [1] - 1905:23
**read** [29] - 1754:17, 1754:18, 1757:5, 1757:8, 1762:3, 1762:17, 1762:20, 1765:24, 1777:8, 1789:3, 1803:13, 1803:14, 1819:17, 1833:5, 1833:9, 1836:7, 1838:17, 1844:1, 1844:6, 1848:22, 1858:22, 1870:3, 1883:21, 1885:25, 1913:21, 1921:12, 1929:10
**reading** [3] - 1838:20, 1903:11, 1921:5
**reads** [4] - 1836:17, 1868:4, 1878:13, 1902:20
**ready** [2] - 1804:4, 1817:18
**real** [7] - 1743:20, 1782:2, 1923:22, 1925:22, 1926:23, 1927:3, 1928:21
**realities** [2] - 1924:10
**reality** [2] - 1780:15, 1916:2
**realize** [2] - 1872:16, 1883:1
**really** [32] - 1750:6, 1761:15, 1790:3, 1794:2, 1794:3, 1804:21, 1806:8, 1807:2, 1810:15, 1813:23, 1814:21, 1841:20, 1841:22, 1842:13, 1854:14, 1857:18, 1859:1, 1859:17, 1865:6, 1866:4, 1866:11, 1878:15, 1887:15, 1894:9, 1901:6, 1906:21, 1910:24, 1919:23, 1920:9, 1920:12, 1923:20, 1931:9
**realtime** [2] - 1820:5, 1918:21
**reason** [19] - 1777:16,

1783:14, 1830:20, 1831:4, 1831:5, 1857:24, 1858:1, 1864:9, 1871:16, 1874:20, 1891:25, 1893:14, 1895:2, 1897:15, 1897:17, 1904:7, 1909:20, 1917:15
**reasonable** [20] - 1862:4, 1862:15, 1863:12, 1868:1, 1868:5, 1871:8, 1871:22, 1872:20, 1873:14, 1873:15, 1873:18, 1873:20, 1873:25, 1874:4, 1874:7, 1875:2, 1875:10, 1876:21, 1895:1
**reasonably** [1] - 1879:3
**reasons** [3] - 1859:10, 1896:21, 1911:18
**rebut** [1] - 1894:13
**recalled** [2] - 1801:14, 1801:17
**receive** [1] - 1761:4
**received** [6] - 1769:2, 1803:20, 1806:3, 1806:10, 1817:15, 1918:13
**receiving** [4] - 1768:24, 1779:25, 1829:4, 1923:17
**recent** [2] - 1856:15, 1869:3
**recently** [1] - 1903:2
**recess** [1] - 1841:25
**Recess** [1] - 1817:22
**recitation** [1] - 1859:9
**recite** [2] - 1812:22, 1927:4
**recites** [1] - 1906:7
**recognize** [12] - 1748:1, 1752:14, 1752:22, 1753:5, 1753:14, 1782:8, 1782:9, 1787:2, 1827:13, 1827:15, 1827:17, 1828:3
**recognizing** [1] - 1922:7
**recollection** [30] - 1764:9, 1777:1, 1778:11, 1780:2, 1782:23, 1782:24, 1783:2, 1783:20, 1784:13, 1784:21, 1785:14, 1786:2,

1786:4, 1786:18, 1787:15, 1787:22, 1789:11, 1789:14, 1789:20, 1790:2, 1790:12, 1790:13, 1795:23, 1799:6, 1799:19, 1800:19, 1801:11, 1801:13, 1831:18, 1873:5
**recommendation** [3] - 1768:25, 1769:22, 1816:10
**reconsider** [1] - 1872:7
**reconvene** [1] - 1804:11
**record** [39] - 1740:9, 1740:17, 1741:2, 1742:15, 1744:4, 1748:7, 1750:4, 1750:18, 1767:10, 1771:23, 1788:6, 1789:12, 1800:2, 1804:13, 1804:15, 1805:3, 1805:7, 1812:9, 1812:16, 1813:6, 1813:22, 1815:6, 1817:14, 1817:24, 1819:18, 1836:8, 1840:13, 1842:5, 1855:1, 1855:11, 1857:14, 1858:3, 1866:21, 1879:7, 1888:4, 1889:15, 1897:23, 1897:24, 1922:18
**recorded** [2] - 1739:18, 1890:4
**recording** [3] - 1847:10, 1872:1
**recordings** [1] - 1846:24
**records** [8] - 1760:18, 1760:23, 1763:24, 1806:16, 1817:5, 1836:21, 1836:24, 1837:3
**recover** [1] - 1802:9
**recross** [1] - 1835:23
**Recross** [1] - 1766:22
**red** [2] - 1835:16, 1844:24
**redacted** [3] - 1740:23, 1784:18
**redirect** [6] - 1763:18, 1771:8, 1814:13, 1815:10, 1817:4, 1817:12, 1817:20, 1820:19
**REDIRECT** [6] -

1763:20, 1765:13,
1834:10, 1932:6,
1932:7, 1932:11
**Redirect** [2] - 1765:12,
1834:7
**reduce** [1] - 1925:19
**redundant** [2] -
1916:11, 1917:18
**refer** [2] - 1780:11,
1853:2
**reference** [7] -
1780:19, 1809:18,
1809:23, 1810:20,
1814:23, 1840:22,
1874:25
**referenced** [1] -
1812:15
**references** [3] -
1809:12, 1811:3,
1925:22
**referred** [3] - 1769:19,
1807:14, 1813:12
**referring** [7] - 1800:2,
1800:7, 1808:3,
1808:4, 1809:7,
1848:9, 1874:11
**refresh** [14] - 1777:1,
1777:9, 1780:2,
1783:2, 1783:20,
1784:3, 1784:21,
1786:17, 1787:14,
1787:21, 1789:11,
1790:12, 1799:18,
1831:18
**refreshes** [4] - 1779:5,
1784:13, 1791:11,
1799:6
**regard** [7] - 1776:8,
1782:20, 1801:6,
1801:8, 1841:14,
1870:15, 1905:1
**regarded** [1] - 1828:14
**regarding** [9] -
1747:7, 1779:23,
1804:16, 1808:24,
1808:25, 1840:14,
1841:2, 1852:3,
1861:4
**regards** [1] - 1817:6
**regular** [2] - 1758:13
**regularly** [1] - 1837:3
**rehabilitate** [1] -
1815:9
**reinforced** [1] -
1810:20
**reinsert** [1] - 1878:22
**relate** [2] - 1764:22,
1897:9
**related** [6] - 1805:17,
1851:6, 1867:25,

