1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
 2     - - - - - - - - - - - - - - X
         UNITED STATES OF AMERICA,   :   21-CR-00265(PKC)
 3                                   :
                                     :
 4                                   :   United States Courthouse
            -against-                :   Brooklyn, New York
 5                                   :
                                     :
 6                                   :   March 29, 2022
                                     :   10:00 a.m.
 7       KUANG ZEBIN,                :
                                     :
 8            Defendant.             :
       - - - - - - - - - - - - - - X
 9
            TRANSCRIPT OF CRIMINAL CAUSE FOR CURCIO HEARING
10              BEFORE THE HONORABLE PAMELA K. CHEN
                   UNITED STATES DISTRICT JUDGE
11

12
                       A P P E A R A N C E S:
13
     For the Government:        BREON PEACE, ESQ.
14                              Acting United States Attorney
                                Eastern District of New York
15                              271 Cadman Plaza East
                                Brooklyn, New York 11201
16
                                BY:  CRAIG HEEREN, ESQ.
17                                   ELLEN SISE, ESQ.
                                     Assistant United States Attorneys
18
     For the Defendant:         DEMIDCHIK LAW FIRM
19                              150 S. Wacker-Suite 2400
                                Chicago, IL 60558
20
                                BY:  MICHAEL WALSH, ESQ.
21
     Court Reporter:            DENISE PARISI, RPR, CRR
22                              225 Cadman Plaza East
                                Brooklyn, New York 11201
23                              Telephone: (718) 613-2605
                                E-mail: DeniseParisi72@gmail.com
24
     Proceedings recorded by computerized stenography.  Transcript
25   produced by Computer-aided Transcription.
```

2

1          (In open court.)

2          THE COURTROOM DEPUTY:  Criminal cause for *Curcio*

3    hearing and plea hearing, docket 21-CR-265, United States

4    versus Kuang Zebin.

5          Will the parties please state their appearances for

6    the record starting with the Government.

7          MR. HEEREN:  Good morning, Your Honor.

8          Craig Heeren on behalf of the United States.  With

9    me is my colleague, Ellen Sise.  I think I'm pretty loud, but

10   if you can't hear me, let me know.

11         THE COURT:  No, you're plenty loud.  Thank you.

12         Good morning to both of you, and apologies to

13   Ms. Sise on the last-minute fire drill on getting the elements

14   to us.  I'm sorry.  I can imagine you sprinting across the

15   street moments before, having done that myself many times, so

16   thank you for that.

17         MR. WALSH:  Yes, good morning, Your Honor.

18         Michael Walsh.  I'm the attorney for Mr. Kuang, who

19   is seated to my left.

20         THE COURT:  Good morning to both of you.

21         And then we'll have our interpreter be sworn in.

22         (Interpreter sworn.)

23         THE COURTROOM DEPUTY:  Thank you.

24         Please state and spell your name and indicate the

25   language you are interpreting.

3

1          THE INTERPRETER:  Tuo, T-U-O, last name Huang,

2    H-U-A-N-G, Mandarin Chinese.

3          THE COURT:  Okay.  Good morning to you, Mr. Huang.

4    Or is it Huang?

5          THE INTERPRETER:  Huang, either way.  Thank you,

6    Your Honor.

7          THE COURT:  Okay.  Good morning.

8          Have a seat.  Everyone can remain seated throughout

9    the proceeding.  Just make sure you use the microphone so that

10   we can hear you through the masks and the Plexi.

11         So we're here today for a *Curcio* hearing because, as

12   set forth in the Government's March 14, 2022, letter, there

13   are a couple of conflicts with respect to Mr. Walsh's

14   representation of Mr. Zebin -- I'm sorry, is the last name

15   Kuang, or is the last name --

16         THE DEFENDANT:  Kuang.

17         THE COURT:  I'm so sorry.  Mr. Kuang.  I should know

18   that.

19         And I want to advise Mr. Kuang fully -- although I

20   understand he's already been advised, to some extent, by the

21   Government -- about these conflicts and to see if he wants to

22   waive them, because I do find that they're waivable.

23         Did you want to speak, Mr. Walsh, to your client

24   further.

25         MR. WALSH:  Judge, I'm just getting a -- his

4

1  medication.  He has some anxiety issues.  We actually -- on

2  the last proffer, he got very faint and he's seen a doctor

3  since then and he has some medication that he's just giving to

4  me in case the same thing happens.

5          THE COURT:  All right.  Do you need water?

6          MR. WALSH:  Do you want some water?

7          THE COURT:  Oh, look at that.  Okay, terrific.  You

8  can leave that out on the table --

9          MR. WALSH:  Okay, I will just leave it right here.

10          THE COURT:  -- Mr. Kuang, in case you need the

11  medication.  Just take it if you feel like you're getting

12  anxious or faint, all right?

13          THE DEFENDANT:  Okay.

14          THE COURT:  Now, Mr. Kuang, I need to have you pull

15  the microphone towards you.  Actually, no I have got that

16  backwards.  I guess I should have it pulled towards the

17  interpreter because I'm assuming that Mr. Kuang is going to

18  have to speak through the interpreter.

19          THE INTERPRETER:  Your Honor, may I instruct

20  Mr. Kuang to press the button?

21          THE COURT:  Absolutely.  That way you can

22  communicate with the interpreter when you need to make a

23  statement.

24          Do you understand that?

25          THE DEFENDANT:  Okay.

5

1          THE COURT:  So, Mr. Kuang, I am advised that your

2     current attorney, Mr. Walsh, is affiliated with the -- and I'm

3     going to spell it for the court reporter -- D-E-M-I-D-C-H-I-K,

4     Demidchik; is that right? -- Demidchik Law Firm.  I'm also

5     advised that the Demidchik firm has previously represented

6     your co-defendant, Zhu Yong, whom the Government has

7     identified as one of your co-conspirators.

8               Do you understand me so far?

9          THE DEFENDANT:  Understood, yeah.

10         THE COURT:  Now, your attorney, as a member of the

11    Demidchik firm, may have certain ethical obligations to your

12    co-defendant Zhu Yong.  For example, it might be a conflict of

13    interest for a member of the Demidchik firm to investigate

14    leads, introduce evidence, or make arguments on your behalf

15    that might tend to incriminate, or cast suspicion on the

16    firm's prior client Zhu Yong.

17              Again, I want to confirm since you're being advised

18    through an interpreter that you understand me so far.

19         THE DEFENDANT:  Understood.

20         THE COURT:  Okay.  If at any point -- and I'm going

21    to direct this to the interpreter -- I'm going too fast, just

22    raise your hand and I will slow down, okay?

