1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
       - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA,      : 21-CR-265(PKC)
 4                                  :
                                    :
 5                                  :
           -against-               : United States Courthouse
 6                                 : Brooklyn, New York
                                    :
 7                                 :
                                    : May 5, 2023
 8   YONG ZHU,                      : 11:30 a.m.
                                    :
 9          Defendant.             :
                                    :
10     - - - - - - - - - - - - - X

11      TRANSCRIPT OF CRIMINAL CAUSE FOR SUPPRESSION HEARING
              BEFORE THE HONORABLE PAMELA K. CHEN
12             UNITED STATES DISTRICT COURT JUDGE

13   A P P E A R A N C E S :

14   For the Government:   BREON PEACE
                           United States Attorney
15                         Eastern District of New York
                               271 Cadman Plaza East
16                             Brooklyn, New York 11201
                           BY:  MEREDITH ARFA
17                              CRAIG HEEREN
                                CHRISTINE BONOMO
18                              IRISA CHEN
                                Assistant United States Attorneys
19
     For the Defendant:    LAW OFFICE KEVIN KERVENG TUNG
20                         136-20 38th Avenue
                           Flushing, New York 11354
21                         BY:  KEVIN K. TUNG, ESQ.

22   Court Reporter:  Michele Lucchese, Official Court Reporter
                      225 Cadman Plaza, 373N
23                    Brooklyn, New York 11201
                      718-613-2272
24                    E-mail:  MLuccheseEDNY@gmail.com

25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
```

Proceedings                                    2

1          THE COURT:  Criminal cause for suppression hearing,

2    docket 21-cr-265, United States versus Yong Zhu.

3          Will the parties please state your appearances for

4    the record, starting with the Government.

5          MS. ARFA:  Good afternoon, Your Honor.  Meredith

6    Arfa for the Government.  And with me at counsel table are

7    AUSAs Craig Heeren, Irisa Chen, and also from NSG is Christine

8    Bonomo.

9          THE COURT:  Good afternoon to all of you.

10         MR. TUNG:  Good afternoon, Your Honor.  Your Honor,

11   on the defense side, Kevin Tung on behalf of the defendant Zhu

12   Yong.  And sitting next to me is the defendant Zhu Yong, and

13   then next to me is my law clerk Yutengz Tang, T-A-N-G.  He is

14   not admitted, but he is not speaking either.

15         THE COURT:  All right.  Good afternoon to all of you

16   as well.

17         Let's have our interpreters be sworn in.

18         THE COURTROOM DEPUTY:  Please raise your right hand.

19         (Interpreters sworn.)

20         THE COURTROOM DEPUTY:  Please state and spell your

21   names and the language you will be interpreting.

22         THE INTERPRETER:  My name is Brendan Chen.  I am the

23   Mandarin interpreter.

24         THE INTERPRETER:  Nancy Wu, also the Mandarin

25   interpreter.

Proceedings                                            3

1          THE COURT:  Good afternoon to both of you.  We

2   have -- I can't help but remark, we have four people with the

3   last name Chen.  Strange convergence.  Probably all different

4   in Chinese, I suspect.

5          We are here today for the argument on Mr.  -- the

6   last name Zhu; correct?

7          MR. TUNG:  Yeah, the last name is Zhu.

8          THE COURT:  Mr. Zhu's motion to suppress his

9   post-arrest statements to the FBI agent.

10         As I said when we were off the record, Mr. Tung, the

11  way that we will proceed is that you will make your arguments,

12  since it is your motion, and then the Government will respond.

13         Go ahead.  And be sure you speak slowly and clearly

14  into the microphone, you can remain seated.

15         MR. TUNG:  Thank you, Your Honor.

16         Okay.  This motion is made on behalf of the

17  defendant Zhu Yong to exclude statements and/or evidence

18  obtained after the Government was in violation of his

19  Miranda rights.  That was -- I think that was in a video

20  recording bearing Bates number YZ 0000002.

21         Now, Your Honor, primary speaking, we only actually

22  have to focus on the first maybe five or six or seven minutes

23  of the recording.  And I do not know, Your Honor, if you would

24  actually like to view the recordings, which I don't have it

25  here, but I thought that it was going to be set up by the

```
                          Proceedings                        4
```

1    Court.

2              THE COURT:  No. I have viewed the videos.  Trust me.

3              MR. TUNG:  Then I just start my argument.

4              THE COURT:  That would be really bad if I hadn't

5    before today.

6              MR. TUNG:  Yes, Your Honor.  It's actually, Your

7    Honor, at the very beginning of the video, the agent present a

8    waiver of the Miranda rights form to the defendant and asking

9    him to sign that waiver and that's, I believe, if I do not

10   remember wrong, it's around 2 minutes and 30 seconds in that

11   timeframe and that was at the very beginning.  So defendant

12   was confused.  So he said -- he basically request, through the

13   interpreter, he wants to speak to an attorney.  And according

14   to the law, if the individual states that he wants an

15   attorney, the interrogation must cease until an attorney is

16   present or appointed.  At that time the individual must have

17   the opportunity to confer with the attorney and to have him

18   present during any subsequent questioning.  That's the essence

19   of the <u>Miranda versus Arizona</u> case, 384 United States 436.

