

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:IC
F. #2017R00906

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 10, 2025

By ECF

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Zhu Yong
     Criminal Docket No. 21-265 (S-1) (PKC)

Dear Judge Chen:

  Pursuant to the Court's April 3, 2025 and April 9, 2025 orders, the government respectfully submits this letter in opposition to the defendant Zhu Yong's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 362 (the "Motion" or "Mot."). For the reasons set forth below, the government respectfully submits that the defendant – who has not begun to serve his sentence – cannot yet seek such relief under Section 3582. Even if he could, the defendant's motion should be denied because he cannot establish extraordinary or compelling reasons warranting a sentence reduction and because the factors under 18 U.S.C. § 3553(a) counsel against any sort of reduction to the defendant's sentence.

  I. Background

  As this Court is aware, and as the government demonstrated at trial, this case concerns the defendant's participation in an international campaign to threaten, harass, surveil, and intimidate Xu Jin, Liu Fang, and their adult daughter, Xu Xinzi (also known as "Sabrina Xu"). The goal was to coerce Xu Jin and Liu Fang to return from the United States to the People's Republic of China ("PRC"), as part of transnational repression programs known as "Operation Fox Hunt" and "Operation Sky Net." The defendant's role in the scheme began in the fall of 2016, when, on behalf of PRC government officials, he engaged co-defendant Michael McMahon to conduct surveillance and find personal information about the victims. The defendant continued to act as the "middleman" between PRC government officials and co-conspirators in the United

States in furtherance of the scheme to harass, stalk and intimidate Xu Jin and his family so that Xu Jin and Liu Fang would return to the PRC government.[1]

On June 16, 2023, following a 13-day trial, the defendant was convicted on all counts of a superseding indictment charging him with conspiring to act as an agent of the government of the PRC without prior notification to the Attorney General, in violation of 18 U.S.C. § 371 (Count One), acting as an agent of the PRC government without prior notification to the Attorney General, in violation of 18 U.S.C. § 951 (Count Two), conspiracy to engage in interstate stalking, in violation of 18 U.S.C. § 371 (Count Three), and interstate stalking, in violation of 18 U.S.C. § 2261A(1)(B) (Count Four).

On January 15, 2025, the Court sentenced Zhu to 24 months' imprisonment on each count, which sentences were to run concurrently. Jan. 15, 2025 Minute Entry; ECF No. 335. In imposing its sentence, this Court considered the defendant's "age and his physical and mental health issues," but also noted that "working for a foreign government as an unregistered agent and stalking are both extremely serious crimes." Jan. 15, 2025 Sentencing Transcript ("Zhu Tr.") at 76, 84. The defendant was originally scheduled to surrender to the Federal Bureau of Prisons ("BOP") on April 15, 2025 to begin serving his term of incarceration. Jan. 15, 2025 Minute Entry. On April 9, 2025, the Court extended the defendant's surrender date to May 15, 2025. Apr. 9, 2025 Order. The defendant now seeks to reduce his sentence by asking the Court to eliminate any term of incarceration and resentence the defendant to a term of 24 months' home confinement. Mot. at 1-2.

II. Discussion

A. Applicable Law

"A district court lacks the authority to alter a sentence after the time of sentencing, except where Congress has provided otherwise." *United States v. Petit*, 541 F. Supp. 3d 304, 309 (S.D.N.Y. 2021) (citing *United States v. Addonizio*, 442 U.S. 178, 189 (1979)). Section 3582(b) provides that, subject to certain narrowly prescribed exceptions, "a judgment of conviction that includes [a sentence to imprisonment] constitutes a final judgment." 18 U.S.C. § 3582(b). One of the exceptions is the compassionate release provision found in Section 3582(c)(1)(A), which allows a court to, upon the defendant's motion, "reduce the term of imprisonment (and . . . impose a term of probation or supervised release . . . that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A).

A court may modify a term of imprisonment upon a defendant's showing of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A)(i). A defendant may move for compassionate release "after the defendant has fully exhausted all administrative rights

---

[1] Because the Court presided over the instant case for four years, including a jury trial, and has decided substantive motions, the government does not reiterate the facts adduced at trial. The government incorporates its response to the defendant's post-trial motion for a judgment of acquittal. *See* ECF No. 286.

to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See id.* at § 3582(c)(1)(A). Any such reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The applicable policy statement is set forth in U.S.S.G. § 1B1.13.[2]

The existence of extraordinary and compelling reasons, however, does not *per se* compel compassionate release. Rather, courts must consider whether the factors under 18 U.S.C. § 3553(a), on balance, override the extraordinary and compelling reasons. If so, release will not be warranted. As one district court explained:

> It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is *not thereby automatically entitled* to a sentence modification. He is *simply eligible* for a sentence modification. The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

*United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020) (emphases added).