1896:14, 1901:21,
1925:4
**relates** [4] - 1805:21,
1807:1, 1841:1,
1866:22
**relating** [3] - 1756:20,
1812:10, 1930:4
**relationship** [4] -
1773:7, 1919:4,
1919:19, 1923:3
**relationships** [1] -
1922:25
**relevance** [2] -
1793:14, 1825:17
**relevant** [8] - 1805:18,
1852:20, 1854:5,
1870:13, 1871:8,
1882:20, 1908:14,
1923:10
**rely** [2] - 1858:22,
1896:21
**remain** [6] - 1742:12,
1767:7, 1771:20,
1818:10, 1847:15,
1848:25
**remainder** [2] -
1852:2, 1929:7
**remains** [1] - 1902:25
**remember** [30] -
1745:15, 1760:17,
1768:24, 1777:3,
1779:25, 1782:1,
1782:17, 1782:19,
1784:6, 1784:9,
1785:11, 1785:24,
1786:11, 1786:14,
1791:10, 1793:21,
1795:8, 1799:23,
1800:9, 1800:16,
1800:23, 1822:12,
1834:16, 1834:21,
1870:4, 1874:18,
1891:22, 1895:11,
1903:22
**remembered** [1] -
1847:20, 1853:23,
1853:25
**remind** [1] - 1741:23
**reminded** [1] - 1851:9
**remiss** [1] - 1916:17
**remove** [4] - 1881:16,
1895:16, 1911:16,
1916:10
**removed** [1] - 1912:20
**RENEE** [1] - 1739:8
**renew** [1] - 1916:5
**repatriate** [1] -
1858:17
**Repeat** [1] - 1833:24
**repeat** [2] - 1783:16,

1918:19
**repeats** [2] - 1916:12,
1918:1
**repetitive** [1] - 1878:3
**replace** [3] - 1881:20,
1882:4, 1882:18
**replacing** [1] -
1926:21
**Report** [1] - 1783:3
**report** [2] - 1783:15,
1783:21
**Reporter** [2] - 1739:14
**reporter's** [1] -
1887:16
**reports** [1] - 1816:9
**represent** [1] - 1772:9
**representation** [1] -
1856:19
**Republic** [1] - 1779:9,
1791:25
**reputation** [14] -
1806:25, 1811:22,
1812:21, 1813:3,
1813:8, 1813:25,
1814:18, 1815:8,
1816:23, 1828:17,
1828:22, 1841:2,
1841:3, 1841:23
**reputational** [1] -
1806:25
**request** [3] - 1744:18,
1755:13, 1817:5
**requested** [4] -
1755:9, 1840:19,
1844:17, 1868:14
**requesting** [2] -
1755:12, 1926:25
**requests** [1] - 1923:17
**require** [2] - 1813:14,
1881:13
**required** [5] - 1741:24,
1871:11, 1904:13,
1916:12, 1925:2
**requirement** [2] -
1917:25, 1918:2
**research** [3] - 1804:5,
1839:23, 1911:4
**reserve** [2] - 1915:23,
1916:18
**resolve** [1] - 1911:6
**respect** [10] - 1840:23,
1851:15, 1862:25,
1864:6, 1876:25,
1882:3, 1919:21,
1925:11, 1927:10,
1930:19
**respectfully** [3] -
1793:7, 1807:5,
1907:23
**responded** [1] -

1791:17
**responder** [1] - 1773:2
**response** [15] -
1758:1, 1778:4,
1780:6, 1780:8,
1791:14, 1791:16,
1799:23, 1808:9,
1808:24, 1812:8,
1815:7, 1822:12,
1833:7, 1867:1,
1887:4
**responses** [1] -
1777:1
**rest** [8] - 1803:17,
1839:11, 1839:13,
1839:21, 1848:25,
1902:25, 1904:14,
1912:12
**rests** [2] - 1741:17,
1839:7
**result** [1] - 1851:20
**resumes** [1] - 1821:16
**retain** [1] - 1744:5
**retainer** [14] - 1746:3,
1747:15, 1748:5,
1749:21, 1749:23,
1749:25, 1750:2,
1750:7, 1753:17,
1761:3, 1761:4,
1761:8, 1766:16,
1766:17
**retaining** [1] - 1745:25
**retire** [1] - 1773:12
**retired** [2] - 1773:2,
1773:13
**retract** [1] - 1863:22
**return** [2] - 1798:21,
1899:17
**returned** [1] - 1900:6
**returning** [2] -
1902:11, 1904:12
**Review** [5] - 1828:20,
1828:25, 1834:15,
1834:17, 1835:2
**review** [3] - 1814:5,
1850:1, 1930:15
**reviewed** [1] - 1856:7
**reviewing** [1] -
1915:18
**revised** [2] - 1850:6,
1851:15
**rewrite** [1] - 1877:17
**right-hand** [1] -
1762:14
**ring** [1] - 1910:8
**ripped** [1] - 1900:2
**ripped-up** [1] - 1900:2
**risk** [2] - 1911:13,
1929:16
**road** [2] - 1745:20,

1870:2
**robust** [1] - 1923:21
**ROFL** [1] - 1799:7
**Roman** [4] - 1750:14,
1845:8, 1845:9,
1867:20
**rule** [4] - 1807:5,
1807:9, 1853:9,
1853:10
**Rule** [7] - 1740:16,
1741:8, 1806:18,
1806:19, 1837:4,
1915:21, 1916:17
**ruled** [1] - 1923:20
**rules** [1] - 1811:6
**Rules** [2] - 1837:2,
1837:4
**ruling** [1] - 1857:13
**ruminating** [1] -
1866:6
**run** [1] - 1785:4
**RUNG** [1] - 1823:1
**running** [1] - 1784:6

---

## S

**S-H-I** [1] - 1742:16
**Sabrina** [3] - 1741:11,
1926:10, 1926:11
**sake** [4] - 1740:9,
1788:20, 1800:1,
1887:16
**Sand** [9] - 1869:20,
1874:18, 1903:13,
1905:22, 1907:6,
1907:18, 1908:1,
1909:3, 1910:22
**sandbagging** [1] -
1806:9
**satisfied** [1] - 1806:18
**saw** [7] - 1772:14,
1779:6, 1785:25,
1848:6, 1883:17,
1900:11, 1900:12
**scared** [1] - 1799:11
**scene** [1] - 1904:12
**scintilla** [1] - 1859:7
**scope** [3] - 1754:15,
1754:20, 1754:24
**scratching** [1] -
1805:8
**screen** [3] - 1760:3,
1786:25, 1847:12
**scripted** [1] - 1815:20
**SCU** [11] - 1780:9,
1780:11, 1780:14,
1780:19, 1807:14,
1807:15, 1807:17,
1808:10, 1809:1,
1809:18, 1814:23

**search** [3] - 1784:9, 1784:22, 1858:10
**searched** [1] - 1764:17
**seat** [2] - 1743:14, 1804:12
**seated** [1] - 1821:18
**Second** [3] - 1856:16, 1858:25, 1922:9
**second** [32] - 1741:3, 1753:4, 1753:24, 1789:11, 1804:13, 1839:5, 1843:13, 1851:18, 1853:1, 1854:6, 1854:8, 1854:25, 1855:3, 1860:1, 1868:20, 1880:21, 1881:1, 1881:3, 1881:11, 1881:21, 1882:2, 1882:3, 1882:9, 1883:6, 1887:8, 1898:8, 1898:19, 1900:10, 1906:8, 1913:3, 1927:13, 1927:14
**Secondly** [1] - 1749:7
**secondly** [2] - 1856:24, 1890:5
**seconds** [2] - 1772:14, 1895:10
**section** [20] - 1754:14, 1816:13, 1845:1, 1845:2, 1846:7, 1849:6, 1851:12, 1855:4, 1867:20, 1874:7, 1875:2, 1880:6, 1880:16, 1880:24, 1881:1, 1882:10, 1885:4, 1903:5, 1912:17, 1912:19
**Section** [19] - 1845:2, 1845:22, 1846:5, 1846:9, 1846:23, 1848:21, 1849:7, 1849:13, 1849:14, 1851:16, 1855:13, 1860:11, 1873:12, 1880:3, 1882:25, 1922:21, 1922:23, 1922:24, 1924:17
**sections** [1] - 1846:11
**Security** [1] - 1763:12
**SECURITY** [1] - 1738:21
**see** [47] - 1744:3, 1747:25, 1752:10, 1759:20, 1760:3, 1760:5, 1760:7,