23         THE INTERPRETER:  Thank you so much.

24         THE COURT:  I know the simultaneous translation is

25    very challenging.

6

1              Now, your attorney, or members of his firm --
2    Demidchik -- also may have privileged information obtained in
3    the course of Demidchik's representation of this prior client,
4    Zhu young that could assist in your defense.  However, the
5    ethical duties of your attorney, Mr. Walsh, and the members of
6    his firm may preclude or prevent them from disclosing or using
7    that information in your case.

8              Do you understand?

9              THE DEFENDANT:  Understood.

10             THE COURT:  Okay.  It is also possible that another
11   attorney could take a certain position with respect to your
12   involvement or noninvolvement in the crime charged against you
13   or your relationship with your co-conspirators, whereas your
14   attorney may be ethically barred from pursuing such a defense
15   strategy due to contrary information that he or other members
16   of his firm may have obtained from other clients.  In other
17   words, Mr. Kuang, if you got a brand new attorney who wasn't
18   associated with the Demidchik firm, that attorney could take
19   whatever position you and he or she felt was in your best
20   interest without any restriction because of information
21   learned about one of your co-defendants through a prior
22   relationship.

23             Do you understand that?

24             THE DEFENDANT:  Understood.

25             THE COURT:  There may be other issues in addition to

7

1  the ones I've just described that can arise in which your

2  attorney's ability to do certain things might be affected by

3  the fact that his firm has represented other clients in

4  matters related to this case, and no one can foresee every

5  possible conflict of interest.

6          Do you have any questions about what I've just

7  explained to you, Mr. Kuang?

8          THE DEFENDANT:  No.

9          THE COURT:  Can you explain to me in your own words

10  what you understand this potential conflict of interest to be,

11  or what the potential conflict of interest might be?

12          Pause for a minute so he can translate.

13          THE INTERPRETER:  Sorry.

14          THE DEFENDANT:  Directly in this case, there could

15  be another person, so he could hire another attorney from this

16  law firm, so probably there could be conflict of interest

17  rising that may restrict his abilities doing strategies in

18  court.

19          THE COURT:  Did you want to say anything further?

20          THE DEFENDANT:  I don't know how to describe, but I

21  know what it is.

22          THE COURT:  The conflict in this case is a little

23  more concrete because Mr. Walsh's firm, the Demidchik firm,

24  has actually represented your co-defendant, Zhu Yong.  So

25  because of that relationship, one or more lawyers in the

8

1  Demidchik firm presumably learned information from Mr. Zhu

2  Yong that could restrict how Mr. Walsh represents you.  And

3  this is the theoretical part, but if your attorney, Mr. Walsh,

4  knew of information relating to Zhu Yong -- or, actually,

5  don't translate, let me withdraw that.

6        Theoretically, there might be a position that

7  Mr. Walsh would ordinarily take on your behalf but is barred

8  from doing so because of information received by his firm from

9  Mr. Zhu Yong.

10        So do you understand that?

11        THE DEFENDANT:  I understand, but I still want to

12  continue to hire him.

13        THE COURT:  Okay.  All right.

14        MR. HEEREN:  Judge?

15        THE COURT:  Yes, go ahead, Mr. Heeren.

16        MR. HEEREN:  Since the defendant is being asked

17  questions, should the defendant be sworn in as well on these

18  issues?

19        THE COURT:  I guess that's right.  Yes, we should do

20  that.  My apologies.

21        So because you are giving answers to my questions,

22  I'm going to have you sworn in, so you are going to be given

23  an oath to tell the truth.

24        Do you understand that?

25        THE DEFENDANT:  Okay.

9

1          THE COURT:  In other words, you need to affirm for

2     me that you are going to give me truthful answers.

3          Do you understand that?

4          THE DEFENDANT:  Okay.

5          THE COURT:  So rise and raise your right hand.

6          (Defendant sworn.)

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  Have a seat, Mr. Kuang.

9          You should understand that now that you're under

10    oath, if you give any answer that's false -- and by that I

11    mean knowing that the answer is false or incorrect -- your

12    answers could be used against you in a separate prosecution

13    for making a false statement or for perjury.

14         Do you understand that?

15         THE DEFENDANT:  I do.

16         THE COURT:  The bottom line is whatever you say on

17    the record should be the truth.

18         Do you understand that?

19         THE DEFENDANT:  I do.

20         THE COURT:  So let's go back to where we left off.

21         Do you understand the potential conflict with

22    respect to Mr. Walsh's representation of you because of his

23    firm's prior representation of Zhu Yong?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And is it your understanding

10

1  notwithstanding that conflict to have Mr. Walsh represent you?

2           THE DEFENDANT:  I don't mind.

3           THE COURT:  Okay.  It's not a question of if you

4  don't mind.  I need to make sure that you affirmatively want

5  Mr. Walsh to represent you still, even though there may be

6  some limits on how he represents you because of the firm's

7  representation of co-defendant in the past.

8           THE DEFENDANT:  I do.  I affirm.

9           THE COURT:  Okay.  Let's turn now to the other

10  conflict.

11          I've been advised that your attorney or his law firm

12  were paid by a third party to represent you in this matter.

13  Because your attorneys are being paid by a third party,

14  they -- meaning the attorneys -- may be influenced by this

15  third party in connection with their representation of you.

16  In other words, the attorneys may be influenced to advise you

17  to do things that are in the third party's best interest, but

18  not in your best interest.  For example, if the third party is

19  involved in the alleged crime, the third party may have a

20  vested interest in having your lawyers advise you to accept

21  sole responsibility.  In other words, those third parties

22  could tell your lawyers that you should accept sole

23  responsibility for the unlawful scheme that the third party

24  may have been involved in, or the third party may tell your

25  lawyers to advise you to minimize the third party's

 1    involvement in the crime.

 2              Do you understand?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Your lawyers may also have an interest

 5    in advising you to not seek to cooperate with the Government

 6    even if that might be in your interest.  In other words, your

 7    lawyers may advise you not to cooperate because your

 8    cooperation might directly, or indirectly, implicate the third

 9    party who is paying your legal fees.

10              Do you understand?

11              THE DEFENDANT:  I do.

12              THE COURT:  There may be other issues in addition to

13    the ones that I've just described that can arise in which your

14    attorney's ability to do certain things might be affected by

15    the fact that he is being paid by a third party.  Again, no

16    one can foresee every conflict of interest that might arise

17    out of the fact that your legal fees are being paid by a third

18    party.

19              Do you understand what I've explained so far?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Do you have any questions at all about

22    the potential conflict that might arise of having a third

23    party pay for your legal fees?