20              Now, if you still remember, at that point in time,

21   the FBI agent actually did not stop and he continues to ask

22   him to explain to him regarding that waiver.  But that's not

23   right because, Your Honor, there was nothing unclear when the

24   defendant expresses that he wants to talk to an attorney, all

25   interrogations must stop.  There is no need to explain the

Proceedings                                                           5

1    waiver form because he wanted an attorney.  It is crystal

2    clear, but the agent continues to talk.

3           And at the second point in time, Your Honor, if you

4    notice the video, I think that's around five minutes into the

5    video, the defendant again, through the interpreter, he

6    expressed his desire to an attorney.  And even with that, he

7    makes a gesture he wants to make a telephone, he says -- I

8    want to talk to attorney and it was that gesture.  I mean,

9    Your Honor, I do not know if you noticed this.  So at that

10   point in time, the defendant -- that was the second time

11   clearly he expressed his desire to have an attorney represent

12   him.

13          Now, when his request was ignored by the agent for

14   the few minutes, for the past few minutes and they continue to

15   explain what this waiver form is -- okay, this might be the

16   third time.  I'm sorry, Your Honor.  And there's a second

17   time.  The second time is four minutes into the video, okay.

18   He told the interpreter -- he told the -- he told -- through

19   the interpreter, he told the agent that he wants an attorney.

20   So just I'm talking about the last time and he even made -- a

21   gesture, and he said look, you know, if I can -- basically,

22   he's telling the agent if you do not provide an attorney to

23   me, maybe I can make a phone call at least.

24          So all these three times the request was crystal

25   clear:  He wants an attorney.  He wanted to have an attorney's

Proceedings                                                6

1   representation at least to guide him through the

2   interrogations.  The agent never stopped, continues to explain

3   the form and asking him to sign this waiver form.  Your Honor,

4   clearly if the defendant express his desire to have an

5   attorney, there is no need for the agent to continue to

6   explain what this waiver form is.  He's not going to waive,

7   right.

8              Now, at the end, Your Honor, the defendant thought

9   his request was refused.  And the agent represents Government.

10  So he was kind of -- even though not specifically under some

11  force, so he signed, but he was under the impression he was in

12  a small room, interrogation room with no help other than

13  interpreter, right.  Nobody -- it was very late at night.  So

14  he was kind of -- he was not knowingly, at least I know he was

15  not knowingly or voluntarily sign the waiver form.  Therefore,

16  Your Honor, based on the evidence, based on the videotaping

17  about just -- I mean, first, less than ten minutes

18  videotaping, Your Honor, you should make a ruling suppress or

19  exclude the Government to introduce any statements or any

20  evidence they obtained in violation of the defendant's Miranda

21  rights after, you know, he clearly, unequivocally expressed

22  his desire to speak to an attorney or to have an attorney

23  representing him in the proceeding.  So all these statements

24  should be suppressed.

25             Thank you very much, Your Honor.

Proceedings                                                    7

1        THE COURT:  Okay.  Thank you very much, Mr. Tung.

2        I'm actually going to save the Government some work

3   here and be efficient because, as I said, I have reviewed the

4   video and I have also thankfully had the benefit of the

5   transcript that the Government provided so I can make a clear

6   record.

7        I don't agree with your argument, Mr. Tung, that it

8   is crystal clear that Mr. Zhu invoked his right to counsel.

9   In fact, there is a lot of ambiguity in what he says when you

10  view the entire context of the conversation and I'm fortunate,

11  unusually fortunate, I think, to have the benefit of seeing

12  him speaking and interacting with the agents and the

13  interpreter.  So I see the body language.  I hear the tone.  I

14  hear the exact words.  I know what the sequence of events was.

15  I also hear the tone of the agents and their mannerism, which

16  was throughout very professional and calm and deliberative.

17  So your characterization -- and I understand why you must make

18  this argument -- I simply disagree with.

19       I think that throughout, from the beginning until

20  the end of this first -- about seven or eight minutes or so in

21  the video, the whole sequence of events really transpires

22  within the first ten minutes, as you noted, that it's clear to

23  me at first Mr. Zhu might have been confused and was asking

24  about the idea that he's entitled to a lawyer.  But it is very

25  clear to me then that the agents appropriately respond before

Proceedings                                          8

1   we can even speak to you, we need to make sure that you

2   understand all of your rights, not just your right to a

3   lawyer, but all of your rights and that you are willing to

4   speak to U.S.