A defendant seeking relief bears the burden of proving that extraordinary and compelling reasons exist to justify early release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *see also Gotti*, 433 F. Supp. 3d at 619 (defendant "has the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist").

B.  The Court Should Not Disturb the Sentence Imposed

The Motion should be denied because the defendant has not exhausted his administrative remedies, and cannot do so given that he has not begun to serve his term of imprisonment. In any event, he has neither established extraordinary and compelling circumstances justifying a reduction to his sentence nor demonstrated that the applicable Section 3553(a) factors support such a reduction.

---

[2]     Although the Second Circuit held in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), that a prior version of U.S.S.G. § 1B1.13 was not "applicable" in light of subsequent statutory amendments and thus did not limit courts' discretion, the most recent amendments to U.S.S.G. § 1B1.13 "have harmonized the Policy Statement with the" statute. *United States v. Feliz*, No. 16-CR-809 (VM), 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023). *Brooker* thus no longer controls and compliance with § 1B1.13 is once again mandatory. *See id.*

3

*First*, given that the defendant has not begun serving his incarceratory sentence, he cannot meet the statutory requirement that he exhaust his remedies with the BOP. *See* 18 U.S.C. § 3582(c)(1)(A) (providing that a defendant may move for compassionate release only "*after* [he] has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" (emphasis added)). Thus, based on the plain terms of the statute, courts in the Second Circuit have routinely denied motions to modify or reduce a sentence where the defendant has not begun to serve that sentence at the time the motion is made. *See, e.g.*, *United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020); *United States v. Casper*, No. 19-CR-337 (JPO), 2022 WL 2533002, at *1-2 (S.D.N.Y. July 7, 2022) (rejecting argument that defendant had satisfied § 3582(c)(1)(A)'s exhaustion requirement before serving his prison sentence because his "incarceration [was] not a distant or hypothetical possibility"); *United States v. Javed*, No. 16-CR-601 (VSB), 2021 WL 2181174, at *4 (S.D.N.Y. May 27, 2021) ("Courts within this Circuit have denied compassionate release motions as premature where the defendant had not begun serving his or her sentence, observing that '[b]y its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility.'" (quoting *United States v. Jordan*, 472 F. Supp. 3d 59, 62-63 (S.D.N.Y. 2020)); *United States v. Johnson*, No. 16-CR-457 (NGG), 2021 WL 466782 (E.D.N.Y. Feb. 9, 2021).

Recognizing that he cannot meet the exhaustion requirement, the defendant asks the Court find that a "narrow and exceptional situation" exists here for which the requirement does not need to be met. In doing so, the defendant relies on cases in which compassionate release was granted where defendants had already served lengthy prison sentences, but were not incarcerated at the time of their motion and sought to avoid reincarceration. *See* Mot. at 2 (citing *United States v. Austin*, 468 F. Supp. 3d 641 (S.D.N.Y. 2020), and *United States v. Thrower*, No. 04-CR-903 (ARR), 2020 WL 6128950 (E.D.N.Y. Oct. 19, 2020)). In *Austin*, the defendant had been released from custody after serving eleven years of a fifteen-year sentence, which was later reinstated; Austin then sought a reduction in his sentence pursuant to Section 3582 – a request he had previously filed with the warden of his BOP facility prior to being released from custody. 468 F. Supp. 3d at 642-44. In *Thrower*, Judge Ross had vacated the remaining portion of a defendant's fifteen-year sentence, and that ruling was subsequently reversed and the original sentence reinstated. 2020 WL 6128950 at *1. Thrower had already served 149 months in custody at the time the compassionate release motion was filed, and had been released to begin supervised release, which, in his case involved substantial mental health and housing assistance. *Id.* at *1-2. It is undisputed that the circumstances in those cases are not present here given that the defendant has yet to begin serving his imposed sentence. Thus, the Court should deny the Motion on basis that the defendant has never been in BOP custody and, therefore, has not exhausted his administrative remedies. *See Casper*, 2022 WL 2533002, at *1-2 (declining to find the "narrow and exceptional situation" in *Austin* existed for a defendant who had not yet begun to serve his sentence).