1760:9, 1761:20, 1762:14, 1762:24, 1763:10, 1765:22, 1773:10, 1773:12, 1774:4, 1777:23, 1778:22, 1778:24, 1783:5, 1783:10, 1784:12, 1784:18, 1786:2, 1786:17, 1786:25, 1789:1, 1796:13, 1799:5, 1799:16, 1803:13, 1809:13, 1816:9, 1822:9, 1831:17, 1831:24, 1841:24, 1846:18, 1848:13, 1848:16, 1881:14, 1881:15, 1883:19, 1908:2, 1912:6, 1918:23, 1931:20
**seeing** [2] - 1779:3, 1829:10
**seek** [1] - 1886:16
**seeking** [2] - 1786:1, 1858:6
**seeks** [1] - 1898:9
**seem** [2] - 1882:6, 1890:14
**self** [2] - 1743:8, 1797:7
**self-employed** [1] - 1743:8
**self-explanatory** [1] - 1797:7
**sellers** [1] - 1910:3
**send** [4] - 1753:1, 1753:21, 1769:6, 1769:7
**sense** [24] - 1808:16, 1820:15, 1824:10, 1824:15, 1848:8, 1854:6, 1854:16, 1861:1, 1863:8, 1869:25, 1870:16, 1881:7, 1881:23, 1882:21, 1897:13, 1899:5, 1900:9, 1914:4, 1919:9, 1920:17, 1920:23, 1923:24, 1924:8, 1925:17
**sent** [9] - 1746:3, 1749:23, 1750:2, 1752:15, 1752:18, 1761:2, 1761:7, 1829:22, 1832:3
**sentence** [51] - 1843:22, 1844:6, 1845:22, 1846:14, 1847:3, 1847:4,

1848:5, 1848:9, 1848:11, 1848:15, 1848:16, 1848:21, 1850:9, 1850:19, 1852:20, 1853:1, 1855:4, 1868:4, 1868:12, 1877:23, 1878:10, 1878:12, 1878:25, 1880:7, 1880:23, 1882:8, 1882:9, 1883:8, 1883:23, 1902:20, 1902:25, 1903:14, 1906:18, 1908:17, 1911:22, 1912:7, 1912:13, 1912:20, 1912:21, 1913:5, 1918:11, 1918:12, 1918:15, 1922:7, 1924:12, 1924:16, 1924:23, 1927:17, 1929:2, 1929:8, 1929:14
**sentences** [4] - 1877:18, 1878:8, 1878:17, 1929:2
**separate** [7] - 1807:9, 1811:18, 1878:17, 1906:10, 1906:16, 1909:10, 1929:2
**September** [2] - 1762:6, 1900:5
**sergeant** [2] - 1780:21, 1809:16
**series** [4] - 1780:24, 1788:19, 1821:14, 1829:7
**serve** [2] - 1745:20, 1915:9
**server** [3] - 1830:3, 1830:5, 1830:11
**serves** [1] - 1830:6
**service** [5] - 1754:15, 1754:20, 1755:4, 1755:8, 1755:12
**services** [2] - 1754:24, 1758:7
**serving** [1] - 1759:19
**SESSION** [1] - 1842:1
**set** [2] - 1798:12, 1908:10
**Seven** [1] - 1845:4
**seven** [1] - 1845:4
**several** [2] - 1830:16, 1909:10
**shape** [1] - 1914:22
**share** [3] - 1776:18, 1783:1, 1802:2
**sheet** [2] - 1930:18, 1930:19

**Shi** [18] - 1742:10, 1742:16, 1743:7, 1746:20, 1746:25, 1752:7, 1754:9, 1756:3, 1760:3, 1760:9, 1761:2, 1763:4, 1763:22, 1765:8, 1765:15, 1766:20, 1766:24, 1876:1
**SHI** [2] - 1743:1, 1932:4
**Shi's** [1] - 1750:12
**shifting** [1] - 1912:2
**shoot** [1] - 1895:19
**shooting** [2] - 1895:18
**Short** [4] - 1769:10, 1769:12, 1785:6, 1833:3
**shorten** [1] - 1880:20
**shorter** [2] - 1881:22, 1907:5
**show** [37] - 1747:18, 1747:19, 1747:21, 1747:23, 1748:4, 1749:22, 1752:21, 1753:25, 1759:23, 1765:20, 1777:5, 1778:17, 1779:19, 1779:20, 1781:8, 1781:17, 1782:2, 1784:12, 1787:21, 1788:9, 1789:21, 1799:5, 1799:25, 1803:11, 1827:10, 1827:24, 1831:6, 1831:11, 1831:17, 1831:19, 1831:23, 1863:15, 1890:24, 1891:8, 1896:18, 1897:19, 1908:12
**showed** [5] - 1778:14, 1847:12, 1872:1, 1872:2, 1899:13
**showing** [9] - 1752:7, 1753:12, 1754:9, 1759:25, 1782:7, 1788:5, 1801:25, 1829:23, 1837:21
**shown** [5] - 1765:15, 1784:2, 1788:15, 1788:19, 1802:4
**shows** [4] - 1864:8, 1864:9, 1894:19, 1900:17
**sic** [1] - 1801:25
**side** [7] - 1762:7, 1859:23, 1864:2, 1878:16, 1906:4
**side-by-side** [1] -

1762:7
**sidebar** [4] - 1740:11, 1748:12, 1749:1, 1792:4
**Sidebar** [3] - 1752:1, 1793:1, 1794:7
**sides** [5] - 1740:18, 1815:14, 1862:1, 1901:7, 1902:14
**sightseeing** [1] - 1899:4
**sign** [2] - 1746:3, 1746:4
**signature** [1] - 1753:7
**signed** [1] - 1761:4
**significant** [3] - 1909:11, 1911:21, 1928:18
**silent** [1] - 1818:10
**similar** [3] - 1880:23, 1882:6, 1908:20
**simple** [1] - 1924:23
**simplified** [2] - 1757:7, 1757:8
**simply** [8] - 1750:1, 1783:23, 1815:21, 1841:1, 1874:3, 1904:12, 1916:10, 1917:22
**single** [5] - 1867:6, 1906:12, 1906:16, 1909:12, 1929:1
**singular** [2] - 1886:3, 1886:15
**sister** [2] - 1929:6, 1929:11
**sit** [4] - 1799:10, 1810:2, 1882:8, 1900:19
**sitting** [1] - 1799:2
**situation** [1] - 1863:4
**six** [1] - 1800:23
**sixth** [1] - 1885:17
**skeptical** [1] - 1813:17
**skip** [1] - 1786:6
**Skip** [9] - 1782:9, 1782:11, 1782:12, 1782:15, 1782:19, 1782:20, 1783:15, 1783:21, 1784:3
**skipsmasher.com** [1] - 1783:3
**Sky** [1] - 1779:15
**slide** [2] - 1822:13
**slightly** [1] - 1840:7
**slimmer** [1] - 1905:25
**slow** [2] - 1779:1, 1780:7
**slowly** [1] - 1768:6
**small** [1] - 1859:1