24              THE DEFENDANT:  No.

25              THE COURT:  Any questions?

12

1          THE DEFENDANT:  I'm all clear.

2          THE COURT:  Can you tell me in your own words what

3   you understand the potential conflicts to be because of a

4   third party paying your legal fees?

5          MR. WALSH:  One sentence at a time.  It's easier for

6   the interpreter.

7          THE INTERPRETER:  Thank you.

8          THE DEFENDANT:  So my legal fees being paid to the

9   third party, and then if he or she is involved in this crime,

10  he or she could get some help from my attorney.  But my

11  understanding is he or she could teach me not to cooperate

12  with the Government while I can cooperate with the Government.

13  And some other facts that could arise, but I don't know how to

14  describe them, but previously I had some understanding from

15  the prosecutors before --

16         THE COURT:  I want to clarify something you just

17  said, and I don't know if it's because it got lost in

18  translation, but at the very beginning you said your legal

19  fees are being paid to the third party.

20         THE DEFENDANT:  Instead of paid to the third party,

21  didn't you mention if the third party --

22         THE COURT:  Mr. Interpreter, sorry, you have to use

23  the mic.  Can you start all over again?  I'm sorry, I didn't

24  hear you.

25         THE DEFENDANT:  Instead of being paid to the third

13

1  party, didn't you say it's the third party that pays that

2  money?

3          THE COURT:  That's correct, but your statement to me

4  was translated as legal fees being paid to a third party.  I

5  just want to make sure you understand that the legal fees are

6  being paid by a third party; you understand that your legal

7  fees are being paid by someone else.

8          THE DEFENDANT:  Correct.

9          THE COURT:  And you also understand that that person

10  who is paying your fees could ask your lawyers to take

11  positions that are contrary to your interest.

12          Do you understand that?

13          THE DEFENDANT:  I do.

14          THE COURT:  And understanding that, as well as the

15  other potential conflicts that could arise from this

16  arrangement, do you still want to have Mr. Walsh represent

17  you?

18          THE DEFENDANT:  Yes, I am.

19          THE COURT:  Are you satisfied with the services that

20  Mr. Walsh and other attorneys in his firm have provided you

21  thus far?

22          THE DEFENDANT:  What does that mean?

23          THE COURT:  Are you satisfied with the services

24  provided by your lawyers thus far in this case?

25          THE DEFENDANT:  I am satisfied.

14

1          THE COURT:  Do you understand that in every criminal

2    case, including this one, the defendant is entitled to the

3    assistance of counsel whose loyalty to him is undivided, and

4    who is not subject to any force or consideration that might in

5    any way intrude upon the attorney's loyalty to his or her

6    client's interests?

7          Do you understand that you are entitled to have a

8    lawyer represent you who is solely loyal to you?

9          THE DEFENDANT:  I know, but I have trust in my

10   attorney.

11         THE COURT:  Do you believe that he is loyal to you

12   and your interests alone?

13         THE DEFENDANT:  I feel he would treat me well and

14   take things in -- to the matter in a way that is good to me.

15         THE COURT:  Even though his fees are being paid by

16   somebody else?

17         THE DEFENDANT:  Yeah.

18         THE COURT:  And even though his firm previously

19   represented one of your co-defendants?

20         THE DEFENDANT:  Correct.

21         THE COURT:  Now, Mr. Kuang, have you received any

22   inducements, promises, or threats about your choice of counsel

23   in this case?

24         THE DEFENDANT:  No.

25         THE COURT:  Mr. Kuang, if you proceed with your

15

1   attorney, Mr. Walsh, you will be giving up your right to be

2   represented by an attorney who does not have any possible

3   conflicts of interest in representing you.

4           Do you understand that?

5           THE DEFENDANT:  I do.

6           THE COURT:  Okay.  And have you discussed these

7   issues with your attorney?

8           THE DEFENDANT:  Yes.

9           THE COURT:  You also have the right to consult with

10  an independent attorney who can advise you about the possible

11  conflicts of interest that might arise if you proceed with

12  Mr. Walsh.

13          Do you understand that?

14          THE DEFENDANT:  I do.

15          THE COURT:  In fact, we have one of the esteemed

16  members of our bar here in New York present today --

17  Ms. Todd -- and if you wanted to, you could consult with her

18  as an independent lawyer about potential conflicts of

19  interest.  You are not under any pressure to make a decision

20  about this right now.

21          Do you understand that?

22          THE DEFENDANT:  But I'm sure I will choose him -- go

23  with him.

24          THE COURT:  Now, you understand that I'd give you a

25  reasonable amount of time to confer with another lawyer,

16

1   including Ms. Todd, if you wanted to.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.  Do you want to speak to another

5   lawyer, or Ms. Todd, who is actually here in court with us

6   today?

7           THE DEFENDANT:  Not necessary.

8           THE COURT:  Is there anything I've said that you

9   wish for me to explain further?

10          THE DEFENDANT:  No.

11          THE COURT:  Are you willing to waive your right to

12  conflict-free counsel, Mr. Kuang?

13          THE DEFENDANT:  Correct.

14          THE COURT:  And are you knowingly and voluntarily

15  waiving your right to conflict-free representation?

16          THE DEFENDANT:  Correct.

17          THE COURT:  And do you agree, Mr. Kuang, to waive --

18  or give up -- any post conviction argument on appeal or

19  otherwise that, first, by virtue of having a third party pay

20  your legal fees, you are denied effective assistance of

21  counsel or, second, that prior representation of another

22  party -- your co-defendant -- caused you to be denied

23  effective assistance of counsel?

24          Are you willing to give up those arguments post

25  conviction, or on appeal, or otherwise?

17

1          THE DEFENDANT:  Yes, I am.

2          THE COURT:  Let me turn to the Government for a

3    moment.

4          Is there anything else I should inquire of

5    Mr. Kuang?

6          MR. HEEREN:  No, Your Honor.

7          THE COURT:  Mr. Walsh, is there anything else you

8    think I should cover with your client?

9          MR. WALSH:  Not that I can think of, Judge.  I don't

10   know if the Court wants some explanation from me about the

11   efforts that I've made to prevent any conflict.

12         THE COURT:  Why don't we have you put those on the

13   record.  I know that the letter I received from the

14   Government, I think -- or something I read, actually --

15   alluded to efforts to segregate yourself from those lawyers

16   who may have represented or had some role in representing the

17   co-defendant.