5          So each time -- and there are three times where he

6   said something that could be interpreted, but it's not a clear

7   statement to me at all, that he's thinking he wants a lawyer,

8   each time he does that, the agents properly, in my mind, and

9   very professionally say to him let U.S. advise you exactly

10  about what your rights are and then you can decide whether or

11  not you want to speak to U.S. or not.  And they, at least two

12  times by my reckoning, say before we can even ask you anything

13  we have to make sure you want a lawyer.

14         Now, I want to read into the record, with apologies

15  to our long suffering and fabulous court reporter who has been

16  with me since 10:30 this morning, the parts of the transcript,

17  or the parts of the conversation, which thankfully have been

18  transcribed by the Government in their submission, that I find

19  showed that he was equivocal, at best, about whether he wanted

20  a lawyer in that moment, and that rather what I interpret him

21  to be saying and what seems clear to me from the context, both

22  visually and aurally, he is trying to understand whether he

23  needs to get a lawyer and he decides, though, after being

24  advised of his rights, that he might need to get a lawyer, but

25  that he says, very unequivocally, that he's willing to speak

Proceedings                                          9

1    to the agents before then and then he signs the actual waiver

2    with the benefit of the translation and the explanation of all

3    the rights.

4              Let me go through the parts that I have relied upon

5    and if you want to argue further on this, you can.

6              In the very beginning -- so this is at about -- and

7    I'm going to use the timestamp that is on the actual video.

8    So that is the realtime.  At about 8:58 a.m., and actually it

9    may be closer to 8:59 a.m., the seconds -- I didn't record the

10   exact seconds, but it is in between that timeframe, he says --

11   and this is through the interpreter, so it is the interpreter

12   actually speaking -- well, he asked, he said that he has a

13   right to have a lawyer.  He ask about.  And then one of the

14   agents named Bruno cuts him off and says, So do you want U.S.

15   -- so that's what I want to do is walk through those rights.

16   And then there is some more conversation.  And the defendant

17   actually says, I don't want to -- sorry -- I don't know what

18   you gonna ask me about; you got the wrong guy.

19             Okay.  And then a little bit -- there's a little bit

20   more back and forth.  And then the defendant, through the

21   interpreter, says I don't know what you're going to ask.  And

22   he mentioned I could have a lawyer here.  So that's what you

23   characterize as the second invocation of his right to a

24   lawyer, but, again, I perceive as just him trying to

25   understand what's going on and whether or not he should get a

Proceedings                                  10

1   lawyer, and then Agent Bruno responds well, there's a couple

2   of rights.  So before we ask you any questions, you must

3   understand.  So you have the right to remain silent and

4   anything you say can be used against you in court.  You have

5   the right to talk to a lawyer for advice before we ask you

6   questions.

7          And then the defendant says -- and this is, I think,

8   the third invocation, you would say -- but I need to find a

9   lawyer.

10         Bruno responds:  So is that what -- you want to talk

11  to a lawyer first or do you -- I mean, we need to understand

12  whether you want to speak with U.S., understand your rights

13  and waive those rights and we can ask you questions.

14         So, again, even though the defendant does mention

15  the right to a lawyer, the agents, in my mind, appropriately

16  try to understand if he is invoking, because it's not clear

17  from what he says, and I infer that as well from my viewing of

18  the conversation, or whether or not he's trying to understand

19  what his rights are.  And, so, the agents I think very calmly

20  but persistently still try to explain to him what his rights

21  are before determining if he's willing to speak to them

22  without a lawyer, and that's what then ensues.

23         The defendant then says, But I need to know what

24  you're going to ask me about before I decide whether I need a

25  lawyer or not.  So, he basically makes clear that he wants to

Proceedings                                                          11

1    know what's being asked before he decides if he needs a

2    lawyer.  This is a conversation that occurs within two minutes

3    of the sit-down and the interview.

4           And then the agent says:  Well, can -- we'll finish

5    the rest of these and then you can decide.

6           So, again, they are just discussing with him whether

7    or not he wants to invoke his right to a lawyer before

8    speaking to the agents.  And then the defendant says something

9    unintelligible, know what's going on, so I know whether I need

10   a lawyer or not.

11          Again, he is expressing equivocation.  He's

12   expressing that he's processing whether he wants to have a

13   lawyer or not.  So those statements, coupled with the other

14   statements about I need to find a lawyer or I have a right to

15   a lawyer, to me makes clear, for lack of a better word, that

16   he's still figuring out if he wants to speak to a lawyer or

17   not.

18          And I recall that when he made his first statement

19   he said he has a right to have a lawyer.  That's the

20   interpreter saying the defendant said he has a right to a

21   lawyer, that the defendant was reading, or appeared to be

22   reading the waiver sheet.  And, so, he seemed to focus in on

23   you have a right to a lawyer.