*Second*, even if the Court were to waive the exhaustion requirement, the defendant has not established extraordinary and compelling reasons that merit a reduction in his sentence. The sole basis on which the Motion argues for a sentence reduction is that the defendant suffers from "physical and mental health conditions," including anxiety, depression, hypertension and diabetes, which the BOP "may lack the resources to manage." *See* Mot. at 2-3. Notably, at

4

sentencing, the Court already considered the defendant's health conditions as a mitigating factor warranting a more lenient sentence. *See* Zhu Tr. at 84. In his Motion, the defendant claims that his conditions have gotten worse since his sentence was imposed, but the record lacks any evidence of material change since the defendant's January 2025 sentencing hearing.

While the Sentencing Guidelines provide that certain medical conditions can amount to extraordinary and compelling reasons, they are generally limited to extremely serious situations such as a "terminal illness." *See* U.S.S.G. § 1B1.13(b)(1)(A)-(D). The defendant has not met the high burden to show that he suffers from such serious medical conditions warranting a sentence reduction. To the contrary, inmates with similar, or worse, medical conditions have routinely been denied compassionate relief. *See, e.g., United States v. Mustafa*, No. 04-CR-356-1 (AT), 2025 WL 786693, at *1 (S.D.N.Y. Mar. 12, 2025) (medical conditions of "double-arm amputee who is blind in one eye, has limited vision in the other, and suffers from diabetes, hypertension, and skin conditions" were not extraordinary and compelling reasons for a sentence reduction); *United States v. Murillo-Bejarano*, No. 03-CR-1188 (RMB), 2025 WL 754120, at *1 (S.D.N.Y. Mar. 10, 2025) ("pre-diabetes, complete and traumatic right leg amputation above the knee, enlarged prostate with chronic urinary tract infections, Hyperlipidemia, [m]uscle weakness, [m]uscle atrophy, and chronic lower back pain" were not extraordinary and compelling reasons warranting compassionate release); *United States v. Porcello*, No. 22-CR-29 (KAM), 2024 WL 5108151, at *2 (E.D.N.Y. Dec. 13, 2024) (defendant's "general chronic back pain, and other challenges, including coronary artery disease, hypertension, cardiac stents, and high cholesterol" did not warrant compassionate release). Nor has the defendant established that the BOP cannot accommodate his health conditions. To the contrary, he speculates only that the BOP "may" be unable to accommodate them. Thus, the defendant's medical conditions are not extraordinary and compelling reasons warranting a sentence reduction, and the Court should deny the Motion on this independent basis.

*Lastly*, the Section 3553(a) sentencing factors – including the seriousness of the crime and the need to deter criminal conduct – also require denial of the defendant's motion to reduce his sentence. As the Court observed at the defendant's sentencing, the defendant engaged in "extremely serious crimes" and helped the PRC conduct a campaign that included "terrorizing the victims and wreaking havoc in their lives, which has permanently scarred them." Zhu Tr. 76-77. Moreover, the Court noted that the defendant's sentence must "send a clear message to anyone else, who would seek to work for the Chinese Government for this purpose, and not register, that there will be serious consequences for doing so." *Id.* at 78. In sentencing the defendant to a term of imprisonment well below the applicable Guidelines range for his serious crimes, the Court expressly considered the defendant's mental and physical condition, his age, his contributions to his family, and his relative lack of sophistication. The Motion offers no reason to revisit the Court's weighing of the applicable Section 3553(a) factors that resulted in the sentence of 24 months' incarceration.

III.     Conclusion

        For the reasons set forth above, the defendant has not met his burden to show that a sentence reduction is warranted, and the Motion should be denied in its entirety.

Sincerely,

JOHN J. DURHAM
United States Attorney

By:  /s/
Meredith A. Arfa
Irisa Chen
Assistant U.S. Attorneys
(718) 254-7000

SUE BAI
Supervisory Official
Department of Justice
National Security Division

By:  /s/
Christine Bonomo
Trial Attorney

cc:   Clerk of the Court (PKC) (via ECF)
      Counsel of Record (via ECF)