**Smasher** [9] - 1782:9, 1782:11, 1782:12, 1782:15, 1782:19, 1782:20, 1783:15, 1783:21, 1784:3
**sneak** [1] - 1884:10
**Solomon** [1] - 1858:25
**solve** [1] - 1823:20
**someone** [22] - 1744:2, 1744:15, 1744:17, 1745:11, 1745:20, 1759:15, 1760:20, 1766:10, 1766:11, 1768:25, 1770:20, 1821:15, 1826:3, 1829:25, 1830:6, 1859:17, 1859:18, 1876:13, 1884:10, 1895:18, 1915:6
**Someone** [1] - 1765:6
**Sometimes** [1] - 1756:20
**sometimes** [8] - 1743:24, 1745:17, 1751:10, 1824:5, 1824:18, 1824:20, 1825:1, 1879:20
**somewhat** [5] - 1813:17, 1816:17, 1868:15, 1879:17, 1916:10
**somewhere** [3] - 1758:16, 1779:13, 1883:14
**sooner** [1] - 1825:19
**Sorry** [7] - 1837:24, 1843:19, 1845:11, 1848:14, 1850:16, 1854:22, 1926:2
**sorry** [20] - 1777:12, 1777:13, 1778:25, 1779:1, 1784:10, 1788:7, 1797:3, 1798:14, 1800:3, 1800:18, 1805:12, 1808:7, 1809:14, 1818:7, 1818:16, 1859:18, 1868:3, 1905:19, 1909:6, 1913:3
**sort** [12] - 1854:15, 1858:11, 1865:2, 1866:5, 1866:16, 1869:23, 1873:16, 1873:17, 1873:21, 1876:19, 1923:23, 1923:24
**sound** [2] - 1855:11, 1858:11

**sounds** [3] - 1877:8, 1896:12, 1913:7
**source** [3] - 1785:2, 1785:3, 1915:18
**speaking** [1] - 1897:11
**specific** [9] - 1786:14, 1808:9, 1808:12, 1810:6, 1815:18, 1816:14, 1816:21, 1816:23, 1910:16
**specifically** [8] - 1747:3, 1785:12, 1785:21, 1793:5, 1812:17, 1849:22, 1873:25, 1921:9
**specifics** [1] - 1817:9
**specify** [1] - 1835:8
**speculate** [1] - 1870:10
**speeding** [1] - 1768:10
**spell** [4] - 1742:14, 1746:10, 1767:9, 1771:22
**spelled** [3] - 1763:14, 1843:16, 1844:8
**spelling** [1] - 1790:18
**spoken** [1] - 1774:9
**spotted** [1] - 1899:16
**spouse** [2] - 1929:5, 1929:10
**squad** [1] - 1825:13
**squarely** [1] - 1923:20
**stages** [1] - 1839:24
**stalking** [7] - 1843:25, 1844:2, 1844:11, 1876:17, 1877:1
**stand** [4] - 1818:8, 1818:11, 1821:16, 1903:2
**standard** [14] - 1806:24, 1814:5, 1814:7, 1862:20, 1868:15, 1868:25, 1869:20, 1871:17, 1871:19, 1873:6, 1873:19, 1874:17, 1876:25, 1930:20
**standing** [3] - 1742:12, 1767:7, 1771:20
**standpoint** [1] - 1895:16
**stands** [1] - 1856:14
**start** [11] - 1760:21, 1821:5, 1836:11, 1840:8, 1840:10, 1842:6, 1843:5, 1845:7, 1845:10,

1858:10, 1881:10
**started** [3] - 1773:9, 1865:8, 1879:18
**starting** [2] - 1806:22, 1875:13
**starts** [2] - 1848:9, 1886:15
**State** [2] - 1797:25, 1829:8
**state** [11] - 1742:14, 1767:9, 1771:22, 1792:3, 1856:9, 1880:22, 1892:8, 1893:12, 1893:21, 1894:4, 1896:18
**statement** [24] - 1870:18, 1888:5, 1888:6, 1888:9, 1888:22, 1888:24, 1889:10, 1890:23, 1891:16, 1891:17, 1892:16, 1893:13, 1893:20, 1894:5, 1894:8, 1894:19, 1896:10, 1898:8, 1901:12, 1901:16, 1902:6, 1911:12, 1916:7, 1917:25
**statements** [4] - 1857:8, 1890:17, 1893:11, 1896:21
**states** [1] - 1892:4
**STATES** [4] - 1738:1, 1738:3, 1738:12, 1738:15
**States** [14] - 1738:5, 1738:19, 1757:17, 1834:2, 1869:8, 1913:22, 1914:3, 1917:6, 1917:11, 1917:12, 1917:19, 1918:5, 1923:6, 1923:13
**stating** [1] - 1807:25
**statute** [11] - 1876:17, 1920:16, 1920:17, 1920:24, 1921:4, 1921:8, 1923:15, 1923:20, 1924:9, 1928:1, 1929:3
**statutes** [2] - 1922:21, 1923:22
**stay** [1] - 1843:1
**stayed** [1] - 1773:10
**stenography** [1] - 1739:18
**step** [2] - 1771:10, 1804:8
**steps** [1] - 1804:10
**stick** [4] - 1816:18,

1816:24, 1874:16, 1886:13
**sticker** [1] - 1751:12
**stickers** [2] - 1751:8, 1751:9
**still** [24] - 1772:18, 1773:12, 1814:2, 1819:5, 1820:5, 1820:8, 1842:23, 1848:3, 1848:11, 1858:19, 1858:22, 1859:19, 1859:23, 1870:7, 1876:7, 1883:11, 1884:1, 1885:3, 1906:5, 1910:6, 1916:24, 1918:4, 1920:19, 1930:16
**stip** [1] - 1751:1
**stipulated** [6] - 1836:18, 1838:22, 1910:5, 1924:22, 1924:23, 1925:2
**stipulation** [4] - 1836:16, 1837:7, 1837:25, 1839:3
**stipulations** [3] - 1819:16, 1819:17, 1836:7
**stop** [2] - 1783:13, 1796:21
**stops** [1] - 1869:1
**straightforward** [2] - 1892:12, 1919:10
**Strangely** [1] - 1931:8
**stray** [2] - 1865:25, 1867:14
**strayed** [1] - 1867:11
**strays** [1] - 1861:8
**Street** [5] - 1769:5, 1780:12, 1780:22, 1808:4, 1809:17
**street** [2] - 1809:11, 1810:23
**strike** [6] - 1843:23, 1844:14, 1850:10, 1850:13, 1908:15, 1924:20
**strikeout** [1] - 1855:3
**strikes** [2] - 1870:5, 1919:9
**striking** [4] - 1851:19, 1855:7, 1881:3, 1913:19
**strongly** [2] - 1853:19, 1913:23
**struck** [1] - 1855:8
**stuck** [2] - 1816:4, 1863:19
**stuff** [4] - 1775:8,