18         MR. WALSH:  And I will try to speak in short

19   sentences so that the interpreter is able to interpret what

20   I'm saying.

21         First off, the Demidchik Law Firm is actually

22   multiple LLCs that operate separate and apart from each other.

23         THE COURT:  One of which is in Flushing, I gather.

24         MR. WALSH:  One is in Flushing; one is in Chicago;

25   one is in City of Industry in LA area; and one is in Santa

18

1   Clara County, California.

2          THE COURT:  Where is Demidchik him- or herself?

3   This is just a point of curiosity.

4          MR. WALSH:  Anna Demidchik is the named partner.

5   Presently, I think she is completing her reserve duty for the

6   United States Army.

7          THE COURT:  Good for her.

8          MR. WALSH:  And she generally has been in the

9   Flushing office, but has moved to the Santa Clara County,

10  California office.

11         THE COURT:  All right, but we are digressing.  So

12  your point is that it's easy to maintain separateness?

13         MR. WALSH:  Yes.

14         In fact, my files on -- we use SharePoint -- are

15  separate and apart from everyone else, and I'm the only one

16  who has access to them.  I don't have access to the files of

17  other attorneys in the Demidchik firm in the four separate

18  offices.  I have -- I don't know what conversations ever

19  occurred between Mr. Zhu and members of the Flushing,

20  New York, office.

21         THE COURT:  The only thing I'm wondering, though, is

22  even if you don't communicate with your affiliated lawyers

23  about their representation of Mr. Zhu in the past, I don't

24  know if that resolves or absolves you of your ethical

25  obligation as a member of the same firm not to take a contrary

19

1   position -- sorry, "contrary" is the wrong word -- but not to

2   take a position that might be inconsistent with information

3   that your loosely-affiliated partners obtained when they

4   represented Mr. Zhu.

5        Let's pause for a moment, because I don't know if

6   the Government has a view on that, or if you do, Mr. Walsh.

7        So even though we're talking about the ways in which

8   you basically walled yourself off from this information, I'm

9   not sure that that eliminates some obligation you might have

10  not to be disloyal to the firm's prior client, Mr. Zhu.

11       MR. HEEREN:  So, Your Honor, the Government's

12  position is -- I think the law is a little complex here and

13  tends to be a bit fact-specific.  I think the most

14  conservative assumption to proceed with for purposes of a

15  *Curcio* hearing is to assume, for the purposes of any waiver,

16  that there be some limitation on Mr. Walsh's ability to

17  present a case as it relates to that co-defendant with the

18  examples being limitations on cross-examination, certain

19  evidence.

20       However, in addition to Mr. Walsh's information

21  about how, as a factual matter, he doesn't know anything, the

22  Government would also represent that if we were to go to trial

23  in this case, the facts of the case, as it pertains to this

24  defendant, are large -- are largely discrete from the other

25  defendants.  It's part of the same conspiracy, so the issue

20

1    still exists, but it's our view that whatever potential

2    conflict here is fairly narrow and minor, for lack of a better

3    term.

4              THE COURT:  But speaking in broad terms, assuming

5    for the moment that Mr. Kuang wants to cooperate, wants to

6    testify, and ends up testifying about the scheme overall,

7    which could have a negative impact on co-defendant Zhu, does

8    everyone think that Mr. Walsh is not limited in counseling

9    Mr. Kuang to cooperate, if that's what he desires, even if it

10   has a negative impact on Mr. Zhu, who the firm no longer

11   represents?

12             MR. HEEREN:  I do not believe the obligation extends

13   that far, Your Honor.  I believe that maintaining client

14   confidences reaches beyond the representation, so if

15   Mr. Walsh, for example, did know the confidential facts, he

16   could not share it.  But my understanding is that -- my

17   understanding is that is the limit as it pertains to this

18   case, so I don't think he would be -- have any issue with, for

19   example, preparing him to testify.

20             THE COURT:  Preparing him to testify?

21             MR. HEEREN:  Yes.

22             THE COURT:  Okay.

23             Mr. Walsh, do you see it any differently than what

24   the Government has just described?

25             MR. WALSH:  No, Judge.  I think the Government and I

21

1    are on the same page here.

2         THE COURT:  And you don't feel limited in terms of

3    the advice you would give Mr. Kuang based on the firm having

4    previously represented Mr. Zhu?

5         MR. WALSH:  None whatsoever.

6         THE COURT:  Okay.  All right.  Well, I am satisfied

7    that Mr. Kuang is knowingly and voluntarily waiving his right

8    to conflict-free representation.  I think we've gone over it

9    at great length, the potential conflicts, which are somewhat

10   concrete, as I said before, in this case, given the firm's

11   prior representation of a co-defendant.  But it does appear to

12   me, based on Mr. Kuang's demeanor and his answers to my

13   questions, that he understands the potential risks and the

14   conflicts but is willing to waive his right to have an

15   attorney who is conflict-free.

16        So I'm going to accept Mr. Ze Bin's waiver to

17   conflict-free representation, and Mr. Walsh, you will continue

18   to represent Mr. Kuang going forward.

19        One last thing I will say to you, Mr. Kuang, is that

20   if at some point if you decide, however, that you don't wish

21   Mr. Walsh to represent you anymore because of a conflict -- or

22   for any reason -- you obviously are not required to keep

23   Mr. Walsh.  And it could well be that perhaps the third

24   party's influence becomes such that you don't want to have

25   Mr. Walsh represent you anymore.  In other words, you're not

22

1   stuck with Mr. Walsh simply because I've accepted your waiver

2   regarding his representation of you.

3          Do you understand that?

4          THE DEFENDANT:  Understood.

5          THE COURT:  And also, as I'm sure you were advised

6   when you were first arraigned or presented in court, you have

7   the right to appointment of counsel -- free counsel -- if you

8   cannot afford to pay for an attorney yourself.  In other

9   words, you don't need to depend on this third party to pay

10  your legal fees.  If you cannot afford to hire your own

11  attorney, we'll appoint one for you for free.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  So now, Mr. Walsh, it's my

15  understanding that your client wishes to proceed with a plea

16  to Count Three of the superseding S-1 indictment.

17         Thank you very much, Ms. Todd.  You are excused with

18  our thanks.

19         MS. TODD:  You're welcome.  Thank you.

20         THE COURT:  Sorry you had to endure a rather lengthy

21  Curcio.

22         So it's my understanding that Mr. Kuang is going to

23  plead guilty to Count Three of the S-1 superseding indictment

24  pursuant to an agreement with the Government; is that correct,

25  Mr. Walsh?

23

1          MR. WALSH:  Yes, that is my client's understanding.

2  We have reviewed the agreement with him, and it has been

3  translated for him previously by one of our -- my assistants

4  in our Chicago office.