24          But, again, this is in the context of discussing

25   whether or not he still wants to get a lawyer at that moment

1   because the question is not whether he needs a lawyer down the

2   road or has a right to a lawyer down the road; it is whether

3   or not he wants to invoke his right before speaking to the

4   agents or instead of speaking to the agents, I should say, at

5   that moment and that's what the agents do within the first,

6   you know, five or six minutes and in a manner that's entirely

7   appropriate and responding, in my mind, to what is

8   equivocation or perhaps a lack of understanding by Mr. Zhu of

9   what his rights are.  So they persist and they explain to him

10  what his rights are.

11          So they say to him, So what's going on here is

12  you've been arrested under an arrest warrant by the Eastern

13  District of New York.

14          And then they go on to say, So we can't ask you any

15  questions unless you understand your rights and that you're

16  willing to answer our questions without a lawyer present.  So

17  they make clear to him that he has the right to ask for a

18  lawyer before or instead of speaking to the agents.

19          The defendant responds Well, you can ask, but if I

20  feel, I will answer.  What I like, I will answer.  But if I

21  feel I don't want to answer certain questions, I'm not going

22  to answer certain questions.

23          So at that moment he seems clear that he's not going

24  to answer anything he doesn't want to answer.

25          The agent responds, Well, that's fair.  That's fair.

Proceedings                                          13

1    But I want to make sure again that we go through these rights

2    because that's some of the ones that are at the bottom here.

3    So I want to -- I'm going to read them again and make sure you

4    understand each one.

5              And then the other agent says:  Let U.S. go through

6    them all and then we can talk.

7              And again the other agent says:  Before we can ask

8    you questions, you must understand those rights, before we ask

9    you.  And then there is something unintelligible.  So, again,

10   you have the right to remain silent.  You don't have to say

11   anything.  Anything you say can be used against you in court.

12   You have the right to talk to a lawyer for advice before we

13   ask you any questions.

14             And then he says something else that ends up being

15   incomplete because it's unintelligible, but it starts with You

16   have a right to, and then the defendant says, You can ask.

17   And then he says something unintelligible.  Then I'll decide

18   whether I need to call a lawyer.

19             So that's the second or third time he says once I

20   hear what the questions are, I will decide if I need to call a

21   lawyer.

22             But, again, the agents are trying to make him

23   understand that he has to decide if he wants to have a lawyer

24   before they ask him questions.  So, they go round and round a

25   bit on this.  But then the agent says:  We are going to keep

1   going, all right?

2            And then the agent says:  You have the right to have

3   a lawyer with you during our questions.  If you cannot afford

4   a lawyer, one will be appointed for you before any questions

5   if you wish.  If you decide to answer questions now without a

6   lawyer present, you have the right to stop answering at any

7   time.

8            And I'm assuming that this is what the agent meant

9   by what's at the bottom of the rights advisement -- advice

10  form, and what the defendant himself was talking about, which

11  is I'll answers the questions if I like and I won't answers

12  the question that I don't like.  And, so, the agents are

13  advising him he can stop answering any questions if he decides

14  to start answering them without a lawyer present.

15           And then Agent Thomas says, Does he understand?  And

16  Agent Bruno says, If you understand them and you still want to

17  speak with U.S., you know, our next step is that we sign the

18  form.  Right?

19           And then the other agent, Thomas says, And then we

20  can have the conversation with him and ask questions.  Is he

21  willing to do it?  And obviously the agent is asking the

22  translator to ask Mr. Zhu.

23           Mr. Zhu responds, Yeah, he say you can ask him

24  whatever question you like, that's what I said.

25           And that's when he then signs the form.

Proceedings                                    15

1          So, based on that entire conversation and what I

2    consider initially equivocal statements by Mr. Zhu about

3    whether or not he wants to have a lawyer present before any

4    questioning or during any questioning or whether he was

5    invoking his right to counsel at that point, it's clear to me

6    that by the end of the conversation he clearly understands

7    that he has a right to a lawyer before any questioning or

8    during the interview and he declines to invoke that right and

9    instead signs a waiver form.

10         I think this conclusion is buttressed by the fact

11   that then he talks to the agents about two hours or so

12   thereafter, much of which is exculpatory statements along the

13   lines of you have the wrong guy.  But he answers some

14   questions that obviously the Government may be interested in

15   that seem perhaps benign to Mr. Zhu but obviously may be

16   relevant to the Government's case.

17         So, for all of those reasons, I find as a factual

18   matter that Mr. Zhu didn't invoke his right to counsel, that

19   his statements in the beginning, the three of them that the

20   defense relies upon are equivocal, at best, and when

21   considered in the broader context of the conversation,

22   especially with the agents consistently reinforcing with him

23   his right to counsel before any questions are asked, I find

24   that he voluntarily waived his right to counsel and spoke to

25   the agents.

1          Now, I do want to cite a couple cases that I think

2    support the standard I'm applying and the conclusion:  United

3    States versus Plugh.  In that case, the Second Circuit held

4    that an interviewee's statement, "I don't know if I need a

5    lawyer," coupled with his refusal to sign the waiver was

6    insufficient to constitute an unambiguous request for counsel.