1814:6, 1879:21, 1913:8
**Stuyvesant** [1] - 1773:6
**Stuyvesantinvestiga tive.com** [1] - 1781:19
**subject** [10] - 1755:2, 1774:25, 1779:12, 1785:25, 1796:23, 1815:25, 1817:4, 1828:19, 1828:24, 1853:16
**subject's** [1] - 1755:3
**submission** [1] - 1838:3
**submit** [2] - 1863:23, 1866:7
**submitted** [1] - 1919:2
**submitting** [1] - 1749:8
**subpoena** [1] - 1830:8
**substantial** [2] - 1773:18, 1922:25
**substantiated** [18] - 1805:24, 1805:25, 1811:11, 1811:16, 1811:17, 1811:18, 1811:19, 1812:24, 1815:23, 1815:25, 1816:18, 1816:25, 1817:11, 1828:19, 1828:24, 1834:14, 1835:19, 1840:23
**substantive** [6] - 1843:4, 1849:9, 1853:6, 1878:5, 1878:10, 1912:24
**substantively** [1] - 1869:23
**substitute** [3] - 1925:21, 1926:8, 1928:21
**subtitle** [1] - 1848:4
**subtitles** [5] - 1847:1, 1847:8, 1848:1, 1848:7, 1848:19, 1848:23
**subtle** [2] - 1872:4, 1874:21
**suffice** [1] - 1921:2
**sufficient** [7] - 1871:22, 1879:3, 1886:24, 1897:18, 1901:5, 1902:1, 1923:1
**suggest** [6] - 1805:2, 1841:8, 1863:20, 1863:22, 1866:1, 1902:5

**suggested** [3] - 1813:21, 1868:25, 1905:21
**suggesting** [5] - 1865:3, 1865:14, 1870:9, 1916:10, 1926:13
**suggestion** [8] - 1760:19, 1763:23, 1843:8, 1843:11, 1859:16, 1866:10, 1875:11, 1917:2
**suggestions** [1] - 1930:19
**suggests** [5] - 1858:11, 1864:22, 1871:10, 1887:13, 1920:14
**Suite** [1] - 1739:7
**summarize** [1] - 1871:25
**summarizing** [1] - 1909:4
**summary** [1] - 1815:23
**summation** [2] - 1860:18, 1891:20
**summations** [2] - 1839:20, 1840:1
**summer** [1] - 1744:1
**summons** [1] - 1835:16
**Sun** [3] - 1762:25, 1765:16, 1766:2
**Sun's** [1] - 1765:25
**Super** [1] - 1783:3
**supplanting** [1] - 1882:2
**support** [1] - 1887:6
**supported** [1] - 1889:13
**supports** [2] - 1742:6, 1923:23
**suppose** [2] - 1814:8, 1895:17
**supposed** [1] - 1865:16
**supposition** [1] - 1895:1
**surname** [1] - 1762:24
**Surname** [1] - 1762:25
**surprise** [1] - 1805:22
**surprising** [1] - 1904:11
**surrounded** [1] - 1809:4
**surrounding** [1] - 1926:14
**surveil** [1] - 1786:1
**surveillance** [47] -

1774:16, 1774:18, 1774:19, 1774:24, 1775:1, 1775:6, 1775:7, 1776:12, 1776:16, 1778:8, 1785:6, 1785:8, 1785:16, 1785:18, 1785:20, 1785:24, 1786:8, 1787:8, 1787:18, 1789:13, 1789:18, 1789:24, 1790:19, 1790:23, 1790:25, 1791:1, 1795:14, 1795:22, 1796:12, 1797:17, 1797:21, 1798:17, 1799:10, 1800:20, 1800:25, 1801:7, 1801:8, 1802:13, 1803:9, 1822:16, 1830:22, 1830:24, 1831:15, 1834:3, 1927:18, 1928:9
**surveillances** [5] - 1795:19, 1803:6, 1833:14, 1833:18, 1833:25
**suspect** [3] - 1755:11, 1806:23, 1888:25
**suspected** [1] - 1793:5
**suspicious** [3] - 1823:25, 1824:2, 1831:11
**sustain** [1] - 1783:22
**Sustained** [3] - 1766:18, 1792:1, 1802:12
**sustained** [2] - 1766:18, 1861:4
**swear** [3] - 1742:12, 1767:7, 1771:20
**switch** [3] - 1800:24, 1801:7, 1837:12
**Switching** [1] - 1838:19
**sworn** [6] - 1742:13, 1743:3, 1767:8, 1767:15, 1771:21, 1772:5

---

**T**

**table** [3] - 1777:14, 1845:9, 1877:8
**talks** [4] - 1873:12, 1873:14, 1873:15, 1906:9
**tape** [7] - 1889:4, 1889:15, 1890:8,

1891:22, 1894:23, 1895:11, 1899:19
**target** [1] - 1822:16
**tax** [1] - 1852:13
**taxes** [1] - 1806:14
**teams** [1] - 1860:11
**technically** [2] - 1848:3, 1851:18
**technology** [2] - 1837:15, 1837:20
**telephone** [3] - 1862:7, 1863:6, 1889:8
**ten** [1] - 1915:9
**tend** [1] - 1870:3
**tenuous** [1] - 1858:18
**tenure** [1] - 1835:3
**term** [3] - 1929:5, 1929:6, 1929:22
**terms** [5] - 1859:2, 1862:14, 1872:5, 1889:14, 1907:14
**terrible** [1] - 1818:6
**testified** [19] - 1743:3, 1745:24, 1754:11, 1756:10, 1758:25, 1761:2, 1766:4, 1767:15, 1770:13, 1772:5, 1789:23, 1805:15, 1823:11, 1828:13, 1830:21, 1833:13, 1857:22, 1899:13, 1899:25
**testify** [12] - 1782:4, 1811:4, 1818:14, 1818:18, 1818:21, 1819:5, 1819:9, 1820:9, 1858:8, 1887:2, 1887:4
**testifying** [4] - 1818:15, 1818:17, 1819:23, 1820:1
**testimony** [27] - 1745:7, 1750:1, 1764:25, 1770:19, 1806:1, 1807:6, 1808:6, 1808:15, 1816:11, 1836:1, 1841:2, 1845:13, 1853:12, 1853:16, 1856:17, 1856:21, 1857:15, 1857:21, 1861:22, 1864:22, 1865:7, 1888:1, 1888:3, 1898:22, 1899:18, 1899:21, 1915:11
**testimony..** [1] - 1846:16
**text** [19] - 1769:2,