5          THE COURT:  Into Chinese?

6          MR. WALSH:  Yes.  Mandarin.

7          THE COURT:  Well, written is the same, but whatever.

8  Okay.

9          MR. WALSH:  One of our associates speaks Cantonese

10  also, so she maintains that they're separate.

11          THE COURT:  Oh, that's interesting.

12          MR. WALSH:  She's originally from Kuang Kong.

13          THE COURT:  Fair enough.

14          So, Mr. Kuang, as you just heard, your attorney has

15  advised me that it's your intention to plead guilty to Count

16  Three of the superseding S-1 indictment, and that you will be

17  doing so pursuant to an agreement with the Government.

18          Is that correct?

19          THE DEFENDANT:  Correct.

20          THE COURT:  Now, this is a serious decision, and I

21  must be certain that you're making this decision with a full

22  understanding of your rights and the consequences of your

23  guilty plea.  I'm going to be explaining to you the rights

24  that you will be giving up by pleading guilty, and before I

25  accept your guilty plea, there are a number of questions that

24

1    I must ask you to establish that your plea is valid.  If you

2    don't understand any of my questions, let me know and I'll

3    rephrase them for you.  If you would like to consult further

4    with your attorney, let me know and I will give you as much

5    time as you need.

6           Now, you are already under oath, so, again, I'm

7    going to remind you that if you answer any of my questions

8    falsely, those answers can be used against you in a separate

9    prosecution for perjury or making a false statement.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Please state your full name for the

13   record.

14          THE INTERPRETER:  Your Honor, may interpreter verify

15   with the -- with Mr. Kuang and instruct him to speak to me in

16   Mandarin only?

17          THE COURT:  Well, I guess you can speak in English

18   and Mandarin, but if you are going to speak in English,

19   Mr. Kuang, we need to have you speak into the microphone, but

20   certainly, Mr. Interpreter, you can confirm with him what he

21   just told you.

22          THE INTERPRETER:  Okay.  Thank you, Your Honor.

23          THE COURT:  Mr. Walsh, why don't you pull the

24   microphone between you and your client since he obviously

25   speaks some English.

1      THE DEFENDANT:  So my full name is called Kuang

2  Zebin.

3      THE COURT:  And Kuang is your last name; correct?

4      THE DEFENDANT:  Correct.

5      THE COURT:  How old are you?

6      THE DEFENDANT:  Twenty-three.

7      MR. WALSH:  Judge, I prefer if we kept in the

8  Mandarin as opposed to him kind of morphing into English,

9  because I'm just concerned that there are going to be some

10 statements the Court is going to make about our rights in

11 English that he may not quite understand, so I would prefer if

12 the Court indulges me with this, to continue with Mandarin to

13 English and English to Mandarin.

14      THE DEFENDANT:  Twenty-three years old.

15      THE COURT:  So, Mr. Kuang, at your lawyer's request,

16 I'll ask you to give your answers in Mandarin so that way the

17 translator can simply translate those.

18      MR. WALSH:  And I apologize, Judge, I know it will

19 delay it a bit, but I don't want there to be something that

20 comes up later.

21      THE COURT:  Mr. Kuang, how much formal education

22 have you had?

23      THE DEFENDANT:  What does that mean?

24      THE COURT:  How far did you go in school?  What

25 grade?

26

1        THE DEFENDANT:  Third year in high school.

2        THE COURT:  Have you been able to understand

3   everything that's been said so far with the assistance of the

4   translator?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Mr. Walsh, have you been able to

7   communicate with your client using an interpreter?

8        MR. WALSH:  Yes, Your Honor.

9        THE COURT:  Mr. Kuang, have you ever been treated or

10  hospitalized for any mental illness?

11       THE DEFENDANT:  Recently, there was a doctor who

12  gave me a prescription for anxiety.

13       THE COURT:  But you weren't put into a hospital,

14  were you?

15       THE DEFENDANT:  No hospital.

16       THE COURT:  Okay.  Now, you say you've received

17  treatment for anxiety.  Are you receiving any medications for

18  that?

19       THE DEFENDANT:  Correct.

20       THE COURT:  Is that the medication you brought with

21  you today?

22       THE DEFENDANT:  So what I have here is a emergency

23  pill so in any event that I faint, then I should immediately

24  put it into my mouth.

25       THE COURT:  How often do you take medication for

27

1    your anxiety?

2            THE DEFENDANT:  Now I'm asked to take one every

3    night.

4            THE COURT:  And do you know the name of the

5    medication?

6            THE DEFENDANT:  No, I don't, but I have it at home.

7    It is prescribed by my --

8            THE COURT:  By your who?

9            THE INTERPRETER:  Interpreter will repeat.

10           PCP, primary care physician.

11           THE COURT:  Oh, PCP, which we understand to be

12   primary care physician, okay.

13           Is there anything about the medication you're taking

14   that makes it difficult for you to understand or comprehend

15   what's going on?

16           THE DEFENDANT:  So my PCP prescribing me with this.

17   It can help with my sleep, but let's say -- it doesn't affect

18   my ability to talk or those things.

19           THE COURT:  Does it affect your ability to process

20   things mentally?

21           THE DEFENDANT:  No.

22           THE COURT:  Does it affect your ability to

23   understand what's being said to you?

24           THE DEFENDANT:  No.

25           THE COURT:  Is your mind clear as you sit here right

28

1    now?

2              THE DEFENDANT:  Clear.

3              THE COURT:  Do you understand why you're here?

4              THE DEFENDANT:  I do.

5              THE COURT:  Now, other than what we've just

6    discussed, have you recently been under the care of a doctor

7    or psychiatrist for any other reason?

8              THE DEFENDANT:  Can you say that one more time,

9    please?

10             THE COURT:  Other than what we were just discussing

11   about the antianxiety medication and the treatment you are

12   receiving, have you seen a doctor or a psychiatrist for any

13   other reason?

14             THE DEFENDANT:  No.

15             THE COURT:  Have you ever been treated or

16   hospitalized for any type of addiction, such as drugs or

17   alcohol?

18             THE DEFENDANT:  No.

19             THE COURT:  Now, besides the medication we just

20   discussed, have you taken any other drugs or pills or had any

21   alcoholic beverages within the last two days?

22             THE DEFENDANT:  No.

23             THE COURT:  Mr. Walsh, have you discussed the matter

24   of pleading guilty with your client?