7    So in that case, the interviewee didn't even sign the waiver

8    form and expressed a question about whether he needed a

9    lawyer.  That is a far cry from what we have here, where the

10   defendant executed the form and then said I'll talk to you

11   about the questions I want to talk to you about and not about

12   the ones I don't want to talk to you about, and also suggested

13   that he needed to hear the questions before he sought a lawyer

14   but then signed the waiver form.

15          Additionally, the case of United States versus

16   Walters, which is I think a Judge Gershon case, she found

17   there that a suspect's statement that he was going to get a

18   lawyer, akin to Mr. Zhu saying I need to get a lawyer,

19   speaking in the future, it would seem, was insufficient --

20   that's what Judge Gershon found -- to constitute an

21   unambiguous request for counsel.  And that is U.S. versus

22   Walters, 963 Fed. Supp 2nd 138 at 155.  There is a quote about

23   that.  That is Eastern District of New York, of course, 2013.

24   And in it Judge Gershon cites U.S. versus Scarpa, 897 F.2d 63

25   at 68, a Second Circuit decision from 1990.

Proceedings                                                        17

1        And what's also noteworthy about Judge Gershon's

2    ruling in <u>Walters</u> is that she rejects the defense's argument

3    under <u>Smith versus Illinois</u> in that somehow the prosecutor's

4    decision there supported a finding of a waiver, I'm sorry, an

5    invocation of the right and there she said -- hang on one

6    second.  I'm sorry.  I'm just reminding myself about <u>Smith</u>.

7    Yes.  And she differentiated <u>Smith</u>, sorry, because in <u>Smith</u>,

8    the Court did find that the initial statement was ambiguous

9    and Judge Gershon, as I do here, found that the differences

10   that I don't find and she didn't find the interviewee's

11   initial statement was ambiguous and, therefore, it is a

12   material difference from <u>Smith v. Illinois</u>, even though I

13   understand that the defense isn't necessarily relying on that

14   case.

15        Furthermore, there is a case of Davis, a Supreme

16   Court decision.  And I want to get the full cite actually.

17   The cite is 512 U.S. 452, a 1994 Supreme Court decision, and

18   the Government will probably help me out here, it is <u>Davis</u>

19   <u>versus United States</u>.  And in that case, the Supreme Court

20   found ambiguous the statement "Maybe I should talk to a

21   lawyer."  So, again, further support for the conclusion that

22   Mr. Zhu's statements, which are very similar, are ambiguous

23   and not a clear invocation of his rights.

24             MS. ARFA:  Your Honor.

25             THE COURT:  Yes, please.

1              MS. ARFA:  May I just clarify?

2              I think while you were talking about the Walter's

3    case and you were distinguishing Smith, you said that you

4    found that the statement is -- I think you inverted ambiguous

5    and unambiguous.

6              THE COURT:  If I misspoke, I meant to say that as

7    here -- sorry, as in Walters, I find that the defendant's

8    statements were ambiguous.  Sorry, not unambiguous.

9              MS. ARFA:  Thank you.

10             THE COURT:  All right.  Thank you very much for

11   that.

12             And the Government also cites a couple of other

13   cases in its brief that are supportive:  Wood v. Ercole, 644

14   F.3d, 83, Second Circuit 2011, where the interviewee said

15   something to the effect of perhaps I should get a lawyer or

16   maybe I need a lawyer.  So, again, the Circuit did not find

17   that those statements were unambiguous invocations of the

18   right to counsel.

19             So for all of those reasons, I am denying the motion

20   to suppress.  Although, I guess I did say, Mr. Tung, if you

21   wanted to respond, you can.  Did you want to say anything in

22   response to what I have just said?

23             MR. TUNG:  Just a few statements just to clear our

24   position because in the event that Zhu decides to appeal so we

25   have a complete record.

Proceedings                                    19

1          Your Honor, I respectfully disagree with the

2    analysis here because the cases cited by people -- by the

3    Government, or by the Court are clearly distinguishable,

4    because in this case, in the instant case, the defendant at

5    the very beginning, the first sentence, he asked -- he asks

6    that he has a right to have a lawyer.  He's not emphasizing

7    perhaps I want to talk to lawyer.  He's talking I have a right

8    to a lawyer.  This is in plain English, plain English.  The

9    FBI agent should have understood what the defendant wants, and

10   this is exactly what the law is.  Right.  If the individual

11   states that he wants an attorney, the interrogation must cease

12   until an attorney is present.

13          So all these subsequent conversations the Court and

14   the Government is tried to characterize them as a way to

15   express or to clarify what defendant wants.  This is actually

16   not true, because what happens is the FBI agent here is trying

17   to induce the defendant to sign this waiver and the benefit of

18   the doubt should be given to the defendant, not the

19   Government.

20          He already said at the very beginning I have a right

21   to a lawyer.  So Government should go and find a lawyer before

22   they speak any more to that defendant.  All the subsequent

23   conversations which they tried to confuse this defendant and

24   trap or trick him to sign the waiver here.