1769:3, 1769:4, 1769:9, 1796:11, 1799:2, 1800:4, 1800:17, 1807:25, 1808:12, 1808:25, 1813:10, 1813:13, 1829:7, 1829:10, 1829:22, 1831:25, 1832:3, 1833:2
**texted** [3] - 1764:3, 1764:5, 1829:3
**texts** [3] - 1798:13, 1821:14, 1857:8
**the..** [1] - 1837:12
**theme** [2] - 1810:25, 1812:7
**themselves** [4] - 1885:13, 1886:4, 1912:18, 1929:25
**theoretically** [1] - 1896:19
**theories** [2] - 1920:11, 1921:16
**theory** [5] - 1887:6, 1911:7, 1915:14, 1920:1, 1920:8
**thereof** [3] - 1863:2, 1873:8, 1901:23
**they've** [4] - 1806:17, 1866:14, 1899:23, 1926:9
**thin** [1] - 1858:22
**thinking** [7] - 1798:20, 1798:24, 1805:8, 1847:19, 1860:22, 1861:2, 1876:18
**third** [5] - 1770:24, 1851:18, 1868:3, 1898:25, 1909:5
**thorough** [1] - 1873:16
**thoughts** [3] - 1878:14, 1910:13, 1910:16
**thousand** [1] - 1824:25
**three** [6] - 1762:11, 1763:5, 1811:17, 1878:17, 1882:22, 1898:21
**Three** [4] - 1925:14, 1925:15, 1927:4, 1927:10
**throughout** [3] - 1835:2, 1886:12, 1928:21
**throw** [1] - 1896:1
**tied** [1] - 1917:14
**tightly** [1] - 1815:20
**timely** [2] - 1902:22,

1904:18
**timing** [2] - 1817:25, 1907:14
**tiny** [1] - 1922:20
**titles** [2] - 1919:14, 1919:15
**TLO** [3] - 1777:24, 1778:1, 1802:5
**Tlo** [1] - 1822:5
**today** [7] - 1764:20, 1774:4, 1774:7, 1818:1, 1906:7, 1906:8
**together** [5] - 1773:20, 1841:9, 1841:17, 1870:20, 1929:10
**tomorrow** [4] - 1839:19, 1930:15, 1930:17, 1931:20
**took** [19] - 1771:11, 1798:16, 1835:8, 1850:18, 1853:18, 1862:8, 1878:2, 1887:10, 1888:2, 1888:10, 1889:6, 1889:23, 1890:11, 1890:16, 1891:13, 1895:12, 1899:22, 1900:4, 1914:5
**top** [4] - 1761:13, 1761:19, 1831:23, 1873:1
**topics** [1] - 1826:14
**total** [1] - 1803:16
**Totally** [2] - 1757:19, 1757:20
**touch** [2] - 1887:19, 1887:23
**towards** [2] - 1743:11, 1754:22
**Township** [3] - 1836:21, 1836:24, 1838:24
**Trace** [1] - 1783:3
**track** [4] - 1849:23, 1867:24, 1896:1, 1930:13
**tracks** [1] - 1903:13
**traditional** [2] - 1757:7, 1874:17
**train** [1] - 1848:17
**trait** [2] - 1806:25, 1807:6
**transaction** [1] - 1913:1
**transactions** [1] - 1743:20
**TRANSCRIPT** [1] - 1738:11
**Transcript** [1] -

1739:18
transcript [14] - 1740:16, 1740:20, 1740:23, 1741:6, 1741:8, 1746:10, 1808:11, 1808:23, 1809:3, 1809:14, 1847:21, 1848:3, 1850:24, 1879:14
Transcription [1] - 1739:19
transcripts [10] - 1845:2, 1846:23, 1846:25, 1847:5, 1847:8, 1847:16, 1847:23, 1847:25, 1848:18, 1848:23
translated [1] - 1846:15
translation [2] - 1749:10, 1749:19
translations [2] - 1846:6, 1846:8
transparent [1] - 1852:7
transposed [1] - 1906:17
travel [3] - 1760:18, 1763:24, 1928:2
traveled [1] - 1927:14
traveling [1] - 1928:2
treating [1] - 1793:3
Trial [1] - 1738:23
TRIAL [1] - 1738:11
trial [16] - 1818:10, 1837:6, 1837:8, 1839:4, 1839:24, 1850:20, 1855:5, 1855:8, 1861:6, 1861:8, 1861:9, 1861:13, 1872:19, 1926:21, 1928:19, 1930:23
tried [1] - 1848:2
trip [3] - 1887:8, 1897:7, 1898:19
true [15] - 1836:20, 1836:23, 1888:17, 1891:13, 1893:8, 1893:13, 1896:3, 1896:9, 1898:13, 1901:14, 1902:7, 1903:13, 1904:13, 1909:21, 1925:18
truly [1] - 1839:23
trust [3] - 1791:9, 1795:6, 1861:14
trusted [1] - 1791:13
trusting [1] - 1791:23
truth [14] - 1889:2,

1890:16, 1890:21, 1890:22, 1891:1, 1891:9, 1892:3, 1892:9, 1892:14, 1893:7, 1901:12, 1901:16, 1902:10, 1915:7
truthfulness [2] - 1807:1, 1807:10
try [4] - 1787:21, 1813:24, 1824:16, 1859:2
trying [17] - 1745:11, 1778:11, 1793:9, 1798:7, 1805:7, 1817:25, 1852:12, 1864:16, 1865:10, 1866:2, 1870:19, 1894:12, 1894:13, 1901:6, 1906:24, 1931:9
Tu [1] - 1921:17
TUNG [46] - 1739:10, 1739:11, 1746:17, 1746:19, 1747:12, 1747:14, 1747:23, 1748:10, 1749:5, 1749:11, 1749:20, 1750:23, 1751:1, 1751:6, 1751:15, 1752:6, 1753:24, 1754:2, 1755:18, 1765:11, 1765:14, 1766:19, 1770:7, 1820:13, 1821:3, 1821:10, 1832:9, 1839:13, 1842:23, 1844:20, 1845:20, 1849:20, 1860:14, 1878:19, 1879:12, 1882:15, 1884:7, 1905:9, 1925:10, 1927:8, 1928:7, 1929:21, 1930:3, 1930:11, 1932:5, 1932:7
Tung [23] - 1746:16, 1746:20, 1746:22, 1747:10, 1751:8, 1752:5, 1753:20, 1754:22, 1755:19, 1765:10, 1770:5, 1818:5, 1819:4, 1820:11, 1821:6, 1822:25, 1839:12, 1842:21, 1849:19, 1860:13, 1882:14, 1916:14, 1925:8
turn [3] - 1812:12, 1817:5, 1924:4

turned [4] - 1811:8, 1812:10, 1857:21, 1895:12
turning [1] - 1888:17
turns [1] - 1822:7
tweak [1] - 1841:17
tweaks [1] - 1841:13
twenty [1] - 1823:15
Twenty [1] - 1773:1
Twenty-year [1] - 1773:1
twice [1] - 1906:1
Two [7] - 1913:9, 1913:12, 1916:10, 1924:17, 1924:18, 1925:11, 1931:7
two [33] - 1760:25, 1786:13, 1787:15, 1803:7, 1805:24, 1811:11, 1816:1, 1819:17, 1833:7, 1836:7, 1840:8, 1840:10, 1845:7, 1850:12, 1863:5, 1866:12, 1877:16, 1878:8, 1881:15, 1882:6, 1883:7, 1898:20, 1899:14, 1900:3, 1906:9, 1907:11, 1908:23, 1909:2, 1909:4, 1909:24, 1912:19, 1929:2
type [10] - 1743:18, 1773:21, 1775:8, 1775:13, 1778:5, 1785:18, 1789:7, 1789:8, 1815:24, 1865:19
types [1] - 1774:13
typically [2] - 1807:1, 1873:5
typo [9] - 1833:5, 1846:6, 1849:7, 1852:25, 1879:21, 1885:8, 1885:19, 1905:13, 1913:2
typos [1] - 1843:12