25             MR. WALSH:  Yes, Judge, we've discussed it.  And the

1    plea agreement was translated by my --

2              THE COURT:  Use the microphone.

3              MR. WALSH:  Judge, Mr. Kuang and I have discussed

4    the plea agreement, and it has been translated into Mandarin

5    for him by my assistant in our office in -- excuse me -- in

6    Chicago.

7              THE COURT:  Does he understand the rights that he

8    will be waiving by pleading guilty?

9              MR. WALSH:  Yes.

10             THE COURT:  Is he capable of understanding the

11   nature of these proceedings?

12             MR. WALSH:  Yes.

13             THE COURT:  Do you have any doubt as to his

14   competence to plead guilty at this time?

15             MR. WALSH:  No.

16             THE COURT:  Have you advised him of the maximum and

17   minimum sentence and fine that can be imposed in this matter?

18             MR. WALSH:  Yes.

19             THE COURT:  Have you discussed with him the effect

20   of the sentencing guidelines?

21             MR. WALSH:  Yes.

22             THE COURT:  Mr. Kuang, have you reviewed a copy of

23   the S-1 superseding indictment which contains the charges

24   against you, as well as a forfeiture allegation?

25             THE DEFENDANT:  Clear.  That has been reviewed.

30

1        THE COURT:  You've reviewed it?

2        THE DEFENDANT:  Yes.

3        THE COURT:  And it was translated for you?

4        THE DEFENDANT:  Correct, translated.

5        THE COURT:  Have you discussed with your attorney

6   Count Three, which is the count you are going to be pleading

7   guilty to with your attorney?

8        THE DEFENDANT:  Discussed.

9        THE COURT:  Now, Count Three charges you with

10  conspiring to engage in interstate stalking.  If the

11  Government were to go to trial against you on this charge,

12  they would have to prove a number of elements beyond a

13  reasonable doubt.  First, they'd have to prove that two or

14  more persons entered into the unlawful agreement charged in

15  the S-1 indictment; second, they would have to show that you

16  knowingly and willfully became a member of that conspiracy;

17  third, they'd have to show that one of the members of the

18  conspiracy knowingly committed at least one of the overt acts

19  charged in Count Three; and, fourth, that the overt acts were

20  committed to further some objective of the conspiracy.

21        THE INTERPRETER:  Your Honor, can you repeat this

22  part for the interpreter, please?

23        THE COURT:  Yes.

24        The further element is that the overt act that was

25  committed had to be committed in furtherance of the objective

1    of the conspiracy.  Sorry, did I say to further the

2    objective -- yes -- of the conspiracy.  And the underlying

3    offense that's charged as the object of the conspiracy is

4    interstate stalking, and that has three elements, the first of

5    which is that the defendant traveled in interstate or foreign

6    commerce; second, that you did so with the intent to kill,

7    injure, harass, or intimidate or place under surveillance with

8    the intent to do the same; and the third element is that in

9    the course of or resulting from this travel, you engaged in

10   conduct which placed the victim in reasonable fear of death or

11   serious injury or cause substantial emotional distress to that

12   victim or a member of the victim's immediate family.  But to

13   reiterate, the crime that you are charged with is agreeing to

14   commit this underlying offense.

15           THE INTERPRETER:  Your Honor, can you repeat this

16   for the benefit of the interpreter?

17           THE COURT:  Yes.

18           THE INTERPRETER:  Thank you.

19           THE COURT:  Yes.  So I want to reiterate that the

20   crime you are charged with is agreeing to, or conspiring to

21   commit this underlying offense so that even if the actual

22   stalking never occurred, you could still be guilty of

23   conspiring to commit that crime, so long as you or a

24   co-conspirator committed an overt act in furtherance of the

25   conspiracy.

1          So do you understand what the Government would have

2     to prove with respect to Count Three if you were to go to

3     trial in this case?  And I will also note that although the

4     superseding indictment contains forfeiture allegations, they

5     don't apply to Count Three.

6               THE INTERPRETER:  Your Honor, can you repeat this

7     part for the benefit of the interpreter, please?

8               THE COURT:  The superseding indictment contains

9     forfeiture allegations, but they do not apply to Count Three.

10              Mr. Kuang, have you had enough time to discuss with

11    your attorney whether or not to plead guilty?  Have you had

12    enough time to talk with your attorney about whether or not to

13    plead guilty?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Are you fully satisfied with the counsel

16    representation and advice given to you by your attorney in

17    this case?

18              THE DEFENDANT:  Satisfied.

19              THE COURT:  Mr. Kuang, you have a right to continue

20    to plead not guilty; no one can be forced to plead guilty.

21              Do you understand?

22              THE DEFENDANT:  No force.  Voluntary.

23              THE COURT:  But understand that you have a right to

24    continue to plead not guilty if you want.

25              Do you understand that?

33

1          THE DEFENDANT:  Understood.

2          THE COURT:  If you continued with your not guilty

3    plea, you have the right under the Constitution and laws of

4    the United States to a speedy and public trial by jury.  At

5    trial, you would be presumed to be innocent.  The Government

6    would have to prove your guilt beyond a reasonable doubt.

7          Do you understand?

8          THE DEFENDANT:  Understood.

9          THE COURT:  You would have the right to the

10   assistance of counsel for your defense at trial.

11         Do you understand?

12         THE DEFENDANT:  Yes.

13         THE COURT:  You would have the right to see and hear

14   all the witnesses and to have them cross-examined in your

15   defense.

16         Do you understand?

17         THE DEFENDANT:  Yes.

18         THE COURT:  You would have the right not to testify

19   unless you voluntarily chose to do so at trial.

20         Do you understand?

21         THE DEFENDANT:  Yes.

22         THE COURT:  You would have the right to compel

23   witnesses to attend the trial and testify in your defense.

24         Do you understand?

25         THE DEFENDANT:  Yes.

1        THE COURT:  If you decided not to testify or put on

2   any evidence at the trial, the fact that you did not do so

3   could not be used against you at trial.

4        THE DEFENDANT:  I know.

5        THE COURT:  In other words, the Government could not

6   argue to the jury that they should convict you based solely on

7   the fact that you remain silent and did not put on any

8   evidence.

9        Do you understand?

10       THE DEFENDANT:  Understood.

11       THE COURT:  If you enter a guilty plea, and if I

12   accept your plea, there will be no trial.

13       Do you understand?

14       THE DEFENDANT:  Yes.

15       THE COURT:  You will have waived or given up your

16   right to a trial, as well as all of these other rights.