25          So, Your Honor, I mean, this is just my argument and

Proceedings                                                 20

1    I have nothing to do -- to disrespect the Court.  All I'm

2    saying I just want to leave this statement here, the position

3    here just in the event, you know, the defendant wants to

4    appeal.

5              THE COURT:  As you should.  I appreciate that.

6              I also, though, want to clarify that that first

7    statement that you're focusing on, which the translator said

8    he asked, he said that he has a right to have a lawyer, that's

9    the one you're focused on, right?

10             MR. TUNG:  Right.

11             THE COURT:  As I said before, viewing the video,

12   what I see the defendant doing is looking at the waiver form

13   and he's almost pointing to a part of it to the translator and

14   it's clear to me that he is reading the form, which I assume

15   is in English and perhaps also in Chinese.

16             MS. ARFA:  Chinese, Your Honor.

17             THE COURT:  Yes.  And he's trying to understand

18   whether he has a right to a lawyer.  I agree with you, that

19   that's what he says, and it's clear he is trying to figure

20   that out.  But where I disagree with you is I don't think he

21   is saying I want a lawyer here now, I'm not waiving my right

22   to a lawyer.

23             And it's even more clear as the conversation goes on

24   that the agents are trying to help clarify for him this

25   statement in the waiver form that says you have a right to a

Proceedings                                    21

1    lawyer because the defendant was being arrested, was

2    presumably new to the process, and it's clear to me that he

3    looks somewhat confused.  So I very much, after viewing the

4    video and seeing exactly the context in which his statement

5    arose, it is very clear to me that he's just trying to clarify

6    what that statement in the waiver form means and that's what

7    the agents do, is they go over it with him to explain exactly

8    what it means.  And they could not have been clearer with him,

9    because they repeated multiple times, that before he spoke to

10   them, he has a right to have a lawyer, and that even if he

11   spoke to them without a lawyer, he could stop.  So I don't

12   think there was any trickery involved or any coercion,

13   especially given the manner in which the agents dealt with

14   him, which was entirely calm and conversational.  And my

15   perception was they were trying to be helpful to him in

16   clarifying the process.

17            The other thing I want to say, too, though, when you

18   say the benefit of the doubt should go to the defendant, I

19   disagree slightly, and now we're just talking about policy.

20   Remember that the suppression, the whole notion of suppression

21   based on police misconduct is really meant to police bad --

22   sorry to use that word again -- bad law enforcement conduct.

23   But here I do not find in any way that the agents were trying

24   to do anything coercive or nefarious; quite the opposite.  I

25   think they were really trying to understand and make the

Proceedings                                          22

1    defendant understand what his rights were and determine what

2    he wanted to do.  And at one point I remember one of the

3    agents pausing in response to the defendant's statement -- and

4    I forget which one it was -- I think he said I need to know

5    what the questions are before I tell you if I need a lawyer,

6    and I think, although it is not reflected here in the

7    transcript, the agent says something like haaa, and you could

8    see him processing what to do.  It's a human response, a

9    normal response, that they are trying to figure out what's the

10   next appropriate step, and that, in my mind, they took it

11   consistent with what <u>Miranda</u> dictates, that they try to advise

12   him fully of all of his rights and then determine what he

13   wanted to do.

14          So, your argument is preserved, to be sure.  I just

15   want to clarify, from a policy perspective, this notion of tie

16   goes to the runner, or the benefit of the doubt goes to the

17   defendant, I don't entirely agree with it in this setting

18   because <u>Miranda</u> is a prophylactic rule, and it's really meant

19   to curve behavior that is not this, in my opinion.  I don't

20   think the agents behaved in a way that warrants the sanction

21   of suppressing the statements.

22          MR. TUNG:  Your Honor, I just had one or two

23   sentence to respond.

24          THE COURT:  Yes.

25          MR. TUNG:  Your Honor, actually, the law is to

Proceedings                                        23

1    invoke the Miranda rights to consult, right, it only requires,

2    at a minimum, some statement that can reasonably be construed

3    to be an expression of a desire for the assistance of

4    attorney.  So, in other words, I still go back to focus on the

5    very first sentence, right, he said.  Through the interpreter

6    he asks he has a right to an attorney.

7          I think the Court should construe this is a minimum

8    requirement that he already met; he wants to have the

9    assistance of attorney.  That cited case is Davis versus

10   United States, 512 U.S. 452.

11         Now, Your Honor, if -- after Mr. Zhu stated I have a

12   right to an attorney, the agent shouldn't talk about anything

13   else if they really want to clarify his desire.  They should

14   go after -- they should follow up with the question do you

15   need an attorney.  It could be very simple, straightforward

16   question:  Was it like, you know, Mr. Zhu, do you need an

17   attorney to assist you in the process?  They go around

18   focusing about this waiver and try to explain, you know, you

19   have to sign this, you have to sign this.  So all of these

20   subsequent conversations should be construe as interrogation

21   or some sort of misleading the defendant to end up finally to

22   sign the agreement.