U

U.S [7] - 1738:21, 1756:15, 1758:16, 1768:1, 1918:6, 1920:14, 1920:23
U.S.C [1] - 1923:15
ultimate [1] - 1766:12
ultimately [4] - 1761:11, 1910:3, 1921:2, 1922:10

uncalled [1] - 1856:3
unclear [1] - 1808:5
uncontroversial [1] - 1879:18
under [15] - 1760:9, 1824:16, 1880:16, 1880:21, 1881:2, 1881:11, 1881:19, 1882:2, 1882:3, 1883:6, 1891:23, 1916:17, 1927:17, 1928:9, 1929:3
undermine [1] - 1921:12
Underneath [1] - 1762:6
undersigned [4] - 1836:19, 1838:23
Understood [2] - 1750:10, 1757:9
understood [8] - 1750:13, 1760:14, 1770:19, 1770:23, 1790:4, 1801:20, 1819:3, 1819:8
undeveloped [1] - 1922:8
unexecuted [1] - 1749:25
unfair [2] - 1806:21, 1818:2
unidentified [1] - 1909:23
unimpervious [1] - 1813:4
unindicted [1] - 1909:22
unique [1] - 1920:16
Unit [4] - 1780:12, 1780:22, 1808:5, 1809:17
unit [2] - 1808:21, 1810:23
UNITED [4] - 1738:1, 1738:3, 1738:12, 1738:15
United [14] - 1738:5, 1738:19, 1757:17, 1834:2, 1869:8, 1913:22, 1914:3, 1917:6, 1917:11, 1917:12, 1917:19, 1918:5, 1923:6, 1923:13
unkind [1] - 1818:2
unknown [3] - 1745:18, 1764:14, 1910:6
unlawful [3] - 1795:25, 1806:14,

1906:11
unless [4] - 1849:10, 1859:17, 1905:11, 1909:11
unlikely [1] - 1877:8
unnecessary [1] - 1843:23
unreliability [1] - 1814:11
unsigned [1] - 1753:8
untruthfulness [1] - 1807:1
unwittingly [1] - 1815:5
up [62] - 1745:25, 1746:2, 1762:3, 1762:12, 1762:23, 1765:1, 1767:6, 1771:19, 1773:14, 1773:16, 1773:17, 1773:19, 1777:15, 1777:23, 1778:19, 1778:21, 1778:23, 1783:7, 1783:10, 1805:4, 1810:24, 1811:24, 1814:10, 1816:6, 1819:16, 1821:11, 1821:24, 1824:8, 1824:16, 1827:12, 1828:1, 1829:23, 1831:6, 1831:11, 1833:2, 1837:11, 1838:2, 1841:10, 1849:23, 1850:22, 1854:22, 1857:19, 1859:22, 1863:12, 1870:4, 1876:4, 1876:6, 1877:8, 1878:15, 1879:8, 1883:18, 1886:1, 1887:10, 1892:15, 1896:8, 1900:2, 1900:23, 1905:21, 1906:25, 1919:13, 1924:15, 1930:24
upper [1] - 1762:23

V

vaguely [1] - 1790:14
value [2] - 1810:4, 1840:16
vehicle [5] - 1785:18, 1789:7, 1789:8, 1789:9, 1831:11
venue [16] - 1867:20, 1875:12, 1875:14, 1875:16, 1875:17, 1875:20, 1875:22,

1876:8, 1877:6, 1877:19, 1877:25, 1878:23, 1879:3, 1879:9, 1879:25
**verbatim** [1] - 1905:22
**verbiage** [1] - 1843:23
**verdict** [6] - 1915:3, 1915:22, 1916:6, 1916:24, 1930:18, 1930:19
**version** [8] - 1849:23, 1850:6, 1851:15, 1881:4, 1906:1, 1911:15, 1912:16, 1930:14
**versus** [6] - 1854:15, 1864:20, 1865:14, 1865:17, 1869:8, 1871:9
**veteran** [1] - 1773:1
**via** [5] - 1757:22, 1757:25, 1758:3, 1758:5, 1923:4
**victim** [1] - 1915:8
**victims** [2] - 1925:18, 1928:22
**video** [4] - 1755:3, 1764:15, 1799:11, 1892:4
**videos** [2] - 1848:7, 1899:19
**view** [4] - 1815:11, 1863:9, 1921:3, 1924:13
**viewed** [2] - 1835:9, 1835:15
**violating** [1] - 1910:1
**violation** [1] - 1852:13
**violations** [2] - 1805:24, 1851:21
**vis-à-vis** [1] - 1890:15
**volunteer** [1] - 1751:7
**volunteered** [1] - 1889:14
**vote** [1] - 1928:17
**vouched** [1] - 1808:16

## W

**wait** [2] - 1783:7, 1807:23
**waiting** [1] - 1797:23
**waive** [1] - 1842:8
**waiving** [1] - 1842:18
**wants** [11] - 1747:20, 1815:13, 1818:8, 1842:21, 1867:16, 1877:13, 1893:4, 1895:20, 1896:7, 1905:25, 1916:14

**War** [1] - 1910:2
**ward** [2] - 1929:6, 1929:14
**warning** [2] - 1902:22, 1904:18
**warrant** [14] - 1776:22, 1779:6, 1779:23, 1791:20, 1795:11, 1801:25, 1802:4, 1822:17, 1825:2, 1825:6, 1825:7, 1825:10, 1825:24, 1886:24
**warrants** [1] - 1825:4
**Warren** [1] - 1836:24
**Washington** [1] - 1738:22
**ways** [1] - 1856:23
**WeChat** [4] - 1758:3, 1758:5, 1758:6, 1758:7
**wedded** [2] - 1852:11, 1906:2
**Wednesday** [1] - 1931:24
**weigh** [2] - 1840:16, 1871:21
**weighing** [4] - 1868:5, 1874:8, 1874:11, 1874:13
**weird** [1] - 1896:12
**welcome** [1] - 1924:19
**whatsoever** [1] - 1741:24
**whereabouts** [3] - 1745:18, 1755:3, 1764:13
**whereas** [1] - 1896:2
**whichever** [1] - 1880:9
**whispering** [1] - 1890:2
**whole** [7] - 1791:20, 1791:21, 1805:8, 1807:9, 1903:5, 1904:20, 1908:10
**wholesale** [2] - 1882:2, 1921:7
**wholly** [3] - 1902:21, 1902:23, 1904:20
**wish** [1] - 1853:25
**wished** [1] - 1886:3
**withdraw** [4] - 1889:21, 1902:21, 1903:23, 1904:24
**withdrawal** [14] - 1886:19, 1887:6, 1888:19, 1889:19, 1891:2, 1901:9, 1901:24, 1902:12, 1902:14, 1903:18,