17       Do you understand?

18       THE DEFENDANT:  Yes.

19       THE COURT:  If you plead guilty, there will be no

20   right of appeal from the judgment of guilt.

21       Do you understand?

22       THE DEFENDANT:  Yes.

23       THE INTERPRETER:  From the interpreter, Your Honor,

24   for one minute, I need to get another pen.

25       THE COURT:  Okay, go right ahead.

35

1          THE INTERPRETER:  Thank you.

2          (Pause.)

3          THE INTERPRETER:  Sorry about that.  Continue, Your

4     Honor.

5          THE COURT:  Okay.

6          I will simply enter a judgment of guilt based on

7     your guilty plea, and the Government will be freed of any

8     responsibility to prove your guilt.

9          Do you understand?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If you plead guilty, I will have to ask

12     you questions about what you did in order to make sure that

13     you're guilty of the crime you are pleading guilty to.  By

14     answering my questions, you will be giving up your right

15     against self-incrimination.

16          Do you understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Mr. Kuang, do you understand each and

19     every one of these rights that we've just discussed?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Are you willing to give up your right to

22     a trial and all of these other rights?

23          THE DEFENDANT:  Okay.

24          THE COURT:  Did he just say "okay"?

25          THE DEFENDANT:  Yeah.

36

1          THE COURT:  In other words, you are willing to give

2     up your right to a trial and all of these other rights?

3          THE DEFENDANT:  Correct.

4          THE COURT:  Okay.  Let's turn to the agreement

5     you've entered into with the Government.

6          The original has been marked as Court Exhibit

7     Number 1.

8          Did you sign it on the last page above where your

9     name is typewritten?

10          MR. WALSH:  Judge, I don't have that page, but he

11     did sign it, and my staff member -- here we go, I'm sorry, I

12     gave the wrong copy to the -- I'm sorry, Judge.

13          THE COURT:  Okay, go ahead.

14          Did you sign it, Mr. Kuang, on the last page?

15          THE DEFENDANT:  Correct.

16          THE COURT:  Did you have an opportunity to read it

17     before you signed it?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And was it translated into Mandarin for

20     you?

21          THE DEFENDANT:  Correct.

22          THE COURT:  Do you understand the terms of this

23     agreement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you feel like you've had enough time

37

1  to review the agreement?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Mr. Walsh, do you feel you've had enough

4  time to review the agreement with your client?

5          THE DEFENDANT:  Yes, Your Honor, and just for the

6  Court's benefit, it was translated by Zoe, Z-O-E, Xu, X-U, who

7  just took her New York State Bar exam about three weeks ago.

8          THE COURT:  Do you have any questions at all about

9  the agreement, Mr. Kuang?

10         THE DEFENDANT:  No.

11         THE COURT:  Does this agreement represent your

12  entire understanding with the Government?

13         THE DEFENDANT:  Correct.

14         THE COURT:  Has anyone made you any promise or

15  assurance that is not in the agreement to get you to accept

16  it?

17         THE DEFENDANT:  No.

18         THE COURT:  Has anyone threatened you in any way to

19  get you to accept this agreement?

20         THE DEFENDANT:  No.

21         THE COURT:  Mr. Walsh, were all formal plea offers

22  from the Government communicated to your client?

23         MR. WALSH:  Yes, Your Honor.

24         THE COURT:  Mr. Kuang, let's turn now to some of the

25  possible penalties you face by pleading guilty to Count Three.

38

1          The maximum term of imprisonment is five years.

2    There is no mandatory minimum term of imprisonment that must

3    be imposed.  Any term of imprisonment can be followed by a

4    term of supervised release of up to three years.  Supervised

5    release refers to the period of time when you will be subject

6    to supervision by the Probation Department, and that's after

7    completing any term of imprisonment.  You will have to follow

8    rules of supervised release, and if you violate any of those

9    rules, you could be sent back to prison for up to two

10   additional years, and you could be sent back to prison without

11   a jury trial, and it would be without any credit for any time

12   you may have spent in prison before then or any time you may

13   have spent on supervised release before then.  You also face a

14   possible fine of the greater of $250,000 or twice the gross

15   gain, or twice the gross loss, caused by your crime.

16          You will be required to pay restitution in the full

17   amount of each victim's losses, which I'll determine at the

18   time of sentencing.  You will also be required to pay a $100

19   special assessment at the time of sentencing; and,

20   furthermore, because you are not a U.S. citizen, you face

21   likely deportation or removal from the United States.

22          Do you understand that in paragraph 11 of your

23   agreement you've confirmed that you are willing to plead

24   guilty regardless of any immigration consequences that your

25   plea entails?

39

1          THE DEFENDANT:  Understood.

2          THE COURT:  Do you understand all of the possible

3    consequences of your guilty plea, Mr. Kuang?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Let's turn to the sentencing guidelines.

6          Under the Sentencing Reform Act of 1984, the U.S.

7    Sentencing Commission has issued guidelines for judges to

8    follow in determining sentences in criminal cases.

9          THE INTERPRETER:  Your Honor, could you repeat the

10   first part of the statement for the interpreter, please.

11         THE COURT:  Yes.  So under the Sentencing Reform Act

12   of 1984, the Sentencing Commission has issued guidelines for

13   judges to follow in determining a sentence in a criminal case.

14         THE INTERPRETER:  You thank you, Your Honor.

15         THE COURT:  These guidelines are advisory, and I

16   will consider them along with other facts and circumstances in

17   determining your sentence.

18         Mr. Kuang, have you and your attorney discussed how

19   the advisory sentencing guidelines might apply to your case?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You should understand that any estimate

22   your attorney may have given you could be wrong.  I will not

23   be able to determine the applicable guidelines range until

24   after a Presentence Report has been prepared by the Probation

25   Department and after you and the Government have had a chance

40

1    to review the report and challenge anything in it, which could

2    include challenging the guidelines range, you should also

3    understand that under some circumstances, I can depart upward

4    or downward from any advisory guideline range.

5           Now, the sentence I impose may be very different

6    from any estimate your attorney has given you.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  As you sit here today, there's no

10   guarantee as to what guideline range I will decide applies at

11   the time of sentencing.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And if the guideline range that applies

15   is different than what you hope for or expect, you cannot take

16   your guilty plea back.

17          Do you understand?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Also, as you sit here today, there's no

20   way for you to know what your ultimate sentence will be.

21          Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If the ultimate sentence I impose is

24   different than what you hope for or expect, you cannot take

25   your guilty plea back.

41

1              Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Finally, you should understand that

4   there's no parole in the federal system, and if you are

5   sentenced to a term of imprisonment, you will not be released

6   on parole.