23         If he follow up with a very crystal clear, simple

24   question, Mr. Zhu, do you need an attorney?  Then he will be

25   answering yes or no.  That's missing here.  That is missing

Proceedings                                                        24

1    here.  What they did was all these five or seven minutes of

2    these talking.  That's what I'm characterizing this as

3    tricking the defendant.  You have to understand the

4    surrounding circumstances.  That's exactly what Miranda case

5    was talking about.  The essence was a defendant was kind of

6    locked in a small room with all surrounding assistants, with

7    all surrounding -- there's nobody in the room except the

8    interrogation, that environment.  Most people will be scared.

9    Most people will think whatever Government's demand they have

10   the obligation to respond.  This is exactly what had happened.

11   It's not just the subsequent conversations.  The subsequent

12   conversations doesn't mean anything other than they already --

13   this is kind of an interrogation, this is already questioning,

14   you know, is my understanding this form.  It's just for the

15   record, Your Honor.

16           THE COURT:  Thank you, Mr. Tung.  Having seen the

17   video, I disagree with you.

18           I do want to make a further note that actually the

19   defendant made in the Smith case in Judge Gershon is I would

20   like a lawyer.  That's exactly what he said there, and Judge

21   Gershon still didn't find in the context of that statement,

22   that that was an invocation, an unambiguous invocation of his

23   right to counsel.

24           Did the Government have anything to add?

25           (Continued on next page.)

*Proceedings*                                                         25

1   (Continuing)

2          MS. ARFA:  I'm certainly happy to answer questions

3   if the Court has any; otherwise, we are prepared to rest on

4   our papers.

5          THE COURT:  As I said, I'm denying the motion to

6   suppress for the reasons I stated on the record.  The defense

7   has his objection.

8          And then we are proceeding to trial.  I know I have

9   a Rule 15 deposition issue to resolve.

10          I did want to mention that, Mr. Tung, I gave

11   Defendants the right to respond by noon today, but you did not

12   submit any response.

13          MR. TUNG:  Your Honor, I'm here.

14          THE COURT:  Multitask.

15          MR. TUNG:  Your Honor, the only request here is I

16   have nothing else to say other than if Government's request to

17   take the deposition is granted, I concur with co-defendants'

18   counsels' request, defendants' counsels' application for

19   traveling cost.  Because Mr. Zhu is not working, he cannot

20   afford to pay to have the attorneys to attend the deposition

21   in person in California.

22          THE COURT:  But there can be a livestream link, so

23   he doesn't have to go anywhere.  He can watch it from his home

24   or your office.  And you can be present in your office too.

25          MR. TUNG:  I'm talking about counsel, I'm talking

*Proceedings*                                                        26

1    about attorney.  He doesn't have to go, but I'm talking about

2    the attorney going to attend the deposition in person because

3    the Government's position, they will go there to attend the

4    deposition in person.  If the Defendants' attorneys are not

5    there, that is a prejudice.

6           We do not know what the heck is going on with this

7    similar room.  What's the setting there?  We do not know if

8    FBI agents surrounded in that deposition room although it's

9    not showing on video.

10          All I'm saying, it's not just my imagination.  We

11   have a right to be there.  If they want to be there in person,

12   we should be treated equally.  That's the only objection I

13   have, having them to pay the cost for Zhu's attorney, which,

14   of course, I would be going there.

15          THE COURT:  I'm curious, just because I have the

16   Government here, and I realize the other Defendants aren't

17   present, but the Government did submit a letter saying that

18   the defense counsel took no position.

19          What happened between then and now?

20          I mean, to be honest, I wanted to be sure rather

21   than rely on the Government's representation, not that I have

22   any doubt that that was what was represented.  But I'm curious

23   now because it seems like there's some vociferous objection

24   going on.

25          MS. CHEN:  Seems like the Defendant took a position,

*Proceedings*                                                    27

1    Judge.

2           THE COURT:  Let me ask you folks one question.  And,

3    again, we won't have a full discussion because the other

4    lawyers are not here on the defense side.

5           But there was one suggestion of doing a -- what do

6    they call it -- closed circuit livestream, I'll call it in the

7    common parlance, of the testimony of the victim into the

8    courtroom realtime.

9           Does the Government have a view on that?

10          MS. CHEN:  Your Honor, I think the Government's

11   concern there, without stating too many details on the record,

12   was that the timing of the issues is a little unclear and the

13   witness may or may not be available to do that at trial

14   depending on --

15          THE COURT:  Oh, understood, understood.

16          MS. CHEN:  -- depending on how things play out.

17          THE COURT:  Right, I understand.

18          MR. TUNG:  Your Honor, you also have to consider

19   Defendant's right:  Cross-examination.  That's the only thing

20   in the deposition.  We cannot cross exam.