1904:9, 1904:13, 1905:20, 1912:17
**withdrawn** [4] - 1745:11, 1830:20, 1860:19, 1903:20
**withdrew** [4] - 1888:12, 1897:19, 1897:24, 1898:6
**witness** [59] - 1741:21, 1742:11, 1746:8, 1747:10, 1747:21, 1747:22, 1747:23, 1751:4, 1767:3, 1767:6, 1770:3, 1771:16, 1771:19, 1777:7, 1781:17, 1781:25, 1787:23, 1787:24, 1788:5, 1793:3, 1793:21, 1800:13, 1804:8, 1804:21, 1806:23, 1807:20, 1808:3, 1810:21, 1811:5, 1811:8, 1811:9, 1813:8, 1813:9, 1814:14, 1814:23, 1815:10, 1818:11, 1821:7, 1821:11, 1821:15, 1824:7, 1831:19, 1841:2, 1847:13, 1853:7, 1856:4, 1856:11, 1856:17, 1861:21, 1862:16, 1863:18, 1864:3, 1864:19, 1866:18, 1867:6, 1867:8, 1870:16, 1888:1, 1888:2
**Witness** [8] - 1742:13, 1767:2, 1767:8, 1771:14, 1771:21, 1804:10, 1821:16, 1836:2
**WITNESS** [28] - 1742:16, 1746:12, 1746:15, 1747:25, 1752:16, 1752:19, 1753:2, 1753:22, 1764:21, 1765:4, 1765:9, 1766:12, 1766:21, 1767:1, 1767:11, 1768:7, 1768:11, 1771:12, 1771:25, 1782:12, 1783:9, 1784:5, 1791:5, 1798:19, 1799:3, 1801:4, 1801:18, 1932:3
**witnesses** [13] -

1742:1, 1824:5, 1836:4, 1856:3, 1859:15, 1860:7, 1861:21, 1862:1, 1862:22, 1865:20, 1865:24, 1873:13
**witnesses'** [3] - 1846:15, 1853:12, 1853:16
**wittingly** [1] - 1815:5
**won** [1] - 1922:14
**wonder** [2] - 1811:7, 1903:4
**wondering** [1] - 1839:25
**WONG** [4] - 1739:8, 1754:5, 1819:22, 1819:24
**Wong** [2] - 1755:20, 1819:19, 1903:10
**word** [14] - 1774:22, 1808:15, 1810:13, 1813:9, 1843:25, 1848:5, 1853:7, 1853:13, 1853:17, 1869:21, 1871:11, 1873:11, 1927:18, 1927:25
**worded** [1] - 1860:3
**wording** [1] - 1873:7
**words** [5] - 1742:5, 1861:2, 1868:8, 1868:11, 1889:1
**wordy** [1] - 1908:24
**workers** [1] - 1773:9
**World** [1] - 1910:2
**world** [1] - 1833:20
**worms** [1] - 1814:10
**worry** [1] - 1780:18
**worth** [5] - 1870:23, 1873:19, 1879:22, 1882:19, 1929:9
**wound** [1] - 1773:19
**Wow** [7] - 1804:17, 1804:19, 1804:22, 1821:12, 1821:14, 1822:7, 1822:9
**wow** [5] - 1777:2, 1777:25, 1778:4, 1822:6, 1885:20
**write** [3] - 1757:8, 1799:22, 1854:2
**writes** [1] - 1833:8
**written** [3] - 1761:20, 1799:12, 1878:7
**wrote** [6] - 1755:4, 1799:21, 1800:22, 1833:3, 1841:15, 1920:13
**Wuhan** [1] - 1763:12

## X

**X-U** [1] - 1741:10
**Xinzi** [3] - 1741:10, 1925:25, 1926:3
**XINZI** [1] - 1741:10
**Xu** [6] - 1741:10, 1899:22, 1925:24, 1925:25, 1926:3, 1926:11

## Y

**Yan** [2] - 1920:7, 1921:16
**year** [2] - 1773:1, 1786:7
**years** [9] - 1767:25, 1769:6, 1773:11, 1773:12, 1784:6, 1800:23, 1823:15, 1823:16, 1915:9
**yesterday** [8] - 1740:11, 1818:9, 1820:3, 1840:12, 1841:12, 1843:6, 1862:6, 1906:7
**YONG** [1] - 1738:8
**Yong** [23] - 1739:10, 1744:3, 1746:21, 1746:25, 1748:11, 1754:20, 1754:24, 1755:5, 1755:8, 1755:11, 1755:15, 1757:10, 1757:21, 1759:9, 1759:13, 1759:16, 1760:17, 1761:7, 1766:5, 1766:6, 1766:16, 1844:8
**YORK** [2] - 1738:1, 1738:16
**York** [11] - 1738:6, 1738:17, 1739:7, 1739:11, 1739:15, 1756:15, 1769:8, 1772:25, 1823:12, 1877:20, 1879:5
**yourself** [3] - 1753:10, 1768:18, 1777:8
**yous** [1] - 1931:22

## Z

**Z-H-U** [1] - 1746:12
**ZHENG** [2] - 1738:8, 1842:20
**Zheng** [24] - 1739:7, 1819:20, 1839:9, 1842:15, 1842:18,

1843:15, 1844:7,
1864:22, 1876:3,
1876:4, 1887:2,
1887:4, 1887:7,
1888:8, 1892:4,
1892:7, 1893:11,
1893:21, 1899:17,
1899:18, 1899:19,
1900:3, 1900:6,
1916:1
**Zheng's** [1] - 1886:25
**ZHU** [10] - 1738:8,
1818:15, 1818:17,
1818:19, 1818:23,
1818:25, 1819:3,
1819:6, 1819:8,
1819:11
**Zhu** [55] - 1738:9,
1739:10, 1744:2,
1744:3, 1744:5,
1745:13, 1745:25,
1746:10, 1746:21,
1746:25, 1748:11,
1749:4, 1749:17,
1751:16, 1752:3,
1752:8, 1752:15,
1754:3, 1754:7,
1754:8, 1754:20,
1754:25, 1755:5,
1755:8, 1755:12,
1755:15, 1757:10,
1757:21, 1759:9,
1759:12, 1759:16,
1759:24, 1760:15,
1760:17, 1761:7,
1766:5, 1766:6,
1766:11, 1766:16,
1818:9, 1818:20,
1839:12, 1842:21,
1842:23, 1844:8,
1875:25, 1899:21,
1915:8, 1920:1,
1920:2, 1921:19,
1921:22, 1921:23,
1932:16
**Zhu's** [2] - 1750:13,
1762:20
**zone** [1] - 1768:10
**zoom** [3] - 1761:19,
1784:17, 1784:19
**zyzy996@sina.com**
[1] - 1760:14
**ZZ** [4] - 1836:13,
1836:16, 1837:8,
1837:25