7              Regarding your right to appeal, under some

8   circumstances, you or the Government might have the right to

9   appeal any sentence that I impose, but in your plea agreement,

10  specifically paragraph 3, you've agreed not to appeal or

11  otherwise challenge your conviction or sentence if I impose a

12  term of imprisonment of 33 months or less.

13             Do you understand that?

14             THE DEFENDANT:  Correct.

15             THE COURT:  Mr. Kuang, do you have any questions

16  about the rights that you're giving up, the punishments you

17  face, the plea agreement, or anything else related to this

18  matter?

19             THE DEFENDANT:  No.

20             THE COURT:  Are you ready to plead guilty,

21  Mr. Kuang?

22             THE DEFENDANT:  I'm ready.

23             THE COURT:  Mr. Walsh, do you know of any reason why

24  your client should not plead guilty?

25             MR. WALSH:  No, Your Honor.

42

1          THE COURT:  Mr. Kuang, what is your plea to Count

2   Three of the S-1 indictment; guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  Are you making this plea voluntarily and

5   of your own free will?

6          THE DEFENDANT:  Correct.

7          THE COURT:  Has anyone threatened you or forced you

8   to plead guilty?

9          THE DEFENDANT:  No.

10          THE COURT:  Other than your plea agreement with the

11   Government, has anyone made you any promise that has caused

12   you to plead guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Has anyone made you any promise as to

15   what your sentence will be?

16          THE DEFENDANT:  No.

17          THE COURT:  Tell me in your own words what makes you

18   guilty of Count Three which charges you with conspiring to

19   engage in interstate stalking.

20          Remember to pause for the interpreter.

21          THE DEFENDANT:  September 2018, I, with another

22   person, went to a residence in New Jersey --

23          THE INTERPRETER:  Your Honor, may interpreter

24   request clarification?

25          THE COURT:  Yes, go ahead.

43

1          THE INTERPRETER:  Thank you.

2          -- harassed the other person and also placed a

3    written note on that person's door, which says:  If you return

4    to China and stay in prison for ten years, your family members

5    would be safe and sound and we'll finish it up this matter in

6    this way.  And then I feel by doing this I'm wrong.

7          THE COURT:  Let me ask you a few follow-up

8    questions.

9          You said in September 2018, you and another person,

10   whom I believe you identified as -- and I'm going to spell

11   this for the court reporter, Z-H-E-N-G, Zheng Congying,

12   C-O-N-G-Y-I-N-G -- that's the first name, but it's a separate

13   word -- is that who you identified as going with you to New

14   Jersey?

15         THE DEFENDANT:  Correct.

16         THE COURT:  And where did you go to New Jersey from?

17   You and Mr. Zheng.

18         THE DEFENDANT:  It was from Brooklyn to New Jersey.

19   He drove.

20         THE COURT:  You said we drove or he drove?

21         THE INTERPRETER:  Interpreter clarify.  He drove.

22         THE COURT:  So you went from New York to New Jersey;

23   is that correct?

24         THE DEFENDANT:  Correct.

25         THE COURT:  And when the two of you went, had you

44

1    previously agreed you would go together to New Jersey?

2              THE DEFENDANT:  Before I went, I hadn't known there

3    will be such a thing.

4              THE COURT:  But before you actually traveled, did

5    you agree to travel with Mr. Zheng to New Jersey?

6              THE DEFENDANT:  Correct.

7              THE COURT:  In other words, before you got in the

8    car, you agreed with Mr. Zheng or someone else that you were

9    going to go to New Jersey?

10             THE DEFENDANT:  Correct.

11             THE COURT:  And what was your purpose in going there

12   to the house in New Jersey?

13             THE DEFENDANT:  To look for a person.

14             THE COURT:  All right.  But what were you going to

15   do when you got there?

16             THE DEFENDANT:  To knock on the door and press on

17   the doorbell and no one showed up, and then he took out a note

18   and pasted it on the door.

19             THE COURT:  Did you go to New Jersey for the purpose

20   of harassing the person who lived at that New Jersey

21   residence?

22             THE DEFENDANT:  Yes, correct.

23             THE COURT:  And I think you said this before, but

24   the note told the person who lived at that residence to go

25   back to the People's Republic of China; correct?

45

1    THE DEFENDANT:  Correct.

2    THE COURT:  Is there anything else from the

3 Government's perspective that I need to ask Mr. Kuang?

4    MS. SISE:  Nothing else from the Government, Your

5 Honor.

6    THE COURT:  So I do find based on my observations of

7 Mr. Kuang, his responses to my questions, and the responses of

8 his attorney that Mr. Kuang is fully competent and capable of

9 entering an informed guilty plea; that Mr. Kuang is aware of

10 the nature of the charge to which he's pled guilty and the

11 consequences of his guilty plea; that his plea is knowing and

12 voluntary; and that his allocution satisfies the essential

13 elements of Count Three.

14    I therefore accept your plea, Mr. Kuang, to Count

15 Three of the superseding S-1 indictment.

16    Sentencing is scheduled for --

17    THE COURTROOM DEPUTY:  -- February 24, 2023, at

18 11:00 a.m.  I'm sorry, that's 10:00 a.m.

19    THE COURT:  Mr. Kuang, you will be interviewed by

20 the Probation Department for purposes of preparing the

21 Presentence Report.  You have the right to have your attorney

22 present during the interview.

23    Would you like Mr. Walsh to be there?

24    THE DEFENDANT:  Yes.

25    THE COURT:  And I imagine that can be arranged by

46

1    video as well.

2          I'm returning the original plea agreement, Court

3    Exhibit Number 1, the Government, per se, is keeping.

4          Is there anything else in this matter that we need

5    to address?

6          MR. WALSH:  Judge, I just have to give your clerk

7    some particulars for the sheets --

8          THE COURTROOM DEPUTY:  You need to use the

9    microphone.

10          THE COURT:  That's okay.  All he said he was going

11    to give you, Fida, some particulars -- information.

12          THE COURTROOM DEPUTY:  Thank you.

13          THE COURT:  All right.  Anything else from the

14    Government?

15          MS. SISE:  Nothing from the Government.

16          THE COURT:  All right, everyone is excused.  We have

17    another matter.

18          Thank you, everyone.

19          (Matter concluded.)

20

21                    *    *    *    *    *

22    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

23

24      /s/ Denise Parisi                May 4, 2023

25    _____      _____
          DENISE PARISI                      DATE

Denise  Parisi , RPR , CRR
Official Court Reporter