21          THE COURT:  So, I'm taking this under advisement.

22   And, obviously, I have the benefit now of hearing from all of

23   the Defendants, including Mr. Tung, who didn't submit

24   something in writing but has expressed his views on the record

25   here.

*Proceedings*                                                    28

1           I'm going to make a very prompt decision because I

2     know time is of the essence.  So, we'll take care of that; if

3     not today, before the weekend is over.

4           MS. ARFA:  I'm sorry, your Honor.  Before we

5     adjourn, I do have a couple other things I'd like to raise.

6           THE COURT:  Relating to this motion, though?

7           MS. ARFA:  For this proceeding, yes, your Honor.

8           THE COURT:  Okay.  Go ahead.

9           MS. ARFA:  The first is we would like to move to

10    seal the affidavit filed by the Defendant in connection with

11    this motion.  That affidavit was filed on April 20.  It's

12    Docket No. 179.

13          THE COURT:  All right.

14          MS. ARFA:  It contains identifying and sensitive

15    victim information that we believe should not be on the public

16    docket.

17          THE COURT:  Okay.  That will be sealed.

18          MS. ARFA:  Thank you.

19          THE COURT:  And I'm going to caution defense in

20    general that you have to be more careful about filing on the

21    public docket documents with personal identifying information.

22    I think this has happened before in this case, if I'm not

23    mistaken.

24          Am I being unfair to the defense?  It might be

25    another case that we have.

*Proceedings*                                                29

1          MR. TUNG:  I do not think we disclosed any personal

2     information in this document.

3          THE COURT:  Well, the name, right, of the victim?

4          MS. ARFA:  I'm happy to discuss it with defense

5     counsel separately, but we do believe it should be filed under

6     seal.

7          MR. TUNG:  I'm not objecting to be sealed, but I

8     have not mentioned any person's name other than the Defendant

9     himself.

10         MS. ARFA:  I'm sorry, I'm not referring to the

11    motion, I'm referring to the affidavit by the Defendant.

12         MR. TUNG:  I still don't see anybody, but we can

13    discuss.  I'm not objecting, so we can discuss.

14         There's nobody's name revealed, only one witness,

15    the victim, right?  Victim, that's an attorney.

16         THE COURT:  Is that the issue?

17         MS. ARFA:  Yes, your Honor.

18         THE COURT:  Let's actually stop speaking with names.

19    I think that is a concern.  And I'm not even sure the court

20    reporter got it anyway, so why don't we just refer to the

21    person as "the victim"?

22         In the transcription, there will just be a reference

23    to "the victim."  I assume that name is in this affidavit.

24         MS. ARFA:  It is; for instance, Paragraph 6.

25         THE COURT:  Okay.  So, we're going to file that

*Proceedings*                                                    30

1    under seal without objection by defense.

2            It has already been done as we sit here.

3            MS. ARFA:  Thank you.

4            THE COURT:  Anything else?

5            MS. ARFA:  Yes.

6            Setting aside this specific affidavit, the

7    Government believes that at this point, having now produced a

8    significant volume of both 3500 material and exhibits, that,

9    pursuant to the protective order, we have designated sensitive

10   discovery material, just to remind the defense that the

11   protective order limits the dissemination of that material,

12   including dissemination on the public docket.  And that

13   protective order, of course, has been signed by both the

14   defense counsel and the Defendant.

15           THE COURT:  And extended to the name that was

16   disclosed?

17           MS. ARFA:  Anything designated as sensitive

18   discovery material should not be -- the protective order

19   governs the dissemination in very specific and narrow ways,

20   and that includes not filing that on the public docket.

21           THE COURT:  So, Mr. Tung, you and your team should

22   be reminded that you have to abide by the terms of that

23   protective order regarding sensitive information.  And when in

24   doubt, obviously talk to the Government about whether you can

25   file anything on the public record that you think might be

*Proceedings*                                                 31

1    covered by it.  Just don't willy-nilly file anything that we

2    have to then seal.

3            Do you understand?

4            MR. TUNG:  Understood, your Honor.

5            THE COURT:  It gets complicated in these cases.

6            Go ahead, Ms. Arfa.

7            MS. ARFA:  Nothing further from the Government.

8    Thank you, your Honor.

9            THE COURT:  Thank you.

10           Mr. Tung, anything else?

11           MR. TUNG:  Nothing further from Defendant Zhu.

12           THE COURT:  So, you'll be getting a ruling on the

13   Rule 15 deposition shortly.

14           Thanks, everyone.  Sorry again for keeping you

15   waiting for so long.

16           MR. HEEREN:  No problem.  Thank you, Judge.

17

18           (Matter concluded.)

19

20

21

22

23

24

25